1  Theodore A. Griffinger, Jr. (SBN 66028)
   Tanya Herrera (SBN 177790)
2  STEIN & LUBIN LLP
   Transamerica Pyramid
3  600 Montgomery Street, 14th Floor
   San Francisco, CA  94111
4  Telephone:    (415) 981-0550
   Facsimile:    (415) 981-4343
5  tgriffinger@steinlubin.com
   therrera@steinlubin.com
6
   Attorneys for Defendants,
7  JON SABES, STEVEN SABES AND
   MARVIN SIEGEL
8

9                UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                     OAKLAND DIVISION

12

13  SUZANNE D. JACKSON,                Case No.  3:11-cv-02753-PJH

14            Plaintiff,

15  v.

16  WILLIAM FISCHER; JON SABES;        **DEFENDANTS JON SABES, STEVEN**
    STEVEN SABES; MARVIN SIEGEL;       **SABES AND MARVIN SIEGEL'S NOTICE**
17  BRIAN CAMPION; LONNIE              **OF MOTION AND MOTION TO DISMISS**
    BROOKBINDER; MANI                  **PLAINTIFF'S SECOND AMENDED**
18  KOOLASURIYA, JORGE FERNANDES,      **COMPLAINT**
    JOSHUA ROSEN, STEVE
19  WATERHOUSE, JEAN PAUL a/k/a        Date:      October 31, 2012
    "BUZZY" LAMERE, UPPER ORBIT,       Time:      9:00 a.m.
20  LLC, SPECIGEN, INC.; PEER DREAMS   Dept:      Courtroom 3, 3rd Fl.
    INC.; NOTEBOOKZ INC.;              Judge:     Honorable Phyllis J. Hamilton
21  ILEONARDO.COM INC.; NEW MOON
    LLC; MONVIA LLC, CII LIMITED; and
22  SAZANI BEACH HOTEL,

23            Defendants.

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................... 1

II.  SUMMARY OF ALLEGATIONS ................................................................. 1

III.  APPLICABLE LEGAL STANDARDS ......................................................... 4

IV.  ARGUMENT ................................................................................................. 5

    A.  The SAC Fails To State A Claim Under The Exchange Act ................................. 5

        1.  The SAC Fails To Identify An Actionable Misstatement Or Omission ................................................................................. 6

            a.  The SAC Fails To Identify A Misstatement Attributable To The D&O Defendants ................................................................. 6

            b.  The SAC Fails To Identify A Misstatement Or Omission That Was False Or Misleading When Made ............................... 8

        2.  The D&O Defendants Did Not Owe – Or Breach – A Duty To Disclose ............................................................................. 10

            a.  The D&O Defendants Were Not Obligated To Accuse Themselves Of Wrongdoing Or Characterize their Conduct As Improper ...................................................................... 12

            b.  Regulation D Does Not Give Rise To A Duty To Disclose.......... 13

        3.  The SAC Fails To Allege Scienter............................................................ 14

        4.  The SAC Fails To Allege Reliance........................................................... 15

        5.  The SAC Fails To Allege That Any Of The D&O Defendants Were "Control Persons" Within The Meaning Of Section 20(a) ...................... 16

    B.  The SAC Fails To State A Claim For Breach Of Fiduciary Duty ....................... 17

    C.  The SAC Fails To State A Claim Under Sections 25401 and 25501 .................. 19

    D.  The SAC Fails To State A Claim Under Section 25504...................................... 20

    E.  The SAC Fails To State A Claim Under Section 25501.5................................... 21

    F.  The SAC Fails To State A Claim For Common Law Fraud................................ 24

    G.  The SAC Fails To State A Claim For Negligent Misrepresentation.................... 25

    H.  The SAC Fails To State A Claim For An Accounting......................................... 25

V.  CONCLUSION .............................................................................................. 25

1

2

## <u>TABLE OF AUTHORITIES</u>

3  **FEDERAL CASES**

4  *Allstate Life Ins. Co. v. Robert W. Baird & Co.*
5        756 F.Supp.2d 1113 (D. Ariz. 2010)...................................................................... 11

6  *Anschutz Corp. v. Merrill Lynch and Co.*
        785 F.Supp.2d 799 (N.D. Cal. 2011) ...................................................................... 25

7
   *Ashcroft v. Iqbal*
8        556 U.S. 662 (2009) ............................................................................................. 1, 4

9  *Associated General Contractors v. California State Council*
10        459 U.S. 519 (1983) ................................................................................................ 14

11 *Basic, Inc. v. Levinson*
        485 U.S. 224 (1988) ........................................................................................... 10, 16

12
   *Bell Atlantic Corp. v. Twombly*
13        550 U.S. 544 (2007) .................................................................................................. 4

14 *Biggins v. Wells Fargo & Co.*
        266 F.R.D. 399 (N.D.Cal. 2009) ............................................................................ 4, 5
15
   *Binder v. Gillespie*
16        184 F.3d 1059 (9th Cir. 1999)................................................................................... 5

17 *Brody v. Transitional Hospitals Corp.*
18        280 F.3d 997 (9th Cir. 2002)................................................................................... 10

19 *Brown v. Brewer*
        2010 WL 2472182 (C.D. Cal. June 17, 2010) ....................................................... 13
20
   *Canales v. Federal Home Loan Mortgage Corp.*
21        2011 WL 3320478 (C.D. Cal., Aug. 1, 2011)........................................................ 25

22 *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*
23        511 U.S. 164 (1994) ..................................................................................... 7, 17, 20

24 *Colin v. Onyx Acceptance Corp.*
        31 Fed.Appx. 359 (9th Cir. 2002) .......................................................................... 13
25
   *Communications Workers of America v. CSK Auto Corp.*
26        2007 WL 951968 (D. Ariz. Mar. 28, 2007) ............................................................. 7

27 *Eshelman v. OrthoClear Holdings*
28        2009 WL 506864 (N.D. Cal. 2009)................................................................... 18, 19

TABLE OF AUTHORITIES

*Eshelman v. OrthoClear Holdings, Inc.*
    2008 WL 171059 (N.D. Cal. Jan. 12, 2008) ................................................................ 16, 18

*Falkowski v. Imation Corp.*
    309 F.3d 1123 (9th Cir. 2002).......................................................................................... 8, 9

*Frati v. Saltzstein*
    2011 WL 1002417 (S.D.N.Y. Mar. 14, 2011) ............................................................... 11, 12

*Hopkins v. Dow Corning Corp.*
    33 F.3d 1116 (9th Cir. 1994)............................................................................................... 24

*Howard v. Everex Systems, Inc.*
    228 F.3d 1057 (9th Cir. 2000)............................................................................................ 17

*Ileto v. Glock, Inc.*
    349 F.3d 1191 (9th Cir. 2003)............................................................................................... 4

*In Gilead Sciences Sec. Litig.*
    2009 WL 3320492 (N.D. Cal. Oct. 13, 2009) ...................................................................... 7

*In re Autodesk, Inc. Shareholder Deriv. Litig.*
    2008 WL 5234264 (N.D. Cal. Dec. 15, 2008) .................................................................... 19

*In re Bare Escentuals, Inc. Sec. Litig.*
    745 F.Supp.2d 1052 (N.D. Cal. 2010) .............................................................................. 4, 6

*In re Cylink Sec. Litig.*
    178 F.Supp.2d 1077 (N.D. Cal. 2001) .................................................................................. 7

*In re Daou Systems, Inc. Sec. Litig.*
    411 F.3d 1006 (9th Cir. 2005)............................................................................................. 15

*In re Digital Island Sec. Litig.*
    223 F.Supp.2d 546 (D.Del. 2002), *aff'd* 357 F.3d 322 (3d Cir. 2004) .................................. 17

*In re Downey Sec. Litig.*
    2009 WL 736802 (C.D. Cal. Mar. 18, 2009) .................................................................. 7, 16

*In re Dura Pharmaceuticals, Inc. Sec. Litig.*
    2008 WL 483613 (S.D. Cal. Feb. 20, 2008) ........................................................................ 7

*In re FoxHollow Techs., Inc. Sec. Litig.*
    2008 WL 2220600 (N.D. Cal. May 27, 2008), *aff'd* 2009 WL 4913215 (9th Cir. Dec.
    4, 2009) .............................................................................................................................. 12

*In re GlenFed Sec. Litig.*
    42 F.3d 1541 (9th Cir. 1994) (*en banc*) ............................................................................ 5, 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Interactive Network, Inc. Sec. Litig.*
  948 F.Supp. 917 (N.D. Cal. 1996) ........................................................ 11

*In re Ivan F. Boesky Sec. Litig.*
  825 F.Supp. 623 (S.D.N.Y. 1993) .......................................................... 11

*In re Metawave Communications Corp. Sec. Litig.*
  298 F.Supp.2d 1056 (W.D. Wash. 2003) ................................................. 8

*In re Silicon Graphics, Inc. Sec. Litig.*
  970 F.Supp. 746 (N.D. Cal. 1997) ........................................................... 6

*In re Stac Elecs. Sec. Litig.*
  89 F.3d 1399 (9th Cir. 1996) ................................................................ 5

*In re Toyota Motor Corp.*
  785 F.Supp.2d 883 (C.D. Cal. 2011) ..................................................... 21

*In re VeriSign, Inc. Deriv. Litig.*
  531 F.Supp.2d 1173 (N.D. Cal. 2007) .............................................. 15, 18

*Klein v. King*
  1990 WL 61950 (N.D. Cal. Mar. 26, 1990) ........................................... 13

*Lillard v. Stockton*
  267 F.Supp.2d 1081 (N.D. Okla. 2003) ................................................. 13

*Lubin v. Sybedon Corp*
  688 F.Supp. 1425 (S.D. Cal. 1998) .......................................................... 6

*Metzler Investment GmbH v. Corinthian Colleges, Inc.*
  540 F.3d 1049 (9th Cir. 2008) ............................................................. 15

*Micrel, Inc. v. Monolithic Power Systems, Inc.*
  2005 WL 6426678 (N.D. Cal., Dec. 9, 2005) ....................................... 24

*Neubronner v. Milken*
  6 F.3d 666 (9th Cir. 1993) ..................................................................... 6

*New Mexico State Investment Council v. Ernst & Young LLP*
  641 F.3d 1089 (9th Cir. 2011) ............................................................. 14

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v.*
  *America West Holding Corp.*
  320 F.3d 920 (9th Cir. 2003) .............................................................. 15

*Paracor Fin. Inc. v. Gen. Elec. Capital Corp.*
  96 F.3d 1151 (9th Cir. 1996) ............................................................... 11

*Ratzlaf v. United States*
510 U.S. 135 (1994)............................................................................ 22

*Ronconi v. Larkin*
253 F.3d 423 (9th Cir. 2001)............................................................. 10

*Salameh v. Tarsadia Hotels*
2011 WL 1044129 (S.D. Cal. Mar. 22, 2011) ................................. 23

*Sanders v. Kennedy*
794 F.2d 478 (9th Cir. 1986).............................................................. 4

*Santa Fe Indus., Inc. v. Green*
430 U.S. 462 (1977)............................................................................ 13

*Semegen v. Weidner*
780 F.2d 727 (9th Cir. 1985)............................................................... 5

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*
552 U.S. 148 (2008)............................................................................ 16

*Swartz v. KPMG LLP*
476 F.3d 756 (9th Cir. 2007)......................................................... 6, 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
551 U.S. 308 (2007)............................................................................ 15

*The MJK Family LLC v. Corporate Eagle Management Services, Inc.*
2009 WL 4506418 (E.D. Mich. Nov. 30, 2009) ............................. 14

*United States v. Schiff*
602 F.3d 152 (3rd Cir. 2010) ............................................................ 11

*Vess v. Ciba Geigy Corp. USA*
317 F.3d 1097 (9th Cir. 2003)............................................................. 4

*Zucco Partners, LLC v. Digimarc Corp*
552 F.3d 981 (9th Cir. 2009)............................................................... 6

**CALIFORNIA CASES**

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*
158 Cal.App.4th 226 (2007)........................................................ 20, 25

*Bowden v. Robinson*
67 Cal.App.3d 705 (1977)................................................................. 20

*Deveny v. Entropin, Inc.*
139 Cal.App.4th 408 (2006).............................................................. 23

*Seeger v. Odell*
        18 Cal.3d 409 (1941) ................................................................................ 25

*Viterbi v. Wasserman*
        191 Cal.App.4[th] 927 (2011) ................................................................... 23

**DELAWARE CASES**

*Design Exch. Architects, Inc. v. Sarro*
        2000 WL 33662344 (Del. Com. Pl. July 15, 2000) ............................... 12

*Guttman v. Huang*
        823 A.2d 492 (Del. Ch. 2003) .................................................................. 19

*In re Caremark Int'l, Inc. Deriv. Litig.*
        698 A.2d 959 (Del. Ch. 1996) .................................................................. 19

*In re Citigroup, Inc. Shareholder Deriv. Litig.*
        964 A.2d 106 (Del. Ch. 2009) .................................................................. 18

*Standard Sewing-Mach. Co. v. Frame*
        48 A. 188 (Del. Super. 1900) ................................................................... 12

*Stone v. Ritter*
        911 A.2d 362 (Del. 2006) ......................................................................... 19

**FEDERAL STATUTES**

Private Securities Litigation Reform Act of 1995
        15 U.S.C. § 78u-4(b)(1) ........................................................................ 6, 9
        15 U.S.C. § 78u-4(b)(3)(A) ........................................................................ 6

Securities Act of 1933
        15 U.S.C. § 78j(b) ....................................................................................... 5

**RULES & REGULATIONS**

Regulation D, 17 C.F.R. §§ 230.501-230.508
        Rule 10b-5 ....................................................................................... passim
        Rule 501(a) ................................................................................................ 14
        Rule 502 ..................................................................................................... 14
        Rule 506(b)(2) ................................................................................... 13, 14

Rule 9(b) ............................................................................................................ 21

**FEDERAL RULES OF CIVIL PROCEDURE**

F.R.C.P.
    § 8(a)(2) .................................................................................................................... 1, 4
    § 9(b) ...................................................................................................................... passim
    § 12(b)(6) ....................................................................................................................... 4

**CALIFORNIA STATUTES**

Cal. Corp. Code
    § 2116 .......................................................................................................................... 18
    § 25004 ........................................................................................................................ 22
    § 25401 ................................................................................................................... 19, 20
    § 25501 ........................................................................................................ 19, 20, 21, 22
    § 25504 ............................................................................................................ 20, 21, 22
    § 25506 ........................................................................................................................ 23
    § 25510 ........................................................................................................................ 23

California Civil Code § 338(a) ............................................................................... 23, 24

**OTHER AUTHORITIES**

J. Williams Hicks, Exempted Transactions Under the Securities Act of 1933 (2011) ................. 14

1

### NOTICE OF MOTION AND MOTION

2  TO PLAINTIFF AND HER COUNSEL OF RECORD:

3       **PLEASE TAKE NOTICE** that on October 31, 2012, at 9:00 a.m. or as soon thereafter as the

4  matter may be heard, in the Courtroom of the Honorable Phyllis J. Hamilton, located at the United

5  States District Court for the Northern District of California, 1301 Clay Street, Oakland, California,

6  defendants Marvin Siegel, Jon Sabes and Steven Sabes (together,  the "D&O Defendants") will and

7  hereby do move for an order dismissing the Second Amended Complaint (the "SAC") in this action.

8       The D&O Defendants make this motion to dismiss pursuant to Federal Rules of Civil

9  Procedure 12(b)(6) and 9(b) on the grounds that:

10       1.      Plaintiff's First Claim for Relief  for an accounting is derivative of her other claims

11  and fails for the reasons described below;

12       2.      Plaintiff's Second Claim for Relief for violations of Section 10(b) of the Securities

13  Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), fails to state a claim for relief

14  because (a) the SAC fails to allege a statement or omission that was knowingly false or misleading

15  when made with the specificity required by the Private Securities Litigation Reform Act of 1995, 15

16  U.S.C. § 78u-4 (the "PSLRA"); and (b) the SAC fails to allege reliance;

17       3.      Plaintiff's Third Claim for Relief for violations of California Corporations Code

18  Sections 25401 and 25501 ("Sections 25401and 25501") fails to state a claim for relief because (a)

19  Plaintiff fails to allege that any of the D&O Defendants made a false statement or omission in

20  connection with a sale of securities; and (b) the SAC fails to allege that Plaintiff was in privity with

21  any of the D&O Defendants;

22       4.      Plaintiff's Fourth Claim for Relief for violations of California Corporations Code

23  Section 25504 ("Section 25504") fails to state a claim for relief because (a) Plaintiff fails to allege an

24  agency relationship between the D&O Defendants and Mr. Fischer with the specificity required by

25  Rule 9(b); (b) Plaintiff fails to allege facts establishing that Mr. Fischer (or anyone else) made a

26  material misstatement or omission in connection with a sale of securities; and (c) Plaintiff fails to

27  allege that the D&O Defendants had knowledge or reasonable grounds to believe that Mr. Fischer (or

28  anyone else) was primarily liable for violations of Sections 25401 and 25501;

1        5.      Plaintiff's Fifth Claim for Relief for breach of fiduciary duty fails because (a) the SAC

2   fails to plead specific facts showing that any of the D&O Defendants acted in bad faith, as required to

3   establish liability for breach of a duty of care under the exculpatory provision in SpeciGen's

4   Certificate of Incorporation (the "Certificate"); (b) Plaintiff lacks standing to bring a claim for breach

5   of fiduciary duty because any harm suffered was suffered in the first instance by SpeciGen, Inc.

6   ("SpeciGen"), and the only damage suffered by Plaintiff was the loss of value of her investment

7   (*Eshelman v. OrthoClear Holdings, Inc.* 2008 WL 171059, *7 (N.D. Cal. Jan. 12, 2008)); (c)

8   Plaintiff's derivative claim for breach of fiduciary duty conflicts with her direct claims for damages

9   and rescission (*id.*); and (d) the SAC fails to allege that the D&O Defendants failed to implement a

10  system of controls or consciously failed to monitor the operation of such a system, as required for a

11  "failure of oversight" claim under Delaware law;

12       6.      Plaintiff's Eighth Claim for Relief for negligent misrepresentation fails because the

13  SAC fails to allege a misrepresentation or reliance with the specificity required by Rule 9(b);

14       7.      Plaintiff's Ninth Claim for Relief for violations of California Corporations Code

15  Section 25501.5 ("Section 25501.5") fails because (a) Plaintiff fails to allege that any of the D&O

16  Defendants participated in any transaction involving the sale of securities or otherwise acted as a

17  broker-dealer in the State of California; and (b) any claim for relief under Section 25501.5 would be

18  time-barred;

19       8.      Plaintiff's Tenth Claim for Relief for violations of Section 20(a) of the Exchange Act,

20  15 U.S.C. § 78t(a) ("Section 20") fails because the SAC fails to establish a primary violation of the

21  Exchange Act; and

22       10.     Plaintiff's Eleventh Claim for Relief for common law fraud fails because the SAC

23  fails to allege a misrepresentation, scienter or reliance with the specificity required by Rule 9(b).

24       The D&O Defendants' motion is based on this Notice of Motion and Motion, the

25  accompanying Memorandum of Points and Authorities, Request for Judicial Notice, the Declaration

26  of Tanya Herrera, filed and served herewith, the pleadings and records on file herein, and such

27  additional materials and argument as may be presented to the Court at or before the hearing on the

28  Motion.

## I.   **INTRODUCTION**

The U.S. Supreme Court has cautioned that Federal Rule of Civil Procedure 8(a)(2) requires "more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Ignoring this guidance, the SAC offers a vague account of a fraudulent scheme engineered by Defendant William Fischer and summarily concludes that "the other named defendants" are somehow responsible for her alleged injuries.  Plaintiff makes no attempt to connect the D&O Defendants to the alleged scheme and offers no explanation why they should be individually liable for Mr. Fischer's (or any other defendant's) supposed misdeeds.  These "guilt by association" allegations do not satisfy the basic notice pleading standards mandated by Rule 8(a)(2), let alone the heightened pleading standards required by Rule 9(b).

Plaintiff's pleading failures are fatal and incurable.  The judicially noticeable Note and Warrant Purchase Agreement between Plaintiff and SpeciGen (the "Purchase Agreement") confirms that Plaintiff was an accredited investor who (1) had access to all of the information necessary for her to make an informed decision to invest in SpeciGen; and (2) made her last loan to SpeciGen on March 1, 2007, *more than four years before she filed her Complaint*.[1]  Although Plaintiff might prefer to ignore the Purchase Agreement, she cannot avoid her own representations and warranties, which are fatal to the Complaint and preclude any possible amendment.  Accordingly, the D&O Defendants respectfully submit that the SAC does not state any claim for relief against them and cannot be amended to do so.

## II.   **SUMMARY OF ALLEGATIONS**[2]

The SAC alleges that Plaintiff was the victim of a scheme to defraud orchestrated by Mr. Fischer.  Plaintiff met Mr. Fischer in October 2006.  SAC at ¶ 29.  According to the SAC, Mr. Fischer presented himself as "a sophisticated investment advisor" with "connections to high tech issuers" and "access to early investment opportunities." *Id.* at ¶ 33.  In reality, Plaintiff contends, Mr. Fischer

---

[1]  A true and correct copy of the Purchase Agreement is attached to the accompanying Declaration of William Fischer ("Fischer Decl.") as Exhibit ("Ex.") 1.  The Fischer Declaration is attached to the accompanying Declaration of Tanya Herrera ("Herrera Decl.") as Exhibit ("Ex.") A. *See also* Defendants Jon Sabes, Steven Sabes and Marvin Siegel's Request for Judicial Notice ("RJN"), filed and served herewith.

[2]  Plaintiff's allegations are accepted as true for purposes of this motion only.

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

misrepresented his background and experience as an investor in order to take advantage of her newly acquired interest in investing. *Id.* at ¶¶ 30-31. Plaintiff alleges that Mr. Fischer convinced her to lend money or invest in a number of different entities, including SpeciGen. According to the SAC:

> Fischer was aided and abetted by, acted as agent for, and could not have perpetrated his scheme without, the other named defendants who, as officers and directors of the companies in which Mrs. Jackson's funds were placed, proceeded to dissipate Jackson's assets while repeatedly misleading her through exaggeratedly optimistic statements about their companies' prospects and withholding material information, including but not limited to the fact that Fischer was a twice-convicted felon.

SAC at p. 1:9-15. Significantly, the SAC does not identify a single statement, attributable to any of the D&O Defendants, that is alleged to have been false or misleading when made. Nor does the SAC allege that any of the D&O Defendants knew or had reason to know about Mr. Fischer's dealings with Plaintiff or his allegedly shady past.

As a matter of fact, the SAC does not offer any specific factual allegations concerning any of the D&O Defendants. Instead, the SAC identifies each of the D&O Defendants by name and title (SAC at ¶¶ 3, 4 and 5) and scarcely mentions any of them again. Revealingly, the SAC does not allege that Plaintiff ever communicated with any of the D&O Defendants, at any time, about any subject. The SAC does not allege that Plaintiff loaned money to the D&O Defendants (as opposed to SpeciGen). Nor does the SAC allege that the D&O Defendants pocketed funds intended for SpeciGen. In fact, the SAC does not suggest any factual basis for Plaintiff's claims against the D&O Defendants, apart from their general connection to SpeciGen.

The SAC is equally uninformative on the subject of the disputed loans and/or investments. For example, Plaintiff refers to "a $250,000 loan in the form of convertible promissory note issued by SpeciGen" (SAC at ¶ 38), but does not say when she made the loan, whether she made more than one loan to SpeciGen, when the loan or loans were due to mature, or whether SpeciGen failed to repay the loan(s) or issue shares. Instead, Plaintiff generally refers to a series of loans and investments in eight different ventures, over a period of more than two years. According to the SAC, Plaintiff "never received an offering circular, memorandum or other disclosure document at the time each convertible loan and investment was made." *Id.* at ¶ 39. Although Plaintiff previously alleged that she received

1   "detailed loan documentation" (initial complaint at ¶ 37) and "extensive documentation in the form of

2   warrants, term sheets, stock purchase and/or investors' rights agreements" (*id.* at ¶ 38), she now

3   claims that, "[w]ith few limited exceptions, securities sold to the plaintiff by the defendants were sold

4   initially without documentation."  SAC at ¶ 83.

5          The Purchase Agreement, which is incorporated by reference in the SAC (SAC at ¶¶ 38, 42)

6   attaches two sets of Convertible Promissory Notes (the "Notes") and Warrants to Purchase Shares

7   (the "Warrants") as Exhibits A and B, respectively.  Fischer Decl. Ex. 1.  The Notes, in the principal

8   amount of $250,000 each, are dated December 1, 2006 and March 1, 2007 and indicate that they are

9   "payable on demand" on or after the one year anniversary of their issuance.  *Id.*  The Purchase

10   Agreement also attaches a "Schedule of Investors" identifying a total of eight investors.  *Id.*

11          Under Paragraph 3 of the Purchase Agreement, entitled "Representations and Warranties of

12   the Investor," each investor, including Plaintiff, represented and warranted that:

13          (b)      *Investment Experience.*  Such Investor is either an accredited
          investor within the meaning of Regulation D prescribed by the
14          Securities and Exchange Commission pursuant to the Securities Act of
          1933, as amended (the "Act"), or, by virtue of the Investor's
15          experience in evaluating and investing in private placement
          transactions of securities in companies similar to the Company, the
16          Investor is capable of evaluating the merits and risks of the Investor's
          investment in the Company and has the capacity to protect its own
17          interests.

18                                         [¶]

19          (e)      *Access to Information.*  Such Investor acknowledges that the
          Company has given the Investor access to the corporate records and
20          accounts of the Company and to all information in its possession
          relating to the Company, has made its officers and representatives
21          available for interview by the Investor, and has furnished such Investor
          with all documents and other information required for the Investor to
22          make an informed decision with respect to the purchase of the Note
          and Warrant.

23   Fischer Decl. Ex. 1 (Purchase Agreement at ¶ 3).  Plaintiff signed the Purchase Agreement, thereby

24   representing and warranting that she was an "accredited investor" with access to all documents and

25   other information necessary for her to make an informed decision regarding her purchase.  These

26   representations and warranties are fatal to Plaintiff's attempt to state a claim for relief against the

27   D&O Defendants.  *See* Section IV.A.2, *infra*.

28          Plaintiff attempts to avoid her representations and warranties by alleging that, "[i]n many

cases," Mr. Fischer "gave [Plaintiff] signature pages to sign that were detached from the documents to which he later appended them, or gave her documents to sign sometimes weeks or months after the investment had been made."  SAC at ¶ 43.  Plaintiff does not allege that she signed the Purchase Agreement without reading it.  Nor does she allege that she was denied access to the information that she needed to make an informed decision about her investment(s).

### III.   APPLICABLE LEGAL STANDARDS

A motion to dismiss is proper under Federal Rule of Civil Procedure § 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  In determining whether plaintiffs have alleged facts sufficient to establish their claims, the Court may consider materials properly subject to judicial notice, including documents referenced in the complaint.  *Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 408 (N.D.Cal. 2009) ("documents whose contents are referenced in  a complaint and whose authenticity no party questions are a proper subject of judicial notice") (citations omitted).

The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), the complaint "must contain sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  *Iqbal*, *supra*, 556 U.S. at 678 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  As this Court has explained, "a plaintiff's obligation to provide the grounds of his entitlement to relief 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F.Supp.2d 1052, 165 (N.D. Cal. 2010) (*quoting Twombly, supra,* 550 U.S. at p. 555).

Where the complaint alleges fraud, plaintiff must also satisfy the heightened pleading standards mandated by Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires the plaintiff  to state with particularity the circumstances constituting fraud, including the "who, what, when, where, and how" of the charged misconduct.  *Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

2003).  Rule 9(b)'s heightened pleading standards apply to plaintiff's fraud-based claims and claims that are "grounded in fraud."  *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404-1405 (9th Cir. 1996).  "A claim is 'grounded in fraud' if the plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of his or her claim."  *Biggins, supra,* 266 F.R.D. at 409 (citations omitted).  The SAC alleges (or attempts to allege) such a "unified course of fraudulent conduct."  Accordingly, Plaintiff's allegations must be specific enough to "give the defendant notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  The SAC does not come close to meeting these standards.

## IV.   **ARGUMENT**

### A.   **The SAC Fails To State A Claim Under The Exchange Act**

Section § 10(b) of the Exchange Act provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."  15 U.S.C. § 78j(b).  To plead a claim under Section 10(b), a plaintiff must allege (1) a misrepresentation or omission, (2) of material fact, (3) made with scienter, (4) on which the plaintiff justifiably relied, (5) that proximately caused the alleged loss.  *Binder v. Gillespie,* 184 F.3d 1059, 1063 (9th Cir. 1999).

Plaintiffs have long been required to plead securities fraud with the specificity mandated by Rule 9(b).  *See, e.g., In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1545 (9th Cir. 1994) (*en banc*).  As this Court has explained:

> The Private Securities Litigation Reform Act ('PSLRA') was enacted by Congress in 1995 to establish uniform and stringent pleading requirements for securities fraud actions, and "to put an end to the practice of pleading 'fraud by hindsight.'"  *In re Silicon Graphics, Inc.*, 183 F.3d 970, 988 (9th Cir. 1999).  The PSLRA heightened the pleading requirements in private securities fraud litigation by requiring that the complaint plead both falsity and scienter with particularity.  *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002).  If the complaint does not satisfy these pleading requirements, the court,

upon motion of the defendant, must dismiss the complaint.  15 U.S.C.
§ 78u-4(b)(3)(A).

*Bare Escentuals, supra,* 745 F.Supp.2d at 1074.  The SAC does not even begin to satisfy the

PSLRA's heightened pleading requirements.

### 1. The SAC Fails To Identify An Actionable Misstatement Or Omission

Even before the passage of the PSLRA, the Ninth Circuit required that every security fraud

complaint "adequately specify the statements it claims were false or misleading, give particulars as to

the respect in which plaintiff contends the statements were fraudulent, state when and where the

statements were made, and identify those responsible for the statements."  *GlenFed, supra*, 42 F.3d at

1548.  In addition, both the Ninth Circuit and the PSLRA now demand that plaintiffs "specify each

statement alleged to have been false or misleading, the reason or reasons why the statement is

misleading, and, if an allegation regarding the statement or omission is made on information and

belief . . . state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1);

*see also Zucco Partners, LLC v. Digimarc Corp,* 552 F.3d 981, 991 (9th Cir. 2009).   The present

shotgun pleading runs roughshod over these requirements.

### a. The SAC Fails To Identify A Misstatement Attributable To The D&O Defendants

Rule 9(b) "requires that a plaintiff plead with sufficient particularity attribution of the alleged

misrepresentations or omissions to each defendant; the plaintiff is obligated to 'distinguish among

those they sue and enlighten each defendant as to his or her part in the alleged fraud.'"  *In re Silicon*

*Graphics, Inc. Sec. Litig.*, 970 F.Supp. 746, 752 (N.D. Cal. 1997) (*quoting Erickson v. Kiddie,* 1986

WL 544, *7 (N.D. Cal. 1986)).  As a matter of law, plaintiffs cannot "rely on blanket references to the

conduct of 'defendants and each of them,'"  *Lubin v. Sybedon Corp,*, 688 F.Supp. 1425, 1443 (S.D.

Cal. 1998), but rather must explain how each alleged misstatement is attributable to a specific

defendant.  *Neubronner v. Milken*, 6 F.3d 666, 673 (9th Cir. 1993); *see also Swartz v. KPMG LLP,*

476 F.3d 756, 764-765 (9th Cir. 2007) ("In the context of a fraud suit involving multiple defendants, a

plaintiff must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme'")

(citation omitted).  The SAC alleges that Mr. Fischer orally misrepresented SpeciGen's fundraising

1    and product development efforts (SAC at ¶ 84), but does not identify a single misstatement or

2    omission attributable to any of the D&O Defendants.

3         Generally, only those defendants who actually make a false or misleading statement will be

4    liable under section 10(b) or Rule 10b-5." *In re Downey Sec. Litig.*, 2009 WL 736802, *5 (C.D. Cal.

5    Mar. 18, 2009) (citation omitted).  The SAC does not allege that any of the D&O Defendants actually

6    made any false or misleading statements.  Instead, the SAC suggests that each and every defendant

7    made false statements "orally and through defendant Fischer."  SAC at ¶ 84.

8         The U.S. Supreme Court has limited Section 10(b) liability to "primary violators" of the

9    federal securities laws.  *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511

10   U.S. 164, 177-178, 191 (1994).  "The Ninth Circuit has interpreted this limitation to mean that an

11   individual may become a primary violator through 'substantial participation or intricate involvement

12   in the preparation of fraudulent statements' even if he did not actually make the statements."

13   *Communications Workers of America v. CSK Auto Corp.,* 2007 WL 951968, *3 (D. Ariz. Mar. 28,

14   2007) (citations omitted).  In order to state a Section 10(b) claim against a non-speaker as a primary

15   violator, plaintiffs must plead facts demonstrating that the non-speaker substantially participated in

16   the preparation, creation or making of a materially false statement.  *See, e.g., In re Gilead Sciences Sec.

17   Litig.*, 2009 WL 3320492, * 3 (N.D. Cal. Oct. 13, 2009) (dismissing Section 10(b) claims against non-

18   speaking defendants for failure to allege substantial participation or intricate involvement in the

19   making of false statements).  The SAC contains no such allegations.

20        District courts in the Northern District of California and throughout the Ninth Circuit have

21   routinely dismissed Section 10(b claims against individual defendants who were not alleged to have

22   actually made false or misleading statements or substantially participated in their preparation, creation

23   or making.  *See, e.g., Communications Workers, supra,* 2007 WL 951968, *3 (dismissing President

24   and Chief Operating Officer because the allegations were not sufficient to show that he substantially

25   participated or was intricately involved in preparing the misrepresentations); *In re Cylink Sec. Litig.*,

26   178 F.Supp.2d 1077, 1081 (N.D. Cal. 2001) (dismissing former Vice President of Sales and

27   Marketing because he did not sign financial statements and was not alleged to have substantially

28   participated or been intricately involved in preparing them); *In re Dura Pharmaceuticals, Inc. Sec.*

1   *Litig.*, 2008 WL 483613, *11 (S.D. Cal. Feb. 20, 2008) (dismissing Senior Vice President of Sales &

2   Marketing because, among other things, he did not make any  materially false statements); *accord In*

3   *re Metawave Communications Corp. Sec. Litig.*, 298 F.Supp.2d 1056, 1088 (W.D. Wash. 2003) (sales

4   executive was only liable for single alleged misstatement he actually made and not for other alleged

5   misstatements).  This Court should not hesitate to do the same.

   **b.   The SAC Fails To Identify A Misstatement Or Omission That Was
          False Or Misleading When Made**

8          The SAC alleges that Mr. Fischer orally misrepresented SpeciGen's fundraising and product

9   development efforts (SAC at ¶ 84), but does not specify what Mr. Fischer allegedly said, when the

10  statements were allegedly made or why any statement was allegedly false or misleading when made.

11  For example, Plaintiff alleges that "the company . . . claimed that there were actual or impending

12  investments by others possessing more investment experience who would properly capitalize the

13  companies, which representations falsely suggested that other and more sophisticated investors had

14  vetted the companies and determined their suitability as investments, when in fact they had not, and

15  instead the company had given away its stock to its directors for no consideration or inadequate

16  consideration because they were unwilling to invest their own funds."  SAC at ¶ 84(a)(i).

17         Significantly, Plaintiff makes no attempt to specify what Mr. Fischer actually said about any

18  actual or potential investments by other investors, when such statements were allegedly made, or why

19  they were allegedly false when made.  As a result, it is impossible to tell whether the challenged

20  statements (whatever they may have been) would have led a reasonable investor to believe that "other

21  and more sophisticated investors had vetted the companies and determined their suitability as

22  investments," as Plaintiff contends.  It is also impossible to tell whether the challenged statements

23  were allegedly false because (a) there were no other investors (a possibility belied by the Purchase

24  Agreement); (b) there were other investors, but they were not sophisticated; (c) the other investors did

25  not conduct any due diligence on "the companies"; or (d) other investors conducted due diligence on

26  "the companies," but concluded that some or all of them were not suitable investments.  These

27  amorphous allegations – which are not even specific to SpeciGen – do not begin to satisfy the

28  PSLRA's requirements.  *See generally Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir.

2002) ("vague claims about what statements were false or misleading [and] how they were false" are subject to dismissal).[3]

In the absence of any affirmative misstatement, Plaintiff resorts to a fraud by omission theory. According to Plaintiff, all defendants, including the D&O Defendants, failed to disclose that (a) Jon Sabes and Steven Sabes received SpeciGen shares for "zero consideration" (SAC at ¶ 85(a)(i)); (b) Jon Sabes and Steven Sabes caused their family foundation to make a grant to an unrelated non-profit run by Mr. Fischer (*id*. at ¶ 85(a)(ii)); (c) Mr. Fischer was not qualified to act as SpeciGen's president (*id*. at ¶ 85(a)(iv)); (d) SpeciGen's "business plan" was disclosed to some investors, but not others (*id*. at ¶ 85(a)(iii)); (e) SpeciGen gave "free equity" to some note holders, but not Plaintiff (*id*. at ¶ 85(a)(v)); and (f) defendant Jean Paul Lamere received shares to act as a consultant for SpeciGen, but never provided any consulting services and would not have been qualified to do so in any event (*id*. at ¶ 85(a)(vi)). These allegations also fail to "specify each statement alleged to have been false or misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Among other things, Plaintiff fails to allege:

- When Jon Sabes and Steven Sabes allegedly received more than 30% of SpeciGen's equity and why Plaintiff believes that they received equity for "zero consideration," especially since, as officers and directors of SpeciGen, it would not have been unusual for them to receive equity-based compensation;

- When Jon Sabes and Steven Sabes allegedly caused their family foundation to make a grant to Mr. Fischer's non-profit entity and why information about any such grant would have been material to Plaintiff's decision to invest in SpeciGen;

- Why Plaintiff could not have evaluated Mr. Fischer's qualifications to act as President of SpeciGen for herself, especially considering her representation that she was "capable of evaluating the merits and risks of [her] investment in the Company[.]" (Fischer Decl. Ex. 1 (Purchase Agreement at ¶ 3(b));

- When and how Plaintiff learned that SpeciGen had a "business plan" that was "selectively disclosed" to other investors, what the "business plan" allegedly consisted of, and why Plaintiff could not have requested information about the

---

[3] Plaintiff's other allegations are equally defective. For example, Plaintiff alleges that Mr. Fischer falsely claimed that "the company had licenses and other rights to all of the patents needed to develop its products, when in fact its patent position was insufficient." SAC at ¶ 84(a)(ii). However, Plaintiff does not specify what Mr. Fischer allegedly said about SpeciGen's licenses, when the challenged statements were allegedly made, or why they were allegedly false when made.

"business plan" for herself, especially considering her representation that "the Company has given the Investor access to the corporate records and accounts of the Company and to all information in its possession relating to the Company[.]" (Fischer Decl. Ex. 1 (Purchase Agreement at ¶ 3(e));

- When and how Plaintiff learned that SpeciGen had given "free equity to other holders of its convertible promissory note," what the "free equity" allegedly consisted of, and how this practice allegedly contradicted "the documents that purported to describe the convertible promissory note offering," especially considering Plaintiff's claim that there were no such documents (SAC at ¶ 39); or

Thus, Plaintiff fails to allege "specific 'contemporaneous statements or conditions' that demonstrate the intentional or deliberately reckless false or misleading nature of the statements when made." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (*quoting GlenFed*, *supra*, 42 F.3d at 1548)). These pleading failures are fatal to the SAC. Even assuming *arguendo* that the challenged statements could be alleged with specificity and properly attributed to the D&O Defendants (which the SAC fails to do), the SAC also fails to explain how any such misstatement or omission was false or misleading when made. After multiple amendments, and ample guidance from the Ninth Circuit and the courts of the Northern District of California, Plaintiff's inability to specify a statement that was false or misleading when made can only be viewed as a concession that there were no such statements.

### 2.   The D&O Defendants Did Not Owe – Or Breach – A Duty To Disclose

The SAC does not identify any affirmative statement, by any defendant, that was false or misleading by reason of a supposed omission. Instead, the SAC suggests that all defendants, including the D&O Defendants, had a general duty to warn Plaintiff against Mr. Fischer and an ongoing obligation to keep her informed about SpeciGen's day to day operations. The SAC does not allege any facts to support the imposition of any such duty.

Under Section 10(b), an omission can only be actionable if the defendant had an affirmative duty to disclose the information. *Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n. 17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5"). Typically, a duty arises when someone makes a statement that is materially misleading in the absence of the undisclosed information. *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("To be actionable under the securities laws, an omission must be misleading; in other words, it must

1    affirmatively create an impression of a state of affairs that differs in a material way from the one that

2    actually exists") (citation omitted); *see also Allstate Life Ins. Co. v. Robert W. Baird & Co.*, 756

3    F.Supp.2d 1113, 1130 (D. Ariz. 2010) ("To be actionable under Section 10(b) and Rule 10b-5, 17

4    C.F.R. § 240.10b-5, an alleged omission must render some affirmative public statement misleading").

5            The SAC alleges that the D&O Defendants were officers and directors of SpeciGen (SAC at

6    ¶¶ 3, 4 and 5), but these allegations do not establish the existence of a duty to disclose. *See generally*

7    *In re Interactive Network, Inc. Sec. Litig.*, 948 F.Supp. 917, 920 (N.D. Cal. 1996) (dismissing Section

8    10(b) claim against officers and directors because there is no "general duty to disclose"); *see also*

9    *United States v. Schiff*, 602 F.3d 152, 162-163 (3rd Cir. 2010) (rejecting government's argument that

10   "high corporate executives" owe shareholders fiduciary disclosure duties); *and see In re Ivan F.*

11   *Boesky Sec. Litig.*, 825 F.Supp. 623, 625 (S.D.N.Y. 1993) ("corporations and their management are

12   under no general duty to disclose").

13          "The parties to an impersonal market transaction owe no duty of disclosure to one another

14   absent a fiduciary or agency relationship, prior dealings, or circumstances such that one party has

15   placed trust and confidence in the other." *Paracor Fin. Inc. v. Gen. Elec. Capital Corp.,* 96 F.3d

16   1151, 1157 (9th Cir. 1996). Plaintiff does not allege that she had a special relationship with any of the

17   D&O Defendants that could give rise to a duty to disclose. She does not allege that any of the D&O

18   Defendants undertook to act as her investment advisor. Nor does Plaintiff allege that any of the D&O

19   Defendants assumed a duty to investigate Mr. Fischer, ensure that he was treating all potential

20   investors equally or evaluate whether SpeciGen would be an appropriate investment for her.

21   Certainly, there was nothing stopping Plaintiff from conducting her own due diligence investigation if

22   she was concerned about Mr. Fischer's background or qualifications, SpeciGen's fundraising efforts

23   or its equity-based compensation arrangements with Jon Sabes, Steven Sabes or anyone else. *See,*

24   *e.g., Frati v. Saltzstein*, 2011 WL 1002417, *5 (S.D.N.Y. Mar. 14, 2011) (defendants had no

25   affirmative duty to disclose information that plaintiffs could have discovered in the course of a

26   reasonable due diligence investigation).

27          Furthermore, though Plaintiff would obviously prefer to ignore her status as an accredited

28   investor, she cannot claim to have been misinformed about Mr. Fischer or SpeciGen when she does

1    not appear to have asked questions, requested documentation or otherwise investigated the company

2    prior to making her investments.  *Frati, supra,* 2011 WL 1002417, *5 ("Plaintiffs cannot claim that

3    they were uninformed about the inner-workings of a fund in which they planned to invest if they did

4    not feel it necessary to review the fund documents or perform any research prior to making such an

5    investment").  Nor can she plausibly contend that material information was withheld from her when

6    she expressly represented and warranted that "the Company has given the Investor access to the

7    corporate records and accounts of the Company and to all information in its possession relating to the

8    Company, has made its officers and representatives available for interview by the Investor, and has

9    furnished such Investor with all documents and other information required for the Investor to make an

10   informed decision with respect to the purchase of the Note and the Warrant."  Fischer Decl. Ex. 1

11   (Purchase Agreement at ¶ 3(e)).[4]

12         Plaintiff alleges that Mr. Fischer failed to respond to various requests for information

13   "throughout 2010."  SAC at ¶ 65.  However, Plaintiff does not allege that SpeciGen or any of the

14   D&O Defendants failed to respond to her inquiries.  Moreover, and more to the point, Plaintiff does

15   not allege that SpeciGen or any of the D&O Defendants assumed any reporting obligation or "duty to

16   update" any of their prior statements (whatever those may have been).  As this Court has explained,

17   the Ninth Circuit has not recognized any general duty to update under the federal securities laws and

18   Plaintiff has not suggested any basis for imposing such a duty here.  *See, e.g., In re FoxHollow Techs.,*

19   *Inc. Sec. Litig.*, 2008 WL 2220600, *17 (N.D. Cal. May 27, 2008), *aff'd* 2009 WL 4913215 (9th Cir.

20   Dec. 4, 2009).

21              a.   **The D&O Defendants Were Not Obligated To Accuse Themselves**
                    **Of Wrongdoing Or Characterize their Conduct As Improper**
22

23         The SAC suggests that the D&O Defendants mismanaged SpeciGen and failed to disclose the

24   ───────────────
     [4]  Plaintiff intimates – but does not specifically allege – that she might not have read the Purchase Agreement
25   before signing it.  SAC at ¶ 43.  However, Delaware law has long recognized that a person of ordinary
     intelligence who signs his or her name to a contract is presumed to have read it. *Standard Sewing-Mach. Co. v.*
26   *Frame*, 48 A. 188 (Del. Super. 1900) ("if a person who is able to read signs his or her name to a paper, the
     presumption is that such person understood the meaning of the instrument, or by the exercise of reasonable care
27   might have done so").  Only fraud as to the nature of the instrument signed can relieve a party of the
     consequences of his or her signature.  *Design Exch. Architects. v. Sarro,* 2000 WL 33662344, * 2-3 (Del. Com.
28   Pl. July 15, 2000).  Plaintiff does not allege that she was defrauded as to the nature of the Purchase Agreement.

1    alleged mismanagement to Plaintiff. These allegations do not state a claim for relief under the federal

2    securities laws. The U.S. Supreme Court has long recognized that allegations of mismanagement are

3    not actionable as securities fraud. *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977)

4    ("Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal

5    corporate mismanagement"); *see also Colin v. Onyx Acceptance Corp.*, 31 Fed.Appx. 359, 361 (9th

6    Cir. 2002) ("Section 10(b) does not embrace causes of action for breach of fiduciary duties or

7    corporate mismanagement"). Furthermore, plaintiffs cannot transform allegations of corporate

8    management into claims for securities fraud merely by alleging that defendants failed to disclose their

9    alleged mismanagement. *See, e.g., Klein v. King*, 1990 WL 61950, *10 (N.D. Cal. Mar. 26, 1990)

10   ("no degree of artful pleading should be allowed to transform what is essentially a mismanagement

11   case into a securities fraud claim cognizable under federal law . . . *absent some form of deception*,

12   allegations that a defendant failed to disclose mismanagement are not sufficient to state a cause of

13   action for securities fraud") (citations omitted) (emphasis original). Likewise, the federal securities

14   laws do not require defendants to characterize their business decisions in pejorative terms or accuse

15   themselves of mismanagement or wrongdoing. *See, e.g., Brown v. Brewer*, 2010 WL 2472182, *23

16   (C.D. Cal. June 17, 2010) (federal securities laws do not require defendants to "accuse themselves of

17   breaching their fiduciary duties"). Thus, Plaintiff cannot predicate a claim for relief under Section

18   10(b) on the D&O Defendants' failure to disclose their alleged mismanagement of SpeciGen.

19                            **b.   Regulation D Does Not Give Rise To A Duty To Disclose**

20          Plaintiff also suggests that Regulation D (17 C.F.R. §§ 230.501-230.508) gave rise to a duty

21   to disclose. SAC at ¶¶ 78-83. Under Rule 506 of Regulation D, 17 C.F.R. § 230.506(b)(2), "offers

22   and sales of securities are exempt from the registration requirements when the issuer reasonably

23   believes there are no more than thirty-five (35) purchasers, and when each person ***who is not an***

24   ***accredited investor*** has the knowledge and experience in financial business matters so that he is

25   capable of evaluating the risks." *Lillard v. Stockton*, 267 F.Supp.2d 1081, 1114 (N.D. Okla. 2003)

26   (emphasis added). Plaintiff does not allege that any purported offering involved more than thirty-five

27   purchasers and cannot deny that she was an "accredited investor" within the meaning of Regulation

28   D. Fischer Decl. Ex. 1 (Purchase Agreement at ¶ 3(b)).

1    Regulation D does not require any particular disclosures to accredited investors.  *See*

2    *generally* 17 C.F.R. § 230.502(b)(1) ("The issuer is not required to furnish the specified information

3    to purchasers when it sells securities . . . to any accredited investor"); *see also* U.S. Securities &

4    Exchange Comm'n, Rule 506 of Regulation D, http://www.sec.gov/answers/rule506.htm (last visited

5    August 3, 2012) ("Companies must decide what information to give to accredited investors, so long as

6    it does not violate the antifraud prohibitions of the federal securities laws") (Herrera Decl. Ex. C); *and*

7    *see* J. William Hicks, EXEMPTED TRANSACTIONS UNDER THE SECURITIES ACT OF 1933, § 11:113

8    (2011) ("Hicks") (mandated disclosures to accredited investors would serve no useful purpose

9    because "all of the purchasers are in a position to acquire the information on their own").

10    Plaintiff makes much of her lack of financial sophistication (SAC at ¶ 28), but does not – and

11    cannot – allege that she was an unaccredited investor.[5]  *Associated General Contractors v. California*

12    *State Council*, 459 U.S. 519, 526 (1983) (a court must not "assume that the [plaintiff] can prove facts

13    it has not alleged").  Plaintiff's own representations and warranties in the Purchase Agreement

14    confirm that she was an accredited investor at the time of her loans to SpeciGen.  Fischer Decl. Ex. 1

15    (Purchase Agreement at ¶ 3(b)).   Accordingly, Regulation D did not impose any duty to disclose on

16    SpeciGen, let alone the D&O Defendants.  *See, e.g., The MJK Family LLC v. Corporate Eagle*

17    *Management Services, Inc.*, 2009 WL 4506418, *5 (E.D. Mich. Nov. 30, 2009) (issuer had no

18    statutory duty to disclose where, as here, there were no more than 35 purchasers and each purchaser

19    was an accredited investor).

20               **3.       The SAC Fails To Allege Scienter**

21    "To adequately plead scienter, a securities fraud complaint must 'state with particularity facts

22    giving rise to a strong inference that the defendant acted with the required state of mind.'"  *New*

23    *Mexico State Investment Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011) (*quoting*

24    15 U.S.C. § 78u0-4(b)(2)(A)).  To adequately demonstrate that the "defendant acted with the required

25    _____

26    [5] Under Rule 501 of Regulation D, the term "accredited investor" includes:

27               (5)       Any natural person whose individual net worth, or joint net worth with that
                           person's spouse, at the time of his purchase exceeds $1,000,000.

28    17 C.F.R. § 230.501(a).

1   state of mind," the complaint must "allege that the defendants made false or misleading statements

2   either intentionally or with deliberate recklessness." *In re Daou Systems, Inc. Sec. Litig.*, 411 F.3d

3   1006, 1014-1015 (9th Cir. 2005). "To qualify as 'strong' within [the meaning of the statute] . . . an

4   inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least

5   as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues &*

6   *Rights, Ltd.,* 551 U.S. 308, 314 (2007). "When assessing a complaint for compliance with this

7   standard, courts must consider the complaint in its entirety and inquire whether *all* of the facts alleged,

8   taken collectively, give rise to a strong inference of scienter, not whether any individual allegation,

9   scrutinized in isolation, meets that standard." *Metzler Investment GmbH v. Corinthian Colleges, Inc.,*

10  540 F.3d 1049, 1066 (9th Cir. 2008) (emphasis original) (citation and internal quotation marks

11  omitted). The SAC falls far short of these standards.

12       The SAC alleges that "each of the defendants" from "each of the defendant companies" acted

13  with scienter because they were "aware" that they (1) needed funding to survive (SAC at ¶¶ 87(a), (c)

14  and (d)); and (2) faced significant product development challenges (*id.* at ¶¶ 87(b) and (d)).

15  Incredibly, the SAC does not even attempt to distinguish between any of the eleven (11) individual

16  defendants in this action or the nine (9) different ventures with which they are alleged to have been

17  associated. These "group pleading" allegations do not give rise to a strong inference that any of the

18  D&O Defendants acted with the required state of mind. *See, e.g., In re VeriSign, Inc. Deriv. Litig.,*

19  531 F.Supp.2d 1173, 1207 (N.D. Cal. 2007) ("It is not sufficient under the PSLRA to allege scienter

20  against defendants as a group"). At most, the SAC alleges that "each of the defendants" had a motive

21  and opportunity to commit fraud. *See, e.g.,* SAC at ¶ 87 (alleging that "each of the companies, and

22  Fischer, had a motive to say whatever needed to be said to induce Mrs. Jackson to invest"). These

23  allegations do not give rise to a strong inference of scienter under the PSRLA and the law of the Ninth

24  Circuit. *See, e.g., No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West*

25  *Holding Corp.,* 320 F.3d 920, 937 (9th Cir. 2003) ("In this Circuit, the required scienter is 'deliberate

26  or conscious recklessness' . . . . Mere motive and opportunity are insufficient").

27                    **4.       The SAC Fails To Allege Reliance**

28       As the Supreme Court has explained, reliance is an "essential element" of a Section 10(b

1    claim which "ensures that, for liability to arise, the 'requisite causal connection between a defendant's

2    misrepresentation and a plaintiff's injury' exists as a predicate for liability." *Stoneridge Investment*

3    *Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008) (*quoting Basic, supra,* 485 U.S. at

4    243). Similarly, the courts of the Northern District of California have emphasized that plaintiffs must

5    "allege sufficient facts to demonstrate that they actually heard or otherwise received any of the

6    statements upon which they base their Section 10(b) claim." *Eshelman v. OrthoClear Holdings, Inc.*

7    2008 WL 171059, *7 (N.D. Cal. Jan. 12, 2008) (rejecting Section 10(b) claim where, as here,

8    plaintiffs failed to "allege that they purchased any securities in reliance on any particular statement or

9    even specify which statements were made prior to their investment").

10       In this case, Plaintiff does not allege that she ever communicated with any of the D&O

11   Defendants, let alone relied on any misstatement by them to invest in SpeciGen. Likewise, Plaintiff

12   does not allege that she actually read or received any written misrepresentation that the D&O

13   Defendants substantially participated in preparing. To the contrary, Plaintiff expressly disclaims

14   reliance on any written misrepresentation. SAC at ¶ 83 ("With few limited exceptions, the securities

15   sold to the plaintiff by the defendants were sold initially without documentation").

16       The Supreme Court has also emphasized that reliance must be established with respect to each

17   defendant. *Stoneridge,* 552 U.S. at 159-160. As previously discussed, the SAC does not attribute any

18   misstatement to any of the D&O Defendants. *See* Section IV.A.1.a, *supra*. Even assuming *arguendo*

19   that Plaintiff adequately alleged that she relied on a false statement (which she does not), she does not

20   allege that she relied on any false statement by the D&O Defendants. *See, e.g., In re Downey Sec.*

21   *Litig.*, 2009 WL 736802, *6 (C.D. Mar. 18, 2009) ("courts since *Stoneridge* have continued to dismiss

22   actors (including insiders) who have not made any misleading statements, either explicitly or

23   implicitly because plaintiffs could not prove reliance on their actions"). Accordingly, Plaintiff fails to

24   plead the element of reliance.

25       **5.    The SAC Fails To Allege That Any Of The D&O Defendants Were
             "Control Persons" Within The Meaning Of Section 20(a)**
26

27       In order to state a claim under Section 20(a), a plaintiff must allege (1) a primary violation of

28   the federal securities laws; and (2) that the defendant exercised actual power or control over the

1   primary violator.  *See generally Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).

2   The SAC does not satisfy either of these requirements.  The SAC does not establish a primary

3   violation of Section 10(b).  *See* Section IV.A.1-4, *supra.*  The SAC also fails to allege that the D&O

4   Defendants exercised actual control power or influence over SpeciGen, Mr. Fischer or anyone else.

5          The SAC alleges that the D&O Defendants served as officers and directors of SpeciGen (SAC

6   at ¶¶ 3, 4 and 5) and were "directly involved" in the company's day-to-day operations.  *Id.* at ¶ 141.

7   Contrary to Plaintiff's apparent belief, these boilerplate allegations are not enough to state a claim for

8   control person liability.  *See, e.g., In re Digital Island Sec. Litig.*, 223 F.Supp.2d 546, 561 (D.Del.

9   2002), *aff'd* 357 F.3d 322 (3d Cir. 2004) ("plaintiffs' unsupported allegations regarding management

10  responsibilities fail to allege with the requisite specificity that the individual defendants played a role

11  in the alleged nondisclosures").  Thus, Plaintiff fails to state a claim for relief under Section 20(a) of

12  the Exchange Act.

13          **B.       The SAC Fails To State A Claim For Breach Of Fiduciary Duty**

14          Next, Plaintiff alleges that the D&O Defendants breached their fiduciary duties as directors by

15  failing to properly oversee SpeciGen's business operations.  SAC at ¶ 107.  According to Plaintiff, the

16  D&O Defendants (1) failed to oversee SpeciGen's use of funds; (2) failed to properly capitalize the

17  company; (3) failed to oversee Mr. Fischer's fundraising activities; (4) failed "to enact and implement

18  regular budgets to conserve and direct the prudent use of assets"; (5) failed to keep proper books and

19  records; and (6) "compromis[ed] further rounds of needed investment through the wholesale disregard

20  of the laws of their respective states of incorporation[.]"  *Id.*  These allegations fail to state a claim for

21  relief for at least four reasons.

22          First, the Certificate limits the personal liability of SpeciGen directors to the fullest extent

23  permitted by Delaware and California law.  Under the Certificate, "a director of the Company shall

24  not be personally liable to the Company or its stockholders for monetary damages for breach of

25  fiduciary duty as a director."  *See* Certificate at Art. VIII (Herrera Decl. Ex. D).  Because of this

26  exculpatory clause, Plaintiff must plead specific facts showing a director's bad faith in order for

27  liability to attach for a breach of the duty of care.  As the Delaware Court of Chancery has explained,

28  the concept of bad faith in this context requires factual allegations "that a director knowingly violated

1   a fiduciary duty or failed to act in violation of a known duty to act, demonstrating a *conscious*

2   disregard for her duties." *In re Citigroup, Inc. Shareholder Deriv. Litig.*, 964 A.2d 106, 125 (Del. Ch.

3   2009) (emphasis original). Plaintiff does not allege any such facts. Accordingly, Plaintiff's claim for

4   breach of fiduciary duty is barred by the exculpatory provision in the Certificate.

5         <u>Second</u>, Plaintiff lacks standing to bring her claim for breach of fiduciary duty because "any

6   harm suffered was suffered in the first instance by the corporation as a whole and the only damage

7   suffered by Plaintiff[] was the loss of value of [her] investment in the company[.]" *Eshelman, supra,*

8   2008 WL 171059, *8 (rejecting plaintiff's attempt to bring a direct claim for breach of fiduciary duty

9   based on alleged injuries to the company). "'A shareholder does not have standing to sue in an

10  individual capacity for injury to the corporation.'" *In re VeriSign, Inc. Deriv. Litig.*, 531 F.Supp.2d

11  1173, 1188 (N.D. Cal. 2007) (*quoting* William M. Fletcher, et al., 13 Fletcher Cyclopedia of the Law

12  of Private Corporations, § 5939 (2007)). "Such an action must be brought as a derivative action – 'an

13  equitable remedy in which a shareholder asserts on behalf of a corporation a claim not belonging to

14  the shareholder, but to the corporation.'" *Id; see also Eshelman, supra,* 2008 WL 171059, *8 ("'if the

15  gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property

16  without any severance or distribution among individual holders,' the action is derivative, not direct")

17  (*quoting Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th Cir. 1987)). The gravamen of

18  Plaintiff's claim for breach of fiduciary duty is injury to SpeciGen, not Plaintiff. Accordingly,

19  Plaintiff lacks standing to bring the asserted claim for breach of fiduciary duty.[6]

20        <u>Third</u>, Plaintiff's derivative claim for breach of fiduciary duty conflicts with her direct claims

21  for damages and rescission. As Judge White explained in *Eshelman v. OrthoClear Holdings*, 2009

22  WL 506864 (N.D. Cal. 2009), "Plaintiffs may not maintain both a derivative action on some of their

23  claims, while seeking to maintain individual causes of action seeking damages from the same pool of

24  money as well as rescission which would eliminate their status as shareholders." *Id.* at *9. Plaintiff's

25  direct and derivative claims "are in competition for the same pool of money." *Id.* Under the

26

27  ────────────
    [6]  SpeciGen is a Delaware corporation. SAC at ¶ 14. Under the internal affairs doctrine, the law of the state of
28  incorporation law supplies the standard for corporate fiduciary liability. *See* Cal.Corp. Code § 2116 (codifying
    the internal affairs doctrine). Thus, Delaware law applies.

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

1    circumstances, Plaintiff cannot properly represent the interests of SpeciGen shareholders.  *Id.*

2         Finally, Plaintiff fails to plead facts to support their "failure of oversight" theory, which has

3    been described by the Delaware Court of Chancery as "possibly the most difficult theory in

4    corporation law upon which a plaintiff might hope to win a judgment."  *In re Caremark Int'l, Inc.*

5    *Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).  Such a claim requires a showing that (1) the

6    directors utterly failed to implement any system of controls or oversight; or (2) having implemented a

7    system of controls, the directors consciously failed to monitor or oversee its operation.  *Stone v. Ritter*,

8    911 A.2d 362, 370 (Del. 2006).  "A director is liable for 'failure of oversight' type claims where he

9    demonstrates 'a lack of good faith as evidenced by a sustained or systematic failure . . . to exercise

10   systematic oversight,' or an intentional failure 'to act in the face of a known duty to act,

11   demonstrating a conscious disregard for his duties."  *In re Autodesk, Inc. Shareholder Deriv. Litig.*,

12   2008 WL 5234264, * 10 (N.D. Cal. Dec. 15, 2008) (*quoting Caremark*, 698 A.2d at 971 and *Stone ex*

13   *rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 369 (Del. 2006).  Where, as here, a company

14   has adopted an exculpatory provision, "liability is foreclosed for all but the most egregious breaches

15   of duty," *i.e.*, self-dealing and intentional bad faith.  *Id.*  As this Court has explained, this is "a

16   scienter-based standard."  *Id.*  Although Plaintiff accuse all of the directors, including the D&O

17   Defendants of a "wholesale disregard of the laws of their respective states of incorporation" (SAC at ¶

18   107), she does not allege that any of the D&O Defendants engaged in self-dealing or acted in bad

19   faith.  Nor does she allege specific facts suggesting that the D&O Defendants either knew or should

20   have known about any alleged wrongdoing by Mr. Fischer.  *See, e.g., Guttman v. Huang*, 823 A.2d

21   492, 507 (Del. Ch. 2003) (rejecting "failure of oversight" claims where, as here, the "complaint does

22   not plead a single fact suggesting specific red – or even yellow – flags were waved").  Accordingly,

23   Plaintiff fails to state a claim for relief based on any alleged failure of oversight.

24        **C.        The SAC Fails To State A Claim Under Sections 25401 and 25501**

25        The SAC alleges that all defendants, including the D&O Defendants, violated Sections 25401

26   and 25501.  Section 25401 provides that:

27                It is unlawful for any person to offer or sell a security in this state or
                 buy or offer to buy a security in this state by means of any written or
28

oral communication which includes an untrue statement of a material
fact or omits to state a material fact necessary in order to make the
statements made, in the light of the circumstances under which they
were made, not misleading.

Cal. Corp. C. § 25401.  Section 25501 provides, in pertinent part, that:

Any person who violates Section 25401 shall be liable to the person
who purchases a security from him or sells a security to him . . . unless
the defendant proves that the plaintiff knew the facts concerning the
untruth or omission or that the defendant exercised reasonable care
and did not know . . . of the untruth or omission.

Cal. Corp. C. § 25501.  Plaintiff's attempt to state a claim for relief against the D&O Defendants

under Sections 25401 and 25501 fails for two reasons.  First, Plaintiff fails to allege that any of the

D&O Defendants made a material misstatement or omission.[7]  *See* Section IV.A.1, *supra*.  Second,

Plaintiff fails to allege privity with the D&O Defendants.  "Section 25501 on its face requires privity

between the plaintiff and the defendant."  *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*,

158 Cal.App.4[th] 226, 253-254 (2007) ("liability under section 25501 attaches only to the actual seller

of the securities").  Plaintiff does not – and cannot – allege that she purchased securities from the

D&O Defendants.  Accordingly, Plaintiff fails to allege a claim for relief under Sections 25401 and

25501.

### D.    The SAC Fails To State A Claim Under Section 25504

The SAC also alleges that all defendants, including the D&O Defendants, violated Section

25504, which provides that:

Every person who directly or indirectly controls a person liable under
Section 25501 or 25503, every partner in a firm so liable, every
principle executive officer or director of a corporation so liable, every
person occupying a similar status or performing similar functions,
every employee of a person so liable who materially aids in the act or
transaction constituting the violation, and every broker-dealer or agent
who materially aids in the act or transaction constituting the violation,
are also liable jointly and severally with and to the same extent as such
person, unless the other person who is so liable had no knowledge of
or reasonable grounds to believe in the existence of the facts by reason
of which liability is alleged to exist.

---

[7] "Section 25401does not apply to simple nondisclosure."  *Bowden v. Robinson,* 67 Cal.App.3d 705, 717 (1977).

1   Cal. Corp. C. § 25504.  In order to state a claim for relief under Section 25504, Plaintiff must plead

2   facts establishing a primary violation of Section 25501.  Plaintiff fails to do so.

3          The SAC alleges that the D&O Defendants "were in direct control of, and directly involved

4   in, the engagement of Fischer as their agent and/or broker-dealer and knew that he was soliciting the

5   plaintiff to acquire securities in the companies that they served as officers and directors."  SAC at ¶

6   98.  As a threshold matter, Plaintiff fails to plead the alleged agency relationship between Mr. Fischer

7   and the D&O Defendants with the specificity required by Rule 9(b).  *See, e.g., Swartz, supra,* 476

8   F.3d at 765 (where plaintiff alleges defendant is liable under agency theory for false statement of

9   another, plaintiff must allege facts supporting existence of agency relationship with particularity); *see*

10  *also In re Toyota Motor Corp.*, 785 F.Supp.2d 883, 911 (C.D. Cal. 2011) ("Plaintiff may not rest on

11  legal conclusions regarding agency that are cast as factual allegations").  Moreover, and more

12  fundamentally, Plaintiff fails to plead facts establishing that Mr. Fischer (or anyone else) made any

13  material misstatement or omission regarding SpeciGen.  *See* Section IV.A.1, *supra*.  Thus, even

14  assuming *arguendo* that Plaintiff could properly allege "control" (and she cannot), she would still fail

15  to allege a primary violation of Section 25501, an essential predicate of her claim for relief under

16  Section 25504.  Furthermore, as previously discussed, Plaintiff also fails to plead facts establishing

17  that the D&O Defendants "had knowledge of or reasonable grounds to believe in the existence of the

18  facts by reason of which the liability is alleged to exist."  Cal. Corp. C. § 25504.  *See* Section IV.A.3,

19  *supra*.  Accordingly, Plaintiff fails to state a claim for relief under Section 25504.

20          **E.      The SAC Fails To State A Claim Under Section 25501.5**

21          The SAC alleges that defendants "knew or should have known that Fischer was an unlicensed

22  investment advisor."  SAC at ¶ 134.  According to Plaintiff, these allegations give rise to a claim

23  under Section 25501.5, which makes it "unlawful for a person to sell securities to or through an

24  unlicensed broker-dealer."  *Id.* at ¶ 136.  Plaintiff misunderstands Section 25501.5.

25          Section 25501.5, entitled "Action for rescission or damages," provides in pertinent part:

26          (a)(1)   A person who purchases a security from or sells a security to a broker-
                     dealer that is required to be licensed and has not, at the time of the sale
27                   or purchase, applied for and secured from the commissioner a
                     certificate under Part 3 (commencing with Section 25200), that is in
28                   effect at the time of the sale or purchase authorizing that broker-dealer

to act in that capacity, may bring an action for rescission of the sale or purchase or, if the plaintiff or the defendant no longer owns the security, for damages.

Cal. Corp. C. § 25501.5 (a)(1).  By its terms, Section 25501.5 establishes a private right of action against unlicensed *broker-dealers. Id.*  Under California Corporations Code Section 25004, the term "broker-dealer" means "any person engaged in the business of effecting transactions in securities in this state for the account of others or for his own account."  Cal. Corp. C. § 25004.[8]

Plaintiff does not allege that she purchased securities from the D&O Defendants.  Nor does she allege that any of the D&O Defendants are "engaged in the business of effecting transactions in securities in this state for the account of others or for his own account."  Cal. Corp. C. § 25004.  Thus, Plaintiff does not allege a direct claim for relief under Section 25501.5 against the D&O Defendants.  Instead, Plaintiff suggests that the D&O Defendants are secondarily liable for Mr. Fischer's alleged misconduct.  Plaintiff's theory fails for a number of reasons.

First, Section 25501.5 does not provide for secondary liability.  Section 25501.5 does not impose liability on counter-parties to transactions involving unlicensed broker-dealers.  Nor does Section 25501.5 impose liability on the issuers of securities that happen to be purchased or sold by unlicensed broker-dealers, let alone their officers and directors.  In short, there is nothing in the language of Section 25501.5 that could possibly support a claim against D&O Defendants who are not alleged to have participated in any negotiation that resulted in the transfer of stock or otherwise acted as broker-dealers.

Second, though resort to legislative history should not be necessary (*see Ratzlaf v. United States*, 510 U.S. 135, 147-148 (1994) ("we do not resort to legislative history to cloud a statutory text that is clear"), the legislative history confirms that Section 25501.5 was "designed to address the problem of 'bucket shops' or 'boiler rooms' that engage in securities fraud."  California Bill Analysis, Assembly Committee, 2003 – 2004 Regular Session, Assembly Bill 2167 (Herrera Decl. Ex. E).  There is nothing in the legislative history to support Plaintiff's theory that Section 25501.5 creates a cause of action against any person connected in any way to any transaction involving an unlicensed

---

[8]  Section 25004 specifically excludes "any other issuer" and "an agent, when an employee of a broker-dealer or issuer" from the statutory definition of a "broker-dealer."  Cal. Corp. C. § 25004 (a).

1  broker.

2          <u>Third</u>, the California Corporations Code does not authorize a private right of action for

3  "aiding and abetting" a violation of Section 25501.5 by an unlicensed broker-dealer, and expressly

4  provides that no such right of action may be implied.  Cal. Corp. C. § 25510 ("Except as explicitly

5  provided in this chapter, no civil liability in favor of any private party shall arise  against any person

6  by implication from or as a result of the violation of any provision of this law or any rule or order

7  hereunder").

8          <u>Fourth</u>, Plaintiff's Section 25501.5 claim fails because she does not – and cannot – allege

9  privity of contract with the D&O Directors, a necessary predicate for any claim seeking the remedy of

10 rescission.  *Viterbi v. Wasserman,* 191 Cal.App.4th 927, 935-936 (2011) ("A prerequisite to any claim

11 for rescission is a contract between the parties") (*citing* 4 Witkin, Cal. Procedure (5th ed. 2008)

12 Pleading, § 542, p. 668)).  Plaintiff cannot pursue a claim for rescission against the D&O Defendants

13 in the absence of an allegation that she was in privity of contract with them.  The SAC contains no

14 such allegation.  Thus, Plaintiff fails to state a claim under Section 25501.5.

15         <u>Finally</u>, Plaintiff's attempted claim for relief under Section 25501.5 is time-barred.  The

16 statute of limitations for claims arising under Section 10(b) is either (a) California Corporations Code

17 Section 25506, which provides for a two-year statute of limitations from the date of discovery (Cal.

18 Corp. C. § 25506(b)); or (b) California Civil Code Section 338(a), which provides for a three-statute

19 of limitations for claims created by statute.  *See generally Salameh v. Tarsadia Hotels,* 2011 WL

20 1044129, *9 (S.D. Cal. Mar. 22, 2011).  Plaintiff's Section 25501.5 claim is untimely regardless of

21 which limitations period applies.

22         As a matter of California law, Section 25506(b)'s two year statute of limitations is triggered

23 by inquiry notice, not actual knowledge.  *Deveny v. Entropin, Inc.*, 139 Cal.App.4th 408, 423 and 428

24 (2006) ("Inquiry notice – often called 'storm warnings' in the securities context – gives rise to a duty

25 of inquiry 'when the circumstances would suggest to an investor of ordinary intelligence the

26 probability that she has been defrauded").  In this case, Plaintiff alleges that she "became concerned"

27

28

1   about a $1 million "trading account" with Mr. Fischer "[i]n or about summer 2008."[9] SAC at ¶ 57.

2   Thus, Plaintiff's own allegations confirm that there were "storm warnings" giving rise to a duty to

3   inquire as early as "summer 2008," three years before Plaintiff filed her initial complaint.

4   Accordingly, Plaintiff's Section 25501.5 claim would be time-barred under Section 25506(b),

5   assuming that Section 25506(b) is the applicable statute of limitations.

6         Section 338(a) imposes a three year statute of limitations for claims based on a "liability

7   created by statute." C.C.P. § 338(a). Plaintiff made loans to SpeciGen on December 1, 2006 and

8   March 1, 2007, more than three years before she filed her initial complaint. Fischer Decl. Ex. 1.

9   Thus, Plaintiff's Section 25501.5 claim would be barred under Section 338(a) unless the statute of

10   limitations was tolled for some reason. Under California law, the statute of limitations can be tolled

11   by the discovery rule which delays the accrual of the date of a cause of action until plaintiff is aware

12   of the injury. *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1120 (9th Cir. 1994). "Where a plaintiff

13   relies on the discovery rule, the plaintiff 'must specifically plead facts to show (1) the time and

14   manner of discovery; *and* (2) the inability to have made earlier discovery despite reasonable

15   diligence." *Micrel, Inc. v. Monolithic Power Systems, Inc.*, 2005 WL 6426678, *3 (N.D. Cal., Dec. 9,

16   2005) (citations omitted). Plaintiff has not alleged specific facts that would support the application of

17   the discovery rule in this case. Although Plaintiff blames Mr. Fischer for failing to respond to her

18   requests for information (SAC at ¶¶ 57-71), she could have easily discovered that Mr. Fischer was not

19   registered as an investment adviser had she undertaken to do so. As the Securities & Exchange

20   Commission observes, "this information is easy to get" and can usually be found with "one phone call

21   or web search." U.S. Securities & Exchange Comm'n, Protect Your Money: Check Out Brokers and

22   Investment Advisers (http://www.sec.gov/investor/brokers.htm) (last visited Aug. 3, 2012) (Herrera

23   Decl. Ex. F). Accordingly, Plaintiff's Section 25501.5 is time-barred by any measure.

24         **F.**      **The SAC Fails To State A Claim For Common Law Fraud**

25         To state a claim for common law fraud under California law, Plaintiff must allege, with

26   specificity, (1) a misrepresentation (either false representation, concealment or nondisclosure); (2)

27

28

---

[9]  Arguably, Plaintiff should have "become concerned" on or around December 1, 2007, when the first loan to SpeciGen matured and presumably was not repaid.                                    .

1  knowledge of the falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage.

2  *Seeger v. Odell,* 18 Cal.3d 409, 414 (1941).  As previously discussed, Plaintiff fails to allege a

3  misrepresentation, scienter or justifiable reliance.  *See* Sections IV.A.1-4, *supra.*  Accordingly,

4  Plaintiff also fails to state a claim for common law fraud.

5  **G.   The SAC Fails To State A Claim For Negligent Misrepresentation**

6  To state a claim for negligent misrepresentation under California law, Plaintiff must allege

7  "(1) the misrepresentation of a past or existing fact, (2) without reasonable ground for believing it to

8  be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance

9  on the misrepresentation, and (5) resulting damage." *Apollo Capital Fund LLC v. Roth Capital*

10  *Partners, LLC*, 158 Cal.App.4th 226, 243 (2007).  Rule 9(b) applies to Plaintiff's claim for negligent

11  misrepresentation.  *Anschutz Corp. v. Merrill Lynch and Co.*, 785 F.Supp.2d 799, 823 (N.D. Cal.

12  2011).  As previously discussed, Plaintiff fails to allege a misrepresentation or reliance with the

13  specificity required by Rule 9(b).  *See* Sections IV.A.1 and IV.A.4, *supra.*  Accordingly, Plaintiff also

14  fails to state a claim for negligent misrepresentation.

15  **H.   The SAC Fails To State A Claim For An Accounting**

16  The SAC also seeks an accounting from the D&O Defendants.  "A right to an accounting is

17  derivative; it must be based on other claims." *Canales v. Federal Home Loan Mortgage Corp.*, 2011

18  WL 3320478, *8 (C.D. Cal., Aug. 1, 2011).  Plaintiff has failed to state a claim for relief that would

19  necessitate or otherwise support an action for an accounting against the D&O Defendants.  *See*

20  Sections IV.A-G, *supra.*  Accordingly, Plaintiff also fails to state a claim for an accounting.

21  **V.   CONCLUSION**

22  For all of the foregoing reasons, the D&O Defendants respectfully submit that the SAC

23  should be dismissed without leave to amend.

24  Dated: August 6, 2011                         STEIN & LUBIN LLP

25

26                                          By:  */s/ Tanya Herrera*
                                                 Tanya Herrera
27                                               Attorneys for Defendants
                                                 Jon Sabes, Steven Sabes and Marvin Siegel
28

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT