KAUFMAN LLC (*Pro Hac Vice*)
ALAN H. KAUFMAN
245 Park Avenue, 24th Floor
New York, New York 10167
Telephone:      646-820-6550
Facsimile:      646-820-6568

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
ROBERT J. STUMPF, JR., Cal. Bar No. 72851
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4109
Telephone:      415-434-9100
Facsimile:      415-434-3947

Attorneys for Plaintiff Suzanne D. Jackson

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE D. JACKSON,<br><br>              Plaintiff,<br><br>       vs.<br><br>WILLIAM FISCHER, JON SABES, STEVEN SABES, DAVID GOLDSTEEN, MARVIN SIEGEL, BRIAN CAMPION, LONNIE BOOKBINDER, CHETAN NARSUDE, MANI KOOLASURIYA, JOSHUA ROSEN, UPPER ORBIT, LLC, SPECIGEN, INC., PEER DREAMS INC., NOTEBOOKZ INC., ILEONARDO.COM INC., NEW MOON LLC, MONVIA LLC, and SAZANI BEACH HOTEL,<br><br>              Defendants. | Case No. CV 11-2753 PJH<br><br>**PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS WILLIAM FISCHER, STEVEN SABES, JON SABES, MARVIN SIEGEL, CHETAN NARSUDE, MANI KOOLASURIYA, UPPER ORBIT LLC, NEW MOON LLC AND MONVIA LLC**<br><br>**Date:**      October 31, 2012<br>**Time:**      9:00 a.m.<br>**Location:**  Ctrm 3, Oakland Courthouse<br>**Judge:**     Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF ARGUMENT ............................................................. 1

II.  INTRODUCTION ......................................................................... 3

III.  APPLICABLE LEGAL STANDARD ............................................. 4

IV.  ARGUMENT ............................................................................. 5

    A.  The Complaint States a Viable Claim under the Exchange Act And the Director/Officer Defendants Were Controlling Persons ............. 5

    B.  The Plaintiff Has Pled the Core Elements of a sec. 10(b) Claim ........... 6

        1.  The Plaintiff Has Documented Twenty-Four Specific Misrepresentations and Omissions ........................... 6

            a.  The Misrepresentation ..................................... 7

            b.  The Omissions .................................................. 9

        2.  The Misrepresentation and Omissions Were Material ................ 10

        3.  Scienter is Present With Regard to All Defendants ................... 12

        4.  The Plaintiff's Reliance Was Justifiable ............................... 14

        5.  The Plaintiff Has Demonstrated Both Economic Loss and Loss Causation ....................................................... 15

        6.  The Officer/Director Defendants Are Liable As Controlling Persons Under the '34 Act and By Common Law *Respondeat Superior* ................ 16

    C.  The Defendants Violated Cal. Corp. Code sec. 25401 and Are Therefore Liable Under Cal. Corp. Code sec. 25501 and 25504 ................ 19

    D.  Liability Has Been Established Under Cal. Corp. Code sec. 25501.5 ........ 20

        1.  Fischer Was a Broker-Dealer ........................................ 21

        2.  Sec. 25501.5 Does Not Require Privity .......................... 21

        3.  Issuer Liability is Inherent in Sec. 25501.5 ..................... 22

    E.  None of Mrs. Jackson's Securities Claims Are Time-Barred ............... 22

    F.  Mrs. Jackson Has Pled a Viable Misrepresentation Claim ............... 25

V.  CONCLUSION ............................................................................ 26

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*In re Adaptive Broadband Sec. Litg.*
U.S. Dist. LEXIS 5887 (N.D. Cal. Apr. 2, 2002)................................................................. 16

*Anschutz Corp. v. Merrill Lynch & Co.*
785 F. Supp. 2d 819 (N.D. Cal. 2001) .........................................................................20-21

*Arthur Children's Trust v. Keim*
994 F.2d 1390 (9th Cir. 1993)....................................................................................... 17

*Ashcroft v. Iqbal*
129 S. Ct. 1937 (2009) ............................................................................................ 4, 13

*Dura Pharms. Inc. v. Broudo*
544 U.S. 336 (2005) ...................................................................................................... 6

*Fouad v. Isilon Sys.*
2008 U.S. Dist. LEXIS 105870 (W.D. Wash. 2008) ....................................................... 15

*Hollinger v. Titan Capital Corp.*
914 F. 2d 1564 (9th Cir., 1990).................................................................................16-17

*Howard v. Everex Sys.*
228 F.3d 1057 (9th Cir. 2000)........................................................................................ 17

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*
416 F.3rd 940 (9th Cir. 2005)..................................................................................... 9, 14

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*
2011 U.S. Dist. LEXIS 125203 (C.D. Cal.) ............................................................... 13, 16

*In re Metawave Communs. Corp. Secs. Litig.*
298 F. Supp. 2d 1056 (W.D. Wash. 2003) ..................................................................... 16

*Paracor Fin. Inc. v. Gen. Elect. Capital Corp.*
96 F.3rd 1151 (9th Cir. 1996)....................................................................................... 13

*In Re Rectifier Corp. Secs. Lit.*
U.S. Dist. LEXIS 44872 (C.D. Cal. May 23, 2008)........................................................16-17

*Salameh v. Tarsadia Hotels*
2011 U.S. Dist. LEXIS 30375 (S.D. Cal. 2011) ............................................................. 22

*SEC v. Platforms Wireless Int'l Corp.*
617 F. 3rd 1072 (9th Cir. 2010)...................................................................................... 9

*Siemers v. Wells Fargo & Co.*
   No. 05-04518, 2006 U.S. Dist. LEXIS 60858, 2006 WL 2355411
   (N.D. Cal. Aug. 14, 2006) .................................................................................. 15

*Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008)
   542 F. 3rd 776 (9th Cir. 2008) ............................................................................. 7

*South Ferry No. 2 LP v. Killinger*
   542 F. 3rd 776 (9th Cir. 2008) ........................................................................... 11

*Strategic Diversity, Inc. v. Alchemix Corp.*
   666 F.3rd 1197 (9th Cir. 2012) ............................................................................. 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
   551 U.S. 308 (2007) ................................................................................... 11, 13

*WPP Lux. Gamma Three v. Spot Runner*
   655 F. 3rd 1039 (9th Cir. 2011) ......................................................................... 11

CALIFORNIA CASES

*Viterbi v. Wasserman*
   191 Cal. App. 4th 927 (2011) ....................................................................... 20, 22

FEDERAL STATUTES

11 U.S.C.
   Chapter 7 ................................................................................................. 2

15 U.S.C.
   § 78bb ................................................................................................... 14
   § 78j(b) ............................................................................... 1-2, 5, 14, 16
   § 78t(a) ................................................................................................. 14

Private Securities Litigation Reform Act
   generally ........................................................................................ 4-6, 10

Securities Exchange Act of 1934
   § 10b ..................................................................................................... 3
   § 20 ...................................................................................................... 3
   § 20(a) ...................................................................................... 3, 5-6, 14-16

FEDERAL REGULATIONS

17 C.F.R.
   § 240.10b-5 ........................................................................................... 12

CALIFORNIA STATUTES

Code of Civil Procedure
§ 338(a) ....................................................................................................22-23

Corporations Code
generally ....................................................................................................... 6
§ 25006 ...................................................................................................19-20
§ 25201(a) .................................................................................................... 17
§ 25501 .......................................................................................................... 18
§ 25501.5 ...........................................................................................1-2, 17-19
§ 25504 ..................................................................................................1, 17-18
§ 25506(b) ...................................................................................................... 1


COURT RULES

Federal Rules of Civil Procedure
Rule 8 ........................................................................................................... 14
Rule 9(b) ...............................................................................................4-6, 14
Rule 9(c) ......................................................................................................... 2
Rule 15 ............................................................................................................ 4
Rule 56 ............................................................................................................ 6

Local Rules
Rule 7-3(a) ................................................................................................... 11

1   **I.      SUMMARY OF ARGUMENT**

2          ***The Complaint States a Cause of Action Under the Exchange Act.***   Section 10(b) of the

3   Securities Exchange Act of 1934 ("Exchange Act") 15 U.S.C. sec. 78j(b) proscribes material

4   misrepresentations and omissions in connection with the sale of securities.   The Second Amended

5   Complaint ("SAC")  details more than twenty-four specific material omissions and

6   misrepresentations.   They range from the failure to advise the plaintiff that the defendants' agent,

7   broker and partner, defendant William Fischer, was a twice-convicted felon with a history of

8   failure in all of his business ventures; that he was brokering securities without having registered as

9   required under California law; that the offering documents misrepresented the nature of the

10  offerings; that the companies lacked partners and that their products were either nonexistent or far

11  from completion; that the companies lacked the capital to bring their products to fruition; and that,

12  among other omissions,  their capital raising efforts were so flawed with irregularities as to

13  compromise further offerings to raise the necessary capital to make true what was falsely

14  represented to Mrs. Jackson.

15         ***The Directors and Officers Are Liable As Controlling Persons.***   Under section 20(a) of

16  the Exchange Act, persons who "directly or indirectly" control a person liable under the Act are

17  liable for the same damages as the controlled person *regardless of whether the controlling person*

18  *is directly culpable.* It is therefore unnecessary to demonstrate *scienter* for such persons, and they

19  have a burden of showing good faith in order to evade liability. The defendant directors and

20  officers in this case were part of very small boards of small, private companies. As such, they were

21  involved as controlling persons and are as responsible for the plaintiff's losses as those who acted

22  in their behalf and for their benefit.

23         ***The Deceptive Behavior of the Directors and Officers Makes Them Liable Under Cal.***

24  ***Corp. Code sections 25401, 25501 and 25504 Because They Materially Assisted and Controlled***

25  ***Their Agent.***   California securities laws protect purchasers in manners similar to the federal

26  securities laws. Under Cal. Corp. Code sec. 25504 it is unlawful to use materially misleading

27  information in the sale of securities. Cal. Corp. Code sec. 25501 makes individuals liable for such

28

1   actions, and under Cal. Corp. Code sec. 25401, any person who controls or materially assists such

2   a person in the use of misleading information to sell securities is liable to the purchaser for their

3   losses.

4         ***The Defendants Are Liable Under Cal. Corp. Code Section 25501.5.***  The legislature

5   passed Sec. 25501.5 in 2005 to give the same protections to purchaser of securities from

6   unregistered broker-dealers that was already accorded to purchasers from properly licensed

7   brokers.  The law was part of an amendment package that also extended the limitations periods

8   under Sec. 25506(b).  Because brokers do not own the securities they sell, because defendant

9   Fischer was acting as a broker, and because Sec. 25501.5 created a rescission remedy, only issuers

10   can effectuate the remedy and they are therefore liable.  The directors and officers of close

11   corporations are controlling persons by virtue of their positions, Sec. 25504 and California law

12   looks to federal securities law for analogous provisions.  The directors and officers are therefore

13   liable as such as well as through the veil piercing applicable to such persons to deprive them of

14   protection from fraudulent conduct.

15         ***The Directors Are Liable For Breach of Fiduciary Duty.***  The directors and officers of

16   the companies in which Mrs. Jackson invested through defendant Fischer are not saved by

17   exculpatory clauses in their incorporation papers (and as the SAC makes clear, Mrs. Jackson never

18   saw those papers in conjunction with her purchases).  The SAC is replete with documentation of

19   bad faith conduct.  That the harm was suffered in the first instance by the corporations does not, in

20   the case of closely held companies, shield the directors.  Under the law of their states of

21   incorporation, the directors have a fiduciary duty both towards the corporation and to its

22   shareholders. The SAC plausibly itemizes the recklessness of their management of their

23   companies, none of which complied with even the most rudimentary reporting obligations of their

24   states of incorporation.  The plaintiff is not barred from seeking damages by her rescission claims

25   under Sec. 25501.5 because she has pled in a manner that permits alternative remedies.

26         ***The SAC Properly Pleads and Documents Fraudulent Conduct.***  The standards for

27   pleading fraud under Rule 9(c) are the same as those under the Exchange Act 10(b) claim.  The

28

extensive recitation and itemization of twenty-four material misstatements and omissions amply fulfills those requirements. Moreover, the detailed recitation of omissions and misrepresentations describes acts that are not readily amenable to claims of mere negligence – and in their motion papers, none of the movants attempted to cast the itemized misstatements as innocuous or having been made in good faith. The itemized misstatements are too specific and egregious to be subject to a lesser interpretation. The claim therefore meets the "plausibility" standard at the pleading stage. The absence of any claim to an innocuous interpretation by the defendants constitutes a concession of the fraud claims as well as the merits of the Exchange Act 10(b) claims.

**The Plaintiff Has a Viable Claim Against the Corporations and their Directors and Officers for Negligent Misrepresentation.** California common law includes the tort of negligent misrepresentation. The SAC at paras. 84-85, itemizes statements and omissions that harmed the plaintiff and caused her to lose more than $3,400,000. Although it is the plaintiff's position that those misstatements were made intentionally, if the defendants are liable nevertheless because the statements were false and misleading and are actionable even if they were the result of negligence.

**None of the Claims is Time-Barred.** The motion papers of all of the moving defendants disregard the abundant pleadings in SAC para. 63(a)-(n) as if they didn't exist; they also fail to address the plaintiff's detailed explanation of her efforts to learn of the fate of her investments, all of which give heft to a claim of equitable estoppel. Further, the SAC documents in detail the ongoing assurances from defendant Fischer, acting for the officers and directors, that her investments were sound and lulling her into inaction with those false assurances. For these reasons, the SAC presents plausible claims of equitable estoppel.

## II.     INTRODUCTION

The defendants moving for dismissal are uniformly experienced corporate executives and/or startup principals and investors. They should know better.

For the half dozen ventures from which they planned to profit, they utilized as their primary agent a four-times indicted, twice conviction felon who had served hard time in both state

1  and federal prisons.  That agent – defendant William Fischer[1] – served as agent and, from time to

2  time, as a broker/dealer for the defendants; his primary mission was to extract millions of dollars

3  from a widow with two teenaged children who had never made an investment decision in her life.

4  It is Fischer's undertaking and its consequences that spawned this litigation.

5       The officer/director defendants ("D&O") – who shamelessly admit and even boast to never

6  having had direct contact with their benefactor – were nevertheless content to send their agent to

7  her whenever they had a crisis, and whenever they needed seed capital that they could not find

8  anywhere else.  And all along they dispatched Fischer without the slightest deference to the notion

9  that, in dealing with their major and, in most cases, pivotal investor, they should take care to

10  provide her with timely information about the securities she was buying or about the ventures for

11  which she was soliciting their funds.

12       Having exploited Mrs. Jackson as their private ATM machine, they regularly dispatched

13  defendant Fischer to say whatever needed to be said to induce Mrs. Jackson to part with her

14  money.  Their "hear no evil, see no evil" defense does not shield them from liability.  As we will

15  show below, Mrs. Jackson has properly pled multiple federal and state claims.

16  **III.    APPLICABLE LEGAL STANDARD**

17       With more than 100 pages of defendants' motion papers before the Court, we will not

18  impose repetition of the well-understood standards for assessing dismissal.  We agree in large part

19  with the defendants' characterizations of the standards as set forth in *Ashcroft v. Iqbal*, 129 S. Ct.

20  1937 (2009), the primary significance of which is its introduction of a "plausibility" standard to

21  the evaluation of pleadings, as well as the application, to varying degrees (depending on the nature

22  of particular allegations as well as whether the defendant entities are closely held or publicly

23  traded) of Rule 9(b) standards.[2]

24  _____

25  [1] Defendant Fischer filed a Chapter 7 Bankruptcy in Minnesota in April and therefore this action is
    stayed as to him.

26
27  [2] There is a material distinction in this case that impacts the manner by which dismissal standards
    are applied, particularly under the Private Securities Litigation Reform Act ("PSLRA"): the latter
    statute was designed to curb abuses in class actions and other litigation against public – not

28  private, companies.  And although it nevertheless applies, the impact of its discovery stay

1    As we observe below, however, the movant's memoranda misstate or, in other places,

2  only partially describe the applicable standards. Those deficiencies are noted below in the

3  discussion of those sections.

4    One other element of traditional Rule 12(b)(6) analysis merits recall in view of the

5  defendants' arguments: in considering a dismissal motion, the facts as pled are taken as true. This

6  reminder is warranted because in many instances, the defendants "testify" through their briefs or

7  present Requests for Judicial Notice that include testimony on the merits. The only "facts" for

8  Rule 12(b)(6) purposes are those alleged in the SAC.

9  **IV.    ARGUMENT**

10    In view of the multiplicity of claims asserted in the three pending motions, we first address

11  the arguments common to all defendants and then explain the infirmities of the challenges specific

12  to individuals.

13

14    **A.    The Complaint States a Viable Claim under the Exchange Act And the
         Director/Officer Defendants Were Controlling Persons**

15    But for the investments of the plaintiff, the defendant enterprises would have been

16  seriously impacted; several would have had to close their doors, and others could never have

17  opened them.  What is notable about the dismissal motions is the seemingly proud claim of

18  officers and directors – who depended heavily on Mrs. Jackson's funds – that they had nothing to

19  do with her.  What is remarkable is that each of the defendants chose to rely on defendant Fischer

20  – a twice convicted and four times-indicted felon, a man who was unlicensed to serve his role as

21  the defendants chief fund raiser and broker, to be their primary vehicle for communicating with

22  and inducing investors such as Mrs. Jackson.

23    But having done do, these officers and directors, who stood to gain substantially from the

24  leverage of the plaintiff's investments, now seek to disavow themselves of any responsibility and

25  liability for their actions.

26    We address below *seriatim* the purported grounds for dismissal.

27

28  provisions is radically different when applied to close corporations with literally no public
    reporting of their activities.

### B.       The Plaintiff Has Pled the Core Elements of a sec. 10(b) Claim

The direct liability of defendant Fischer is a precondition to the liability of the liability of the directors and officers as controlling persons.[3] As defined by the Supreme Court, the elements of the claim are (a) misrepresentations or omissions of (b) material facts (c) with *scienter* on which the plaintiff justifiably placed reliance (d) to her detriment through a resulting causative transaction and economic loss. *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 341-342 (2005).

In approaching the pled facts, it is important to keep in mind the substantial distinctions between publicly traded companies (with their extensive public reporting and registration obligations) and closely held corporations. The entirety of the case law cited by the defendants relies on cases relating to public companies for which extensive information is available to plaintiffs without the need for discovery. As the facts are reviewed below, it should be noted that those public company cases properly embody the applicable legal principles, but that the factual proof burdens and expectations for closely held companies are lower because of the inherent difficulty of obtaining information that is private.

### 1.       The Plaintiff Has Documented Twenty-Four Specific Misrepresentations and Omissions

There is no disagreement that the applicable pleading requirements for the Exchange Act claims are as stated in Rule 9(b) as supplemented by the Private Securities Litigation Reform Act ("PSLRA"). But the defendants misapply those rules to the pled facts. Neither Rule 9(b) nor the PSLRA require verdict levels of proof. Those two guideposts have the sole purpose of giving notice sufficient to permit the defendants to ascertain the charges against them and to be in a position to prepare their defenses.

The Rule 9(b) threshold, glossed over in the more than 100 pages of defendants' motion papers, is "adequately," not with certainty. The rule does not dictate pleading proof that must be

---

[3] Because sec. 20(a) liability for controlling persons requires a sec. 10(b) predicate violation, we address the latter first. But for both the securities claims as well as the state law claims, the D&O defendants face secondary liability on multiple grounds – '34 Act sec. 20(a), common law agency/*respondeat superior* principles and the specific assistance/involvement provisions of Cal Corp. Code sec. 25504.

"dispositive," it does not say "by a preponderance of the evidence," "clear and convincing" or "beyond reasonable doubt." The standard is that the "particularity" is required to "adequately" inform the defendants of the allegations against them. Furthermore, notwithstanding the PSLRA's language about "strong and cogent" evidence, the actual evaluation standard of sufficiency as recently interpreted by the U.S. Supreme Court more closely approximates 50-50: if the allegations are as equally amenable to explanations showing liability as they are to innocence, the pleading may proceed.

### a.      The Misrepresentation

The fifteen specific misrepresentations that have been pled by the plaintiff and that, as a matter of law, are accepted as true[4], are:

As to defendant Specigen:[5]

> 2.      That the plaintiff, a housewife and widow with literally no prior investment experience, was told that she could be assured that other sophisticated investors had vetted the defendant companies and that they were placing significant investments alongside her, when no such investors had placed money into the company[6] (SAC para. 84(a)(i);
>
> 3.      That Specigen had licenses and rights to all of the patents it needed to move to production, when in fact its patent position was insufficient (SAC para. 84(a)(ii);
>
> 4.      That Specigen (armed with a patent portfolio that was deficient) was approaching a level of development that would attract new investors and that it was near commercialization, even though the company didn't even have prototype molecules that could be tested (SAC para. 84(a)(iii);

---

[4]  *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008) ("All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. A complaint *must not be dismissed unless it appears beyond doubt* that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief  (emphasis added) (*citing Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003)).

[5]  As we explain below in regard to the '34 Act sec. 20(a) count and the Cal. Corp. Code secondary liability counts, the D&O defendants incur liability through Fischer and the companies they managed.  For convenience we refer to the misrepresentations made by the named company defendants, but the D&O defendants are legally charged with them as well as the companies. The D&O defendants linked to Specigen who seek dismissal are Steven Sabes, Jon Sabes and Melvin Siegel.

[6]  Ironically, the most sophisticated men on the Specigen board were movant/defendants Jon and Steven Sabes, yet, as noted below in the material omissions section, they had refused to put in their own money.

5.   That Specigen's development was in advanced discussions with partners who could help it to commercialization, when in truth no such prospects existed (SAC para. 84(a)(iii);

6.   That Mrs. Jackson was being offered the same investment terms as the others, when in fact they were being given equity for free to supplement their loans, when no such incentive was being offered to Mrs. Jackson (SAC para. 84(a)(iv));

And defendant PeerDreams/Monvia claimed that:[7]

7.   It had undertaken market study and found "material demand by nonprofit institutions for the service it claimed to have developed," when in fact no such study had ever been undertaken (SAC para. 84c(i));

8.   That several major nonprofit institutions (their target market) had committed to use of the product, when in fact such commitments did not exist (SAC para. 84(c)(ii);

9.   That with the addition of Mrs. Jackson's capital, the company would have sufficient funds to bring its product to market – a representation that betrayed the severe capital shortage and Monvia's dependency on Jackson's funds to even create a prototype of its product (SAC para. 84(c)(iii);

10.  That Monvia/PeerDreams' management had seasoned track records bringing untested products to market, when the truth was that none of its management had such experience – they all came from large companies with mature products and had no successful entrepreneurial backgrounds (SAC para. 84(c)(iv));

11.  That Monvia's primary business was as a software vendor, and the money it raised from Jackson was funneled into PeerDreams and then used to pay Monvia for software development as its primary vendor (SAC para. 63(f);[8]

And defendant New Moon, through Fischer, passed information that:

12.  It had other sophisticated investors with experience with web startup companies (which New Moon was) when in fact it had so little seed capital that it depended on Jackson's funds to pay defendant Monvia to develop its core software (SAC para. 85(d)(i);

13.  That it had demonstrated information from a market study showing that its online product would be a profitable extension of its print products, when in truth, it had no such studies and was engaged in pure guesswork (SAC para. 84(d)(ii); and

---

[7] The sole Monvia D&O defendant moving for dismissal is Mani Koolasuriya, a founding (and later, sole) director and Monvia's Managing Partner at all times pertinent to this action.  Monvia itself is implicated in the case because of its role in the creation of defendant PeerDreams and its involvement with defendant New Moon.  Both investments were heavily fueled by seed investments from plaintiff Jackson.

[8] Monvia performed the same function for New Moon and was involved in the New Moon fundraising referred to in SAC para. 63(g).

14.    That New Moon had an exit strategy that would cause its new web-based product to be sold to an established media company, one or more of which had already expressed such interest; in fact, there were no experienced companies expressing interest, and they couldn't even if they existed because there was no product to assess (SAC para. 84(d)(iii).

### b.    The Omissions

The SAC itemizes, for each defendant, the specifics of the material facts that were omitted from their sales pitch to Mrs. Jackson:

As to all defendants:

1.    No one notified Mrs. Jackson about Fischer's extensive criminal record;

As to the Specigen defendants:

2.    That the Sabes brothers were given nearly 30% of the stock in Specigen for zero consideration (SAC para. 85(a)(i);

3.    That, as a personal favor to Fischer, they made a $400,000 contribution to a nonprofit of his that had nothing to do with Specigen, and got their controlling position in Specigen in return for that unrelated favor SAC para. 85(a)(ii);

3.    That Specigen had a business plan that Mrs. Jackson was never shown, but that was given to other selected investors so that they could assess risk in a position superior to her SAC para. 85(a)(iii);

4.    That Specigen had granted free equity positions to other investors that was not offered to or given to Mrs. Jackson;

5.    That Specigen had given over 50,000 shares to defendant Lamere, a childhood friend of Fischers, for zero consideration and under the false pretext that Lamere had rendered "consulting services' to Specigen (SAC para. 85(a)vi)

As to the Monvia defendants:

6.    That the company had not conducted any professional market studies even though they had led her to believe that they had, and that they therefore had no idea how much revenue was plausible if the product ever was commercialized, and had no idea how much capital they would need to get there (SAC para. 85(c)(i);

7.    That they had no commitments from nonprofit institutions to work with their product if it was ever developed (SAC para. 85(c)(ii)

8.      That none of the company employees or executives had any experience with successful startups, and that their primary experience was with large, established, non-entrepreneurial organizations (SAC 85(c)(iii);

And as to the New Moon defendants:

9.      None of its officers, directors or employees had track records successfully developing web media products, which was the product for which they had solicited the plaintiff's investment (SAC para. 85(d)(i);

10.     That had no evidence, and had conducted no market studies, to determine whether teenage girls who subscribe to print media would migrate to web media, even though the latter was the investment they obtained from Mrs. Jackson through Upper Orbit, her investment adviser (SAC para. 85(d)(ii); and

11.     That Fischer had a conflict of interest because he was simultaneously acting as the plaintiff's investment adviser while serving as a paid consultant to New Moon for fund raising.

## 2.      The Misrepresentation and Omissions Were Material

Although the case law on 10(b) claims is abundant,  recent casses in this Circuit delineates the current guidelines.  With regard to omissions, *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3rd 1197, 106 (9th Cir. 2012), is the most recent articulation of the standard set forth in *SEC v. Platforms Wireless Int'l Corp.*, 617 F. 3rd 1072, 1092 (9th Cir. 2010):  "An omitted fact is material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered to total mix of information made available."

For affirmative misrepresentations this Circuit follows *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3rd 940, 946 (9th Cir. 2005), which defined a misrepresentation as material "…if there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed."

The extreme nature of the defendants' misrepresentations and omissions is best appreciated by contemplating what Fischer and the defendants would have been said *if* they had been truthful:

1.      The person we have chosen to sell you our securities was convicted of felonies by both state and federal courts, did time in state and federal prisons, and was indicted two other times.

2.   Mr. Fischer is required to register with the State of California and the Securities and Exchange Commission as a broker/dealer before he solicits your funds, but he hasn't done so.

3.   We haven't told these problems to anyone else but if we hope to legally raise future capital we will have to; and if we don't, it may be securities fraud.  And since we haven't told the other investors about this, they may sue us for securities fraud when they find out; that will deplete our existing capital and also compromise our ability to raise further capital.

4.   We had some lawyers prepare some documents.  We understand that you haven't seen them yet and may never see them but we see you've signed the signature pages.  We want you to know that the way we are capitalizing is different than what the documents would have told you if we had seen them;  even though the documents say that each investor is getting the same warrants and promissory notes, we are giving some investors free equity, but some, such as you, are not going to receive that added value.

5.   We don't know anything about the other investors. We are trusting Mr. Fischer to deal with them, but we are not telling them about the problems with his past or about his licensing problems.  We aren't making any effort to find out if they are accredited investors, and we are not keeping tabs on Mr. Fischer to see if he is making public solicitations. If he is, we will have problems with the SEC because we haven't registered our securities and would be required to if the way in which he is soliciting investors is considered to be "public solicitation."

6.   We don't have a single working prototype of our product. We will need much more capital to produce one and get it to market.  Because of the problems we've told you about, we may never be able to raise the funds and may go out of business.

7.   We don't have enough capital or expertise in house to do what we want to do, and have no prospects for finding  partners who can compensate for our deficiencies.

8.   We at Specigen have a particular problem, because we don't have all the patents we need, we don't have the capital to obtain or develop them. We may never get the capital we need and may lose much of what we have if the other investors find out and sue us.  One other thing – the Sabes brothers, one of whom is our chief financial officer, are getting 27% of the company for free, but your initial $250,000 will only give you 3% of the company.

The issue at the pleading stage is whether, if this mix of information had been (a) disclosed instead of concealed, and (b) been accurately disclosed instead of misrepresented, it would have "significantly altered" the investor decision.  That issue is for the jury, and under the dismissal standard, so long as it is plausible that accurate disclosure would have significantly impacted a reason investor, the allegations should go to the jury.

3.      **Scienter is Present With Regard to All Defendants**

The plaintiff has pled a mix of facts that show systematic material misrepresentations and omissions.  In para. 87 of the SAC, Mrs. Jackson itemizes the specific facts that were known to the defendants, and underscores that, knowing those facts, the failure to disclose them (or the concealment of the truth through misrepresentation) could not be accidental.

Because *scienter* reflects state of mind and because such facts are only finally resolved through discovery, at the pleading stage the standard is "… knowing or intentional conduct, or reckless conduct "to the extent that it reflects some degree of intentional or conscious misconduct, or what we have called deliberate recklessness." *South Ferry No. 2 LP v. Killinger*, 542 F. 3rd 776, 782 (9th Cir. 2008) (quoting *In re Silicon Graphics*, 183 F.3d at 977); *WPP Lux. Gamma Three v. Spot Runner*,  655 F. 3rd 1039, 1051 (9th Cir. 2011).

The adoption of the Private Securities Litigation Reform Act ("PSLRA") has added the clarification that a "strong inference" of intent must be found.  To qualify as a "strong inference," the Supreme Court has stated that "an inference . . .  must be cogent and *at least as compelling as any opposing inference of nonfraudulent intent*."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (emphasis added).  Simply stated, the court is to look at the evidence suggesting fraud[9] and determine whether *scienter* is as probable as not.  It is a balancing test that is less than a preponderance of the evidence, and more akin to 50-50.

In making this determination, the court first looks to specific allegations (which none of the D&O defendants do in their briefs) and the second part of the test is a "holistic" one – looking at the entirety of the complaint.  This calls for the court to "… consider the complaint in its entirety.  The court's inquiry is "whether all of the facts alleged, taken collectively, give rise to a

---

[9] Defendants Siegel and the Sabes brothers make much of the "when and where" aspect of pleading fraud with particularity.  The case law does not rigidly adhere to each such detail, but if the Court deems it important, the plaintiff is able to amend to assert closely approximate dates and locations. We respectfully submit that it is not necessary to do so for these defendants – the assertions arise from and relate to statements of their agent, defendant Fischer, not the D&O defendants themselves.  The dates of his misrepresentations and omissions can be readily calculated by looking at the specific misrepresentations for each respective investment alongside the dates of the each investment.  All of the defendants have access to that information.

1  strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets

2  that standard." *Tellabs*, *Id*. at 322-23." *WPP Lux. Gamma Three*, 655 F. 3ʳᵈ at 1053.

3  The itemization of the misrepresentations in SAC para. 84 and omissions in SAC ¶ 85

4  describe statements of fact that are so inaccurate as to be either reckless or intentional.  And their

5  sole purpose – to induce the plaintiff to invest material sums in defendants Specigen, PeerDreams,

6  and New Moon, create a strong inference that there was a financial motive to make such

7  misrepresentations.  See e.g. SAC para. 87, which itemizes the implausibility that the false

8  statements could be accidental or inadvertent.  Interestingly, none of the defendants has confronted

9  the false statements and omissions, and none attempted to explain them in an innocent light.  The

10  Court is therefore asked to conclude the absence of *scienter* without the aid of alternative

11  explanations from the D&O defendants.

12  The allegations of falsity do not relate to opinion.  Whether there were other sophisticated

13  investors who vetted the company (SAC paras. 84(a)(i), 84(d)(i); whether marketing studies had

14  been done (SAC paras. 84(c)(i), 84(d)(ii); whether a sufficient patent portfolio exists (SAC para.

15  84(a)(ii); whether a prototype product exists (SAC para. XX, XX); whether partners have

16  expressed interest in investing or joint venturing[10] (SAC para. 84(a)(iii), 84(c)(iii),84(d)(iii));

17  whether the companies could stay afloat and produce prototype products without Mrs. Jackson's

18  funds (SAC paras. 84(a)(3), 84(c)(3), 84(d)(i)); whether there were likely buyers to provide an exit

19  strategy (SAC para. 84(d)(iii)); whether Mrs. Jackson had visited the company's offices or not –

20  these were facts, not opinions; they were true or they were false.  And taking the misrepresentation

21

22

_____

23  [10] New Moon, in a brief replete with inadmissible claims based on evidence that is not in the
record, makes the argument that Mrs. Jackson lost her money because of the market collapse in the

24  fall of 2008, and/or were due to ensuing impacts on the online media market for teenagers.  There
is no evidence in the record relating to such matters and therefore the external evidence-based

25  "explanation" is impermissible.  The explanation suffers from another infirmity – it is false: the
SAC quotes directly from a January 2010 New Moon report to Fischer that "we'll be moving

26  forward in our plan to get a significant strategic partner on-board in the next six months."  SAC
para. 63(k), and Fischer reported on a major fund raising trip for New Moon in November, 2008 –

27  just months after the crash cited by New Moon counsel as pretext for the company's failure.  SAC
para. 63(g). Those admissions, contained in the SAC, contradict the argument made in New

28  Moon's motion papers.

1   of those facts as alleged as true, as must be done on a 12(b)(6) motion, we respectfully suggest

2   that it requires mental acrobatics to find that such false claims could be made by accident.

3   These omissions and misrepresentations are not amenable to an innocent explanation – and

4   if there such explanations, it was the duty of the movants to provide them[11] – their silence in

5   refusing to address the very specific allegations is a telling omission.[12]   Under *Tellabs* the

6   inference of *scienter* must be as cogent as the inference of innocence.   551 U.S. at 314.   The

7   misrepresentations pled by the plaintiff elude such explanations.   The truth was adverse to the

8   defendant companies' interests in obtaining Mrs. Jackson's money, and had the truth been

9   disclosed, it would have been troubling to any investor, and likely fatal to the investment decision.

10   It is precisely because the falsehoods were so material that they are not amenable to

11   innocent inferences.   They sound of recklessness at best, and intention to defraud at worst.   Under

12   the most innocuous interpretation, the inference of deliberate recklessness is the fallback, and

13   recklessness is actionable.

14   ### 4.      The Plaintiff's Reliance Was Justifiable

15   The plaintiff has specifically pled transactional causation, SAC para. 86, and that the

16   misrepresentations and omissions induced reliance that caused her loss.   SAC paras. 86-87.

17   This court need not – though it may – rely on the pleading of reliance by itself.   The

18   standard on a dismissal motion is whether such pleading is "plausible," *Ashcroft, supra*, and

19   "justifiable reliance" has been defined as "… a limitation on a rule 10b-5 action which insures that

20   there is a causal connection between the misrepresentation and the plaintiff's harm." *Paracor Fin.*

21   *Inc. v. Gen. Elect. Capital Corp.*, 96 F.3rd 1151, 1161 (9th Cir. 1996), *citing Atari Corp. v. Ernst &*

22   _____

23   [11] Defendant New Moon offers an affidavit of its CEO, Mrs. Nancy Gruver.   Pursuant to Local
     Rule 7-3(a) the plaintiff objects to the entire affidavit.   It is replete with testimony on material

24   facts in the case (e.g., whether New Moon knew that defendant Fischer was purchasing shares as
     Mrs. Jackson's agent, the nature of the information she provided to Mr. Fischer, While defendants

25   are permitted to offer innocent explanations of plaintiff allegations (that are taken as true), they are
     not permitted to introduce evidence or testimony on a 12(b)(6) motion.

26   [12] The count of misrepresentations/omissions relating to each set of D&O defendants
     is:  Specigen: total of 10 (4 misrepresentations/6 omissions); Monvia/PeerDreams: total of 7 (4/3);

27   and New Moon: total of 7 (3/4).   None of the D&O defendants has proffered to the Court a
     competing, innocent explanation under the Tellabs "as compelling as not" standard, despite Mrs.

28   Jackson having provided 24 specific allegations.

1    *Whinney*, 981 F.2d 1025, 1030 (9th Cir. 1992); *see also Me. State Ret. Sys. v. Countrywide Fin.*

2    *Corp.*, 2011 U.S. Dist. LEXIS 125203 (C.D. Cal.) at *43.

3          The contrast between what Mrs. Jackson was told -- with what she would have been told

4    *had she been dealt with truthfully* -- underscores the stark, materially misleading information that

5    was proferred by the defendants in order to induce her to invest.  Justifiable reliance is a fact

6    driven determination, and the plaintiff's assertion of reliance meets the plausibility standard and

7    merits presentation to a jury.

8

9          **5.      The Plaintiff Has Demonstrated Both Economic Loss and Loss Causation**

10         15 U.S.C. sec. 78bb limits recovery to damages "on account of the act complained of."

11   That provision has given rise to two measures of analysis: economic/transaction causation and loss

12   causation.

13         Economic ("transaction") causation is defined as "proof that the violations in question

14   caused the plaintiff to engage in the transaction."  *Livid Holdings Ltd.*, 416 F. 3rd at p. 949, *citing*

15   *Binder v. Gillespie*, 184 F. 3rd 1059, 1063 (9th Cir. 1999).  Loss causation requires proof that "the

16   misrepresentation or omissions caused the harm."  *Livid Holdings Ltd., Id.*

17         Economic causation is similar in substance and proof to justifiable reliance: if the plaintiff

18   relied on the misrepresentations to enter into the transaction, she has proven that but for the

19   misrepresentations, she would not have so engaged; similarly, if the violations induced her to enter

20   into the transaction to her detriment, she has proven economic loss so long as she meets the

21   second prong of loss causation.

22         In her complaint, Mrs. Jackson has alleged that the defendants' untruthful statements[13] not

23   only led her into the transactions, SAC ¶ 86,[14] but that they caused her loss.  SAC ¶ 88.[15]  Based

24   _____

25   [13] As set forth *infra*, the defendants are "controlling persons" within the ambit of 15 U.S.C. sec. 78t(a).

26   [14] "The marketing of securities on the basis of these false, materially misleading statements and

27   material omissions caused Mrs. Jackson to undertake investments that, in the absence of such false and misleading statements, she would not have made, and she reasonably relied on those misleading statements and the reasonable inferences from the material omitted facts in

28   determining whether to make the investments."

1    on the terms of the promissory notes, convertible notes and the other securities, the plaintiff

2    calculated her direct losses as of the date of the SAC at $3,949,383.[16]

3

4    **6.    The Officer/Director Defendants Are Liable As Controlling Persons Under the '34 Act and By Common Law *Respondeat Superior***

5          Distilled to their essence, all of the movants' motions depend heavily on their claim that

6    they did not know the plaintiff and had no contact with her.  None of them confronts or explains

7    their relationship to Fischer; it is as if the man who was critical to their fundraising had

8    disappeared.  As we explain below, the possibility of evading legal responsibility on those grounds

9    is foreclosed by abundant authority.

10         First, to the extent that the officers and directors were in contact with and supervised

11   Fischer's activities as their agent, they are liable under the doctrine of *respondeat superior* either

12   directly (where Fischer was agent for the corporation) as controlling persons responsible for the

13   corporation's acts.  And second, they are secondarily liable under section 20(a) of the '34

14   Exchange Act, which imposes legal accountability on persons who control a person who violates

15   section 10(b).

16         In approaching the '34 Act issue of controlling person liability it is important to note the

17   distinctions in standards of proof between the primary 10(b)-5 violation and the related sec. 20(a)

18   claim.  Sec. 20(a) liability is assessed at the pleading stage under Rule 8 notice pleading standards

19   and *is not subject* to either *scienter* or fraud pleading under Rule 9(b).  *Fouad v. Isilon Sys.,* 2008

20   U.S. Dist. LEXIS 105870 (W.D. Wash. 2008).[17]

21

22   [15] "The false, deceptive and materially misleading statements caused Mrs. Jackson to lose her investments and suffer substantial financial harm.  The nature and import of the material
23   misrepresentations and omissions was such that, if disclosed, would have caused a reasonable investor to withhold investment or seek better terms, and by intentionally misleading Mrs.
24   Jackson, the defendants caused, and meant to cause, her to make investments that she would not otherwise make."

25   [6] This figure represents the losses arising from the violations by all defendants; her claims against defendant Fischer, inclusive of a separate promissory note to which the defendants are not linked,
26   totaled $8,407,011 as of the date of the SAC.

27   [17] "Plaintiffs are required to plead their primary violations with particularity, but claims based on control person liability do not directly touch on circumstances that constitute fraud. Rule 9(b)
28   requires only that the circumstances of fraud – the falsity of an alleged misrepresentation – be plead with particularity.  "Control" over another actor does not constitute a circumstance of fraud.

The lead – and controlling – case on those dual grounds for liability is *Hollinger v. Titan Capital Corp.,* 914 F. 2d 1564 (9th Cir. 1990).[18]  In *Hollinger* the court reversed summary judgment rulings and found that a broker/dealer was responsible for the acts of its agents regardless of whether they were employees or independent contractors.  914 F. 2d at 1574.  But the *Hollinger* court also established other rules applicable to this case.

First, the Ninth Circuit ruled that a plaintiff alleging controlling person liability need *not* prove or allege actual culpability by the controlling person.  The latter becomes liable solely because of the "control relationship." *Id.* at p. 1575.  Accordingly, the "hear no evil, see no evil" defense offered by the movant defendants is legally invalid.

At the pleading stage, for purposes of sec. 20(a), the "defendant's title and responsibilities are usually sufficient to establish control." [19]  *In Re Rectifier Corp. Secs. Lit.*, U.S. Dist. LEXIS 44872 (C.D. Cal. May 23, 2008); *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 U.S. Dist. LEXIS 125203 (C.D. Cal.)*; In re Adaptive Broadband Sec. Litg.*, U.S. Dist. LEXIS 5887 (N.D. Cal. Apr. 2, 2002).  *See also In re Metawave Communs. Corp. Secs. Litig.,* 298 F. Supp. 2d 1056, 1091 (W.D. Wash. 2003) ("At the motion to dismiss stage, general allegations concerning an individual's title and responsibilities are sufficient to establish control.").[20]

---

See *Siemers v. Wells Fargo & Co.*, No. 05-04518, 2006 U.S. Dist. LEXIS 60858, 2006 WL 2355411, *14 (N.D. Cal. Aug. 14, 2006) ("[Control] is not a circumstance that constitutes fraud. Plaintiff is only required to assert fraud with particularity as to the primary violations.  At the control-person level, liability exists irrespective of the control person's scienter.") (internal citation omitted)." *Fouad Id.*.

[18] It is noteworthy that none of the three movants has any reference to *Hollinger* in their briefs, even though it was an *en banc* decision defining the metrics of sec. 20(a) claims.

[19] As we show in our accompanying Request for Judicial Notice ("RJN"), the D&O parties in Specigen, New Moon and Monvia were officers and directors of very small companies, and were among small numbers of directors of those closed corporations.  *See* Annual Reports of Specigen, New Moon and Monvia, RJN of plaintiff Suzanne Jackson.

[20] While there are cases claiming that title alone is not enough, there are two distinctions in those cases.  First, they all relate to public companies where abundant additional information is available, placing more of a duty on plaintiffs to scrutinize the available information.  In private companies no such information is available.  Second, Mrs. Jackson has demonstrated that the number of directors of the defendants companies was very small.  See Request for Judicial Notice of Suzanne Jackson.  Third, Jackson has pled facts, e.g. SAC paras. 141,143 about the directors' involvement and defendant Fischer himself referred to reports received from the company management when trying to forestall Jackson from litigation.  See SAC para. 63(a)-(n).

1    While an outside director "is not automatically liable as a controlling person[,]" the

2    director status "is sort of a red light" indicating the potential for day-to-day involvement in a

3    company.  *Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1397 (9th Cir. 1993).

4    The defendants place emphasis on an alleged absence of proof of their direct involvement

5    in specific actionable claims, but *In re Rectifier, In re Adaptive Broadband* and *Maine State Ret.*

6    *Sys.* preclude that argument at the pleading stage.  Apart from citing inapposite cases, the

7    defendants all rely on cases relating to large, publicly traded companies, overlooking the material

8    distinction in terms of what information is chargeable to a plaintiff who invested in small, closely

9    held private companies.  The roles of officers and directors of public companies are regularly

10   delineated publicly in proxy statements, Form 8 reports on material events and contracts, and

11   numerous other filings and press releases.  With closely help companies, the entirety of their

12   operations are private.

13   A unique commonality in all of the moving parties' dismissal motions is that *none* of them

14   attempts to fulfill their legal obligation under sec. 20(a) to demonstrate that their actions as

15   controlling persons were in good faith.  Confronted with 24 specific allegations of

16   misrepresentations and omissions along with a presumptive showing of control status, the

17   defendants have a burden to show that what was said or omitted in their behalf was in good faith:

18
19             "…we make clear that in an action based on sec. 20(a), the
               defendant who is a controlling person, *and not the plaintiff*, bears the
20             burden of proof as to the defendant's good faith." Thus a *plaintiff
               need not make a showing as to defendant's culpable participation*;
21             rather, a defendant has the burden of pleading and proving his good
               faith." *Hollinger*, 914 F. 2d at 1575 (emphasis added);  see also
22             *Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th Cir. 2000);  *SEC v.
               Todd*, 642 F.3rd 1207, 1223 (9th Cir. 2010).
23

24   The line of cases from *Hollinger* through *Howard* clarify that the plaintiff does not need

25   to show *scienter* with regard to controlling persons.  Accordingly, the defendants' motions

26   misstate their burden:  because the plaintiff need not prove malice or *scienter* among the

27   controlling person defendants, the defendants are not absolved by arguing their lack of direct

28

1  participation.  Their burden is to prove good faith, *Hollinger, supra,* yet *none* of the defendants'

2  briefs even address the subject.  Accordingly, that prong of their defense must be construed as a

3  concession of the sec. 20(a) defenses they might have offered, and under the *In re Rectifier, In*

4  *re Adaptive Broadband* and *Maine State Ret. Sys.* formulations, the defendants' have *de facto*

5  conceded that count of the complaint.

6        Unless the Court finds an absence of section 10(b) liability for pleading purposes, in the

7  absence of (a) a sec. 20(a) good faith defense and proof of the *absence* of *scienter* and (b) proof of

8  "…a failure to directly or indirectly induce the violations at issue," *Howard*, 228 F. 3rd at p. 1065,

9  the '34 Act claims are proven.

10

11        **C.    The Defendants Violated Cal. Corp. Code sec. 25401 and**
              **Are Therefore Liable Under Cal Corp. Code sec. 25501 and 25504**

12        Section 25401 of the California securities laws makes it unlawful to sell a security by

13  means of written or oral communications that include untrue material statements or omit material

14  facts necessary to make such facts true in the light of circumstances in which they are made. The

15  SAC contains abundant detail about the circumstances under which Mrs. Jackson was sold the

16  defendant's securities. See eg. SAC paras. 34-45.[21]

17

18

---

19  [21] Pursuant to Local Rule 7-3(a) the plaintiff objects to that part of the Request for Judicial Notice
    ("RJN") filed by defendants Siegel and the Sabes brothers that relates to corporate documents.

20  The RJN includes an affidavit of defendant William Fischer that purports to introduce, for
    purposes of their motion, "evidence" in the form of securities subscription agreements and other

21  corporate documents relating to Specigen. The plaintiff believes that those documents are
    inadmissible for all purposes. Under FRE Rule 201(b)(2) "[t]he court may judicially notice a fact

22  *that is not subject to reasonable dispute* because it (2) can be accurately and readily determined
    from sources whose accuracy cannot reasonably be questioned." (emphasis added). As the SAC

23  makes clear, the plaintiff rarely, if ever, received such documents at the time she acquired the
    defendants' securities.

24
    SAC paras. 42-44 and 83 document that the plaintiff signed signature pages only. The documents

25  proffered by Fischer through the RJN are therefore not admissible under FRE 201(b)(2) and are
    contested by the plaintiff as to their authenticity. It is precisely for this reason that prudent

26  corporate practice calls upon signers of documents to initial each page. There is nothing in the
    record to suggest that Mrs. Jackson ever saw the documents proffered in the RJN, nor does the

27  SAC rely on them other than to make clear that she never saw them when she executed the
    signature pages.

28

1   The documentation of the actionable misstatements is found in the SAC at paras. 83-85

2   along with specification of their impact on the plaintiff's reliance and losses. We will not burden

3   the Court with their repetition here, but observe that under California securities law, those

4   misstatements create liability for the defendant corporations as well as their officers and directors.

5   Cal. Corp. Code sec. 25501 creates liability for the individuals or entities making such

6   statements, and Cal. Corp. Code sec. 25504 prescribes liability for any other individuals who

7   direct those violating sec. 25501 or materially assist them. [22] As we observe in the discussion of

8   *scienter, supra*, the nature of the misstatements itemized in SAC paras. 84-85 relates to specific

9   factual claims. They are not opinions. As such, those statements, are accepted as having been

10  made and their utterance  or omission is therefore true for purposes of Rule 12(b)(6).  As true facts

11  of what transpired in connection with the sale of the defendants' securities, they adequately

12  document sec. 25401 violations, liability for defendant Fischer under sec. 25501, and therefore

13  liability of the D&O defendants under sec. 25504.

14  **D.      Liability Has Been Established Under Cal. Corp. Code sec. 25501.5**

15  As one of the world's leading venues for startup companies and investments, California

16  has a special concern about the integrity of its markets.  In 2004, prodded by a concern that

17  investors had protections against unscrupulous broker-dealers who were licensed, but that there

18  were no remedies against those who were not.  For that reason, Cal. Corp. Code ("CCC") sec.

19  25501.5 was enacted.[23]

20

21  _____

[22]   "Every person who directly or indirectly controls a person liable under Section 25501 or
22  25503, every partner in a firm so liable, every principal executive officer or director of a
corporation so liable, every person occupying a similar status or performing similar functions,
23  every employee of a person so liable who materially aids in the act or transaction constituting the
violation are also liable jointly and severally with and to the same extent as such person, unless the
24  other person who is so liable had no knowledge of or reasonable grounds to believe in the
existence of the facts by reason of which the liability is alleged to exist."

25  [23] The defendants point to a portion of the legislative history for the proposition that the
motivation for the law was "bucket shops" and boiler rooms."  Sabes MTD Mem. at p. 22,   A full
26  review of the 140 pages of history demonstrate that whatever may have been the goal of the
sponsor, the adoption of the new law was designed to confer the same rights upon investors
27  defrauded by unlicensed broker-dealers as were available for those who are licensed.  The express
language of the statute is clear.  Moreover, there is no legal definition for "boiler room" or "bucket
28  shop" and the law as enacted contains neither phrase.

1

### 1.    Fischer Was a Broker-Dealer

2      Cal. Corp. Code 25501.5(a)(1) creates a cause of action for rescission against any broker-

3   dealer who is required to be licensed under sec. 25004, but who has not obtained certification

4   under sec. 25201(a).  The SAC documents that defendant Fischer "presented himself to Jackson

5   as, and acted as though he were,  an investment adviser and broker-dealer with extensive trading

6   and investment experience."  SAC ¶ 33,54.  Further, the SAC quotes directly from a so-called

7   "trading agreement" drafted by Fischer that states that he had "years of experience buying, selling

8   and trading stocks on the NASDQ and New York Stock Exchange."  SAC ¶ 54.

9      For pleading purposes, Mrs. Jackson therefore plausibly alleges that Fischer[24] was acting

10   as and purporting to be a broker-dealer.[25]  Because he was not certified as required by sec.

11   25501.5, liability is established.

12      The defendants seek nevertheless to avoid liability through a series of erroneous claims

13   and arguments.

14

### 2.    Sec. 25501.5 Does Not Require Privity

15      The Sabes defendants assert that privity is required for the rescission remedy under Sec.

16   25501.5.  Sabes MTD at p. 23. They are incorrect.  The authority they cite for their argument is

17   *Viterbi v. Wasserman*, 191 Cal. App. 4th 927, 935-936 (2011).

18      Viterbi was a case brought under the portions of the Cal. Corp. Code relating to securities

19   fraud and controlling person liability (secs. 25501 and 25504).  The court's focus was on whether

20   persons liable under sec. 25504 had to be in privity in order for the plaintiff to avail itself of

21   rescission.  Viterbi does not deal with liability under sec. 25501.5.[26]

---

[24] Jackson's transactions were directly through Fischer, who was brokering them for defendants
Specigen, PeerDreams, Notebookz, New Moon and the others.  When Upper Orbit entered the
picture it acted as a broker-dealer as well.  See e.g. SAC ¶¶ 53-56.

[25] As we note below, for purposes of the complaint Fischer was acting as a broker, not a dealer.
This distinction is important in terms of creating liability for the issuer inasmuch as a broker has
no ownership and title passed directly from the issuers in this case.

[26] Even where it purports to apply, it appears that *Viterbi* may have been wrongly decided. Both
federal and state cases have found that when securities are purchased by an agent acting for a
principal, privity exists. *See Anschutz Corp. v. Merrill Lynch & Co.,* 785 F. Supp. 2d 799, 819
(N.D. Cal. 2011) ("The fact that TAC's agent, Credit Suisse, made the purchases on TAC's behalf
does not alter the existence of privity" under Cal. Corp. Code sec. 25501"). That same finding

1    Sec. 25501.5 creates the remedy of rescission by its express terms.  The remedy is

2  automatic upon a showing of the underlying violation of a sale effectuated by an unregistered

3  broker-dealer.  The plaintiff has demonstrated the underlying violation, therefore privity is not

4  required to plead the underlying violation.

5              **3.        Issuer Liability is Inherent in Sec. 25501.5**

6    Because the broker and dealer functions are substantially distinctive, Sec. 25501.5's

7  rescission remedy cannot be implemented without issuer liability when the unregistered person

8  acts as a broker.  A broker has no title to transfer; a dealer does.  Accordingly, the rescission

9  remedy cannot be effective when the purchaser acquires shares from an issuer acting through a

10  broker in a private placement transaction.

11    In the case of some of the shares purchased by Mrs. Jackson in Specigen,  and all the

12  securities of New Moon and PeerDreams purchased through Fischer and his Upper Orbit entity,

13  Fischer and Upper Orbit were acting as broker, and title passed directly from the issuer to Upper

14  Orbit. But Upper Orbit was buying for Mrs. Jackson's account, and therefore was analogous to

15  Credit Suisse's role in purchasing the Anschutz securities in *Anschutz*.  It is axiomatic that statutes

16  must be interpreted to give meaning to all language, and sec. 25501.5 could not apply to brokers

17  lacking title without having the issuer liable for the rescission. To argue otherwise is to disregard

18  the intent, function and plain language of sec. 25501.5.

19              **E.        None of Mrs. Jackson's Securities Claims Is Time-Barred**

20    The movants argue an array of limitations issues under the Exchange Act (Monvia and

21  New Moon), Cal. Corp. Code secs. 25501 and 25504 and under 25501.5 (all defendants). The

22  limitations provision applicable to the California claims is found in sec. 25506 and that applicable

23  to the Exchange Act is found in 28 U.S.C. § 1658(b).

24    The California provision was amended along with the same law enacting sec. 25501.5, and

25  applies the same 2 years from discovery, 5 years after the transaction provisions as the Exchange

26  Act sec. 10(b), which was adopted through the Sarbanes-Oxley amendments.  What the defendants

27  

28  explains why defendant New Moon's claims of never having sold securities directly to the
plaintiff are irrelevant. They sold to Fischer as her agent, as in *Anschutz*.

1   omit is the way in which the 2 year "discovery" rule is interpreted, and they disregard the 5 year

2   "from date of sale" part of the statute.

3          Although there have been multiple characterizations of the "discovery" element of

4   limitations provisions under California law, the central criteria to be applied are (1) when the

5   cause of action accrues and (2) when the plaintiff has discovered it.  The defendants have correctly

6   noted that in the sole case addressing the question under Sec. 25501.5, the court was not only

7   undecided but, because of the manner in which the case was resolved, did not even address the

8   issue.  In *Salameh v. Tarsadia Hotels*, 2011 U.S. Dist. LEXIS 30375 (S.D. Cal. 2011) the court

9   posited two options, the 2 year discovery, 5 years repose provision of sec. 25006 and the

10  provisions of CCP sec. 338(a) (3 years).  As explained below, the plaintiff meets both standards

11  but agrees with the Monvia and Sabes defendants that the provisions of sec. 25006 should apply.

12         Sec. 25501.5 was adopted alongside a related amendment that conformed the limitations

13  period under sec. 25006 with the extended periods established under the Sarbanes-Oxley

14  Amendments.  As pointed out by the *Viterbi* court, when a state law is patterned on a federal law,

15  the two are to be construed together.  The registration requirements for broker-dealers under state

16  law are analogous to those under federal law, and as such should be construed in the same manner.

17  *Viterbi*, 191 Cal. App. 4th at 937.  Because the Sec. 25006 limitations periods were adopted in

18  conjunction with Sec. 25501.5, under *Viterbi* its limitations period applies.

19         In the SAC, the plaintiff pleads that she did not have a hint of plausible trouble until the

20  summer of 2008, and even then, her concern was with her recent trading account secured by a

21  promissory note.  SAC ¶ 57.  As further noted, Fischer asked for a restructuring, which postponed

22  the interest payments, and it was not until the middle of 2009 (two years before this case was

23  initiated) that the restructured loan payments were missed.  SAC ¶¶ 58.

24         At that point – within either of the limitations periods described in *Salameh* and well

25  within the periods set by sec. 25506, Fischer undertook a series of assurances continuing into the

26  fall of 2010, SAC paras. 59-66, all with the same message --- "we'll start seeing some light in this

27  tunnel."  SAC ¶ 63(n).  Clearly, had Mr. Jackson initiated litigation during that period, she would

28

have been met with Rule 12(b)(6) motions for failure to state a claim on the grounds that she had no losses.[27]  The defendants admit that the discovery rule applies.  Under the pled facts of the SAC, the plaintiff had no real inquiry notice or "storm warning" until the fall of 2010, when none of the deals cited by Fischer to assuage Jackson had come to fruition and her efforts to obtain documentation were unavailing. SAC paras. 64-66.

Moreover, the plaintiff, even if she had received "inquiry notice" in the summer of 2008, had not "discovered" any violations by the defendants. "Inquiry notice" is the event that *begins* the time during which a plaintiff should make inquiries; it is not the same as discovery, which is what occurs when the "notice" leads to actionable actionable facts. The SAC documents Mrs. Jackson's efforts to make inquiries; they were persistent and abundant, SAC ¶¶ 63-66, and therefore comported with her diligence obligations once put upon notice under either Sec. 25506 or CCP sec. 338(a).

On the Exchange Act claims, the defendants apply the rule improperly. "Inquiry notice" is the beginning --  not the end --  of the period for discovery.  The defendants' interpretation of inquiry notice was recently *rejected* by the Supreme Court, which found that:

> In determining the time at which "discovery" of those "facts" occurred, terms such as "inquiry notice" and "storm warnings" may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating. But the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered "the facts constituting the violation," including scienter--irrespective of whether the actual plaintiff undertook a reasonably diligent investigation.

*Merck & Co. v. Reynolds,* 130 S. Ct. 1784, 1798 (2010).  Moreover, as the *Merck* court explained, it is not expected that a plaintiff will discover facts promptly. The court recognized the heightened pleading requirements for securities cases and therefore emphasized that the "discovery" must relate to the facts required to plead a viable 10(b) claims. *Id.* (citing *Young v. Lepone*, 305 F.3d 1,

---

[27] The Sabes defendants make the novel claim that the plaintiff – not the issuers – had a duty to conduct due diligence to determine whether Fischer was registered.  The plaintiff did not hire Fischer – the defendants did.  They were responsible for vetting their agent and broker and, in the case of Specigen, their corporate president.

1   9 (CA1 2002) ("[A] reasonably diligent investigation . . . may consume as little as a few days or as

2   much as a few years to get to the bottom of the matter").

3        Had Mrs. Jackson filed her complaint at the time cited by the defendants, she would have

4   faced a wave of dismissal motions citing the same optimistic progress reports that Fischer

5   repeatedly passed on to her in response to her inquiries.[28]

6        As long as there was no discovery of actionable facts within the two year period that would

7   be sufficient to withstand a Rule 12(b)(6) motion,  the action is timely so long as the discovery

8   was after the two years but before the expiration of five years. Sec. 25506(b, 28 U.S.C. § 1658(b).

9   Mrs. Jackson did not begin to purchase any of the securities encompassed by the SAC until

10  December, 2006, and his case was filed in June,  2011, well within the five year period.

11        The limitations arguments under both the California securities laws and the Exchange Act

12  are therefore invalid.

13        **F.        Mrs. Jackson Has Pled a Viable Misrepresentation Claim**

14        A misrepresentation claim requires a showing of (1) a misrepresentation of past or existing

15  fact, (2) an absence of reasonable grounds for believing it to be true, (3) intent to cause the other's

16  reliance on the misrepresentation,  (4)  justifiable reliance and (5) damage as a consequence.

17        The requisite misrepresentations are fully set forth in SAC paras. 84-85. The defendants do

18  not address a single one of those twenty-four detailed, itemized allegations, which at this juncture

19  are assumed to be true. None of the 75 pages of briefs by the movants has even attempted to

20  explain, with regard to the misrepresentation claim or the 10(b) claims,  that the claims were not

21  made or that they were not misleading. Accordingly, the factual premise of the misrepresentation

22  claim is conceded.

23

24

25  _____

26  [28]   It is noteworthy that many of the progress reports in the 2008-2010 period came directly from
    or related to the defendants who now claim Mrs. Jackson had a cause of action against them as
    early as 2008. See eg., SAC paras. 63(a), 63(h) and 63(l) relating to Speigen; SAC paras. 63(c),

27  63(g) and 63(k) relating to movant New Moon, and SAC paras. 63(c), 63(f), 63(i) and 63(m)
    specifically relating to Monvia (PeerDreams). Those rosy progress reports are precisely what

28  deterred Mrs. Jackson's persistent efforts to find out what was happening with her investments.

1    For the same reason, the defendants do not challenge that Mrs. Jackson, hearing those

2    claims, believed them, meeting the second prong of a misrepresentation claim. The intent to cause

3    the other's reliance is amply pled in SAC paras. 86-88, and the justifiable reliance is documented

4    in the same SAC paragraphs. Finally, in SAC para. 132, Mrs. Jackson asserts damages for the

5    totality of her investments, meeting the final prong.

6    The absence of confrontation with any of those details constitutes a defendants' concession

7    that there is a viable misrepresentation claim. The problem with the defective motions to dismiss

8    the misrepresentation claims is similar to the effort to challenge the securities claims – the

9    defendants make no effort to address the specifics, while reciting mantra-like that the SAC lacks

10    specifics. Not a single page of the three dismissal motions addresses the claims regarding the

11    misrepresentations or omissions. The only fact-specific defense offered by any of the defendants is

12    an absence of specific dates and locations. As noted above, the SAC makes clear that the

13    misrepresentations occurred in connection with each securities sale; the defendants know precisely

14    when those sales occurred, so the grievance as to dates is contrived and meritless.[29]

15

16    **V.    CONCLUSION**

17    For all of these reasons, Defendants' motions to dismiss should be denied.

18

19    Dated:  September 22, 2012              KAUFMAN LLC

20                                           SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

21

22                                 By _____*/s/ Robert J. Stumpf, Jr.*_____
                                               ROBERT J. STUMPF, JR.

23                                           Attorneys for Plaintiff Suzanne D. Jackson

24

25    _____

26    [29]  If the Court believes that the location of the conversations during which the misrepresentations
     took place is essential to the viability of her claims, Mrs. Jackson is prepared and would be able to

27    amend to insert those facts. They have been left out of the complaint because the abundance of
     detail about the misrepresentions themselves is, we believe, fully sufficient to merit the case going

28    forward.