IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE D. JACKSON,<br><br>          Plaintiff,<br><br>     v.<br><br>WILLIAM FISCHER., et al.,<br><br>          Defendants. | Case No.: C11-02753 PJH (JSC)<br><br>**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (Dkt. No. 148)** |

In this civil action Plaintiff Suzanne D. Jackson sues 20 business entities, executives, and investors (collectively "Defendants") for violations of the Securities Exchange Act, breach of fiduciary duty, misrepresentation, and other causes of action arising out of a series of financial transactions. (Second Amended Complaint ("SAC"), Dkt. No. 113.) Now before the Court is Plaintiff's motion for Entry of Default Judgment against Defendant Upper Orbit ("Upper Orbit"). (Dkt. No. 148.) Plaintiff alleges that Upper Orbit, a Minnesota limited liability company, defrauded Plaintiff into making loans to Upper Orbit and she seeks $13,516,968 in damages. Upper Orbit's sole member and president, Defendant William Fischer ("Fischer"), filed a petition for bankruptcy in Minnesota, and this action against him has been stayed. Having reviewed the papers submitted in support of Plaintiff's request for

1  default judgment and having had the benefit of oral argument on November 29, 2012, the
2  Court recommends that Plaintiff's motion be DENIED without prejudice.

## BACKGROUND

Upper Orbit is a Minnesota limited liability company whose sole member is co-Defendant Fischer. (SAC ¶ 13.) Fischer befriended Plaintiff in October 2006, and he began to act as Plaintiff's investment advisor after misrepresenting his background and experience. (*Id.* ¶¶ 29-34.) He expressed that he was "a man of wealthy background, [and] a sophisticated investment adviser with... access to early investment opportunities and contacts...," but he "in fact had little investment or management experience" and "all of his [prior] investments had failed ...." (*Id.* ¶¶ 31-33.) Fischer used Upper Orbit as a "corporate vehicle" to perpetuate a series of financial transactions involving Plaintiff. (*Id.* ¶ 13.) He "acted with, through, and as agent and broker for the other [D]efendants," and he "solicit[ed] loans and direct equity investments" from Plaintiff "directly or through defendant Upper Orbit." (*Id.* ¶ 38.)

In particular, Fischer solicited two loans that are the subject of this Motion. (SAC ¶¶ 33, 54-71.) First, on February 18, 2008, Plaintiff loaned Upper Orbit $1,000,000 at an 8% interest rate in exchange for 40% of Upper Orbit's profits from its trades, loans, and investments. (*Id.* ¶ 53.) The "loan was made subject to a Promissory Note ("Note 1")" and "was due on December 31, 2009." (Dkt. No. 148 at 4.) Note 1 indicates that Upper Orbit "agree[d] to make quarterly interest payments" of $20,000 and that "[i]f any installment under this Note is not paid when due and remains unpaid after a date specified by notice to Debtor by the Note Holder, the principal and accrued interest thereon shall at once become due and payable at a rate of Five (5%) percent per month thereafter." (Dkt. No. 148-2 at 4.) Plaintiff maintains that these terms provide that "in the event of default[,] interest at the rate of 5% per month would accrue—a term proposed [] by Upper Orbit to assure the plaintiff that it would not default." (Dkt. No. 148 at 4.) Note 1 was signed by Mr. Fisher as Upper Orbit's President. (Dkt. No. 148-2 at 4.) Plaintiff "agreed to the proposal" because of Mr. Fischer's "detailed" and "false" representations of his investing experiencing. (SAC ¶ 54.)

Second, on April 25, 2008, Plaintiff loaned Upper Orbit an additional $140,000 at an 8% interest rate. (Dkt. No. 148 at 4.) The loan was made subject to another Promissory Note ("Note 2") and "was due on December 31, 2009." (*Id.*)

After Upper Orbit made two initial interest payments for Note 1, it went into default on June 6, 2008. (Dkt. No. 148 at 4.) "[N]o payment was ever made" on Note 2. (*Id.*)

In the summer of 2008 Plaintiff requested that her funds be returned. (*Id.* ¶¶ 57, 60.) Fischer "presented claims of progress to assuage her concerns about her investments." (*Id.* ¶¶ 63(a)-(n).) "Fischer was acting at all times as agent for the other [D]efendants, and his ongoing assurances were made for the purpose of, and had the effect, of forestalling [Plaintiff] from taking legal action...." (*Id.* ¶ 62.) Plaintiff unsuccessfully tried "to obtain information about the whereabouts and status of her investments." (*Id.* ¶¶ 64-65.) Though it is not known how either of the two loans to Upper Orbit were spent or invested, "Fischer, through Upper Orbit, made new investments and/or loans" on Plaintiff's behalf through August 2008 to businesses that are joined as Defendants in this case. (*Id.* ¶¶ 55-56.)

Plaintiff filed a Complaint on June 6, 2011. (Dkt. No. 1.) On October 11, 2011, Upper Orbit and Fischer moved to dismiss the Complaint. (Dkt. No. 40.) Upper Orbit and Fischer were represented by the same counsel, McMahon Serepca LLP ("McMahon"). After Plaintiff filed a First Amendment Complaint ("FAC"), Upper Orbit and Fischer again moved to dismiss on January 27, 2012. (Dkt. Nos. 58, 73.) On April 24, 2012, Fischer filed a notice with the Court that he had filed for bankruptcy in Minnesota. (Dkt. No. 104.) McMahon subsequently moved to withdraw as counsel for both Fischer and Upper Orbit on May 29, 2012. (Dkt. No. 109). Before the Court responded to counsel's motion, Plaintiff filed her SAC on June 15, 2012. (Dkt. No. 113.) On July 11, 2012, the Court then ordered the action against Fischer stayed because of his bankruptcy filing. (Dkt. Nos. 121, 124.) The Court also granted McMahon's motion to withdraw conditioned upon McMahon's "[a]ccepting filing on behalf of Upper Orbit LLC until a substitution of counsel is done." (Dkt. No. 121.) The Court ordered Upper Orbit find new counsel within 30 days. (*Id.*)

3

1    New counsel for Upper Orbit never appeared, and Upper Orbit failed to respond to the
2 SAC. The district court ordered Upper Orbit to show cause "why default should not be
3 entered against it for failure to respond to the [SAC]" and "for failure to comply" with the
4 order to file a notice of substitution of counsel. (Dkt. No. 132.) After Upper Orbit failed to
5 respond, the court entered default against Upper Orbit. (Dkt. No. 142.) The district court
6 subsequently ordered Plaintiff to file a motion for default judgment against Upper Orbit or
7 dismiss her claims against it. (Dkt. No. 142.) Plaintiff filed this Motion for Entry of Default
8 Judgment against Upper Orbit on October 5, 2012 in compliance with the district court's
9 order. (Dkt. No. 148.)

10    Plaintiff served Upper Orbit with her Motion for Default Judgment on November 5,
11 2012. (Dkt. No. 167.) Although the deadline for opposing the motion has passed, *see* Civ.
12 L.R. 7-3(a), Upper Orbit has not filed an opposition nor otherwise communicated with the
13 Court.

**DISCUSSION**

**I.    Default**

16    After entry of default a court may grant default judgment on the merits of the case. *See*
17 Fed. R. Civ. P. 55. The factual allegations of the complaint, except those concerning
18 damages, are deemed to have been admitted by the non-responding party. *Geddes v. United*
19 *Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam).

   **A.    Jurisdiction and Service of Process**

21    As a preliminary matter, when a court is considering whether to enter a default
22 judgment it has "an affirmative duty to look into its jurisdiction over both the subject matter
23 and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has subject
24 matter jurisdiction pursuant to 28 U.S.C. § 1331 as the action involves federal question under
25 the Investment Advisors Act of 1940 and the Securities Exchange Act of 1934. The Court has
26 supplemental jurisdiction over the other state law claims. 28 U.S.C. § 1367.

27    A court is also required to "assess the adequacy of the service of process on the party
28 against whom default is requested." *Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters*,

4

No. 00–0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Here, service of process was adequate. As a corporate party, Federal Rule of Civil Procedure 4(h)(1)(B) provides that service to any authorized agent of the corporation satisfies service. Here, McMahon agreed to "[a]ccept[] filing on behalf of Upper Orbit LLC until a substitution of counsel is done." (Dkt. No. 121.) As counsel has not been substituted, McMahon has served as Upper Orbit's agent for service of process, and McMahon was served the summons regarding the SAC. (Dkt. No. 114.)

### B. Default Judgment

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A court should consider the following factors in determining whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Plaintiff's reliance on *Neuman Productions v. Albright*, 862 F.2d 1388 (9th Cir. 1988) and *Meadows v. Dominican Republic*, 817 F.2d 517 (9th Cir. 1987), for the appropriate standard for default judgment is misplaced. As Plaintiff notes "[t]he *Nueman/Meadows* standards were applied in the context of Rule 60(b) motion to vacate default judgments." (Dkt. No. 168 at 3.) Though related, the standard for ruling on a Rule 55 motion is not the same as the standard for ruling on a Rule 60(b) motion, and neither *Neuman* nor *Meadows* overruled *Eitel*. *Eitel* still provides the relevant factors for determining whether entry of default judgment is appropriate. *See*, *e.g.*, *Eason v. Indymac Fed. Bank FSB*, 481 F. App'x 418 (9th Cir. 2012) (affirming a district court's denial of default judgment based on the *Eitel* factors).

In addition to the *Eitel* factors, the Court must consider that Plaintiff is seeking a judgment as to only one of many defendants. "[T]he court may direct entry of a final judgment as to one or more, but fewer than all ... [of the] parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). In *Frow v. De La*

5

*Vega*, 82 U.S. (15 Wall.) 552 (1872), "the Supreme Court held that under certain circumstances, the court should not enter a default judgment against one or more defendants which is, or likely to be, inconsistent with judgment on the merits in favor of the remaining answering defendants." *Shanghai Automation Instrument Co., Ltd. v. Kuei* ("*Shanghai Automation*"), 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (discussing *Frow*, 82 U.S. 552). *Frow* thus "stands for the proposition that when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted." *Id.* at 1006 (internal quotation marks and citation omitted).

"*Frow* is not limited to claims asserting joint liability, but extend[s] to certain circumstances in which the defendants have closely related defenses or are otherwise similarly situated." *Shanghai Automation*, 194 F. Supp. 2d at 1006; *see also In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (holding bankruptcy court abused its discretion by entering default judgments against co-defendants "that were inconsistent with the bankruptcy court's earlier summary judgment ruling" regarding the answering co-defendants); *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1458-59 (5th Cir. 1992) (affirming district court's setting aside of default judgments entered against co-defendant corporations where a jury trial acquitted the individual who served as the corporation's "alter ego" of all wrongdoing because of the "injustice ... [that] the damages flowed from untried claims against corporations which were merely an extension of that individual").

> *Frow's* applicability turns not on labels such as "joint liability" or "joint and several liability," but rather on the key question of whether under the theory of the complaint, liability of all the defendants must be uniform. Where *Frow* applies, it would be an abuse of discretion to enter a default judgment against some but not all defendants prior to adjudication of the claims against answering defendants. Under these circumstances, there is, as a matter of law, "just reason for delay" of entry of judgment under Rule 54(b).

*Shanghai Automation*, 194 F. Supp. 2d at 1008. "On the other hand, where uniformity of liability is not logically required by the facts and theories of the case, the risk of inconsistent

6

judgments is not sufficiently extreme to bar entry of default judgment as a matter of law." *Id.* at 1008-09.

"Uniformity of liability" is logically required by the SAC allegations with respect to Upper Orbit and at least one answering defendant, namely Fischer. The SAC contains seven different claims for relief against Upper Orbit as one of 20 co-defendants. Fischer is named as a defendant in each of those seven claims, along with Upper Orbit. With the exception of the claim for an accounting, each claim is premised on misrepresentations, conduct or omissions perpetrated by defendant Fischer. Thus, a default judgment against Upper Orbit would necessarily be logically inconsistent with a finding of no liability against Fischer. It would therefore be an abuse of discretion to enter judgment in favor of Upper Orbit until the claims against Fischer are resolved. *Shanghai Automation*, 194 F. Supp. 2d at 1008.

In *Newman v. McGrath,* for example, the court denied plaintiff's application for entry of default judgment where the action against one of two co-defendants was stayed pursuant to a bankruptcy petition. *Newman v. McGrath*, No. 06-05931, 2007 WL 1033473 (N.D. Cal. Apr. 4, 2007) *on reconsideration*, No. 06-05931, 2008 WL 512726 (N.D. Cal. Feb. 25, 2008). The court reasoned that because the "legal bases for liability asserted against the defendants are not distinct" it could not enter default judgment against the co-defendant against whom the action had not been stayed. (*Id.* at *2.) The court noted that the single alleged cause of action of fraud involved "closely related defenses" for each defendant, and therefore judgment could not be entered until the matter had "been adjudicated with regard to both defendants." *Id.* After the bankruptcy stay was lifted and the claims against the co-defendant were dismissed, the court entered default judgment on reconsideration. *Newman v. McGrath* ("*Newman II*"), 2008 WL 512726. The same result is required here.

The Court disagrees with Plaintiff's assertion that "[t]he unique facets of Upper Orbit's liability arise from promissory notes, loans and a 'trading agreement' to which no other defendant was a party." (Dkt. No. 168 at 8.) The SAC does not include a claim for breach of the promissory notes, loans or any trading agreement between Plaintiff and Upper Orbit; instead, each claim is premised on Fischer's fraudulent conduct. For example, Plaintiff

alleges that Fischer's representations induced Plaintiff to make the two loans at issue in this default judgment. (SAC at ¶ 54.) And Plaintiff alleges that Fischer used Upper Orbit as a "corporate vehicle." (*Id.* ¶ 13.) While Plaintiff contends that she "will not seek to impose liability on any other defendant for the damages sought through the default judgment," in a footnote she concedes that "a sole possible exception may relate to defendant William Fischer." (Dkt. No. 168 at 9.) "[S]hould his bankruptcy action be dismissed and the stay in this action be lifted" then Plaintiff might pursue claims against Fischer. (*Id.*) If the court were to enter default judgment against Upper Orbit on the claims currently pled in the SAC, and then Fischer were to successfully defend against those same claims, the judgment against Upper Orbit and the judgment in favor of Fischer would be logically inconsistent. Thus, a default judgment at this time would be premature.

Plaintiff's contention that "Fischer would face substantial additional liability under other Counts" unrelated to the loans is immaterial. (*Id.*) The relevant question is whether Plaintiff intends to pursue the claims against Fischer that are inexorably linked with the claims against Upper Orbit. She has said that she does. Accordingly, *Frow* applies and the Court lacks discretion to enter the default judgment at this time. The Court therefore recommends that the motion for default judgment be denied without prejudice to being renewed when the identical claims against Fischer are resolved by dismissal or on the merits.

## CONCLUSION

Accordingly, the Court RECOMMENDS that Plaintiff's motion for default judgment be DENIED WITHOUT PREJUDICE because of the risk of inconsistent judgments. The motion may be renewed when the claims against Fischer are adjudicated or otherwise resolved. Plaintiff may file objections to this Report and Recommendation under Federal Rule of Civil Procedure 72(b) within 14 days of the filing of this Order.

1 **IT IS SO ORDERED.**

Dated: November 29, 2012.

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE