United States District Court
For the Northern District of California

1
2
3
4
5
6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7
8
9
10
11
12

13 | SUZANNE D. JACKSON,

14 |         Plaintiff,

15 |     v.

16 | WILLIAM FISCHER, et al.,

17 |         Defendants.
       _____/

No. C 11-2753 PJH

**ORDER GRANTING MOTIONS
TO DISMISS**

18

19       Defendants' motions to dismiss the second amended complaint for failure to state a

20 claim came on for hearing before this court on December 5, 2012.  Plaintiff Suzanne D.

21 Jackson appeared by her counsel Alan H. Kaufman and Robert J. Stumpf; defendants Jon

22 Sabes, Steven Sabes, and Marvin Siegel appeared by their counsel Tanya Herrera;

23 defendants Mani Koolasuriya and Monvia Inc. appeared by their counsel Jake Molland;

24 defendant Jorge Fernandes appeared by his counsel Mary C. Garfein; and defendant New

25 Moon Girl Media, Inc. (or New Moon Girl LLC) appeared by its counsel Gregory M. Doyle

26 and Thomas M. Crowell.  Having read the parties' papers and carefully considered their

27 arguments and the relevant legal authority, the court hereby GRANTS the motions as

28 follows.

**BACKGROUND**

This is a securities fraud case that was originally filed in June 2011, by plaintiff Suzanne D. Jackson.  In the second amended complaint ("SAC"), plaintiff asserts claims against 20 defendants – William Fischer; Jon Sabes; Steven Sabes; Marvin Siegal; Brian Campion; Lonnie Bookbinder; Mani Koolasuriya; Jorge Fernandes; Joshua Rosen; Steve Waterhouse; Jean Paul a/k/a "Buzzy" Lamere; Upper Orbit LLC; SpeciGen, Inc.; Peer Dreams, Inc.; Notebookz Inc.; ILeonardo.com, Inc.; New Moon LLC; Monvia LLC; CII Limited; and Sazani Beach Hotel.

●      Defendant William Fischer ("Fischer") is alleged to be an "investment manager" who placed Mrs. Jackson into numerous assertedly risky investments.  He allegedly represented himself as a "sophisticated investment advisor" with "connections to high tech issuers" and "access to early investment opportunities," but is in fact (according to plaintiff), a twice-convicted felon who has served time prison.  He is also alleged to be the president of defendant SpeciGen, Inc. ("SpeciGen").

●      Defendant Upper Orbit LLC ("Upper Orbit") is a Minnesota limited liability company, whose sole member is alleged to be Fischer.

●      Defendants Jon Sabes ("J. Sabes") and Steven Sabes ("S. Sabes") are alleged to be Minnesota investors and financial services executives, and both are allegedly on the board of SpeciGen.

●      Defendant Marvin Siegel ("Siegel") is a pharmaceutical industry executive, and CEO of Robbeson Inc. (not a defendant), which is located in Pennsylvania.  Plaintiff alleges that "[a]t times pertinent to this matter," Siegel was the Chief Executive Officer ("CEO") of SpeciGen.

●      Defendant Lonnie Bookbinder ("Bookbinder") is a biopharmaceutical industry executive and West Coast Regional Director at Calvert Research, located in North Carolina.  Plaintiff alleges that "[a]t times pertinent to this matter," Bookbinder was the CEO of SpeciGen.

●      Defendant Jean Paul "Buzzy" Lamere ("Lamere") was formerly president of a

United States District Court

For the Northern District of California

1   now-defunct company called Toppost, and is currently president of IPRental.com.  Plaintiff

2   alleges that "[a]t times pertinent to this matter," Lamere served as a "consultant" to

3   SpeciGen, and that he is a convicted felon.  He allegedly resides in Minnesota and

4   maintains an office in San Francisco, California.

5   ● Defendant SpeciGen is a developmental biotech company, based in Palo

6   Alto, and a Delaware corporation.

7   ● Defendant Brian Campion ("Campion") is allegedly the current president of

8   SpeciGen, and was formerly Vice President for Corporate Development.

9   ● Defendant Mani Koolasuriya ("Koolasuriya") is an internet industry executive

10  and managing partner of defendant Monvia Inc. ("Monvia"), located in Redwood City,

11  California.  Plaintiff alleges that "[a]t times pertinent to this matter," Koolasuriya was an

12  executive and director of defendant PeerDreams, Inc. ("PeerDreams"), and supposedly a

13  "co-venturer" with Fischer and "involved in other investments with plaintiff Jackson."

14  ● Defendant Jorge Fernandes ("Fernandes") is a high tech industry executive,

15  alleged to currently be the chairman of VIVOtech, Inc., and chief executive of Mobilbucks,

16  Inc. ("Mobilbucks"), located in Santa Clara, California.  Plaintiff alleges that "[a]t times

17  pertinent to this matter," Fernandes was a director of defendant Monvia, and CEO of

18  Mobilbucks.

19  ● Defendant Monvia is alleged to be a Delaware corporation, based in

20  Redwood City, California, with some apparent connection to defendant PeerDreams.

21  ● Defendant PeerDreams is or was a Delaware corporation.

22  ● Defendants Steve Waterhouse ("Waterhouse") and Joshua Rosen ("Rosen" –

23  "a film director and internet entrepreneur" located in Berkeley, California) were founding

24  directors of defendant Notebookz, Inc. ("Notebookz").  Rosen was also founder and CEO of

25  defendants Notebookz and ILeonardo.com, Inc. ("ILeonardo.com").

26  ● Defendants Notebookz and ILeonardo.com are or were Delaware

27  corporations.

28  ● Defendant New Moon Girl Media, Inc., or New Moon Girl LLC ("New Moon")

is a print and on-line media company based in Minnesota.  Its state of incorporation (assuming it is a corporation) is not alleged in the SAC.

●      Defendant CII Ltd. is a Caymans Island corporation allegedly formed by Fischer to invest in defendant Sazani Beach Hotel (located in Zanzibar, Tanzania) and other entities in Tanzania, Dubai, and elsewhere.

Plaintiff allegedly became acquainted with Fischer in October 2006.  Beginning in the fall of 2006, Fischer suggested numerous investments to plaintiff, and she eventually invested (or loaned Fischer and/or various companies) between $3,000,000 and $4,000,000.

Plaintiff alleges that beginning in December of 2006 with a $250,000 loan to SpeciGen, Fischer "acting with, through and as agent and broker for the other defendants," solicited loans and investments from plaintiff, in companies that included SpeciGen, Notebookz, ILeonardo.com, PeerDreams, CII Limited, Sazani Beach Hotel, New Moon, Toppost (not a defendant), and Rate-it-All (not a defendant).  SAC ¶ 38.

Many of these investments were made via Upper Orbit, a limited liability company controlled by Fischer (and allegedly used by Fischer as a "broker-dealer").  See SAC ¶ 13. Plaintiff claims that Fischer never provided any written offering materials, or would provide her with documents to sign that had the signature page separate from the document; or that he would simply "orally inform" her of the investment, and direct her where to send the check.  SAC ¶¶ 39-44.

In February 2008, Fisher allegedly made a proposition to plaintiff – that she loan Upper Orbit $1 million at 8% interest, plus a 40% share in the profits realized by Upper Orbit from "trading equities, making loans and investing in private equity opportunities." SAC ¶ 53.

Plaintiff asserts that in the summer of 2008, she became concerned about the money she had invested with Fischer in the $1 million "trading account" and asked to have the money returned.  SAC ¶ 57.  In response, Fischer allegedly proposed a "restructuring" of loans plaintiff had made to Upper Orbit.  SAC ¶ 58.

United States District Court

For the Northern District of California

1      Plaintiff alleges that from the latter half of 2008 through 2009, Fischer continued to

2  represent to her that he was working actively with SpeciGen, New Moon, PeerDreams,

3  Toppost, and Notebookz to "improve their fortunes" and "turn it around."  SAC ¶ 59.  By

4  mid-2009, plaintiff allegedly became more concerned about missed loan payments,

5  restructurings that were never finalized, a supposed sale of the Sazani Beach Hotel, and

6  absence of current financial information.  SAC ¶ 60.

7      In the SAC at ¶ 63, plaintiff lists the following statements allegedly made by Fischer

8  between August 2008 and March 2010 for the purpose of "assuag[ing] her concerns about

9  her investments" –

10          a.  On August 4, 2008, Fischer reported he was meeting with a partner of

11  a venture fund to review the SpeciGen patent portfolio, and told plaintiff that he had

12  "pitched [the venture fund partner] about the hydrogen and now he has told partners at [the

13  venture fund] and they are totally gungho about Thermal biology research."

14          b.  Also on August 4, 2008, Fischer reported that on August 1st, he had

15  "signed a purchase agreement to sell the 50 shares of Sazani for $500,000" and that "[w]e

16  close on the deal Oct. 1st."

17          c.  On August 18, 2008, Fischer advised that he would "be in Duluth with

18  Mani [Koolasuriya] from Monvia . . . for the rest of the week" and that they would be "getting

19  ready for the New Moon site to launch . . . and raising funds from local investors."

20          d.  On August 26, 2008, Fischer told plaintiff that "we are about to close a

21  deal with Mobilbucks [run by Fernandes] in Dubai."

22          e.  On September 1, 2008, defendant Joshua Rosen reported, "This

23  morning Mashable ranks ILeonardo.com above Google notebook as the best Research

24  utility on the web."

25          f.  On October 27, 2008, Fischer "passed along" Koolasuriya's report that

26  "the Dubai Cares deal signed" and that "[m]oney will start coming in by the end of week and

27  all of it by November."  The "Dubai Cares" deal was allegedly represented as enhancing the

28  value of PeerDreams, a Monvia project in which plaintiff had invested $200,000.

United States District Court

For the Northern District of California

1    g.    In late November 2008, Fischer (now allegedly employed by New

2    Moon) wrote from Germany to say he was raising funds for New Moon in four German

3    cities and would be doing further fund raising in Spain the following week.

4    h.    In December 2008, Fisher reported, "I think I have gotten us a $300K

5    investment into Specigen . . . but time will tell . . . we are beginning to see the light of day

6    here."

7    i.    In July 2009, Fischer advised that "we can get a deal completed" for

8    the sale of PeerDreams.

9    j.    In August 2009, Fischer reported progress on a buyer for New Moon,

10   stating that "we might have acquisition sooner than later."

11   k.    In January 2010, New Moon submitted what plaintiff terms "a rosy

12   report" through Fischer that "[w]e'll be moving forward in our plan to get a significant

13   strategic partner on-board in the next 6 months."

14   l.    In February 2010, Fischer reported progress on a "Specigen

15   acquisition."

16   m.    Also in February 2010, Fischer told plaintiff, "[W]e should have a deal

17   by the end of March to put PeerDreams on 3 of the Smithsonian websites!"

18   n.    At the end of March 2010, after reviewing plaintiff's overall

19   investments, Fischer said, "[N]ow that I have gotten things stabilized I am working on

20   generating growth and revenue.  A few more months of heads down manic work and we'll

21   start seeing some light in this tunnel."

22   Plaintiff asserts, however, that beginning in June 2010, Fischer started to report

23   problems, such as his concern that "we are being cheated by Fernandes."  She alleges that

24   throughout the fall of 2010, she continued attempting to obtain information about the

25   whereabouts and status of her investments, but that those efforts were frustrated by

26   Fischer's "delays, his failures to reply and the failure of the other defendant entities to

27   reply."  In addition, she contends, the "deals" that Fischer claimed he was arranging for

28   SpeciGen, New Moon, PeerDreams, CII, Mobilbucks, and Toppost were not coming to

1 fruition, but Fischer concealed that fact from her.  SAC ¶¶ 64-65.

2          Plaintiff filed the original complaint in this action on June 6, 2011.

3          On March 19, 2012, the clerk entered default as to SpeciGen, Peer Dreams, and

4 ILeonardo.com.  Plaintiff has not filed a motion for default judgment as to any of those

5 defendants.

6          In April 2012, Fischer filed for Chapter 7 bankruptcy protection, asserting that he had

7 more than $12 million in liabilities (listing plaintiff as the major creditor).  Accordingly, the

8 case is presently stayed as to Fischer.

9          Plaintiff filed the SAC on June 15, 2012, pursuant to stipulation.

10         On June 15, 2012, the court granted plaintiff's request to serve the Sazani Beach

11 Hotel by email, but subject to the condition that plaintiff obtained and filed some form of

12 written acknowledgment of receipt.  To date, that has not occurred.

13         On July 6, 2012, Campion, Notebookz, and Joshua Rosen filed answers to the SAC.

14         In addition, default was entered against defendant Upper Orbit after it failed to

15 appear by counsel.  Plaintiff filed a motion for default judgment, which was denied on

16 January 2, 2013, without prejudice to refiling once the claims against Fischer had been

17 resolved.

18         On November 1, 2012, Waterhouse filed an answer to the complaint.

19         To date, the following defendants have not entered an appearance:  Bookbinder,

20 SpeciGen (but default entered), Peer Dreams (but default entered), ILeonardo.com (but

21 default entered), Sazani Beach Hotel; Lamere; and CII Limited (served by registered mail

22 on August 24, 2012).

23         In the SAC, plaintiff alleges 11 causes of action – (1) a claim for an accounting

24 (against all defendants); (2) violation of § 10(b) of the Securities Exchange Act of 1934, 15

25 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder (against all defendants);

26 (3) violation of Cal. Corp. Code § 25401 and 25501 (against all defendants); (4) violation of

27 Cal. Corp. Code § 25504 (against all defendants); (5) breach of fiduciary duty (against J.

28 Sabes, S. Sabes, Siegel, Campion, Koolasuriya, Fernandes, Waterson and "the directors of

United States District Court

For the Northern District of California

1  the other corporate defendants"); (6) violation of California Investment Advisors Code, Cal.

2  Corp. § 25230 (against Fischer only); (7) declaratory judgment of breach of Investment

3  Advisors Act of 1940 (against Fischer only); (8) negligent misrepresentation (against all

4  individual defendants); (9) violation of Cal. Corp. Code § 25501.5 (against all defendants);

5  (10) violation of § 20 of the 1934 Securities Exchange Act, 15 U.S.C. § 78t (against all

6  director and officer defendants, as controlling persons); and (11) common law

7  misrepresentation (against all defendants).

8      Now before the court are motions to dismiss the SAC for failure to state a claim, filed

9  by (1) J. Sabes, S. Sabes, and Siegel; (2) Koolasuriya and Monvia; (3) New Moon; and (4)

10  Fernandes.

11                              **DISCUSSION**

12  A.    Legal Standard

13      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

14  sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191,

15  1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint.  Allarcom

16  Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive

17  a motion under Rule 12(b)(6), a complaint must satisfy  the pleading requirements of

18  Federal Rule of Civil Procedure 8 by providing a "short and plain statement of the claim

19  showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

20      The court must "accept all factual allegations in the complaint as true and construe

21  the pleadings in the light most favorable to the nonmoving party."  Outdoor Media Group,

22  Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  However, legally

23  conclusory statements, not supported by actual factual allegations, need not be accepted.

24  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The allegations in the complaint "must be

25  enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v.

26  Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted).

27      A motion to dismiss should be granted if the complaint does not proffer enough facts

28  to state a claim for relief that is plausible on its face.  See id. at 558-59.  A claim has facial

United States District Court

For the Northern District of California

1  plausibility when the plaintiff pleads factual content that allows the court to draw the

2  reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556

3  U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to

4  infer more than the mere possibility of misconduct, the complaint has alleged – but it has

5  not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679.  In the event dismissal is

6  warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved

7  by any amendment.  See In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005).

8         Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake

9  shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Under Rule 9(b), falsity must be

10 pled with specificity, including an account of the "time, place, and specific content of the

11 false representations as well as the identities of the parties to the misrepresentations."

12 Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted).

13        The allegations "must be specific enough to give defendants notice of the particular

14 misconduct which is alleged to constitute the fraud charged so that they can defend against

15 the charge and not just deny that they have done anything wrong."  Bly-Magee v.

16 California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and quotations omitted).  In

17 addition, the plaintiff must do more than simply allege the neutral facts necessary to identify

18 the transaction; he must also explain why the disputed statement was untrue or misleading

19 at the time it was made.  Yourish v. California Amplifier, 191 F.3d 983, 992–93 (9th Cir.

20 1999).

21 B.     Defendants' Motions

22        As an initial matter, the court notes that the SAC alleges few facts against any

23 defendant other than Fischer.  On this basis alone, the complaint must be dismissed for

24 failure to comply with Rule 8(a) and the pleading requirements established by the Supreme

25 Court in Twombly/Iqbal.

26        1.     Motion by SpeciGen D&O defendants

27        Defendants J. Sabes, S. Sabes, and Siegel (the SpeciGen "D&O defendants") seek

28 an order dismissing all nine causes of action alleged against them, pursuant to Rule

9

United States District Court

For the Northern District of California

1   12(b)(6) and Rule 9(b).

2           a.     Claims under § 10(b) and Rule 10b-5

3        Defendants contend that the second cause of action for violation of § 10(b) and Rule

4   10b-5, fails to state a claim for relief because the SAC fails to allege a statement or

5   omission that was knowingly false or misleading when made with the specificity required by

6   the Private Securities Litigation Reform Act ("PSLRA"); fails to allege that the D&O

7   defendants owed (or breached) a duty to disclose; fails to allege reliance; and fails to allege

8   facts supporting a clear inference of scienter.

9        In opposition plaintiff argues that she has "documented" five specific

10  misrepresentations as to SpeciGen (citing SAC ¶¶ 84(a)(i)-(iv)), and five specific omissions

11  as to SpeciGen (citing SAC ¶¶ 85(a)(i)-(iii), (v)-(vi)).  The alleged misrepresentations

12  include statements that other sophisticated investors had put money into SpeciGen; that

13  SpeciGen had all the licenses and rights to patents it needed to move to production; that

14  SpeciGen was near commercialization and had partners who could help it get there; and

15  that plaintiff was being offered the same investment terms as other investors.  However,

16  none of the alleged misrepresentations or omissions are directly attributed to the D&O

17  defendants.  Instead, to the extent they are attributed at all, it is to Fischer.

18       The alleged omissions include the failure to disclose that J. Sabes and S. Sabes

19  were given 30% of the stock in SpeciGen for no consideration; that J. Sabes and S. Sabes

20  contributed $400,000 to a favorite non-profit of Fischer's, for which they were given a

21  controlling position in SpeciGen; that the SpeciGen business plan and advantageous

22  investment terms were given to other investors, but not to plaintiff; and that SpeciGen had

23  given 50,000 shares to Lamere, a childhood friend of Fischer's, for supposed "consulting

24  services."

25       Plaintiff asserts that these alleged misrepresentations/omissions were material,

26  because if the true or complete information had been disclosed, she would have made a

27  different investment decision.  Plaintiff also contends that she has adequately alleged facts

28  creating a strong inference of scienter, and claims that the itemization of the

United States District Court

For the Northern District of California

1   misrepresentations in SAC ¶ 84 and the omissions in SAC ¶ 85 "describe statements of

2   fact that are so inaccurate as to be either reckless or intentional," and that their purpose

3   was plainly to induce her to invest in SpeciGen (which provides a strong financial motive).

4   Finally, plaintiff argues that her reliance was justifiable, as alleged in SAC ¶¶ 86 and 87,

5   and that she has demonstrated both economic loss and loss causation.

6          The court finds that the motion must be GRANTED.  Section 10(b) of the Securities

7   Exchange Act provides, in part, that it is unlawful "to use or employ in connection with the

8   purchase or sale of any security registered on a national securities exchange or any

9   security not so registered, any manipulative or deceptive device or contrivance in

10  contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C.

11  § 78j(b).

12         SEC Rule 10b-5, promulgated under the authority of § 10(b), makes it unlawful for

13  any person to use interstate commerce

14         (a) To employ any device, scheme, or artifice to defraud,

15         (b) To make any untrue statement of a material fact or to omit to state a
       material fact necessary in order to make the statements made, in the light of
16         the circumstances under which they were made, not misleading, or

17         (c) To engage in any act, practice, or course of business which operates or
       would operate as a fraud or deceit upon any person, in connection with the
18         purchase or sale of any security.

19  17 C.F.R. § 240.10b-5.

20         To state a claim for securities fraud under § 10(b) and Rule 10b-5, a plaintiff must

21  plead a material misrepresentation or omission by the defendant; scienter; a connection

22  with the purchase or sale of a security; reliance; economic loss; and loss causation.

23  Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 157 (2008); see also Dura

24  Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).  A fact is material if it would have

25  assumed actual significance in the deliberations of a reasonable investor.  TSC Indus., Inc.

26  v. Northway, Inc., 426 U.S. 438, 449 (1976).

27         At the pleading stage, a complaint stating claims under § 10(b) and Rule 10b-5 must

28  satisfy both Rule 9(b) and the requirements of the PSLRA.  In re VeriFone Holdings, Inc.

United States District Court

For the Northern District of California

1    Sec. Litig., 704 F.3d 694, 701 (9th Cir. 2012).  Congress established the PSLRA to

2    establish uniform and stringent pleading requirements for securities fraud actions, and to

3    put an end to the practice of pleading "fraud by hindsight."  See In re Silicon Graphics, Inc.

4    Sec. Litig., 183 F.3d 970, 958 (9th Cir. 1999).  Under the PSLRA, the complaint must plead

5    both falsity and scienter with particularity.  See Zucco Partners, LLC v. Digimarc Corp., 552

6    F.3d 981, 990 (9th Cir. 2009).  If the complaint does not satisfy the PSLRA's pleading

7    requirements, the court, upon motion of the defendant, must dismiss the complaint.  15

8    U.S.C. § 78u-4(b)(3)(A).

9         Under the PSLRA – whether alleging that a defendant "made an untrue statement of

10   a material fact" or alleging that a defendant "omitted to state a material fact necessary in

11   order to make the statements made, in the light of the circumstances in which they were

12   made, not misleading" – the complaint must "specify each statement alleged to have been

13   misleading, the reason or reasons why the statement is misleading, and, if an allegation

14   regarding the statement or omission is made on information and belief, . . . [must] state with

15   particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).

16        A statement or omission is misleading in the securities fraud context "if it would give

17   a reasonable investor the 'impression of a state of affairs that differs in a material way from

18   the one that actually exists.'"  Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 985 (9th

19   Cir. 2008) (citation omitted).  However, "vague claims about what statements were false or

20   misleading [and] how they were false" are subject to dismissal.  Metzler Inv. GMBH v.

21   Corinthian Colls., Inc., 540 F.3d 1049, 1070 (9th Cir. 2008).

22        In addition, liability under Rule 10b-5 is limited to parties who actually "make"

23   misstatements of fact.  See Janus Capital Group, Inc. v. First Derivative Traders, 131 S.Ct.

24   2296, 2302 (2011) ("One 'makes' a statement by stating it.").  Here, with regard to

25   SpeciGen, the SAC alleges only that "the company" made "misleading" disclosures "orally

26   and through defendant Fischer," SAC ¶¶ 84, 84(a).  However, plaintiff has not alleged that

27   any individual defendant, other than Fischer, "made an untrue statement of a material fact"

28   or "omitted to state a material fact necessary in order to make the statements made, in the

United States District Court

For the Northern District of California

1    light of circumstances in which they were made, not misleading."  Indeed, plaintiff's counsel

2    conceded at the hearing on the present motions that the D&O defendants "were not the

3    speakers" – asserting that they were, instead, "the source" of the information

4    communicated in the alleged false statements.  And even as to Fischer, the SAC does not

5    allege <u>facts</u> showing that the alleged false statements were false when made.

6          Accordingly, the court finds that the Securities Act claims must be dismissed as to

7    the D&O defendants for failure to allege falsity with particularity.  Based on plaintiff's

8    counsel's representation at the hearing that Fischer – not the individual defendants – was

9    "the speaker," the dismissal is with prejudice.  Because the court finds that plaintiff has not

10   – and cannot – allege that the D&O defendants made any false or misleading statements to

11   her, the court finds it unnecessary to consider whether the SAC alleges facts sufficient to

12   give rise to a "strong inference that the defendant[s] acted with the required state of mind."

13   15 U.S.C. § 78u-4(b)(2).

14                 b.    Claim under § 20

15         The tenth cause of action for violation of § 20 of the Exchange Act is asserted

16   against "the Director and Officer defendants, as controlling persons," which plaintiff

17   explains as "officer[s] and directors" of "the closely held entities for which [her] investments

18   were solicited" – those individuals who were "directly involved in [those companies'] day-to-

19   day operations as well as in the strategic decisions made by the companies."  SAC ¶ 141.

20   Nowhere in the tenth cause of action does plaintiff specify the "officers and directors" (or

21   identify the "closely held companies") to whom the § 20 claim is directed.  The D&O

22   defendants argue that § 20 claim fails because the SAC fails to establish a primary violation

23   of the Exchange Act and fails to allege that the D&O defendants were "control persons"

24   within the meaning of the statute.

25         Under § 20(a) of the Exchange Act, joint and several liability can be imposed on

26   persons who directly or indirectly control a violator of the securities laws. 15 U.S.C.

27   § 78t(a).  Under § 20(b) of the Exchange Act, "[i]t shall be unlawful for any person, directly

28   or indirectly, to do any act or thing which it would be unlawful for such person to do under

1   the provisions of this chapter or any rule or regulation thereunder through or by means of

2   any other person."  15 U.S.C. § 78t(b).

3        A plaintiff alleging a § 20(a) claim that individual defendants are "controlling persons"

4   of a company must plead facts showing a primary violation under the Exchange Act, and

5   must also allege that the defendant exercised actual power or control over the primary

6   violator.  No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. America West

7   Holding Corp., 320 F.3d 920, 945 (9th Cir. 2003); see also Howard v. Everex Sys., Inc.,

8   228 F.3d 1057, 1065 (9th Cir. 2000).  Section 20 claims "may be dismissed summarily . . .

9   if a plaintiff fails to adequately plead a primary violation of section 10(b)."  Zucco, 552 F.3d

10  at 990.

11       Thus, the viability of the § 20 claim depends on the viability of the primary claims

12  under § 10(b) and Rule 10b-5.  Under § 20(a), a defendant employee of a corporation that

13  has violated the securities laws "will be jointly and severally liable to the plaintiff, as long as

14  the plaintiff demonstrates 'a primary violation of federal securities law' and that 'the

15  defendant exercised actual power or control over the primary violator.'"  Id. (citations

16  omitted).

17       Thus, assuming that plaintiff can state a primary violation against SpeciGen, she

18  may be able to state a § 20(a) claim against the D&O defendants.  However, as presently

19  constituted, the SAC does not appear to adequately allege either falsity or scienter against

20  SpeciGen (which in any event failed to enter an appearance) – although the question

21  whether the SAC states a claim against SpeciGen is not presently before the court.

22       In her opposition to the present motion, plaintiff argued that the D&O defendants are

23  liable as controlling persons of the entities in which her money was invested, and also by

24  "common law respondeat superior" – which latter allegation was not pled in the SAC.   To

25  the extent that plaintiff is attempting to allege liability for fraud under a theory of respondeat

26  superior, there are no facts pled in the SAC showing that the D&O defendants were acting

27  as the agents of any primary violator.

28       It is true that the Ninth Circuit recognizes respondeat superior liability for a

United States District Court

For the Northern District of California

1   corporation under § 10(b) and 10b-5 based on common law agency principles.  See

2   Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1576-78 (9th Cir. 1990).  This is a distinct

3   basis of liability from that imposed under Section 20(a), and appears to be used primarily to

4   impute the scienter of individual corporate officers onto the corporation.  See, e.g., Curry v.

5   Hansen Medical, Inc., 2012 WL 3242447 at *12-13 (N.D. Cal. Aug. 10, 2012).

6       However, where a plaintiff alleges that a defendant is liable for fraud under an

7   agency theory, Rule 9(b) requires that the existence of the agency relationship be pled with

8   particularity.  See Swarz, 476 F.3d at 764-65.  The plaintiff must allege that the agent or

9   apparent agent holds power to alter the legal relations between the principal and third

10  persons, and between the principal and the agent; that the agent is a fiduciary with respect

11  to matters within the scope of the agency; and that the principal has the right to control the

12  conduct of the agent with respect to matters entrusted to him.  See RPost Holdings, Inc. v.

13  Trustifi Corp., 2011 WL 4802372 at *3-4 (C.D. Cal. Oct. 11, 2011); Palomares v. Bear

14  Stearns Residential Mort. Corp., 2008 WL 686683 at *4-5 (S.D. Cal. Mar. 13, 2008).

15      Given the lack of a viable allegation of primary liability, the § 20 claim must be

16  dismissed.  To the extent that plaintiff is seeking leave to amend to allege liability based on

17  a theory of respondeat superior, that request is granted.

18              c.    claim of breach of fiduciary duty

19      The D&O defendants assert that the fifth cause of action for breach of fiduciary duty

20  must be dismissed because the SAC fails to plead specific facts showing that any of them

21  acted in bad faith, as required to establish liability for breach of a duty of care under the

22  exculpatory provision in SpeciGen's Certificate of Incorporation; because plaintiff lacks

23  standing to bring a claim for breach of fiduciary duty because any harm suffered was

24  suffered in the first instance by SpeciGen, and the only damage suffered by plaintiff was

25  the loss of value of her investment; because the claim for breach of fiduciary duty – which

26  essentially alleges injury to SpeciGen, not to plaintiff – conflicts with her direct claims for

27  damages and rescission; and because the SAC does not allege that the D&O defendants

28  failed to implement a system of controls or consciously failed to monitor the operation of

United States District Court

For the Northern District of California

1  such a system, as required for a "failure of oversight" claim under Delaware law.

2      In opposition, plaintiff devotes a single paragraph to an argument that the D&O

3  defendants are not saved by the exculpatory clauses in SpeciGen's incorporation

4  documents because plaintiff never saw those papers in conjunction with her purchases.

5  Moreover, she asserts, the SAC is "replete with documentation of bad faith conduct" –

6  although she does not specify any particular conduct or refer to any particular allegations in

7  the SAC.

8      As for the argument that the claim alleges harm to the corporation, not to plaintiff as

9  an investor, she responds that the fact that the harm was suffered by the corporation does

10 not shield the directors because SpeciGen was a "closely held company," and that under

11 the law of its state of incorporation, directors have a fiduciary duty both towards the

12 corporation and towards its shareholders.

13     The court finds that the motion must be GRANTED.  The dismissal is with leave to

14 amend.  SpeciGen is alleged to be a Delaware corporation. The directors of a Delaware

15 corporation owe fiduciary duties of care and loyalty to the corporation they direct.  See

16 Lynondell Chem Co. v. Ryan, 970 A.2d 235, 239 (Del. 2009).  They have "an unyielding

17 fiduciary duty to protect the interests of the corporation and to act in the best interests of its

18 shareholders."  Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 360 (Del. 1993).  However,

19 if the corporation's certificate of incorporation contains an exculpatory provision pursuant to

20 8 Del. Ch. § 102(b)(7), barring claims for monetary liability against directors for breaches of

21 the duty of care, the complaint must state a nonexculpated claim, i.e., a claim predicated

22 on a breach of the directors' duty of loyalty or bad faith conduct.  See Lyondell, 970 A.2d at

23 239-40.

24     Thus, because SpeciGen's articles of incorporation include an exculpatory clause,

25 plaintiff must allege facts showing that the D&O defendants acted in bad faith or

26 intentionally failed to act in the face of a known duty to act in order to state a claim for

27 breach of fiduciary duty.  See In re Caremark Int'l Deriv. Litig., 698 A.2d 959, 971 (Del. Ch.

28 1996).  The SAC, however, pleads no facts sufficient to state a claim of breach of fiduciary

1  duty under this standard.  Instead, the SAC relies on a single, boilerplate allegation that the

2  D&O defendants "were privy to material information" about SpeciGen.  See SAC ¶ 103.

3  This is not an allegation of "fact" and it does not tend to suggest that defendants acted in

4  bad faith or failed to exercise reasonable oversight.

5      As for whether this is really a derivative claim, and whether plaintiff has standing to

6  allege breach of fiduciary duty, the court finds the pleading to be so deficient with regard to

7  what any defendant other than Fischer is alleged to have done, that it is not clear whether

8  plaintiff is alleging that the D&O directors breached their fiduciary duties to her, as a

9  shareholder, or that they breached their fiduciary duties to the corporation.

10              d.      Claim under Corporations Code §§ 25401 and 25501

11      The D&O defendants argue that the third cause of action for violations of California

12  Corporations Code §§ 25401 and 25501 fails to state a claim for relief because plaintiff fails

13  to allege that any of the D&O defendants made a false statement or omission in connection

14  with a sale of securities; and fails to allege that she was in privity with any of the D&O

15  defendants.

16      In opposition, plaintiff argues that "the defendants" violated §§ 25401 and 25501, as

17  shown by the same allegations that she asserts support her claims under the Exchange Act

18  – the allegations in SAC ¶¶ 34-45 (alleging that Fischer solicited loans and investments

19  from plaintiff, without making the required disclosures), and the allegations in SAC ¶¶ 83-83

20  (detailing the alleged misrepresentations and omissions made by Fischer as to all the

21  defendant companies) – and that she has therefore not only stated a claim under §§ 25401

22  and § 25501, but also under § 25504 (control person liability where primary violations are

23  shown).

24      The court finds that the motion must be GRANTED.  Corporations Code § 25401

25  prohibits misrepresentations in connection with a sale of securities.  Section 25401

26  provides that:

27          It is unlawful for any person to offer or sell a security in this state or buy or
            offer to buy a security in this state by means of any written or oral
28          communication which includes an untrue statement of a material fact or omits

17

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Cal. Corp. Code § 25401.

Section 25501 is a corresponding section that establishes a private remedy for damages and rescission based on § 25401 liability.  See California Amplifier, Inc. v. RLI Ins. Co., 94 Cal. App. 4th 102, 109 (2001).  Section 25501 provides, in pertinent part, that:

> Any person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him . . . unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know . . . of the untruth or omission.

Cal. Corp. Code § 25501.

Sections 25401 and 25501 impose liability only on the actual seller of the security.  Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 253-54 (2007).  Plaintiff's attempt to state a claim for relief against the D&O defendants fails for two reasons – she alleges no facts showing that any of the D&O defendants made any material misstatement or omission in connection with the sale of securities, as discussed above with regard to the § 10(b) and Rule 10b-5 claims; and she fails to allege facts showing that she was in privity with regard to the D&O defendants, which is required for a § 25501 claim.  See Apollo, 158 Cal. App. 4th at 252-54.

Since plaintiff does not claim that she purchased shares of SpeciGen from the D&O defendants, and alleges no facts showing that the D&O defendants materially assisted in violations of other sections of the California Securities Law, with intent to defraud, she cannot allege a claim for relief under §§ 25401 and 25501.  Leave to amend will be granted to the extent that plaintiff can allege that the D&O defendants sold the securities in question (to the extent there were even securities sold).  Otherwise, the dismissal is with prejudice.

e.      Claim under Corporations Code § 25504

Corporations Code § 25504 imposes "control person" liability on those who assist others in primary violations under the California Securities Act.  The D&O defendants contend that the fourth cause of action for violations of § 25504 fails to state a claim for

18

United States District Court

For the Northern District of California

1   relief because plaintiff fails to allege an agency relationship between the D&O defendants

2   and Fischer with the specificity required by Rule 9(b); plaintiff fails to allege facts

3   establishing that  Fischer (or anyone else) made a material misstatement or omission in

4   connection with a sale of securities (required for a claim of primary liability); and

5   plaintiff fails to allege that the D&O defendants had knowledge or reasonable grounds to

6   believe that Fischer (or anyone else) was primarily liable for violations of §§ 25401 and

7   25501 (a predicate to liability under § 25504).

8         In opposition, plaintiff asserts only that because the SAC adequately alleges liability

9   against Fischer under § 25501 (liability for individuals who make false statements in

10   connection with the sale of securities), and because the D&O defendants are alleged to

11   have "directed" or "materially assisted" Fischer, the SAC adequately states a claim for

12   violation of § 25504 against the D&O defendants.

13         The motion is GRANTED, with leave to amend.  Corporations Code § 25504

14   provides that "every person" who directly or indirectly controls a person liable under

15   § 25501 or § 25503, plus

16         every partner in a firm so liable, every principle executive officer or director of
      a corporation so liable, every person occupying a similar status or performing
17         similar functions, every employee of a person so liable who materially aids in
      the act or transaction constituting the violation, and every broker-dealer or
18         agent who materially aids in the act or transaction constituting the violation,
      are also liable jointly and severally with and to the same extent as such
19         person, unless the other person who is so liable had no knowledge of or
      reasonable grounds to believe in the existence of the facts by reason of which
20         liability is alleged to exist.

21   Cal. Corp. Code § 25504.

22         Here, plaintiff alleges that the D&O defendants (along with the other individual

23   defendants) were "in direct control of and directly involved in" the engagement of Fischer as

24   their "broker/agent" and knew he was soliciting plaintiff to invest in the securities at issue,

25   and are therefore liable to the same extent as Fischer.

26         However, in the absence of a viable claim of primary liability, plaintiff cannot state a

27   claim against the D&O defendants for control person liability under § 25504 – particularly

28   given that the claims against the D&O defendants are based solely on statements by

19

Fischer, which plaintiff has not shown to have been false or misleading when made.

### f.   Claim under Corporations Code § 25501.5

The D&O defendants argue that the ninth cause of action for violations of Corporations Code § 25501.5  fails because plaintiff fails to allege that any of the D&O defendants participated in any transaction involving the sale of securities or otherwise acted as a broker-dealer in the State of California, and privity of contract is a necessary predicate for any claim seeking the remedy of rescission; and because any claim for relief under § 25501.5 would be time-barred.

In their first argument, defendants contend that because § 25501.5 contains no provision for secondary liability – and there is no private right of action under § 25501.5 for "aiding and abetting" a violation of § 25501.5 by an unlicensed broker/dealer – there is no possible way that plaintiff can state a § 25501.5 claim against them.

Section 25501.5, which is entitled "Action for rescission or damages," provides in part that

> [a] person who purchases a security from or sells a security to a broker-dealer that is required to be licensed and has not, at the time of the sale or purchase, applied for and secured from the commissioner a certificate . . . authorizing that broker-dealer to act in that capacity, may bring an action for rescission of the sale or purchase or, if the plaintiff or the defendant no longer owns the security, for damages.

Cal. Corp. Code § 25501.5 (a)(1).  In the SAC, plaintiff alleges that defendants "knew or should have known that Fischer was an unlicensed investment advisor."  SAC ¶ 134. Plaintiff asserts that these allegations give rise to a claim under § 25501.5, which makes it "unlawful for a person to sell securities to or through an unlicensed broker-dealer."  Id. ¶ 136.

Under Corporations Code § 25004, the term "broker-dealer" means "any person engaged in the business of effecting transactions in securities in this state for the account of others or for his own account."  Cal. Corp. Code § 25004.  It specifically excludes "any other issuer" and "an agent, when an employee of a broker-dealer or issuer" from the definition of "broker-dealer."  Cal. Corp. Code § 25004(a).

United States District Court

For the Northern District of California

1       Plaintiff does not allege that she purchased securities from the D&O defendants, or

2   that any of the D&O defendants are "engaged in the business of effecting transactions in

3   securities in this state for the account of others or for his own account." Cal. Corp. Code

4   § 25004.  Thus, plaintiff fails to allege a direct claim for relief under § 25501.5 against the

5   D&O defendants.  Instead, plaintiff appears to be suggesting that the D&O defendants are

6   secondarily liable for Fischer's alleged misconduct.  The courts are divided on the question

7   whether a claim of secondary liability is cognizable under § 25501.5.

8       In Viterbi v. Wasserman, 191 Cal. App. 4th 927 (2011), the court held that while a

9   plaintiff who still holds a security can obtain rescission against a defendant who sold or

10  owned the security, that remedy may not be invoked against control persons, aiders and

11  abettors, or other persons who assisted in or were involved in the transaction, but who did

12  not actually own the securities or sell them to the plaintiff. See id. at 935-43.

13      However, in Moss v. Kroner, 197 Cal. App. 4th 860 (2011), the court held that in

14  enacting § 25504 and § 25504.1 (which impose liability on secondary actors jointly and

15  severally with sellers), the Legislature intended to depart from the traditional requirement of

16  contractual "privity" between the plaintiff and secondary actors.

17          If the relief that would be available from the primary actor under section
            25501 would be rescission and the return of the money owing to the plaintiff,
18          then the person who is secondarily liable is liable for the money required to
            make the plaintiff whole, even if he or she may not be capable of actual
19          rescission because he or she was not a party to the contract.

20  Id. at 875-79.  Moss appears to be the better-reasoned decision on this issue, as the result

21  in Viterbi is inequitable and actually reads § 25504 and § 25504.1 out of the Corporate

22  Securities Law insofar as they apply to secondary violators. See Moss, 197 Cal. App. 4th

23  at 876, 879; see also Friedman, et al., California Practice Guide: Corporations (Rutter

24  2012) § 5:395.4.

25      Nevertheless, as presently pled, this cause of action may be time-barred – at a

26  minimum, the SAC does not allege facts sufficient to show when the claim accrued.  It is

27  unclear what limitation period applies to claims under § 25501.5, but it is likely either the

28  limitation period that applies to § 10(b) claims and claims governed by Corporations Code

United States District Court
For the Northern District of California

§ 25506 (two-year statute of limitations from date of discovery of facts constituting the violation, or 5 years after such violation, see 28 U.S.C. § 1658(b); Cal. Corp. Code § 25506(b); or California Civil Code Section 338(a), which provides for a three-year statute of limitations for claims created by statute. See generally Salameh v. Tarsadia Hotels, 2011 WL 1044129 at *9 (S.D. Cal. Mar. 22, 2011). In any event, the D&O defendants contend that plaintiff's § 25501.5 claim is untimely regardless of which limitations period applies, because she alleges that she "became concerned" about a $1 million "trading account" with Fischer "[i]n or about summer 2008." See SAC ¶ 57.

Defendants contend that § 25506(b)'s two-year statute of limitations is triggered by inquiry notice, not actual knowledge. See Deveny v. Entropin, Inc., 139 Cal. App. 4th 408, 423, 428 (2006) ("Inquiry notice – often called 'storm warnings' in the securities context – gives rise to a duty of inquiry 'when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded."). Since the complaint was not filed until June 2011, defendants assert, and since more than two years passed from the time plaintiff was first on inquiry notice, the claim is time-barred.

In opposition, plaintiff asserts that Fischer and/or Upper Orbit were acting as broker-dealers, and that because Fischer was not certified as required by § 25501.5, "liability is established." She asserts further that there is no requirement of privity, and that the Viterbi decision, cited by the D&O defendants, did not involve a claim under § 25501.5, but rather to primary claims under §§ 25401 and 25501 and control-person claims under § 25504. She notes that § 25501.5 creates a remedy of rescission by its terms, and contends that the remedy is automatic upon a showing of the underlying violation of a sale effectuated by an unregistered broker-dealer.

With regard to the argument that the claim is time-barred, plaintiff responds that the applicable limitation period is the same as that applied to Exchange Act claims – 28 U.S.C. § 1658(b) – which is two years from discovery, and five years from the transaction or date of sale. As for the date of "discovery," plaintiff asserts that she did not have a hint of plausible trouble until the summer of 2008, and that even then, her concern was with the

United States District Court

For the Northern District of California

1   trading account that was secured by a promissory note.  At that point, however, Fischer

2   undertook to offer a series of what plaintiff calls "reassurances" – as alleged in SAC ¶¶ 59-

3   66 – which continued well into the fall of 2010.  Thus, plaintiff argues, she did not "discover"

4   the problem until the fall of 2010.

5          And, even if she could be said to have been placed on "inquiry" notice in the summer

6   of 2008, she claims that she did not actually "discover" any violations by defendants at that

7   point – although the court notes that it is not entirely clear from the SAC exactly when she

8   does claim to have discovered the alleged violations.  Plaintiff contends that "inquiry notice"

9   is the beginning of the period for discovery, but that the limitations period does not begin to

10  run until a plaintiff has actually discovered facts constituting the violation.

11         The motion is GRANTED, with leave to amend.  Any amended claim under

12  § 25501.5 must clarify the basis under which the D&O defendants are being charged with

13  liability, and must allege facts sufficient to support the claim, and sufficient to show when

14  plaintiff discovered the alleged violation.

15                 g.      Claim of common law fraud

16         The D&O defendants argue that the eleventh cause of action for common law fraud

17  fails because the SAC fails to allege that those defendants made a false or misleading

18  statement, and also fails to allege scienter or reliance with the specificity required by Rule

19  9(b).

20         In opposition, plaintiff contends that the SAC "properly pleads and documents

21  fraudulent conduct."  She asserts that the standards for pleading fraud under Rule 9(b) are

22  the same as those under the § 10(b) claim, and argues that "[t]he extensive recitation and

23  itemization" of the various material misstatements and omissions (described above in the

24  discussion of the § 10(b) and Rule 10b-5 claims) "amply fulfill those requirements.

25  Moreover, she argues, the various itemized statements are too "specific and egregious" to

26  be characterized as acts of negligence, and the claim therefore meets the "plausibility"

27  standard for pleading a claim of fraud.  Other than that, plaintiff does not make any

28  argument separate from the arguments she made in connection with the motion to dismiss

United States District Court

For the Northern District of California

1   the Exchange Act claims.

2         The motion is GRANTED, with leave to amend.  To state a claim for fraud or

3   intentional misrepresentation, a plaintiff must allege (1) a misrepresentation, (2) knowledge

4   of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage.  Kearns

5   v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009) (citing Engalla v. Permanente Med.

6   Grp., Inc., 15 Cal. 4th 951, 974 (1997)); see also Gil v. Bank of America, N.A., 138 Cal.

7   App. 4th 1371, 1381 (2006).

8         In addition (as noted above), in federal court, allegations of fraud in civil cases are

9   subject to the particularity requirements of Rule 9(b).  That is, the pleader must state the

10   time, place and specific content of the false representations as well as the identities of the

11   parties to the misrepresentation.  Swartz, 476 F.3d at 764; see also Vess v.Ciba-Geigy

12   Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must be accompanied

13   by "the who, what, when, where, and how" of the misconduct charged).

14         Here, even liberally construed, the SAC does not adequately allege who (other than

15   Fischer) made false or misleading statements – and even those allegations do not plead

16   facts showing why the statements were false at the time they were made.  Moreover, the

17   SAC does not allege facts showing knowledge (by the speaker) of the falsity.  Accordingly,

18   plaintiff fails to state a claim for fraud.

19                    h.    Claim of negligent misrepresentation

20         The D&O defendants argue that the eighth cause of action for negligent

21   misrepresentation fails because the SAC fails to allege a misrepresentation or reliance with

22   the specificity required by Rule 9(b).

23         In opposition, plaintiff contends that she has pled a valid misrepresentation claim.  In

24   addition, she asserts that she has adequately alleged that defendants made false

25   statements (citing SAC ¶¶ 84, 85), and argues that because defendants have not disputed

26   that the statements were false, "the factual premise of the misrepresentation claim is

27   conceded."  She also asserts that the other elements are met by the allegations in the

28   SAC.

United States District Court

For the Northern District of California

1     The motion is GRANTED, with leave to amend.  To state a claim for negligent

2  misrepresentation, a plaintiff must allege (1) a misrepresentation as to a material fact;

3  (2) without reasonable grounds for believing it to be true; (3) an intent to induce reliance;

4  (4) justifiable reliance by the plaintiff who does not know that the representation is false;

5  and (5) damage.  In re Daisy Sys. Corp., 97 F.3d 1171, 1180 (9th Cir. 1996).  The

6  existence of a duty of care is necessary to support a negligent misrepresentation claim.

7  Alfus v. Pyramid Tech. Corp., 745 F.Supp. 1511, 1523 (N.D. Cal.1990) (liability for

8  negligent misrepresentation may attach "only where plaintiff establishes that defendants

9  breached a duty owed to him"); see also Garcia v. Superior Court, 50 Cal. 3d 728, 735

10  (1990).

11     Under California law, the tort of negligent misrepresentation is a "species of deceit."

12  See Bily v. Arthur Young & Co., 3 Cal. 4th 370, 407 (1992).  The Ninth Circuit has not yet

13  determined whether Rule 9(b)'s heightened pleading standard applies to a claim for

14  negligent misrepresentation, but the majority view among district courts in California

15  appears to be that it does.  See, e.g., Errico v. Pac. Capital Bank, N.A., 753 F. Supp. 2d

16  1034, 1049 (N.D. Cal. 2010) (negligent misrepresentation sounds in fraud and is subject to

17  Rule 9(b) pleading requirements); see also In re Easysaver Rewards Litig., 737 F. Supp. 2d

18  1159, 1176-77 (S.D. Cal. 2010); Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101,

19  1141 (C.D. Cal. 2003).

20     Here, as with the other fraud claims, plaintiff has not alleged that any specific D&O

21  defendant made a false statement, or that in making such a statement, any specific

22  defendant lacked reasonable belief that it was true.  Indeed, the majority of the false

23  statements are attributed to Fischer – not to the D&O defendants – or are unattributed.

24  Leave to amend is granted, but only to the extent that plaintiff can correct this deficiency.

25     As for plaintiff's suggestion that the alleged omissions (or failure to disclose by the

26  defendants) should also be counted as false representations for purpose of the negligent

27  misrepresentation claim, the court finds that any such claim must be dismissed with

28  prejudice.  While the courts in some states have held that failure to disclose where there is

**United States District Court**

For the Northern District of California

1  a duty to disclose may suffice to support a negligent misrepresentation claim, the California

2  Court of Appeal held in <u>Wilson v. Century 21 Great Western Realty</u>, 15 Cal. App. 4th 298

3  (1993) that based on the California statutory language, negligent misrepresentation

4  specifically requires a "positive assertion."  <u>Id.</u> at 306; <u>see also</u> <u>In re Daisy Sys.</u>, 97 F.3d at

5  1181; <u>Byrum v. Brand</u>, 219 Cal. App. 3d 926, 942 (1990).

6                   i.      Claim for accounting

7        Finally, the D&O defendants contend that the first cause of action for an accounting

8  is derivative of the other claims alleged in the SAC, and fails for the same reason that those

9  other claims fail.  Plaintiff does not respond to this argument.

10        The motion is GRANTED.  Under California law, an accounting is generally a

11  remedy under equity.  <u>Batt v. City & County of San Francisco</u>, 155 Cal. App. 4th 65, 82

12  (2007).  "In rare cases, an accounting can be a cause of action when a defendant has a

13  fiduciary duty to a plaintiff which requires an accounting, and . . . some balance is due to

14  the plaintiff that can only be ascertained by an accounting."  <u>Pantoja v. Countrywide Home</u>

15  <u>Loans, Inc.</u>, 640 F.Supp. 2d 1177, 1191 (N.D. Cal. 2009); <u>see also</u> <u>Hafiz v. Greenpoint</u>

16  <u>Mortg. Funding, Inc.</u>, 652 F.Supp. 2d 1039, 1043-44 (9th Cir. 2009).  Generally, however,

17  the right to an accounting is derivative, and "must be based on other claims."  <u>Janis v.</u>

18  <u>California State Lottery Com.</u>, 68 Cal. App. 4th 824, 833-34 (1998); <u>see also</u> <u>Duggal v. G.E</u>

19  <u>Cap. Commc'ns Servs., Inc.</u>, 81 Cal. App. 4th 81, 95 (2000).

20        Here, it is not clear from the allegations in the SAC  whether plaintiff intends that the

21  demand for an accounting be viewed as a standalone cause of action, based on a fiduciary

22  duty owed to her by one or more defendants (in which case the dismissal is with leave to

23  amend), or as a demand for a remedy (in which case the dismissal is with prejudice).

24        2.      Motion by Mani Koolasuriya and Monvia[1]

25        Koolasuriya/Monvia argue that plaintiff lacks standing to bring any of the securities

26  fraud claims against them because she did not purchase or sell Monvia securities.  In

27

28           [1]  Defendant Fernandes also filed a notice of joinder in the Koolasuriya/Monvia motion.

United States District Court

For the Northern District of California

1   addition, they assert that the SAC fails to state a claim as to the Exchange Act claims, the

2   claims under the Corporations Code, and the common law claims.

3           a.      Claims under § 10(b) and Rule 10b-5.

4           Koolasuriya/Monvia assert that the § 10(b) and Rule 10b-5 claim must be dismissed

5   because the SAC fails to allege either falsity or scienter with particularity.  Specifically, they

6   contend that the SAC does not allege that Koolasuriya made any statement to plaintiff, let

7   alone a false statement; that the SAC does not allege facts showing who at Monvia is

8   accused of having defrauded plaintiff; that the SAC does not allege facts showing that

9   Koolasuriya owed a duty to disclose, or breached any such duty; that the SAC fails to

10  allege facts giving rise to a strong inference of scienter as to either Koolasuriya or Monvia;

11  that the SAC does not plead reliance; and that the SAC fails to allege that any action by

12  Koolasuriya/Monvia caused plaintiff's alleged loss.

13          Koolasuriya/Monvia also argue that the Exchange Act claims are time-barred

14  because the two-year limitation period had expired before this case was filed in June 2011,

15  and the SAC alleges no facts that could support tolling of the limitations period.

16          Plaintiff's response in opposition is substantially similar to her response to the D&O

17  defendants' motion to dismiss the § 10(b) and Rule 10b-5 claim.  That is, she asserts that

18  she has "documented" numerous specific misrepresentations and omissions (citing SAC

19  ¶¶ 84, 85); that these alleged misrepresentations/omissions were material; that she has

20  adequately alleged facts sufficient to create a strong inference of scienter; that her reliance

21  was justifiable; and that she has demonstrated both economic loss and loss causation.

22          The motion is GRANTED.  The dismissal of the claim against Koolasuriya is with

23  prejudice, for the reasons stated above with regard to the SpeciGen D&O defendants.  The

24  court notes that the portion of the SAC in which plaintiff lists the alleged false and

25  misleading statements does not mention Monvia, and there are no allegations that plaintiff

26  purchased Monvia securities.  The dismissal of the claim against Monvia is with leave to

27  amend, assuming plaintiff can plead facts showing that someone affiliated with Monvia

28  made false or misleading statements in connection with her purchase or sale of  Monvia

United States District Court
For the Northern District of California

1   securities.  Otherwise, the dismissal is with prejudice.

2           b.      Claim under § 20

3       Koolasuriya/Monvia argue that in the absence of a viable primary claim under the

4   Exchange Act, plaintiff cannot state a claim under § 20(a) for control-person liability.  And,

5   they argue, even if the SAC could be viewed as pleading an underlying primary violation,

6   which it does not, it still fails to allege any cognizable control-person claim against

7   Koolasuriya because there is no allegation that he alleged actual power or control over the

8   primary violator or over the alleged wrongful acts.

9       In opposition, plaintiff contends that Koolasuriya/Monvia are liable under as

10  controlling persons of the entities in which her money was invested, and also by "common

11  law respondeat superior" (which is not pled in SAC).

12      The motion to dismiss the § 20 claim is GRANTED, for the reasons stated above

13  with regard to the D&O defendants.  See Zucco, 552 F.3d at 990; Howard, 228 F.3d at

14  1065.  In the absence of a primary violation, plaintiff cannot state a claim under § 20.  To

15  the extent that plaintiff is seeking leave to amend to allege liability based on a theory of

16  respondeat superior, that request is granted, subject to the conditions stated above with

17  regard to the D&O defendants.

18          c.      Corporations Code claims

19      Koolasuriya/Monvia argue that the SAC fails to state a claim against them for

20  violations of the California Corporations Code.  First, they assert, the SAC does not allege

21  that they made any false statements in connection with the sale of securities, and thus

22  there can be no liability under §§ 25401 or 25501.

23      As for control-person liability under § 25504, Koolasuriya/Monvia argue that in the

24  absence of a viable claim of primary liability, there can be no control-person liability, and

25  that in any event, the SAC does not allege any facts showing that Koolasuriya exercised

26  actual day-to-day control over any alleged primary violator.

27      With regard to the § 25501.5 claim, Koolasuriya/Monvia argue that this claim fails

28  because the SAC does not allege that plaintiff purchased or sold any Monvia securities.

United States District Court

For the Northern District of California

1   Koolasuriya/Monvia also assert that the Corporations Code claims are time-barred,

2   on the theory that plaintiff was at a minimum on inquiry notice as of the summer of 2008,

3   but did not file the present action until June 2011.

4   Plaintiff's response in opposition is substantially similar to her opposition to the D&O

5   defendants' motion to dismiss the claims under §§ 25401, 25501, 25504, and 25505.1.

6   That is, she argues that "the defendants" violated §§ 25401 and 25501, as shown by the

7   allegations in SAC ¶¶ 34-45 and ¶¶ 83-84; and with regard to the § 25505.1 claim, that

8   Fischer and/or Upper Orbit were acting as unregistered broker-dealers.  With regard to the

9   argument that the claim is time-barred, plaintiff responds that she did not "discover" the

10   problem until the fall of 2010.

11   The motion is GRANTED for the reasons stated above with regard to the D&O

12   defendants.  The dismissal is with leave to amend, assuming plaintiff is able to clarify the

13   basis under which Koolasuriya/Monvia are being charged with liability.  In addition, any

14   amended complaint must allege facts showing plaintiff bought Monvia securities from an

15   unregistered broker-dealer, and showing when she discovered the alleged violation.

16   d.      common law claims

17   Finally, Koolasuriya/Monvia argue that the common law claims (fraud, negligent

18   misrepresentation) should be dismissed because they are not pled with particularity as

19   required by Rule 9(b).  In opposition, plaintiff asserts that she has a "viable claim of

20   misrepresentation" based on the allegations in SAC ¶¶ 84-88.

21   The motion is GRANTED with leave to amend, as with the D&O defendants, above.

22   3.      Motion by Jorge Fernandes

23   Fernandes was first named as a defendant in this lawsuit when the SAC was filed.

24   As indicated above, he joins in the arguments made by Koolasuriya/Monvia in their motion

25   to dismiss, and makes the following additional arguments with regard to the causes of

26   action asserted against him.

27   a.      accounting claim

28   Fernandes argues that the accounting claim should be dismissed as to him because

United States District Court
For the Northern District of California

1   he does not work at any company in which plaintiff is alleged to be a shareholder.  He

2   asserts that he separated from Monvia and resigned from the board in August 2009.

3   Plaintiff does not address this argument in her opposition.

4        As noted above, it is not clear whether plaintiff intends this as a standalone claim or

5   as a request for relief that would be better placed in the prayer for relief.  The motion is

6   GRANTED, with leave to amend to the extent that plaintiff can allege that she is entitled to

7   an accounting based on a fiduciary duty owed to her by Fernandes.  Otherwise, the

8   dismissal is with prejudice.

9            b.    Claims under § 10(b) and Rule 10b-5, and § 20

10       Fernandes asserts that the Exchange Act claims should be dismissed as to him

11   because the SAC does not allege that he made any false statements regarding any entity

12   that plaintiff is alleged to have invested in, and because plaintiff never invested in Monvia or

13   Mobilbucks.

14       In opposition, plaintiff notes that the SAC alleges that Fernandes was a director of

15   two of the defendant companies – Monvia and New Moon – and that each of those roles

16   allowed him to "profit from a scheme by which Mrs. Jackson lost millions of dollars."

17   Plaintiff contends that "Fernandes had a direct interest in working with Fischer to garner

18   investments in PeerDreams and New Moon" for the reason that "Monvia made all of its

19   money as a software vendor, and Mrs. Jackson's investments were used by PeerDreams

20   and New Moon to hire Monvia as their software vendor" – none of which is alleged in the

21   SAC.  Further, plaintiff speculates that because Fernandes was a director, he "may be

22   presumed to have stock options and/or direct stock grants."

23       Plaintiff contends that Monvia and New Moon joined with Fischer to make

24   representations to plaintiff that were materially misleading.  She cites to certain statements,

25   which she claims were misrepresentations regarding <u>Monvia</u>.  However, these are the

26   representations that PeerDreams (<u>not</u> Monvia, New Moon, or Fernandes) claimed (i) that it

27   had surveyed the market and found demand by nonprofit institutions for "the service it

28   claimed to have developed" but that in fact no survey had been conducted; (ii) that several

United States District Court

For the Northern District of California

1  non-profit organizations were "committed to the use of its products" when in fact there were

2  none; (iii) that it would, with the addition of plaintiff's investments and loans, "have sufficient

3  capital to bring its product to market" when in fact it was undercapitalized and having

4  difficulties raising funds; and that (iv) its "developers and managers" had "successful track

5  records in bringing untested products to market," when in fact they were in the business of

6  helping startups raise capital.  See SAC ¶ 84(c).

7      Plaintiff also alleges that "defendants" omitted to disclose to plaintiff (i) that Peer

8  Dreams (not Monvia, New Moon, or Fernandes) failed to conduct any market studies;

9  lacked commitments from major nonprofit organizations, and had no employees or

10  executives with successful track records of commercializing software products; (ii) that

11  none of the officers or directors of New Moon (not Monvia) had successful track records

12  commercializing web media products; (iii) that because the market was addressed to teen-

13  aged girls, New Moon (not Monvia) had no evidence of the distinction between selling

14  online media as compared to subscription print media; (iv) that Fisher was being paid as

15  fund-raising agent through Upper Orbit; and (v) that New Moon lacked funds to develop a

16  beta version of its product.  See SAC ¶ 85(c), (d).

17      Plaintiff claims that because the SAC adequately alleges § 10(b) liability for

18  PeerDreams and New Moon, it therefore alleges § 10(b) liability for Fernandes, and for that

19  reason, Fernandes, as the CEO and one of two directors of Monvia and a director of New

20  Moon, was in a position to influence what was told to plaintiff to induce her to invest.

21  Plaintiff also asserts that § 10(b) imposes liability for "directly or indirectly" causing false

22  statements to be made "in connection with" the sale of securities, and claims that a

23  defendant need not have first-hand contact with the investor in order to be liable for making

24  false statements.

25      Finally, plaintiff contends that Fernandes is also liable under § 20(a) as a controlling

26  person, because he was CEO and director of Monvia, and a director of New Moon.  she

27  also asserts that § 20(a) claims are subject to the pleading requirements of Rule 8 only –

28  not Rule 9(b).  Plaintiff argues that "control" over a primary violator does not constitute a

United States District Court

For the Northern District of California

1   circumstance of fraud, and that a § 20(a) claim thus need not be pled with particularity.

2       The motion is GRANTED.  For the reasons stated above with regard to the D&O

3   defendants, the dismissal of the § 10(b) and Rule 10b-5 claims is with prejudice, based on

4   plaintiff's concession that Fischer was "the speaker."[2]  The § 20(a) claim is dismissed with

5   leave to amend, to the extent that plaintiff can allege a claim of primary liability.

6       The court notes, however, that while plaintiff argues in her opposition that Fernandes

7   was on the board of both Monvia and New Moon, the SAC does not allege that Fernandes

8   was on the board of New Moon, and also does not allege that plaintiff purchased any

9   Monvia securities.  Since the SAC does not allege that Fernandes was a director of any

10  company other than Monvia, and since there is no allegation that plaintiff invested in

11  Monvia, it is unclear how plaintiff can assert a claim that Fernandes was a control person

12  with regard to Monvia – and because he is not alleged to have been a director or officer of

13  any other defendant company, he cannot have been a control person

14  with regard to any other defendant company.

15      Finally, as for the standard for pleading § 20(a) claims, the Ninth Circuit has not

16  ruled on this issue.  The district courts are divided on whether Rule 9(b) applies, but the

17  tendency among district court in recent years appears to be that pleading § 20 claims in

18  conformance with Rule 8 is sufficient.  See, e.g., In re American Apparel, Inc. Shareholder

19  Litig., 2013 WL 174119 at *34 n.204 (C.D. Cal. Jan. 16, 2013) (and cases cited therein);

20  Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc., 690 F. Supp. 2d

21  959, 966-67 (D. Ariz. 2010) (citing cases).  The court is more persuaded by the reasoning

22

23          [2]  Fernandes also argues that the Exchange Act claims should be dismissed as time-
24  barred, because a reasonably diligent plaintiff would have discovered the facts giving rise to
    the claims more than two years before Fernandes was named as a defendant in this suit (on
25  June 19, 2012, when the SAC was filed).  Fernandes notes that this was more than four years
    after plaintiff allegedly became "concerned" in the summer of 2008 regarding her investments,
26  and more than three years after he could have made any statements causing plaintiff to
    forbear from filing an action (because he left Monvia in August 2009).  Moreover, Fernandes
27  asserts, because of the 5-year statute of repose in 15 U.S.C. § 1658(b), plaintiff is barred from
    bringing any securities fraud claim against him based on any investment that occurred prior
28  to June 19, 2007.  In view of the ruling above, the court finds it unnecessary to address this
    additional argument.

32

1  in the more recent decisions, and finds that any § 20 claim need only be pled in accordance

2  with Rule 8(a).

3       In any event, since the SAC fails to state a claim for a primary violation, the § 20

4  claim must be dismissed.

5            c.    Corporations Code §§ 25401 and 25501 claims

6       Fernandes contends that the Corporations Code §§ 25401 and 25501 claims should

7  be dismissed as to him because the SAC does not allege that he made any false

8  statements regarding any entity that plaintiff is alleged to have invested in, and because

9  plaintiff never invested in Monvia or Mobilbucks.

10      In opposition, plaintiff asserts that, for the reasons argued in connection with the

11 Exchange Act claims, a plaintiff is not required to show direct involvement to maintain a

12 claim under §§ 25401 and 25501, and is also not required to show privity.

13      Plaintiff cites Moss for the proposition that while strict privity is required for claims of

14 primary liability under § 25401 (unlawful to sell security by means of false statement) and

15 § 25501 (establishes civil liability for damages and rescission for violation of § 25401),

16 privity is not required for secondary liability suits alleging joint and several liability for a

17 violation of § 25401 by means of § 25504 (joint and several liability for agents who

18 materially aid in transaction constituting violation) or § 25504.1 (joint and several liability for

19 persons who materially assist in violation with intent to deceive or defraud).  See Moss, 197

20 Cal. App. 4th at 874-75.

21      The motion is GRANTED.  The SAC alleges no facts showing that Fernandes made

22 any false or misleading statement to plaintiff.  The dismissal is with leave to amend, as

23 stated above.

24      In addition, with regard to the question of privity, plaintiff does not allege any claims

25 in the SAC other than claims of primary liability and control-person liability.  Her new

26 assertion that her intent is/was to allege joint and several liability under § 25504 and/or

27 § 25504.1 is not apparent from the face of the SAC.  Thus, to the extent that she is

28 attempting to allege joint and several liability, she must amend the complaint.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

d.   Corporations Code § 25504 claim

Fernandes argues that the § 25504 claim should be dismissed because the SAC does not state facts with particularity showing that he was a director or officer of Monvia at the time of the alleged investments, and does not allege any false or misleading statements made by Fernandes in order to induce plaintiff to make any investments.

In opposition, plaintiff does not offer any additional argument regarding the "control person" claim beyond her argument regarding § 20(a), above.

The motion is GRANTED, with leave to amend as stated above.

e.   breach of fiduciary duty claim

Fernandes asserts that the breach of fiduciary claim should be dismissed because the SAC alleges no facts showing that he breached any fiduciary duty owed to plaintiff. Fernandes asserts that the only allegations in the SAC regarding him concern Mobilbucks, a company that plaintiff never invested in.

The motion is GRANTED, with leave to amend to plead facts sufficient to support the elements of the claim.

f.   negligent misrepresentation claim

Fernandes contends that the negligent misrepresentation claim should be dismissed as to him because while the SAC alleges that he engaged Fischer as his agent to raise funds for his companies, and that Fischer in turn solicited funds from plaintiff, there are no facts pled showing an agency relationship between himself and Fischer, or that he was an officer or director of Monvia at the time of plaintiff's alleged investments.  He again notes that the only statements the SAC alleges he made were in connection with Mobilbucks, a company that plaintiff did not invest in.

The motion is GRANTED, with leave to amend to allege facts sufficient to support the elements of the claim, as stated above with regard to the D&O defendants' motion.

g.   Corporations Code 25501.5 claim

Fernandes argues that the § 25501.5 claim should be dismissed as against him because while the SAC alleges that Fernandes "knew or should have known" information

34

United States District Court

For the Northern District of California

1   about Fischer, it does not allege any facts in support of that claim, and also fails to state

2   facts showing that Fernandes was an officer or director of Monvia at the time of plaintiff's

3   alleged investments, or showing that Fernandes had any intent to deceive plaintiff.

4          In opposition, plaintiff asserts that she is not required to show direct involvement or

5   privity to maintain a claim under § 25501.5, for the reasons stated above with regard to the

6   remaining Corporations Code claims.

7          The motion is GRANTED, with leave to amend.  Section 25501.5 prohibits sales by

8   unlicensed broker/dealers.  Given the deficiencies in the complaint overall, it is impossible

9   to tell who is alleged to have sold plaintiff which securities.  For example, it is unclear

10  whether Fernandes was an unlicensed broker/dealer.  At a minimum, plaintiff must provide

11  a more definite statement.  Plaintiff tries to argue in her opposition that the question of

12  Fernandes' actual role in the transactions is a question of fact that cannot be resolved on a

13  12(b)(6) motion.  The difficulty, however, is that the allegations are so vague and unclear

14  that it is not possible for Fernandes and the other defendants to respond to them.

15         The dismissal is with leave to amend.  Any amended claim under § 25501.5 must

16  clarify the basis under which Fernandes is being charged with liability, and must allege

17  facts sufficient to support the claim, and sufficient to show when plaintiff discovered the

18  alleged violation.

19                h.     fraud claim

20         Fernandes contends that the fraud claim should be dismissed as against him

21  because it appears to arise out of the fact that plaintiff was supposedly a shareholder in

22  Monvia, but the SAC does not allege facts showing that she was a shareholder or that

23  Fernandes made any false statements to her regarding her alleged investment.

24         The motion is GRANTED, with leave to amend. to allege facts sufficient to support

25  the elements of the claim.

26                i.     whether Corporations Code claims are time-barred.

27         Fernandes argues that the Corporations Code claims are time-barred, for the

28  reasons argued in Koolasuriya/Monvia's motion.  In opposition, plaintiff again argues that

United States District Court

For the Northern District of California

1   the claims relate back, and so are not time-barred.

2          The motion is GRANTED.  Since the Corporations Code and other common law

3   claims are here pursuant to the court's supplemental jurisdiction, the California rule applies

4   in determining whether the claims relate back (which they do not).  But even if the Federal

5   rule applied, they would not relate back.

6          Federal Rule 15(c) provides that an amended complaint adding a new defendant will

7   relate back to the original complaint if it "asserts a new claim or defense that arose out of

8   the conduct, transaction, or occurrence set out – or attempted to be set out – in the original

9   pleading" and if, within 120 days of the initial complaint, the party to be added "received

10  such notice of the action that it will not be prejudiced in defending on the merits" and "knew

11  or should have known that the action would have been brought against it, but for a mistake

12  concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).

13         California's law governing relation-back applies to state law claims over which a

14  federal court has supplemental jurisdiction (and also to federal claims where state law

15  provides a "borrowed" statute of limitations).  See Green Valley Corp. v. Caldo Oil Co., 2011

16  WL 3501712 at *4 (N.D. Cal. Aug. 10, 2011).  The rule under state law is more restrictive

17  than the rule under federal law – an amended complaint that adds a new defendant does

18  not relate back to the date of filing of the original complaint unless the new defendant is

19  being substituted for a fictitious Doe named in the original complaint.  See Hawkins v.

20  Pacific Coast Bldg. Prods., Inc., 124 Cal. App. 4th 1497, 1503 (citing Woo v. Superior

21  Court, 75 Cal. App. 4th 169, 176 (1999)).  Accordingly, unless plaintiff is able to allege

22  some basis for tolling the running of the statute of limitations, the Corporations Code claims

23  against Fernandes must be dismissed with prejudice.

24         4.     Motion by New Moon Girl Media

25         New Moon seeks an order dismissing the claims asserted against it.

26                a.     Claims under § 10(b) and Rule 10b-5

27         New Moon argues that the § 10(b) and Rule 10b-5 claim must be dismissed for

28  failure to state a claim, because the SAC fails to allege any misrepresentations made to

36

United States District Court

For the Northern District of California

1   plaintiff by New Moon or its officers/directors – and in fact, alleges no contact whatsoever

2   between plaintiff and anyone at New Moon.

3         The SAC alleges that Fischer, acting as New Moon's "agent and consultant," made

4   the following false or misleading statements – that New Moon had "sufficient investments

5   . . . to complete development of its online product;" that it had "completed surveys of the

6   market for its online product that demonstrated that a web version of its magazine would be

7   a profitable extension of its existing print product;" and that it had "an exit strategy that

8   would allow its web-based product to be sold to an established media company." SAC

9   ¶ 84(d).

10         The SAC asserts further that New Moon failed to disclose the following material facts

11   – that none of the New Moon officers/directors had successful track records

12   commercializing web media products; that because its intended market was teenaged girls,

13   it had "no evidence of the distinction between selling online media to that market as

14   opposed to subscription print media;" that Fischer, while acting as fund-raising agent, was

15   being paid for that function by New Moon through Upper Orbit; and that New Moon lacked

16   funds to develop a beta version of its online product. SAC ¶ 85(d).

17         However, New Moon argues, these "facts" clearly relate to the period after Upper

18   Orbit invested in New Moon. In addition, New Moon asserts, plaintiff cannot state a claim

19   under the Exchange act because there are no facts pled showing that she purchased

20   securities from New Moon. New Moon also contends that the allegations in the SAC are

21   not sufficient to satisfy the requirements of Rule 9(b) and the PSLRA for pleading falsity.

22         New Moon argues further that the SAC does not adequately allege scienter, as there

23   are no facts pled showing that anyone at New Moon defrauded plaintiff, and that without

24   that, there can be no claim against New Moon. Similarly, New Moon asserts, there are no

25   allegations showing that any conduct by New Moon caused plaintiff's loss (as opposed to

26   external factors unrelated to any action taken by New Moon).

27         In opposition, plaintiff makes the same response as to the motions by the D&O

28   defendants and Koolasuriya/Monvia – that she has "documented" specific

1    misrepresentations and omissions in SAC ¶¶ 84(d) and 85(d).  Plaintiff asserts that these

2    alleged misrepresentations/omissions were material, because if the true or complete

3    information had been disclosed, she would have made a different investment decision.

4          Plaintiff also contends that she has adequately alleged facts creating a strong

5    inference of scienter, and claims that the itemization of the misrepresentations in SAC ¶ 84

6    and the omissions in SAC ¶ 85 "describe statements of fact that are so inaccurate as to be

7    either reckless or intentional," and that their purpose was plainly to induce her to invest in

8    New Moon (which provides a strong financial motive).  Finally, plaintiff argues that her

9    reliance was justifiable, as alleged in SAC ¶¶ 86 and 87, and that she has demonstrated

10   both economic loss and loss causation.

11         The motion is GRANTED, based on plaintiff's failure to allege facts showing that she

12   purchased securities from New Moon, or that anyone at New Moon made any false or

13   misleading statement to her.  She alleges in the SAC that New Moon made

14   misrepresentations "through Fischer."  However, she has not alleged facts showing that

15   those alleged false or misleading statements were made in connection with the purchase or

16   sale of a security.  See Stoneridge, 552 U.S. at 157.  The dismissal is with leave to amend

17   to allege facts sufficient to state a claim, in accordance with the standards set forth

18   elsewhere in this opinion.[3]

19         With regard to whether the claims are time-barred, New Moon's arguments are

20   substantially similar to those made by the other defendants – that the allegations that

21   plaintiff "became concerned" in the summer of 2008 about the "trading account" and her

22   other investments, and that starting with her first loan to SpeciGen in 2006 she did not

23   receive adequate disclosures about her investments, are sufficient to show that she was on

24   inquiry notice well over two years prior to the time the original complaint was filed; and that

25   the SAC alleges no facts sufficient to support tolling of the statute of limitations.

26

27         ───────────────────

28         [3]  Because plaintiff fails to allege that New Moon made false or misleading statements in connection with the purchase or sale of any security, the court finds it unnecessary to address the other elements of the claim.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  Accordingly, any amended claim under § 10(b) and Rule 10b-5 must also allege facts

2  showing that the claim is not time-barred.

3         b.     Claim under § 20

4      New Moon asserts that because the § 10(b) claim fails, the § 20(a) claim of control-

5  person liability also fails.  The motion is GRANTED, although it does not appear to the court

6  that plaintiff is asserting a § 20 claim against New Moon.  As noted above, the § 20 claim is

7  alleged against unnamed "officer and director defendants."

8         c.     Claim of breach of fiduciary duty

9      New Moon argues that the breach of fiduciary duty claim is without merit because it

10  essentially alleges harm against New Moon, not against plaintiff.  This is the same

11  argument made by the D&O defendants.  Plaintiff does not respond to this argument.

12      It is not clear why New Moon has made this argument, as the breach of fiduciary

13  duty claim is asserted against J. Sabes, S. Sabes, Siegel, Campion, Koolasuriya,

14  Fernandes, Waterson, and "the directors of the other corporate defendants" only, but not

15  against New Moon.

16         d.     Claim under Corporations Code § 25501.5

17      New Moon asserts that the claim under § 25501.5 is without merit because it is time-

18  barred under the statute of limitations applicable to securities actions; and because plaintiff

19  lacks standing in that there is no allegation that she purchased any New Moon securities or

20  invested directly in New Moon.

21      In opposition, plaintiff asserts that Fischer and/or Upper Orbit were acting as broker-

22  dealers, and that liability is therefor "established."  She asserts further that there is no

23  requirement of privity for a claim under § 25501.5.

24      The motion is GRANTED.  Under § 25501.5, a person who purchases a security

25  from or sells a security to a broker-dealer that is required to be licensed may bring an

26  action for rescission or damages.  However, a person who has not purchased/sold a

27  security from/to anyone has no standing to bring a claim under § 25501.5.  The dismissal is

28  with leave to amend to plead facts showing that plaintiff bought New Moon securities from

United States District Court

For the Northern District of California

1   an unregistered broker-dealer.  Otherwise, the dismissal is with prejudice.

2              e.     Claim for an accounting

3         New Moon contends that the SAC fails to plead a standalone cause of action for an

4   accounting because plaintiff does not allege facts showing that she invested in New Moon,

5   and therefore has no standing to seek an accounting from New Moon.  Moreover, New

6   Moon asserts, to the extent that plaintiff is able to amend the complaint to allege facts

7   showing she had some investment in New Moon, that sum will be definite and there will be

8   no need for an accounting.

9         The motion is GRANTED.  As stated above with regard to the other moving

10   defendants, if plaintiff is attempting to assert a standalone claim, the dismissal is with leave

11   to amend.  However, if she cannot allege that she owns New Moon securities, then she has

12   no standing to seek an accounting.

13              f.     Claims under Corporations Code §§ 25401 and 25501

14         New Moon argues that the claims for violation of Corporations Code §§  25401 and

15   25501 are without merit because there are no facts pled showing that New Moon or any

16   employee of New Moon made any false statements to plaintiff in connection with the

17   purchase or sale of securities.

18         In opposition, plaintiff argues that "the defendants" violated §§ 25401 and 25501,

19   citing to the same allegations she previously cited in support of her § 10(b) and Rule 10b-5

20   claim – the allegations in SAC ¶¶ 34-45 (alleging that Fischer solicited loans and

21   investments from plaintiff, without making the required disclosures), and the allegations in

22   SAC ¶¶ 83-83 (detailing the alleged misrepresentations and omissions made by Fischer as

23   to all the defendant companies) – and that she has therefore not only stated a claim under

24   §§ 25401 and § 25501, but also under § 25504 (control person liability where primary

25   violations are shown).

26         For the reasons stated above with regard to the other defendants, the motion is

27   GRANTED, with leave to amend to allege facts showing that New Moon made false or

28   misleading statements to plaintiff in connection with the purchase or sale of securities.

United States District Court

For the Northern District of California

g.    Negligent misrepresentation claim

New Moon contends that the negligent misrepresentation claim fails to state a claim because there are no facts pled showing that New Moon or any employee of New Moon made any false or misleading statements to plaintiff.

In opposition, plaintiff contends that she has pled a valid misrepresentation claim. She also argues that she has adequately alleged that defendants made false statements (citing SAC ¶¶ 84, 85), and argues that because defendants have not disputed that the statements are false, "the factual premise of the misrepresentation claim is conceded."

As for "absence of reasonable grounds for believing the statements to be true," plaintiff contends this element is met because defendants do not dispute that plaintiff, hearing those claims, believed them.  As for intent to cause reliance, and justifiable reliance, plaintiff argues that those elements are met by the allegations in SAC ¶¶ 86-88.

The motion is GRANTED for the reasons stated above with regard to the other defendants.  The dismissal is with leave to amend to allege facts sufficient to support the elements of the claim.

**CONCLUSION**

In accordance with the foregoing, the motions to dismiss the second amended complaint are GRANTED.  The § 10(b) and Rule 10b-5 claims asserted against Jon Sabes, Steven Sabes, Marvin Siegel, Mani Koolasuriya, and Jorge Fernandes are dismissed with prejudice.  The § 10(b) and Rule 10b-5 claims asserted against Monvia and New Moon Girl are dismissed with leave to amend.  In the absence of any viable § 10(b) or Rule 10b-5 claim, the § 20 claims are dismissed.  The common law and state law claims are dismissed, with leave to amend as stated in the opinion.

It bears repeating that the present iteration of the complaint is confusing and replete with conclusory allegations, and that it fails to state a claim against any of the moving defendants.  One difficulty with the complaint as it stands is that the alleged "scheme to defraud" plaintiff had Fischer and Upper Orbit at its center, and appears to have involved investments in a number of different business entities, which plaintiff has joined as

41

United States District Court

For the Northern District of California

1   defendants.  Each of those business entities had officers and/or directors who may or may

2   not be implicated in some alleged fraud, and who were allegedly somehow connected to

3   Fischer, but in certain cases not to directors/officers of the other defendant business

4   entities.

5        The SAC refers to "loans" and "investments" and provides some information about

6   the alleged investments, but does not clearly explain which investments were made in

7   which company.  Moreover it does not clearly allege facts showing that plaintiff purchased

8   securities (shares in a particular company, or other investments that can be considered

9   "securities") from anyone in reliance on false statements (other than by Fischer).

10       It seems fairly clear that plaintiff is asserting that she "loaned" various sums to

11  SpeciGen and also to Upper Orbit, but it is not clear whether that money was used to invest

12  in the various other defendant companies on plaintiff's behalf, and there is no information

13  about what happened to the money.  Moreover, it is impossible to tell from the facts as pled

14  whether those "loans" can be considered "securities" for purposes of federal or state law, or

15  indeed, whether Fisher meets the definition of "broker-dealer" or "investment advisor"

16  (whether "licensed" or "unlicensed") or whether Upper Orbit meets the definition of "broker-

17  dealer."

18       Most importantly, plaintiff does not allege facts showing a single overarching scheme

19  that involved all the defendants (other than the allegation that Fischer defrauded her in

20  connection with various transactions involving other defendants), and there are no false

21  statements directly attributed to anyone other than Fischer.  And as to Fisher, there are no

22  facts pled showing why the allegedly false statements were false when they were made.

23       Without the "glue" of Fischer/Upper Orbit holding the action together, the SAC

24  appears to describe a series of unrelated schemes – one involving SpeciGen (and its

25  officers/directors – the two Sabes brothers, Siegel, Bookbinder, and Campion); one

26  involving PeerDreams and Monvia (and their officers/directors – Koolasuriya and

27  Fernandes); one involving New Moon (and possibly Koolasuriya); one involving Notebookz

28  and ILeonardo (and their officers/directors – Waterhouse and Rosen); and one involving

United States District Court

For the Northern District of California

1    the Sazani Beach Hotel and CII Ltd., the Caymans Island corporation formed by Fischer.

2         The allegations regarding SpeciGen are that it was or is a biotech company, and that

3    the Sabes brothers, Siegel, Campion, and Bookbinder were SpeciGen officers and/or

4    directors and that Lamere was a "consultant" to the company.  Fischer is alleged to have

5    solicited loans from plaintiff for the benefit of SpeciGen, through his limited liability

6    company, Upper Orbit (which was headquartered in the office of the Sabes brothers).

7    However, there is no allegation that Koolasuriya, Fernandes, or Waterhouse/Rosen had

8    any involvement in SpeciGen – except in the vague allegation that Koolasuriya was a "co-

9    venturer" with Fischer and to have been "involved in other investments of plaintiff Jackson

10   in conjunction with defendant Fischer."

11        The allegations regarding PeerDreams are a little fuzzy, but it appears to also have

12   been a Koolasuriya/Monvia project.  The allegations regarding Notebookz and ILeonardo

13   and their directors do not show any connection with the other alleged schemes.

14        The allegations regarding New Moon are that Fischer and Koolasuriya (and possibly

15   Monvia) worked together to "launch" the site; that Fischer ("employed by" New Moon)

16   represented to plaintiff that he was raising funds for New Moon and also induced her to

17   invest; that Fernandes was on the board of directors in 2008 (and was also on the board of

18   Monvia); and that Koolasuriya was on the board of directors in 2009.  However, there is no

19   allegation that any of the SpeciGen-related defendants were connected in any way with the

20   New Moon launch or attempt to secure funding.

21        The allegation regarding the Sazani Beach Hotel is that Fischer (through Upper

22   Orbit) represented it as an "eco-tourism" resort, and induced plaintiff to invest in it.

23   However, there is no allegation that any of the other individual defendants had any

24   involvement in this part of the purported scheme.

25        Finally, there are allegations regarding Toppost, Rate-It-All (later converted to

26   Double Dutch), and Mobilbucks (some connection to Koolasuriya/Monvia), but to the extent

27   that those are business entities of some sort, there are no facts alleged and they are not

28   named as defendants, so it is difficult to tell what the involvement was.

1      A final problem is that far too many of the allegations in the SAC refer to statements

2  made or actions taken by "defendants." The court expects that any amended complaint will

3  provide a more coherent explanation of the claims being asserted against each defendant,

4  and the factual bases for those claims. An amended complaint that does not provide a

5  coherent explanation of the facts and a plausible statement of the claims will be dismissed

6  with prejudice. Any amended complaint shall be filed no later than April 12, 2013, and may

7  not add any new claims or parties without leave of court.

8

9  **IT IS SO ORDERED.**

10  Dated: March 15, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge