1   Theodore A. Griffinger, Jr. (SBN 66028)
    Tanya Herrera (SBN 177790)
2   STEIN & LUBIN LLP
    Transamerica Pyramid
3   600 Montgomery Street, 14th Floor
    San Francisco, CA  94111
4   Telephone:     (415) 981-0550
    Facsimile:      (415) 981-4343
5   tgriffinger@steinlubin.com
    therrera@steinlubin.com
6
    Attorneys for Defendants,
7   JON SABES, STEVEN SABES AND
    MARVIN SIEGEL
8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                         OAKLAND DIVISION

12

13   SUZANNE D. JACKSON,                    Case No.  4:11-cv-02753-PJH

14            Plaintiff,

15   v.

16   WILLIAM FISCHER; JON SABES;        **DEFENDANTS JON SABES, STEVEN**
     STEVEN SABES; MARVIN SIEGEL;       **SABES AND MARVIN SIEGEL'S NOTICE**
17   BRIAN CAMPION; LONNIE              **OF MOTION AND MOTION TO DISMISS**
     BROOKBINDER; MANI                  **PLAINTIFF'S THIRD AMENDED**
18   KOOLASURIYA, JORGE FERNANDES,      **COMPLAINT**
     JOSHUA ROSEN, STEVE
19   WATERHOUSE, JEAN PAUL a/k/a        Date:      August 28, 2013
     "BUZZY" LAMERE, UPPER ORBIT,       Time:      9:00 a.m.
20   LLC, SPECIGEN, INC.; PEER DREAMS   Dept:      Courtroom 3, 3rd Fl.
     INC.; NOTEBOOKZ INC.;              Judge:     Honorable Phyllis J. Hamilton
21   ILEONARDO.COM INC.; NEW MOON
     LLC; MONVIA LLC, CII LIMITED; and
22   SAZANI BEACH HOTEL,

23            Defendants.

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    SUMMARY OF ALLEGATIONS ...................................................................... 3

III.   APPLICABLE LEGAL STANDARDS ............................................................. 5

IV.   ARGUMENT ...................................................................................................... 6

     A.     Plaintiff Still Fails To State A Section 10(b) Claim Against The D&O Defendants ......................................................................................... 6

         1.     Plaintiff Still Fails To Attribute A Misstatement To The D&O Defendants ............................................................................. 7

         2.     Plaintiff Still Fails To Allege Facts Establishing That The D&O Defendants Owed – Or Breached – A Duty To Disclose .......................... 8

         3.     Plaintiff Still Fails To Allege Facts Establishing That The D&O Defendants Acted With Scienter ................................................ 9

     B.     Plaintiff Still Fails To State A Section 20(a) Claim Against The D&O Defendants ....................................................................................... 11

         1.     Plaintiff Fails To Allege A Primary Violation of Section 10(b)................ 11

            a.     Plaintiff Fails To Allege A Primary Violation By SpeciGen........ 11

            b.     Plaintiff Fails To Establish A Primary Violation By Mr. Fischer ....................................................................... 12

                (1)     Plaintiff Fails To Allege That Mr. Fischer Made Any Statement That Was False Or Misleading........................ 13

                (2)     Plaintiff Fails To Raise A Strong Inference That Mr. Fischer Acted With Scienter ............................................. 17

         2.     Plaintiff Still Fails To Allege That The D&O Defendants Exercised Power And Control Over Any Primary Violator ..................................... 17

     C.     Plaintiff Still Fails To State A Claim For Breach Of Fiduciary Duty................... 18

     D.     Plaintiff Still Fails To State A Claim Under Sections 25401 and 25501.............. 19

     E.     Plaintiff Still Fails To State A Claim Under Section 25504 ................................ 20

     F.     Plaintiff Still Fails To State A Claim Under Section 25501.5 ............................. 20

         1.     Section 25501.5 Does Not Apply ............................................................. 21

         2.     Plaintiff's Section 25501.5 Claim Is Time-Barred .................................. 22

     G.     Plaintiff Still Fails To State A Claim For Common Law Fraud .......................... 24

     H.     Plaintiff Still Fails To State A Claim For Negligent Misrepresentation............... 24

     I.     The Doctrine of Respondeat Superior Cannot Save The TAC From Dismissal ......................................................................................... 24

V.     CONCLUSION ................................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

3 **FEDERAL CASES**

4 *Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ................................................................................ 5, 7, 18
5

6 *Basic, Inc. v. Levinson*
    485 U.S. 224 (1988) .................................................................................... 8
7

*Bell Atlantic Corp. v. Twombly*
8    550 U.S. 544 (2007) ................................................................................ 5, 7, 18

9 *Binder v. Gillespie*
    184 F.3d 1059 (9th Cir. 1999) .......................................................................... 6
10

11 *Bly-Magee v. California*
    236 F.3d 1014 (9th Cir. 2001) .......................................................................... 7
12

13 *Brody v. Transitional Hospitals Corp.*
    280 F.3d 997 (9th Cir. 2002) .......................................................................... 8

14 *Cooperman v. Individual, Inc.*
    171 F.3d 43 (1st Cir. 1999) .......................................................................... 8
15

16 *Copperstone v. TCSI Corp.*
    1999 WL 33295869 (N.D. Cal. Jan. 19, 1999) ...................................................... 13, 14

17 *Falkowski v. Imation Corp.*
18    309 F.3d 1123 (9th Cir. 2002) ........................................................................ 14

19 *Frati v. Saltzstein*
    2011 WL 1002417 (S.D.N.Y. Mar. 14, 2011) ...................................................... 9
20

21 *Hollinger v. Titan Capital Corp.*
    914 F.2d 1564 (9th Cir. 1990) ........................................................................ 25

22 *Hopkins v. Dow Corning Corp.*
23    33 F.3d 1116 (9th Cir. 1994) .......................................................................... 23

24 *Howard v. Everex Systems, Inc.*
    228 F.3d 1057 (9th Cir. 2000) ........................................................................ 11
25

26 *Ileto v. Glock, Inc.*
    349 F.3d 1191 (9th Cir. 2003) .......................................................................... 5

27 *In re American Apparel, Inc. Shareholder Litig.*
28    2013 WL 174119 (C.D. Cal. Jan. 16, 2013) ........................................................ 11

*In re Bare Escentuals, Inc. Sec. Litig.*
745 F.Supp.2d 1052 (N.D. Cal. 2010) ................................................................. 5

*In re Coinstar Inc. Sec. Litig.*
2011 WL 4712206 (W.D. Wash. Oct. 6, 2011) ..................................................... 7

*In re Cylink Sec, Litig.*
178 F.Supp.2d 1077 (N.D. Cal. 2001) ............................................................... 12

*In re FoxHollow Technologies, Inc. Sec. Litig.*
2008 WL 2220600 (N.D. Cal. May 27, 2008) ..................................................... 8

*In re Gilead Scis. Sec. Litig.*
536 F.3d 1049 (9th Cir. 2008) ............................................................................. 5

*In re GlenFed, Inc. Sec. Litig.*
42 F.3d 1541 (9th Cir. 1994) ...................................................................... 1, 2, 6

*In re Gupta Corp. Sec. Litig.*
900 F.Supp. 1217 (N.D. Cal. 1994) ................................................................... 12

*In re Hansen Natural Corp. Sec. Litig.*
527 F.Supp.2d 1142 (C.D. Cal. 2007) ............................................................... 18

*In re Interactive Network, Inc. Sec. Litig.*
948 F.Supp. 917 (N.D. Cal. 1996) ....................................................................... 8

*In re International Rectifier Corp. Sec. Litig.*
2008 WL 4555794 (C.D. Cal. May 23, 2008) .................................................... 18

*In re Ivan F. Boesky Sec. Litig.*
825 F.Supp. 623 (S.D.N.Y. 1993) ....................................................................... 8

*In re Oracle Corp. Sec. Litig.*
627 F.3d 376 (9th Cir. 2010) ............................................................................. 17

*In re Rigel Pharmaceuticals, Inc. Sec. Litig.*
697 F.3d 869 (9th Cir. 2012) ............................................................................. 10

*In re Silicon Graphics, Inc.*
183 F.3d 970 (9th Cir. 1999) .................................................................. 2, 6, 10

*In re Stone & Webster, Inc. Sec. Litig.*
253 F.Supp.2d 102 (D. Mass. 2003) ................................................................... 8

*In re Syntex Corp. Sec. Litig.*
95 F.3d 922 (9th Cir. 1996) ............................................................................... 16

*In re Vantive Corp. Sec. Litig.*
283 F.3d 1079 (9th Cir. 2002) ..................................................... 10, 14, 15, 16

TABLE OF AUTHORITIES

*In re VeriFone Holdings, Inc. Sec. Litig.*
    704 F.3d 694 (9th Cir. 2012) ................................................................................. 10

*In re VeriFone Sec. Litig.*
    784 F.Supp. 1471 (N.D. Cal. 1992), *aff'd* 11 F.3d 865 (9th Cir. 1993) .................................. 13

*In re VeriSign, Inc. Deriv. Litig.*
    531 F.Supp.2d 1173 (N.D. Cal. 2007) ......................................................................... 17

*Janus Capital Group, Inc. v. First Derivative Traders,*
    ___ U.S. ___, 131 S.Ct. 2296, 180 L.Ed.2d 166 (2011) ................................................ passim

*Kramas v. Security Gas & Oil, Inc.*
    672 F.2d 766 (9th Cir. 1982) ................................................................................. 23

*Kyung Cho v. UCBH Holdings, Inc.*
    890 F.Supp.2d 1190 (N.D. Cal. 2012) ......................................................................... 11

*Mack University LLC v. Halstead*
    2007 WL 4458615 (C.D. Cal. Nov. 14, 2007) ................................................................... 8

*Mason v. Ambrose Recreation and Park Dist.*
    2010 WL 3076263 (N.D. Cal. Aug. 5, 2010) ................................................................... 25

*Matrixx Initiatives, Inc. v. Siracusano*
    ___ U.S. ___, 131 S.Ct. 1309 (2011) ......................................................................... 10

*Metzler Investment GmBH v. Corinthian Colleges, Inc.*
    540 F.3d 1049 (9th Cir. 2008) ................................................................................. 14

*Micrel, Inc. v . Monolithic Power Systems, Inc.*
    2005 WL 6426678 (N.D. Cal. Dec. 9, 2005) ................................................................... 23

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*
    320 F.3d 920 (9th Cir. 2003) ................................................................................. 16

*Paracor Fin. Inc. v. Gen. Elec. Capital Corp.*
    96 F.3d 1151 (9th Cir. 1996) ................................................................................... 9

*Salameh v. Tarsadia Hotels*
    2011 WL 1044129 (S.D. Cal. Mar. 22, 2011) ................................................................... 23

*Swartz v. KPMG LLP*
    476 F.3d 756 (9th Cir. 2007) .............................................................................. 6, 25

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*
    690 F.Supp.2d 959 (D. Ariz. 2010) ........................................................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
    551 U.S. 308, 127 S.Ct. 2499 ................................................................................. 10

TABLE OF AUTHORITIES

*Verona Partners, LLC v. Tenet Capital Partners Convertible Opportunities Fund, L.P.*
    2006 WL 2669035 (N.D. Cal., Sept. 18, 2006) ........................................................ 10

*Vess v. Ciba Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ................................................................................. 6

*Wenger v. Lumisys, Inc.*
    2 F.Supp.2d 1231 (N.D. Cal. 1998) ......................................................................... 13

*Zucco Partners, LLC v. Digimarc Corp.*
    552 F.3d 981 (9th Cir. 2009) ................................................................................... 6

**CALIFORNIA CASES**

*Bowden v. Robinson*
    67 Cal.App.3d 705 (1977) ....................................................................................... 19

*Deveny v. Entropin, Inc.*
    139 Cal.App.4th 408 (2006) .................................................................................... 22

**FEDERAL STATUTES**

Private Securities Litigation Reform Act of 1995
    15 U.S.C. § 78u-4(b)(2) ............................................................................. 9, 10, 17
    15 U.S.C. § 78u-4(b)(3)(A) ...................................................................................... 6

Securities Act of 1934
    15 U.S.C.§ 78t(b) ............................................................................................. passim
    15 U.S.C. § 78j(b) ............................................................................................ passim

**FEDERAL RULES OF CIVIL PROCEDURE**

F.R.C.P.
    § 8(a) ............................................................................................... 5, 11, 17
    § 9(b) ...................................................................................................... passim
    § 12(b)(6) .......................................................................................................... 5

**CALIFORNIA STATUTES**

Cal. Corp. Code
    § 25004 ............................................................................................................... 21
    § 25401 ............................................................................................................... 19
    § 25501 ........................................................................................................ passim
    § 25504 ............................................................................................................... 20
    § 25506 ......................................................................................................... 22, 23
    § 25510 ............................................................................................................... 22

California Civil Code § 338(a) ............................................................................... 22

1

**NOTICE OF MOTION AND MOTION**

2

TO PLAINTIFF AND HER COUNSEL OF RECORD:

3

     **PLEASE TAKE NOTICE** that on August 28, 2013, at 9:00 a.m., or as soon thereafter as

4

the matter may be heard, in the Courtroom of the Honorable Phyllis J. Hamilton, located at the

5

United States District Court for the Northern District of California, 1301 Clay Street, Oakland,

6

California, defendants Marvin Siegel, Jon Sabes and Steven Sabes (together,  the "D&O

7

Defendants") will and hereby do move for an order dismissing the Third Amended Complaint

8

(the "TAC") in this action.

9

     The D&O Defendants make this motion to dismiss pursuant to Federal Rules of Civil

10

Procedure 12(b)(6), or 9(b) and 8(a) on the grounds that:

11

     1.    Plaintiff's First Claim for Relief  for violations of Section 10(b) of the Securities

12

Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act") fails to state a claim for relief

13

because (a) the TAC fails to specify the statement or statements alleged to have been false or

14

misleading with the specificity required by Rule 9(b) and the Private Securities Litigation Reform

15

Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA"); (b) the TAC fails to attribute any alleged false

16

statement to any of the D&O Defendants; (c) the TAC fails to identify a material misstatement;

17

(d) the TAC fails to plead facts establishing that any misstatement was false or misleading when

18

made; and (e) the TAC fails to plead facts giving rise to a strong inference of scienter.

19

     2.    Plaintiff's Second Claim for Relief for violations of California Corporations Code

20

Sections 25401 and 25501 ("Sections 25401and 25501") fails to state a claim for relief because

21

(a) the TAC fails to allege that any of the D&O Defendants made a false statement or omission in

22

connection with a sale of securities; and (b) the TAC fails to allege that Plaintiff was in privity

23

with any of the D&O Defendants;

24

     3.    Plaintiff's Third Claim for Relief for violations of Section 20(a) of the Exchange

25

Act, 15 U.S.C. § 78t(a) ("Section 20(a)") fails to state a claim for relief because (a) the TAC fails

26

to establish a primary violation of the Exchange Act; and (b) the TAC fails to allege that the

27

D&O Defendants exercised actual power or control over any primary violator;

28

     4.    Plaintiff's Fourth Claim for Relief for violations of California Corporations Code

1    Section 25504 ("Section 25504") fails to state a claim for relief because (a) the TAC fails to

2    allege an agency relationship between the D&O Defendants and Mr. Fischer with the specificity

3    required by Rule 9(b); (b) the TAC fails to allege facts establishing that Defendant SpeciGen, Inc.

4    ("SpeciGen"), Defendant William Fischer or anyone else connected with SpeciGen made a

5    material misstatement in connection with a sale of securities; and (c) the TAC fails to allege that

6    the D&O Defendants had knowledge or reasonable grounds to believe that SpeciGen, Mr. Fischer

7    or anyone else was primarily liable for violations of Sections 25401 and 25501;

8            5.      Plaintiff's Fifth Claim for Relief for breach of fiduciary duty fails to state a claim

9    for relief because (a) the TAC fails to plead specific facts showing that any of the D&O

10   Defendants acted in bad faith, as required to establish liability for breach of a duty of care under

11   the exculpatory provision in SpeciGen's Certificate of Incorporation (the "Certificate"); (b)

12   Plaintiff lacks standing to bring a claim for breach of fiduciary duty because any harm suffered

13   was suffered in the first instance by SpeciGen, and the only damage suffered by Plaintiff was the

14   loss of value of  her investment (*Eshelman v. OrthoClear Holdings, Inc.* 2008 WL 171059, *7

15   (N.D. Cal. Jan. 12, 2008)); (c) Plaintiff's derivative claim for breach of fiduciary duty conflicts

16   with her direct claims for damages and rescission (*id.*); and (d) the TAC fails to allege that the

17   D&O Defendants failed to implement a system of controls or consciously failed to monitor the

18   operation of such a system, as required for a "failure of oversight" claim under Delaware law;

19           6.      Plaintiff's Eighth Claim for Relief for negligent misrepresentation fails to state a

20   claim for relief because the TAC fails to allege a misrepresentation or reliance with the specificity

21   required by Rule 9(b);

22           7.      Plaintiff's Ninth Claim for Relief for violations of California Corporations Code

23   Section 25501.5 ("Section 25501.5") fails to state a claim for relief because (a) the TAC fails to

24   allege that any of the D&O Defendants participated in any transaction involving the sale of

25   securities or otherwise acted as a broker-dealer in the State of California; and (b) any claim for

26   relief under Section 25501.5 would be time-barred;

27           8.      Plaintiff's Tenth Claim for Relief for common law fraud fails to state a claim for

28   relief because the TAC fails to allege a misrepresentation, scienter or reliance with the specificity

1    required by Rule 9(b); and

2         9.    Plaintiff's Eleventh Claim for Relief for respondeat superior fails to state a claim

3    for relief because (a) "respondeat superior" is not an independent cause of action; and (b) Plaintiff

4    fails to allege the existence of an agency relationship with the specificity required by Rule 9(b).

5         The D&O Defendants' motion is based on this Notice of Motion and Motion, the

6    accompanying Memorandum of Points and Authorities, Request for Judicial Notice and the

7    Declaration of Tanya Herrera filed and served herewith, the pleadings and records on file herein,

8    and such additional materials and argument as may be presented to the Court at or before the

9    hearing on the Motion.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

1   **I.       INTRODUCTION**

2          Defying all known pleading standards, the TAC repeatedly cries "fraud" without pointing to a

3   single fact that might support any such claim.  Like its predecessors, the TAC fails to identify *which*

4   statements by *which* defendants are allegedly actionable, and entirely omits the requisite "explanation

5   as to *why* the statement or omission complained of was false or misleading."  *In re GlenFed, Inc. Sec.*

6   *Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (emphasis added).  Likewise, this 48-page search for a

7   meaningful factual allegation offers only a boilerplate recital of scienter – supported solely by generic

8   "motive and opportunity" allegations – none of which approaches the mandated standards of the

9   Ninth Circuit and the PSLRA.  These pleading defects are obvious and abundant and discussed in

10  greater detail below.  Of greatest significance, however, is the now apparent reason for this failure:

11         ***Not for lack of opportunity***.  The TAC represents Plaintiff's *fourth* attempt to state a claim for

12  relief against the D&O Defendants.  Despite ample guidance from the Ninth Circuit and the Northern

13  District of California, Plaintiff's Second Amended Complaint (the "SAC") was "confusing and

14  replete with conclusory allegations."  Order Granting Motions to Dismiss (ECF No. 177) (the

15  "Order") at 28.  Among other things, the SAC (1) failed to attribute any alleged misstatement to the

16  D&O Defendants (and Plaintiff's counsel later conceded that there were no such statements); and (2)

17  failed to articulate a coherent theory of secondary liability.  Accordingly, the Court dismissed

18  Plaintiff's Section 10(b) claims against the D&O Defendants *with prejudice* and offered detailed

19  guidance with respect to Plaintiff's remaining claims.  Ignoring this guidance, Plaintiff has now filed

20  yet another confusing and conclusory pleading.  Although Plaintiff was clearly warned that "[a]n

21  amended complaint that does not provide a coherent explanation of the facts and a plausible statement

22  of the claims will be dismissed with prejudice" (Order at 29), she repeats – and even aggravates – all

23  of the SAC's original pleading failures.  Incredibly, Plaintiff even repeats her Section 10(b) claims

24  against the D&O Defendants, despite the Order dismissing these claims with prejudice.

25         ***Not for lack of discovery.***  Plaintiff filed her initial complaint more than two ago.  Since then,

26  she has amended her pleading three times and commenced a parallel proceeding against Mr. Fischer

27  in the U.S. Bankruptcy Court for District of Minnesota (the "Adversary Proceeding"), thereby

28  circumventing the PSLRA's mandatory discovery stay.  At the hearing on the D&O Defendants'

1    motion to dismiss the SAC, Plaintiff's counsel confirmed that Plaintiff was seeking discovery in the

2    Adversary Proceeding and would soon be receiving "an abundant amount of material" from Mr.

3    Fischer (Transcript of Oral Argument ("Tr.") at 17:10 (ECF No. 174), including "25,000 documents"

4    (*id.* at 48:3).[1]   In addition, Plaintiff's counsel indicated that he would be deposing Mr. Fischer (*id.* at

5    48:6) – which he has apparently done (*see* TAC at ¶¶ 45, 61, 92, 111, 115 and 142) – and has

6    consulted with an inside source from SpeciGen (Tr. at 21:8-9).  Despite these unusual procedural

7    advantages, the TAC does not identify a single email, internal report or other contemporaneous

8    document suggesting that any alleged misstatement was knowingly false or misleading when made.

9           ***Surely not for lack of guidance***.  This Court and numerous others have made clear the

10   requirements for identifying an actionable misstatement, for pleading contemporaneous facts

11   establishing falsity, and for raising a strong inference of scienter.  It is no mystery that plaintiffs

12   cannot simply rely on later events to support the claimed falsity of earlier statements:  "The fact that

13   an allegedly fraudulent statement and a later statement are *different* does not necessarily amount to an

14   explanation as to why the earlier statement was false."  *GlenFed*, *supra,* 42 F.3d at 1549 (emphasis

15   original).  Nor can Plaintiff rely upon "group pleading" to raise any inference of scienter.  In the

16   absence of specific factual allegations establishing an actionable misstatement and a strong inference

17   of scienter, this Court has "no way of distinguishing [Plaintiff's] allegations from the countless

18   'fishing expeditions' which the PSLRA was designed to deter."  *In re Silicon Graphics, Inc. Sec.*

19   *Litig.*, 183 F.3d 970, 988 (9th Cir. 1999).

20          After two years and four amendments, there can be only one reason why experienced counsel

21   with every opportunity and procedural advantage have nonetheless profoundly failed to state a

22   Section 10(b) claim against SpeciGen, the D&O Defendants or anyone else connected to SpeciGen:

23   ***this simply is not a fraud case.***  Plaintiff's inability to plead a Section 10(b) claim also dooms her

24   claims under Section 20(a), the California Corporations Code and California common law.

25   Accordingly, the TAC should be dismissed with prejudice.

26

27   _____

28   [1]The Adversary Proceeding is set for trial on September 16, 2013, less than three months from now.
     *See* Second Amended Order for Trial (Herrera Decl. Ex. A).

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

1    II.    **SUMMARY OF ALLEGATIONS**

2         Plaintiff's latest attempt to state a claim for relief against the D&O Defendants relies on the

3    same basic allegations as her previous efforts.  Once again, Plaintiff alleges that she was the victim of

4    a scheme to defraud orchestrated by Mr. Fischer.  According to the TAC:

5              Fischer acted as agent for, was aided and abetted by, and could not
               have perpetrated his scheme without the other named defendants who,
6              as officers and directors of the companies in which [Plaintiff's] funds
               were placed, proceeded to waste her assets while repeatedly
7              misleading her through exaggeratedly optimistic statements about their
               companies' prospects and withholding material information, including
8              but not limited to the fact that Fischer was a twice-convicted felon.

9    TAC at ¶ 2.  Despite numerous variations on this theme, Plaintiff has never accused Mr. Fischer,

10   SpeciGen or any of the D&O Defendants of making any alleged misstatement in writing.[2]  Instead,

11   Plaintiff's claims for relief are based on alleged oral misstatements.

12        Until recently, Plaintiff claimed that Mr. Fischer was solely responsible for making false

13   statements about SpeciGen.  At the hearing on the D&O Defendants' previous motion to dismiss,

14   Plaintiff's counsel "concede[d] without question" that the D&O Defendants "were not the so-called

15   speakers in this case." Tr. at 8:3-5.  Because Section 10(b) liability extends only to "speakers" (*see*

16   Section IV.A.1, *infra*), the Court concluded that the SAC failed to state a Section 10(b) claim against

17   the D&O Defendants and could not be amended to do so.  Order at 8.  Accordingly, the Court

18   dismissed Plaintiff's Section 10(b) claims *with prejudice* and further cautioned Plaintiff against

19   "add[ing] any new claims or parties without leave of court."  *Id.* at 29.

20        Ignoring the Order and her own counsel's concession, Plaintiff now claims that Mr.

21   Fischer and/or one or more of the other individual defendants connected to SpeciGen

22   (cumulatively, the "SpeciGen Defendants") misrepresented SpeciGen's fundraising and

23   partnership prospects during a dinner meeting in Palo Alto in February 2007.[3]  TAC at ¶¶ 88-89.

24   According to the TAC, "defendants" falsely represented that:

25   _____

26   [2]  To the contrary, Plaintiff claims that she never received any written materials prior to making her
     investments in SpeciGen.  TAC at ¶ 47.

27   [3]  Plaintiff did not seek leave to re-plead her Section 10(b) claims against the D&O Defendants and
     ignored the D&O Defendants' attempt to meet and confer to understand the reason for her apparent
28   contempt of court.

- SpeciGen's Series A offering "was moving along well" (TAC at ¶ 89(a));

- "Genentech had vetted the company's technology" (*id.* at ¶ 89(b));

- SpeciGen was "in advanced discussions" with an unidentified "public company and an established private biotech company about advanced research partnerships that would develop preclinical data sufficient to complete clinical trials" (*id.* at ¶ 89(c)).

None of these allegations appears in any of Plaintiff's prior pleadings. Moreover, and more importantly, none of them adequately alleges what any of the D&O Defendants supposedly said (if anything), why the statements were false or misleading when made or the factual basis for a strong inference that they were made with scienter. Similarly, the TAC recites a laundry list of purported omissions (TAC at ¶ 90), but makes no attempt to identify a statement that was false or misleading by reason of any alleged omission or the basis for a strong inference that any such statement was made with scienter. As discussed in detail below, these pleading failures are fatal to Plaintiff's latest attempt to plead a Section 10(b) claim against the D&O Defendants. *See* Section IV.A, *infra*.

The TAC also alleges that Mr. Fischer misrepresented SpeciGen's fundraising and product development efforts "as agent for SpeciGen" in October and November 2006. TAC ¶ 87. According to the TAC, Mr. Fischer falsely represented that:

- SpeciGen's technology was a "proven concept" (TAC at ¶ 87(a));

- SpeciGen's technology was being reviewed for partnering or licensing by one or more unidentified "publicly traded pharmaceutical companies" (*id.*);

- SpeciGen had an "industrial research collaboration" with an unidentified "prominent biotech company" (*id.* at ¶ 87(c));

- SpeciGen's technology had been "validated" by an unidentified "commercial biotech company" (*id.* at ¶ 87(d));

- SpeciGen "had all of the licenses and patents needed to commercially develop its technologies" (*id.* at ¶ 87(h));

- SpeciGen's Series A offering "would be fully sufficient to carry the company to its 'exit strategy,' at which point [Plaintiff] could recover her investment at a profit" (*id.* at ¶ 87(b));

- SpeciGen's "exit strategy" would come within two or three years (*id.* at ¶ 87(g));

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

- SpeciGen's Series A offering "consisted solely of convertible promissory notes" (*id.* at ¶ 87(e)); and

- SpeciGen's Series A offering "was fully subscribed" by "sophisticated investors with biotech startup knowledge and experience" (*id.* at ¶ 87(f)).

The TAC devotes several pages to Mr. Fischer's alleged misstatements (TAC at ¶¶ 87-89), but makes no attempt to specify what Mr. Fischer actually said or why the statements were allegedly false when made. As discussed in detail below, these pleading failures are fatal to Plaintiff's attempt to state a claim for relief against the D&O Defendants.

### III.   **APPLICABLE LEGAL STANDARDS**

A motion to dismiss is proper under Federal Rule of Civil Procedure § 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1199-1200 (9th Cir. 2003). In determining whether plaintiffs have alleged facts sufficient to establish their claims, the court accepts all well-pled factual allegations as true and construes them in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), the complaint "must contain sufficient factual matter . . . to 'state a claim that is plausible on its face.'" *Iqbal*, *supra,* 556 U.S. at 678 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As this Court has explained, "a plaintiff's obligation to provide the grounds of his entitlement to relief 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F.Supp.2d 1052, 165 (N.D. Cal. 2010) (*quoting Twombly, supra,* 550 U.S. at p. 555).

Where the complaint alleges fraud, plaintiff must also satisfy the heightened pleading standards mandated by Rule 9(b). Rule 9(b) requires the plaintiff to state with particularity the

1    circumstances constituting fraud, including the "who, what, when, where, and how" of the charged

2    misconduct.  *Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  "Under Rule 9(b),

3    falsity must be pled with specificity, including an account of the 'time, place, and specific content of

4    the false representations as well as the identities of the parties to the misrepresentations.'"  Order at 6

5    (*quoting Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007)).  "In addition, the plaintiff must do

6    more than simply allege the neutral facts necessary to identify the transaction; he must also explain

7    why the disputed statement was untrue or misleading at the time it was made."  *Id.*  Once again,

8    Plaintiff does not come close to meeting these standards.

9    **IV.    ARGUMENT**

10            **A.    Plaintiff Still Fails To State A Section 10(b) Claim Against The D&O Defendants**

11            Section 10(b) of the Exchange Act provides, in part, that it is unlawful "to use or employ in

12   connection with the purchase or sale of any security registered on a national securities exchange or

13   any security not so registered, any manipulative or deceptive device or contrivance in contravention of

14   such rules and regulations as the [SEC] may prescribe."  15 U.S.C. § 78j(b).  To state a claim under

15   Section 10(b) and Rule 10b-5 thereunder, a plaintiff must allege (1) a misrepresentation or omission,

16   (2) of material fact, (3) made with scienter, (4) on which the plaintiff justifiably relied, (5) that

17   proximately caused the alleged loss.  *Binder v. Gillespie,* 184 F.3d 1059, 1063 (9th Cir. 1999).

18           Plaintiffs have long been required to plead securities fraud with the specificity mandated by

19   Rule 9(b).  *GlenFed, supra,* 42 F.3d at 1545.   In addition, plaintiffs must now satisfy the

20   requirements of the PSLRA.  As the Order explains:

21                  Congress established the PSLRA to establish uniform and stringent
                    pleading requirements for securities fraud actions, and to put an end to
22                  the practice of pleading "fraud by hindsight."  *See In re Silicon
                    Graphics, Inc.*, 183 F.3d 970, 988 (9th Cir. 1999).  Under the PSLRA,
23                  the complaint must plead both falsity and scienter with particularity.
                    *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir.
24                  2009).  If the complaint does not satisfy the PSLRA's pleading
                    requirements, the court, upon motion of the defendant, must dismiss
25                  the complaint.  15 U.S.C. § 78u-4(b)(3)(A).

26   Order at 7.  As discussed in detail below, Plaintiff still fails to plead a Section 10(b) claim against the

27   D&O Defendants with the specificity required by Rule 9(b) and the PSLRA.  *See* Section IV.A.1,

28   *infra.*  Accordingly, Plaintiff's Section 10(b) claims against the D&O Defendants must be dismissed

1   with prejudice (again).

2   **1.      Plaintiff Still Fails To Attribute A Misstatement To The D&O Defendants**

3   In *Janus Capital Group, Inc. v. First Derivative Traders,* the U.S. Supreme Court clarified

4   that Section 10(b) liability is limited to parties who actually "make" a misstatement of material fact.

5   ___ U.S. ___, 131 S.Ct. 2296, 180 L.Ed.2d 166 (2011); *see also In re Coinstar Inc. Sec. Litig.*, 2011

6   WL 4712206, *11 (W.D. Wash. Oct. 6, 2011) (non-speaking officers could not be primarily liable for

7   other officers' oral statements under *Janus*).  At the hearing on the D&O Defendants' motion to

8   dismiss the SAC, Plaintiff's counsel conceded that "the three SpeciGen defendants are non-speakers

9   in the 10b-5 context." Tr. at 6:25-7:2.  Despite this concession, Plaintiff now suggests that one or

10   more of the D&O Defendants misrepresented SpeciGen's fundraising and partnership prospects

11   during a dinner meeting in Palo Alto in February 2007.  TAC at ¶¶ 88-89.  Plaintiff's new allegations

12   are not only inconsistent with her counsel's representations to the Court, they are also inadequate

13   under Rule 9(b) and the PSLRA.

14   The Order specifically admonished Plaintiff that "far too many of the allegations in the SAC

15   refer to statements made or actions taken by 'defendants'" and warned that any amended complaint

16   must "provide a more coherent explanation of the claims being asserted *against each defendant*, and

17   the factual bases for those claims."  Order at 29 (emphasis original).  Ignoring this guidance, the TAC

18   alleges that "defendants" made false statements to Plaintiff, without any attempt to specify *which*

19   "defendants" allegedly made *which* misstatements.  TAC at ¶¶ 89.  These allegations clearly do *not*

20   "'give defendants notice of the particular misconduct which is alleged to constitute the fraud charged

21   so that they can defend against the charge and not just deny that they have done anything wrong.'"

22   Order at 6 (*quoting Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).[4]  Nor do they

23   "'state a claim that is plausible on its face,'" given counsel's previous concession that the D&O

24   Defendants did not make any such statements.  *Iqbal*, *supra,* 556 U.S. at 678 (*quoting Twombly*,

25   *supra,* 550 U.S. at 570 ); *see also* Tr. at 11:8 ("we don't question that the three SpeciGen defendants

26

27   _____
    [4] These allegations, which are also asserted against Mr. Fischer, are discussed at greater length in the
    context of Plaintiff's attempt to state a Section 20(a) claim against the D&O Defendants at Section

28   IV.B.2.a, *infra.*

1   did not meet with Mrs. Jackson and tell her this stuff").  Accordingly, Plaintiff's improper attempt to

2   revive her Section 10(b) claims against the D&O Defendants should be summarily rejected.

3           **2.        Plaintiff Still Fails To Allege Facts Establishing That The D&O
                        Defendants Owed – Or Breached – A Duty To Disclose**

4

5           The TAC does not identify any affirmative statement, by any defendant, that was false or

6   misleading by reason of a supposed omission.  Instead, the TAC suggests that all defendants,

7   including the D&O Defendants, had a duty to disclose a wide range of operational issues, including

8   intra-corporate conflicts, pro forma financial projections and fundraising challenges.  TAC at ¶ 90.

9   However, the D&O Defendants had no general obligation to disclose any of these allegedly omitted

10  "facts."  *See, e.g.,  Cooperman v. Individual, Inc.*, 171 F.3d 43, 50-51 (1st Cir. 1999) (no duty to

11  Board-level conflict that led to CEO's resignation); *In re FoxHollow Technologies, Inc. Sec. Litig.*,

12  2008 WL 2220600, *23 (N.D. Cal. May 27, 2008) (no duty to disclose internal financial projections);

13  *In re Stone & Webster, Inc. Sec. Litig.*, 253 F.Supp.2d 102, 126 (D. Mass. 2003) (no duty to

14  characterize financial results in pejorative fashion, even if results are very poor); *and Mack University*

15  *LLC v. Halstead*, 2007 WL 4458615, *5 (C.D. Cal. Nov. 14, 2007) (no duty to identify other

16  investors).   Furthermore, the TAC does not allege facts to support the imposition of any such duty.

17          Under Section 10(b), an omission can only be actionable if the defendant had an affirmative

18  duty to disclose the information.  *Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n. 17 (1988) ("Silence,

19  absent a duty to disclose, is not misleading under Rule 10b-5").  Typically, a duty arises when

20  someone makes a statement that is materially misleading in the absence of the undisclosed

21  information.  *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("To be

22  actionable under the securities laws, an omission must be misleading; in other words, it must

23  affirmatively create an impression of a state of affairs that differs in a material way from the one that

24  actually exists") (citation omitted).  The TAC does not identify any such statements.

25          The TAC alleges that the D&O Defendants were officers and directors of SpeciGen (TAC at

26  ¶¶ 8, 9 and 10), but these allegations do not establish the existence of a duty to disclose.  *See In re*

27  *Interactive Network, Inc. Sec. Litig.*, 948 F.Supp. 917, 920 (N.D. Cal. 1996) (dismissing Section 10(b)

28  claim against officers and directors because there is no "general duty to disclose"); *see also In re Ivan*

1  *F. Boesky Sec. Litig.*, 825 F.Supp. 623, 625 (S.D.N.Y. 1993) ("corporations and their management are

2  under no general duty to disclose").

3       "The parties to an impersonal market transaction owe no duty of disclosure to one another

4  absent a fiduciary or agency relationship, prior dealings, or circumstances such that one party has

5  placed trust and confidence in the other." *Paracor Fin. Inc. v. Gen. Elec. Capital Corp.,* 96 F.3d

6  1151, 1157 (9th Cir. 1996). Plaintiff does not allege that she had a special relationship with any of the

7  D&O Defendants, nor can she. She does not allege that any of the D&O Defendants undertook to act

8  as her investment advisor. Nor does Plaintiff allege that any of the D&O Defendants assumed a duty

9  to warn her about the risks of investing in start-up companies or evaluate whether SpeciGen would be

10  an appropriate investment for her. Certainly, there was nothing stopping Plaintiff from conducting

11  her own due diligence investigation if she was concerned about SpeciGen's management, cash flow

12  or fundraising efforts. *See, e.g., Frati v. Saltzstein*, 2011 WL 1002417, *5 (S.D.N.Y. Mar. 14, 2011)

13  (defendants had no affirmative duty to disclose information that plaintiffs could have discovered in

14  the course of a reasonable due diligence investigation).[5]

15          **3.**     **Plaintiff Still Fails To Allege Facts Establishing That The D&O**

16                **Defendants Acted With Scienter**

17       To adequately plead scienter under the PSLRA, the complaint must "state with particularity

18  facts giving rise to a strong inference that the defendant acted with the required state of mind." 15

19  U.S.C. § 78u-4(b)(2). In the Ninth Circuit, the required state of mind is "deliberate or conscious

20  _____

21  [5] Furthermore, Plaintiff cannot claim to have been misinformed about SpeciGen when she does not appear to have asked questions, requested documentation or otherwise investigated the company prior

22  to making her investments. *Frati,* 2011 WL 1002417, *5 ("Plaintiffs cannot claim that they were uninformed about the inner-workings of a fund in which they planned to invest if they did not feel it

23  necessary to review the fund documents or perform any research prior to making such an investment"). Nor can she plausibly contend that material information was withheld from her when

24  she expressly represented and warranted in the Note and Warrant Purchase Agreement by which she acquired her interest in SpeciGen (the "Purchase Agreement") that "the Company has given the

25  Investor access to the corporate records and accounts of the Company and to all information in its possession relating to the Company, has made its officers and representatives available for interview

26  by the Investor, and has furnished such Investor with all documents and other information required for the Investor to make an informed decision with respect to the purchase of the Note and the Warrant."

27  Purchase Agreement at ¶ 3(e). A true and correct copy of the Purchase Agreement is attached to the

28  Declaration of William Fischer ("Fischer Declaration") as Exhibit ("Ex.") 1 (Herrera Decl. Ex. B).

1   recklessness." *Silicon Graphics, supra,* 183 F.3d at 988.  To qualify as "strong," the Supreme Court

2   has held, "an inference of scienter must be more than merely plausible or reasonable – it must be

3   cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v.*

4   *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2504-2505, 168 L.2d 179 (2007).  The

5   Supreme Court has further instructed that, in determining whether scienter has been sufficiently pled,

6   a court must review plaintiff's allegations "holistically."  *See In re VeriFone Holdings, Inc. Sec. Litig.*,

7   704 F.3d 694, 702 (9th Cir. 2012) (*citing Matrixx Initiatives, Inc. v. Siracusano*, ___ U.S. ___, ___,

8   131 S.Ct. 1309, 1324 (2011)).  In this case, none of Plaintiff's allegations are cogent or compelling

9   enough to raise a strong inference of scienter, even when considered holistically.

10          The TAC generally alleges that all defendants, including the D&O Defendants, were "aware"

11   that their respective companies (1) needed funding to survive (TAC at ¶¶ 131(a), (c) and (d)); and (2)

12   faced significant product development challenges (*id.* at ¶¶ 87(b) and (d)).  These generic allegations

13   could be applied to virtually any start-up company.   Indeed, the TAC purports to apply the same

14   allegations indiscriminately to "all of the '34 Act defendants" in this action (a group that includes five

15   individual defendants and five separate entities).  TAC at p. 33.

16          These boilerplate allegations, which are not even specific to the D&O Defendants, do not

17   "state with particularity facts giving rise to a strong inference that the defendant acted with the

18   required state of mind."  15 U.S.C. § 78u-4(b)(2).  *See, e.g., In re Vantive Corp. Sec. Litig.*, 283 F.3d

19   1079, 1085 (9th Cir. 2002) (affirming dismissal of Section 10(b) claims where "the bulk of the alleged

20   adverse facts are generic, subjective, difficult to prove or refute, and could be alleged against almost

21   any company that has experienced a drop in sales revenue").  At best, the TAC describes "routine

22   corporate objectives," such as the desire to obtain financing and develop new products.

23          The Ninth Circuit and Northern District of California have repeatedly rejected attempts to

24   premise a strong inference of scienter on such allegations.  *See, e.g., In re Rigel Pharmaceuticals, Inc.*

25   *Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) ("allegations of routine corporate objectives such as the

26   desire to obtain good financing and expand are not, without more, sufficient to allege scienter; to hold

27   otherwise would support a finding of scienter for any company that seeks to enhance its business

28   prospects"); *see also Verona Partners, LLC v. Tenet Capital Partners Convertible Opportunities*

1   *Fund, L.P.*, 2006 WL 2669035, *12 (N.D. Cal., Sept. 18, 2006) ("Generalized assertions of financial

2   motive, without more, are insufficient to meet the heightened pleading requirement of the PSLRA").

3   This Court should not hesitate to do the same.

**B.      Plaintiff Still Fails To State A Section 20(a) Claim Against The D&O Defendants**

5          Under Section 20(a) of the Exchange Act, "[i]t shall be unlawful for any person, directly or

6   indirectly, to do any act or thing which it would be unlawful for such person to do under the

7   provisions of this chapter or any rule or regulation thereunder through or by means of any other

8   person." 15 U.S.C. § 78t(b).  In order to state a claim under Section 20(a), a plaintiff must allege (1) a

9   primary violation of the federal securities laws; and (2) that the defendant exercised actual power or

10  control over the primary violator.  *See generally Howard v. Everex Systems, Inc.*, 228 F.3d 1057,

11  1065 (9th Cir. 2000).   As discussed in detail below, Plaintiff still fails to allege a primary violation of

12  Section 10(b) or the D&O Defendants' actual power and control over any primary violator.

**1.      Plaintiff Fails To Allege A Primary Violation of Section 10(b)**

14         The Ninth Circuit has not ruled on the standard for pleading a Section 20(a) claims.  In the

15  Order, the Court adopted the reasoning of several other district courts in the Ninth Circuit to conclude

16  that Plaintiff's control allegations need only comply with Rule 8(a).  Order at 22 (*citing In re*

17  *American Apparel, Inc. Shareholder Litig.*, 2013 WL 174119, *34 n. 204 (C.D. Cal. Jan. 16, 2013)

18  *and Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 690 F.Supp.2d 959, 966-

19  67 (D. Ariz. 2010)).  However, Plaintiff must still allege a primary violation of Section 10(b) with the

20  specificity required by Rule 9(b) and the PSLRA.  *See, e.g., Kyung Cho v. UCBH Holdings, Inc.*, 890

21  F.Supp.2d 1190, 1205 (N.D. Cal. 2012) ("Where a plaintiff asserts a Section 20(a) claim based on an

22  underlying violation of Section 10(b), the pleading requirements for both violations are the same").

23  As the Order explains, "the viability of the § 20 claim depends on the viability of the primary claims

24  under § 10(b) and Rule 10b-5."  Order at 9.  The TAC confirms that Plaintiff cannot plead a viable

25  primary claim under Section 10(b).

**a.      Plaintiff Fails To Allege A Primary Violation By SpeciGen**

27         In the Order, the Court explained that Plaintiff's ability to state a Section 20(a) claim against

28  the D&O Defendants would depend on her ability to allege a primary violation against SpeciGen.

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

1  Order at 9 ("assuming that plaintiff can state a primary violation against SpeciGen, she may be able to

2  state a § 20(a) claim against the D&O Defendants").  Significantly, Plaintiff does not even attempt to

3  allege that SpeciGen made any false statement, as required for primary liability under Section 10(b).

4  *See Janus,* 131 S.Ct. at 2302.  Instead, Plaintiff focuses on Mr. Fischer's alleged oral statements.

5  However, Mr. Fischer's alleged statements cannot support a Section 10(b) claim against SpeciGen.

6      As previously discussed, the Supreme Court has expressly limited primary liability under

7  Section 10(b) to the "maker" of the alleged false statement.  *See* Section IV.A.1, *supra.*  As the

8  Supreme Court explained, "the maker of a statement is the person or entity with ultimate authority

9  over the statement, including its content and whether and how to communicate it."  *Janus,* 131 S.Ct. at

10  2303.  Plaintiff does not allege that SpeciGen had "ultimate authority" over Mr. Fischer's alleged

11  oral statements, nor can she.  *See, e.g., In re Gupta Corp. Sec. Litig.*, 900 F.Supp. 1217, 1240 (N.D.

12  Cal. 1994) (oral statements attributable to individual defendants are actionable against only those

13  defendants).  In the absence of any allegation that SpeciGen made a misstatement, Plaintiff does not –

14  and cannot – establish a primary violation of Section 10(b).

15      **b.    Plaintiff Fails To Establish A Primary Violation By Mr. Fischer**

16      The TAC summarily alleges that "Fischer, acting as agent for SpeciGen, made numerous

17  representations about SpeciGen that were false or materially misleading."  TAC at ¶ 87.  Although

18  Plaintiff's theory of liability is far from clear, she appears to argue that SpeciGen can or should be

19  vicariously liable for Mr. Fischer's alleged wrongdoing.  Although Plaintiff's theory may have

20  enjoyed some support in the past (*see, e.g., In re Cylink Sec, Litig.,* 178 F.Supp.2d 1077, 1088 (N.D.

21  Cal. 2001) ("A corporate entity can be vicariously liable under section 10(b) for the fraud of its

22  officers)), it does not appear to have survived the Supreme Court's authoritative opinion in *Janus*.

23      In *Janus*, the Supreme Court limited primary liability to "the entity with authority over the

24  content of the statement and whether and how to communicate it."  131 S.Ct. at 2303.  Writing for the

25  majority, Justice Thomas explained that the "rule might best be exemplified by the relationship

26  between a speechwriter and a speaker."  131 S.Ct. at 2302.  "Even when a speechwriter drafts a

27  speech," Justice Thomas continued, "the content is entirely within the control of the person who

28  delivers it."  *Id.*  Likewise, in this case, Mr. Fischer was the only one with "ultimate authority" over

1   his own oral statements.  Under *Janus*, SpeciGen was not the "maker" of Mr. Fischer's alleged oral

2   statements and cannot be primarily liable for them under Section 10(b).

3          Plaintiff will undoubtedly argue that SpeciGen is vicariously liable for Mr. Fischer's oral

4   statements under common law agency principles.  *See* TAC at ¶¶ 201-205.  As discussed in detail

5   below, Plaintiff's agency allegations do not comply with the Order or Rule 9(b).  *See* Section IV.I,

6   *infra*.  Moreover, they are inconsistent with *Janus*.  The Supreme Court expressly considered and

7   rejected a similar attempt to rely on common law alter ego principles to extend primary liability to

8   non-speakers under Section 10(b).  *Janus, supra,* 131 S.Ct. at 2304.  Likewise, Justice Breyer, writing

9   for the dissent, warned that the majority's rule would insulate non-speakers who would otherwise be

10  liable under common law agency principles.  *Id.* at 2310.  Thus, *Janus* effectively forecloses

11  Plaintiff's attempt to hold SpeciGen vicariously liable for Mr. Fischer's alleged misstatements.  But

12  even assuming *arguendo* that Plaintiff can rely on the doctrine of respondeat superior to pursue a

13  Section 10(b) claim against SpeciGen (and *Janus* suggests that she cannot), she still fails to allege

14  either the existence of an agency relationship (*see* Section IV.I, *infra*) or a violation of Section 10(b).

15                    **(1)    Plaintiff Fails To Allege That Mr. Fischer Made Any**
                              **Statement That Was False Or Misleading**
16

17         The TAC alleges that Mr. Fischer orally misrepresented SpeciGen's product development,

18  partnership and fundraising prospects (TAC at ¶¶ 87 and 89), but does not specify what Mr. Fischer

19  actually said.  Instead, Plaintiff "repackages defendants' actual oral statements in vague and

20  impressionistic terms."  *Wenger v. Lumisys, Inc.,* 2 F.Supp.2d 1231, 1246 (N.D. Cal. 1998).  *See, e.g.,*

21  TAC at ¶ 89(a) (alleging that "defendants" falsely represented that "the Series A offering was moving

22  along well"). [6]  Courts throughout the Northern District of California have rejected Plaintiff's

23  "impressionistic approach to pleading fraud," and this Court should do the same.  *Wenger,* 2

24  F.Supp.2d at 1247; *and see Copperstone v. TCSI Corp.*, 1999 WL 33295869, *9 (N.D. Cal. Jan. 19,

---

25  [6]  Of course, reasonable investors do not rely on vague statements of corporate optimism like "the
26  Series A offering was moving along well" (TAC at ¶ 89(a)), so Plaintiff's paraphrased portrayal of the
    D&O Defendants' alleged oral statement would not be actionable in any event.  *See, e.g., In re*
27  *VeriFone Sec. Litig.*, 784 F.Supp. 1471, 1481 (N.D. Cal 1992) ("professional investors, and most
    amateur investors as well, know how to devalue the optimism of corporate executives"), *aff'd* 11 F.3d
28  865 (9th Cir. 1993).

1   1999) (dismissing claims based on alleged oral statements where, as here, "Plaintiffs never allege who

2   made the statement [or] what was actually said").

3        Plaintiff not only fails to specify Mr. Fischer's alleged oral statements, she also fails to specify

4   "the reason or reasons why" any such statements were false or misleading when made.  According to

5   Plaintiff, Mr. Fischer and/or "defendants" misrepresented SpeciGen's (1) product development efforts

6   (TAC at ¶ 87(a), 87(d) and 89(b)); (2) partnership prospects (*id.* at ¶¶87(a), 87(c) and 89(c)); (3)

7   patent portfolio (*id.* at ¶ 87(h)); and (4) fundraising efforts (*id.* at ¶¶ 87(b), 87(e), 87(f), 87(g) and

8   87(h)).  Plaintiff generally alleges that each such statement was false, but offers no facts to support her

9   characterization.   Instead, Plaintiff relies on a series of generalities and *non sequiturs*.  As discussed

10  in detail below, these allegations do not come close to satisfying Plaintiff's pleading obligations under

11  Rule 9(b) and the PSLRA.  *See generally Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir.

12  2002) ("vague claims about what statements were false or misleading [and] how they were false" are

13  subject to dismissal); *and see Metzler Investment GmBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049,

14  1070 (9th Cir. 2008) ("A litany of alleged false statements, unaccompanied by the pleading of specific

15  facts indicating why those statements were false, does not meet [the PSLRA] standard");

16                    **(a)     Product Development Representations**

17        Plaintiff alleges that Mr. Fischer and/or "defendants" falsely represented that SpeciGen's

18  technology was a "proven concept" (TAC at ¶ 87(a)) which had been "vetted" by Genentech (*id.* at ¶

19  89(b)) and "validated" by an unidentified "commercial biotech company" (*id.* at ¶ 87(d)).  However,

20  Plaintiff does not even explain what these alleged misstatements were supposed to mean, let alone

21  why they were false or misleading when made.[7]

22        The Ninth Circuit confronted an equally vague series of alleged misrepresentations in *Vantive*.

23  In *Vantive*, plaintiffs claimed that defendants overstated the growth and quality of their sales force.

24  _____

25  [7] Furthermore, though Plaintiff alleges that "Genentech had been approached had been approached but shown no interest in partnering with SpeciGen" (TAC at ¶89(b)) and SpeciGen's "only revenues had been primary research grants by government agencies"(*id.* at ¶ 87(d)), these *non sequiturs* do not

26  amount to an explanation why any statement was false or misleading.  After all, Genentech could have "vetted the company's technology" (whatever that means) and *then* decided against partnering

27  with SpeciGen.  Similarly, a commercial biotech company could have "validated" SpeciGen's technology (whatever that means) without giving SpeciGen money.

28

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

1   The trial court dismissed the complaint and the Ninth Circuit affirmed, explaining that "the complaint

2   leaves unclear what it would mean for Vantive to 'adequately train' an employee, what 'sufficient

3   numbers' of hires would be, or what it means for 'a substantial percentage' of people to quit."  283

4   F.3d at 1086-1087.   Similarly, in this case, the TAC offers no explanation of the terms "proven

5   concept," "validated" or "vetted" and provides no objective criteria by which the truth or falsity of the

6   alleged misstatements could be measured.  In the absence of any such details, the TAC fails to

7   establish that the alleged misstatements concerning SpeciGen's product development efforts were

8   false or misleading when made.  *See Vantive,* 283 F.3d at 1086-1087 (complaint inadequate for failing

9   to provide an objective measure against which allegedly "false" statements could be compared).

10                        **(b)      Partnership Representations**

11          Plaintiff's claim that Mr. Fischer and/or "defendants" misrepresented SpeciGen's partnership

12   prospects is equally flawed.  Plaintiff alleges that Mr. Fischer and/or "defendants" falsely represented

13   that SpeciGen was "in advanced discussions with a public company and an established private biotech

14   company about advanced research partnerships that would develop preclinical data sufficient to

15   complete clinical trials."  TAC at ¶ 89(c).  However, Plaintiff does not specify what "defendants"

16   actually said, whether they used the terms "advanced discussions" and "advanced research

17   partnerships" and if so, what they meant by them.  Instead, Plaintiff offers a vague characterization of

18   the alleged misstatement and summarily concludes that the statement was false "because no such

19   discussions were underway."  TAC at ¶ 89(c).  But these non-specific allegations do not explain

20   anything.  Was the alleged oral statement false because SpeciGen was not discussing research

21   partnerships with anyone?  Because SpeciGen was discussing research partnerships, but the

22   discussions were preliminary, not advanced?  Because SpeciGen was discussing research

23   partnerships, but the research partnerships themselves were not advanced?  Or were not likely to

24   result in the development of preclinical data sufficient to complete clinical trials?  Plaintiff does not

25   say.  Nor does she attempt to reconcile her allegation that "no such discussions were underway" (TAC

26   at ¶89(c)) with her seemingly contradictory allegations that (1) some companies, including

27   Genentech, apparently considered research partnerships with SpeciGen at some unspecified times

28   (TAC at ¶¶ 87(b) and 89(b)); and (2) SpeciGen ultimately formed a research partnership with another

company (*id.* at ¶ 89(c)), although it was not as productive as Plaintiff would have liked.  These

inconsistent allegations do not explain why any alleged oral statement was false or misleading when

made.

### (c)      Patent Portfolio Representations

Next, Plaintiff claims that Mr. Fischer falsely represented that "SpeciGen had all of the

licenses and patents needed to commercially develop its technologies."  TAC at ¶ 87(h).  As usual,

Plaintiff does not specify what Mr. Fischer actually said or why the statement was false or misleading

when made.  Instead, Plaintiff claims that SpeciGen's licenses "required ongoing royalty payments

that it could not maintain at the company's present burn rate."  TAC at ¶ 87(h).

Contrary to Plaintiff's suggestion, the alleged representation that "SpeciGen had all of the

licenses and patents needed to commercially develop its technologies" does not carry an implied

representation that all such licenses and patents would be available to SpeciGen for free.  Nor does the

statement impliedly represent that royalty payments would not be difficult to make, given "the

company's present burn rate."  In the absence of greater particularity, Plaintiff has again failed to

establish that any alleged statement concerning SpeciGen's patent portfolio was false or misleading

when made.

### (d)      Fundraising Representations

Finally, Plaintiff claims that Mr. Fischer falsely represented that the Series A offering "would

be fully sufficient to carry the company to its 'exit strategy'" (TAC at ¶ 87(b)), which "would come

within 2-3 years" (*id.* at ¶ 87(g)).  According to Plaintiff, these representations were false because (1)

the Series A offering would not be enough to get SpeciGen to preliminary trials (TAC at ¶ 87(b)(a));

and (2) barring an acquisition or substantial outside investment, "it would take an estimated 12-15

years for a return on investment" (*id.* at ¶ 87(g)(3)).  Put another way, the TAC alleges that Mr.

Fischer failed to predict how much time and money would be required before Plaintiff would be in a

position to recoup her investment.  However, "the fact that a prediction proves to be wrong in

hindsight does not render the statement untrue when made."  *In re Syntex Corp. Sec. Litig.*, 95 F.3d

922, 929 (9th Cir. 1996).  Furthermore, to the extent that the TAC specifies the challenged statements

at all, they are forward-looking.  *See generally No. 84 Employer-Teamster Joint Council Pension*

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

1   *Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003) (A forward-looking includes

2   any statement regarding "plans and objectives of management for future operations" and "the

3   assumptions 'underlying or related to' any of these issues").  As such, the alleged misstatements could

4   not be actionable unless (1) they were not actually believed by the speaker; (2) there was no

5   reasonable basis for the belief; or (3) the speaker was aware of undisclosed facts tending to seriously

6   undermine the statement's accuracy.  *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 388 (9th

7   Cir. 2010).  As discussed in detail below, the TAC does not support an inference that Mr. Fischer

8   acted with deliberate recklessness, much less actual knowledge of falsity.

9
                        **(2)      Plaintiff Fails To Raise A Strong Inference That Mr.**
10                              **Fischer Acted With Scienter**

11          The TAC does not raise a strong inference of scienter against Mr. Fischer or anyone else.  As

12   previously discussed, Plaintiff generally alleges that "defendants" were aware of material facts which,

13   "in the absence of scienter, could and should have been made known to her."  TAC at ¶ 131(a).

14   These fact-free allegations have never been enough to raise any inference of scienter, let alone a

15   "strong," "cogent" or "compelling" one.  *See, e.g., In re VeriSign, Inc. Deriv. Litig.*, 531 F.Supp.2d

16   1173, 1207 (N.D. Cal. 2007) ("It is not sufficient under the PSLRA to allege scienter against

17   defendants as a group") (*citing* 15 U.S.C. § 78u-4(b)(2) (plaintiff must "state with particularity facts

18   giving rise to a strong inference that the defendant acted with the required state of mind")).

19          Remarkably, though Mr. Fischer plays a starring role in the alleged fraud, Plaintiff does not

20   even attempt to plead facts demonstrating what Mr. Fischer knew or when he knew it.  This Court and

21   numerous others have made clear that Plaintiff must allege facts giving rise to a strong inference of

22   scienter as to *each* defendant.  *See VeriSign*, 531 F.Supp.2d at 1207.  After multiple amendments and

23   extensive discovery, Plaintiff's inability to plead facts raising a strong inference that Mr. Fischer acted

24   with the required state of mind can only be viewed as a concession that there are no such facts.  In any

25   event, Plaintiff fails to allege that Mr. Fischer – or anyone else – violated Section 10(b).

26
                **2.      Plaintiff Still Fails To Allege That The D&O Defendants Exercised Power**
27                    **And Control Over Any Primary Violator**

28          Although Rule 8(a) governs Plaintiff's control allegations, she must still "provide some

factual support that defendants were in a position to control a primary violator." *In re International Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, *22 (C.D. Cal. May 23, 2008) ("Plaintiffs cannot simply base their claims on boilerplate allegations"); *see also In re Hansen Natural Corp. Sec. Litig.*, 527 F.Supp.2d 1142, 1163 (C.D. Cal. 2007) (rejecting "boilerplate" allegations that individual defendants exercised requisite power and control "by virtue of their high level positions"). Additionally, Plaintiff's control person allegations must be "plausible on [their] face." *Iqbal, supra,* 556 U.S. at 678. Plaintiff's control person allegations are fundamentally implausible.

The TAC alleges that the D&O Defendants served as officers and directors of SpeciGen (TAC at ¶¶ 8, 9 and 10) and were "directly involved" in the company's day-to-day operations, including "decisions about what to disclose and what to withhold from investors and shareholders." *Id.* at ¶ 143. Although Plaintiff's theory remains unclear, she appears to suggest that the D&O Defendants exercised actual power and control over Mr. Fischer's communications with her.

The TAC does not explain how the D&O Defendants could have controlled Mr. Fischer's oral communications with Plaintiff, which are alleged to have taken place "during multiple meetings in Jackson's home and Mr. Fischer's office at 100 Hamilton Street, Palo Alto" (TAC at ¶ 87), from their principal places of business in Minnesota and Pennsylvania. TAC at ¶¶ 8, 9 and 10. Nor does the TAC explain how the officers and directors of five separate companies who are not alleged to have conspired together (TAC at ¶ 3), could have independently agreed to the same fraudulent scheme. In reality, there is no factual support for Plaintiff's far-fetched theory, and no allegations that could "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff still fails to allege that the D&O Defendants exercised actual power and control over any primary violator.

C.      **Plaintiff Still Fails To State A Claim For Breach Of Fiduciary Duty**

As the Court explained in the Order, the Certificate contains an exculpatory provision which limits the D&O Defendants' personal liability for breaches of the duty of care. Order at 11; Certificate at Art. VIII (Herrera Decl. Ex. C). Therefore, in order to state a claim for breach of fiduciary duty, "plaintiff must allege facts showing that the D&O defendants acted in bad faith or intentionally failed to act in the face of a known duty to act in order to state a claim for breach of

1  fiduciary duty." *Id.* at 11. The Court carefully considered the SAC and concluded that Plaintiff failed

2  to allege any such facts. *Id.*

3      Plaintiff's latest attempt to state a claim for breach of fiduciary duty is the same as her last.

4  Despite the Court's guidance, Plaintiff continues to rely on "boilerplate" allegations that are "so

5  deficient with regard to what any defendant other than Fischer is alleged to have done, that it is not

6  clear whether plaintiff is alleging that the D&O directors breached their fiduciary duties to her, as a

7  shareholder, or that they breached their fiduciary duties to the corporation." Order at 11. Plaintiff's

8  claim for breach of fiduciary duty should be dismissed with prejudice.

9          **D.    Plaintiff Still Fails To State A Claim Under Sections 25401 and 25501**

10     Once again, Plaintiff alleges that all defendants, including the D&O Defendants, violated

11  Sections 25401 and 25501. Section 25401 provides that:

12              It is unlawful for any person to offer or sell a security in this state or
              buy or offer to buy a security in this state by means of any written or
13              oral communication which includes an untrue statement of a material
              fact or omits to state a material fact necessary in order to make the
14              statements made, in the light of the circumstances under which they
              were made, not misleading.
15

16  Cal. Corp. C. § 25401. Section 25501 provides, in pertinent part, that:

17              Any person who violates Section 25401 shall be liable to the person
              who purchases a security from him or sells a security to him . . . unless
18              the defendant proves that the plaintiff knew the facts concerning the
              untruth or omission or that the defendant exercised reasonable care
19              and did not know . . . of the untruth or omission.

20  Cal. Corp. C. § 25501. The Court rejected Plaintiff's previous attempt to state a claim for relief under

21  Sections 25401 and 25501 for two reasons. First, Plaintiff failed to allege that any of the D&O

22  Defendants made a material misstatement.[8] Order at 11. Second, Plaintiff failed to allege privity with

23  the D&O Defendants. *Id.* The TAC suffers from the same fatal defects.

24      As previously discussed, Plaintiff still fails to allege that any of the D&O Defendants made a

25  misstatement in connection with the sale of securities. *See* Section IV.A-B, *supra.* Despite the Order,

26  which expressly conditioned leave to amend "to the extent that plaintiff can allege that the D&O

27

28  [8] "Section 25401 does not apply to simple nondisclosure." *Bowden v. Robinson*, 67 Cal.App.3d 705, 717 (1977).

1 defendants sold the securities in question (to the extent there were even securities sold)" (Order at 12),

2 Plaintiff also fails to allege privity. Thus, Plaintiff still fails to state a claim for relief under Sections

3 25401 and 25501.

4     **E.**     **Plaintiff Still Fails To State A Claim Under Section 25504**

5     The TAC also alleges that all defendants, including the D&O Defendants, violated Section

6 25504. Section 25504 provides that:

> Every person who directly or indirectly controls a person liable under
> Section 25501 or 25503, every partner in a firm so liable, every
> principle executive officer or director of a corporation so liable, every
> person occupying a similar status or performing similar functions,
> every employee of a person so liable who materially aids in the act or
> transaction constituting the violation, and every broker-dealer or agent
> who materially aids in the act or transaction constituting the violation,
> are also liable jointly and severally with and to the same extent as such
> person, unless the other person who is so liable had no knowledge of
> or reasonable grounds to believe in the existence of the facts by reason
> of which liability is alleged to exist.

13 Cal. Corp. C. § 25504. In order to state a claim for relief under Section 25504, Plaintiff must plead

14 facts establishing a primary violation of Section 25501. Order at 13 ("in the absence of a viable claim

15 of primary liability, plaintiff cannot state a claim against the D&O defendants for control person

16 liability under § 25504 – particularly given that the claims against the D&O defendants are based

17 solely on statements by Fischer, which plaintiff has not shown to have been false or misleading when

18 made"). As previously discussed, Plaintiff fails to plead any such facts. *See* Sections IV.D, *supra.*

19 Furthermore, Plaintiff fails to allege an agency relationship between Mr. Fischer and the D&O

20 Defendants with the specificity required by Rule 9(b) (*see* Section IV.I, *infra*) and fails to allege that

21 the D&O Defendants "had knowledge of or reasonable grounds to believe in the existence of the facts

22 by reason of which the liability is alleged to exist." Cal. Corp. C. § 25504. Accordingly, Plaintiff's

23 Section 25504 claim should be dismissed with prejudice.

24     **F.**     **Plaintiff Still Fails To State A Claim Under Section 25501.5**

25     The TAC alleges that all defendants, including the D&O Defendants "knew or should have

26 known that Fischer was an unlicensed investment advisor." TAC at ¶ 189. According to Plaintiff,

27 these allegations give rise to a claim for rescission under Section 25501.5, which makes it "unlawful

28 for a person to sell securities to or through an unlicensed broker-dealer." *Id.* at ¶ 192. Plaintiff's

1   theory fails for two fundamental reasons:  (1) Section 25501.5 does not apply to the facts alleged in

2   the TAC; and (2) Plaintiff's Section 25501.5 claim is time-barred.

3                    **1.        Section 25501.5 Does Not Apply**

4        Section 25501.5, entitled "Action for rescission or damages," provides in pertinent part:

5            (a)(1)    A person who purchases a security from or sells a security to a
             broker-dealer that is required to be licensed and has not, at the time of
6            the sale or purchase, applied for and secured from the commissioner a
             certificate under Part 3 (commencing with Section 25200), that is in
7            effect at the time of the sale or purchase authorizing that broker-dealer
             to act in that capacity, may bring an action for rescission of the sale or
8            purchase or, if the plaintiff or the defendant no longer owns the
             security, for damages.
9

10  Cal. Corp. C. § 25501.5 (a)(1).  By its terms, Section 25501.5 establishes a private right of action in

11  favor of a person who purchases a security *from* an unlicensed broker-dealer.  *Id.*   Plaintiff claims that

12  Mr. Fischer was an unlicensed broker-dealer, but does not – and cannot – allege that she purchased

13  SpeciGen securities from him.  To the contrary, the judicially noticeable Purchase Agreement

14  confirms that she purchased convertible promissory notes from SpeciGen.  *See* Purchase Agreement

15  at p. 1 (reciting that "each Investor desires to purchase, and the Company desires to sell a convertible

16  promissory note in the principal amount set forth opposite such Investor's name").  Therefore,

17  assuming *arguendo* that the convertible promissory notes were "securities," Plaintiff purchased them

18  from SpeciGen, not Mr. Fischer.[9] Even assuming *arguendo* that Plaintiff purchased securities "from"

19  Mr. Fischer (which she did not), she still could not assert a Section 25501.5 claim against the D&O

20  Defendants.  Plaintiff claims that the D&O Defendants are secondarily liable for Mr. Fischer's alleged

21  misconduct.  TAC at ¶ 191.  Plaintiff's theory fails for several reasons.

22        First, Section 25501.5 does not provide for secondary liability.  Section 25501.5 does not

23  impose liability on counter-parties to transactions involving unlicensed broker-dealers.  Nor does

24  Section 25501.5 impose liability on the issuers of securities that happen to be purchased or sold by

25  [9] Under California Corporations Code Section 25004, the term "broker-dealer" means "any person
26  engaged in the business of effecting transactions in securities in this state for the account of others or
    for his own account."  Cal. Corp. C. § 25004.  Section 25004 specifically excludes "any other issuer"
27  from the statutory definition of a "broker-dealer."  Cal. Corp. C. § 25004 (a).  Therefore, SpeciGen
    cannot be considered a "broker-dealer" within the meaning of Section 25004, and Section 25501.5
28  does not apply.

                    NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

1   unlicensed broker-dealers, let alone their officers and directors.  In short, there is nothing in the

2   language of Section 25501.5 that could possibly support a claim against D&O Defendants who are

3   not alleged to have participated in any negotiation that resulted in the transfer of stock or otherwise

4   acted as broker-dealers.

5          Second, though resort to legislative history should not be necessary, the legislative history

6   confirms that Section 25501.5 was "designed to address the problem of 'bucket shops' or 'boiler

7   rooms' that engage in securities fraud."  California Bill Analysis, Assembly Committee, 2003 – 2004

8   Regular Session, Assembly Bill 2167 (Herrera Decl. Ex. E).  There is nothing in the legislative history

9   to support Plaintiff's theory that Section 25501.5 creates a cause of action against any person

10  connected in any way to any transaction involving an unlicensed broker.

11         Third, the California Corporations Code does not authorize a private right of action against

12  secondary actors who participate in a primary violation of Section 25501.5 by an unlicensed broker-

13  dealer, and expressly provides that no such right of action may be implied.  Cal. Corp. C. § 25510

14  ("Except as explicitly provided in this chapter, no civil liability in favor of any private party shall arise

15  against any person by implication from or as a result of the violation of any provision of this law or

16  any rule or order hereunder").  Therefore, Plaintiff cannot assert a Section 25501.5 claim against the

17  D&O Defendants.

### 2.     Plaintiff's Section 25501.5 Claim Is Time-Barred

19         Assuming *arguendo* that the statute applies, Plaintiff's claim for relief under Section 25501.5

20  is time-barred.  The applicable statute of limitations for claims arising under Section 25501.5 is either

21  (a) Corporations Code Section 25506, which provide for a two-year statute of limitations from the

22  date of discovery (Cal. Corp. C. § 25506(b)); or (b) California Civil Code Section 338(a), which

23  provides for a three-statute of limitations for claims created by statute.  Order at 14.  Plaintiff has

24  previously acknowledged that the applicable statute of limitations is two years from the date of

25  discovery.  *Id.* at 15.

26         As a matter of California law, Section 25506(b)'s two year statute of limitations is triggered

27  by inquiry notice, not actual knowledge.  *Deveny v. Entropin, Inc.*, 139 Cal.App.4[th] 408, 423 and 428

28  (2006) ("Inquiry notice – often called 'storm warnings' in the securities context – gives rise to a duty

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

1   of inquiry 'when the circumstances would suggest to an investor of ordinary intelligence the

2   probability that she has been defrauded"); *Kramas v. Security Gas & Oil, Inc.*, 672 F.2d 766, 770-771

3   (9th Cir. 1982) (Section 25506 begins to run "when the plaintiff discovers the facts constituting the

4   violation or in the exercise of reasonable diligence should have discovered them").

5         Plaintiff alleges that she "became concerned" about a $1 million "trading account" with Mr.

6   Fischer "[i]n or about summer 2008." TAC at ¶ 63. Thus, Plaintiff's own allegations confirm that

7   there were "storm warnings" giving rise to a duty to inquire as early as "summer 2008," three years

8   before Plaintiff filed her initial complaint. Accordingly, Plaintiff's Section 25501.5 claim is time-

9   barred unless the statute of limitations is tolled for some reason.

10        Under California law, the statute of limitations can be tolled by the discovery rule, which

11  delays the accrual of the date of a cause of action until plaintiff is aware of the injury. *Hopkins v.*

12  *Dow Corning Corp.*, 33 F.3d 1116, 1120 (9th Cir. 1994). "Where a plaintiff relies on the discovery

13  rule, the plaintiff "must *specifically* plead facts to show (1) the time and manner of discovery and (2)

14  the inability to have made earlier discovery despite reasonable diligence." *Micrel, Inc. v . Monolithic*

15  *Power Systems, Inc.*, 2005 WL 6426678, *3 (N.D. Cal. Dec. 9, 2005) (emphasis added).

16        In the Order, the Court noted that "it is not entirely clear from the SAC exactly when

17  [Plaintiff] does claim to have discovered the alleged violations." Order at 15. Accordingly, the Court

18  instructed that any amended claim "must allege facts . . . sufficient to show when plaintiff discovered

19  the alleged violation." Order at 15. Ignoring the Order, Plaintiff now claims that:

20              The sale of securities by the defendants in violation of the statute
                caused Jackson, by the end of 2010, to lose the entirety of her
21              investments. Prior to that time she had no knowledge that her
                investments were lost . . . .
22

23  TAC at ¶ 194. These conclusory allegations still do not show when Plaintiff discovered any alleged

24  violation of Section 25501.5. *Compare Salameh v. Tarsadia Hotels*, 2011 WL 1044129, *9 (S.D.

25  Cal. Mar. 22, 2011) (rejecting equally vague allegations as insufficient to delay accrual under the

26  discovery rule). Despite the Order, Plaintiff still fails to specify when and how she discovered that

27  Mr. Fischer was unlicensed and why she could not have discovered the violation earlier. These

28  pleading failures are hardly surprising, considering that such information is "easy to get" and can

1    usually be found with "one phone call or web search." U.S. Securities & Exchange Comm'n, Protect

2    Your Money:  Check Out Brokers and Investment Advisers (Herrera Decl. Ex. E).  Under the

3    circumstances, Plaintiff's failure to plead facts supporting the application of the discovery rule can

4    only be viewed as a concession that there are no such facts.  Accordingly, Plaintiff's claim for

5    violations of Section 25501.5 is barred by the statute of limitations.

6    ### G.    Plaintiff Still Fails To State A Claim For Common Law Fraud

7        "To state a claim for fraud or intentional misrepresentation, a plaintiff must allege (1) a

8    misrepresentation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5)

9    resulting damage."  Order at 16.  Once again, Plaintiff "does not adequately allege who (other than

10   Fischer) made false or misleading statements – and even those allegations do not plead facts showing

11   why the statements were false at the time they were made."  *Id.*  Furthermore, the TAC "does not

12   allege facts showing knowledge (by the speaker) of the falsity."  *Id.*   Accordingly, Plaintiff still fails

13   to state a claim for common law fraud.

14   ### H.    Plaintiff Still Fails To State A Claim For Negligent Misrepresentation

15       "To state a claim for negligent misrepresentation, a plaintiff must allege (1) a

16   misrepresentation as to a material fact; (2) without reasonable grounds for believing it to be true; (3)

17   an intent to induce reliance; (4) justifiable reliance by the plaintiff who does not know that the

18   representation is false; and (5) damage."  Order at 16.  As the Court explained in the Order, "[t]he

19   Ninth Circuit has not yet determined whether Rule 9(b)'s heightened pleading standard applies to a

20   claim for negligent misrepresentation, but the majority view among district courts in California

21   appears to be that it does."  *Id.*  As previously discussed, the TAC still fails to allege that "any specific

22   D&O defendant made a false statement, or that in making such a statement, any specific defendant

23   lacked a reasonable belief that it was true."  *Id.*  Accordingly, the TAC still fails to state a claim for

24   negligent misrepresentation.

25   ### I.    The Doctrine of Respondeat Superior Cannot Save The TAC From Dismissal

26       Finally, the TAC purports to state a claim for "respondiat superior" [*sic*].  TAC at ¶¶ 201-205.

27   However, "[r]espondeat superior is not an independent cause of action – rather, it is a doctrine or

28   theory of liability, under which, for example, an employer may be held liable for the negligent acts of

1   its employees." *Mason v. Ambrose Recreation and Park Dist.*, 2010 WL 3076263, *1 (N.D. Cal.

2   Aug. 5, 2010) (*citing Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1577 n. 28 (9th Cir. 1990)).

3   Furthermore, Plaintiff offers no facts to support her allegation that Mr. Fischer acted as an agent for

4   the D&O Defendants (as opposed to SpeciGen).

5          In the Order, the Court explained that where, as here, "a plaintiff alleges that a defendant is

6   liable for fraud under an agency theory, Rule 9(b) requires that the existence of the agency

7   relationship be pled with particularity."  Order at 10 (*citing Swartz*, 476 F.3d at 764-65).  The Court

8   offered guidance regarding the revisions that would be required to support Plaintiff's agency theory.

9   *Id.*  Once again, Plaintiff has ignored the Court's guidance.  The TAC not only fails to allege specific

10  facts establishing the existence the alleged agency relationship, it does not even clearly identify Mr.

11  Fischer's alleged principal.  *Compare* TAC at ¶ 87 (alleging that Mr. Fischer acted as agent for

12  SpeciGen) and ¶ 202 (alleging that Mr. Fischer acted as agent for the D&O Defendants).  These

13  confusing and contradictory allegations do not describe any agency relationship with particularity.

14  Nor can they cure any of Plaintiff's other pleading failures.  Accordingly, Plaintiff's agency

15  allegations cannot save the TAC from dismissal.

16  **V.      CONCLUSION**

17         For all of the foregoing reasons, the D&O Defendants respectfully submit that the TAC

18  should be dismissed without leave to amend.

19  Dated: June 28, 2013                    STEIN & LUBIN LLP

20

21                                  By:   */s/ Tanya Herrera*
                                          Tanya Herrera
22                                        Attorneys for Defendants
                                          Jon Sabes, Steven Sabes and Marvin Siegel
23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT