1  The Law of Offices of Tom Chia-Kai Wang
   Tom Chia-Kai Wang (SBN 269050)
2  117 West 9th St., Suite 206
   Los Angeles, CA 90015
3  Telephone: (213) 290-0930
   Facsimile: (213) 596-0916
4
5  Attorneys for Defendants Mani Kulasooriya and
   Monvia, LLC
6
7              UNITED STATES DISTRICT COURT
8             NORTHERN DISTRICT OF CALIFORNIA
9                   OAKLAND DIVISION
10
11  SUZANNE D. JACKSON,              Case No. 4:11-cv-02753-PJH
12            Plaintiff,             **DEFENDANTS MANI KULASOORIYA
                                     AND MONVIA, LLC'S REPLY TO
13     v.                            PLAINTIFF SUZANNE JACKSON'S
                                     OPPOSITION**
14  WILLIAM FISCHER, JON SABES,
    STEVEN SABES, MARVIN SIEGEL,     Date: September 25, 2013
15  BRIAN CAMPION, LONNIE            Time: 9:00 a.m.
    BOOKBINDER, MANI KOOLASURIYA,    Judge: Honorable Phyllis J. Hamilton
16  JORGE FERNANDES, JOSHUA ROSEN,   Courtroom: 3, 3rd Floor
    STEVE WATERHOUSE, JEAN PAUL
17  a/k/a "BUZZY" LAMERE, UPPER ORBIT,
    LLC, SPECIGEN, INC., PEER DREAMS
18  INC., NOTEBOOKZ INC.,
    ILEONARDO.COM INC., NEW MOON
19  LLC, MONVIA LLC, CII LIMITED, and
    SAZANI BEACH HOTEL,
20
            Defendants.
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT ...................................................................................................................2

I.   STANDARDS GOVERNING REVIEW OF THE SECOND AMENDED
     COMPLAINT ..........................................................................................................2

     A.   Plaintiff Seeks To Water Down the Pleading Standards ......................................2

II.  PLAINTIFF'S SECTION 10(B) AND RULE 10B-5 CLAIM AGAINST MONVIA
     SHOULD BE DISMISSED ......................................................................................3

     A.   Plaintiff Does Not Identify Any Misstatement By Monvia ...................................3

     B.   Statements Made by Fischer Are Not Attributable to Monvia Under *Janus*
          and Thus Are Not Actionable .............................................................................4

          1.   The TAC does not and cannot allege a factual basis for holding
               Monvia vicariously liable ...........................................................................6

               a) The TAC fails to allege a basis for holding PeerDreams or New
               Moon liable ...............................................................................................6

               b) Monvia is not an alter ego of PeerDreams .............................................6

     C.   Plaintiff Has Not Plead Fraud With Particularity ...............................................7

     D.   Plaintiff Fails To Plead Falsity .........................................................................8

     E.   Plaintiff Fails to Plead Scienter........................................................................8

     F.   Plaintiff Has Not Alleged That Monvia Owed Her A Duty To Disclose ...............9

     G.   Plaintiff's 1934 Act Claims Are Time-Barred Even Under *Merck* ......................9

III. PLAINTIFF DOES NOT AND CANNOT STATE A *RESPONDEAT SUPERIOR*
     OR CONTROL PERSON CLAIM AGAINST MR. KULASOORIYA ..........................10

     A.   Plaintiff's *Respondeat Superior* Claim Fails Because It Relies on Conclusory
          Allegations of Agency .....................................................................................10

     B.   Plaintiff Does Not Plead a Section 20 Control Person Claim...............................11

          1.   No primary violation has been established .................................................11

          2.   Mr. Kulasooriya's status as an alleged director of PeerDreams and
               New Moon is not enough to establish that he exercised actual power
               or control over a primary violator...............................................................12

IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR ALLEGED VIOLATIONS OF
      THE CALIFORNIA CORPORATIONS CODE ................................................................13

      A.    Plaintiff's Sections 25401, 25501 and 25504 Claims Are Time-Barred ...............13

      B.    Plaintiff Fails to Adequately Plead That Defendants Are Primarily Liable for
            a Violation of § 25401 and § 25501 ....................................................................14

      C.    Plaintiff Fails to Adequately Plead That the Mr. Kulasooriya Is Secondarily
            Liable for an Alleged Violation of § 25504 ........................................................14

      C.    Plaintiff's Claim Under § 25501.5 Fails Because She Did Not Purchase or
            Sell Any Securities From Monvia or Mr. Kulasooriya ........................................14

VIII.  PLAINTIFF HAS FAILED TO PLEAD COMMON LAW
       MISREPRESENTATION AND NEGLIGENT MISREPRESENTATION WITH
       PARTICULARITY ............................................................................................................15

CONCLUSION ..............................................................................................................................15

1
2

# **TABLE OF AUTHORITIES**

3

**FEDERAL CASES**                                                                    **PAGE(S)**

4

*Allison v. Brooktree Corp.,*

5

  999 F. Supp. 1342 (S.D. Cal. 1998)..............................................................9

6

*Blue Chip Stamps v. Manor Drug Stores,*

7

  421 U.S. 723 (1975)...................................................................................4

8

*Burgess v. Premier Corp.,*

9

  727 F.2d 826 (9th Cir. 1984) ...................................................................12

10

*Calvert v. Huckins,*

11

  875 F. Supp. 674 (E.D. Cal. 1995)..............................................................6

12

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*

13

  511 U.S. 164 (1994)...................................................................................4

14

*Deitz v. Comcast Corp.,*

15

  2006 WL 3782902 (N.D. Cal. Dec. 21, 2006).........................................15

16

*DSAM Global Value Fund v. Altris Software, Inc.,*

17

  288 F.3d 385 (9th Cir. 2002) ....................................................................3

18

*Ghazali v. Moran,*

19

  46 F.3d 52 (9th Cir. 1995) ........................................................................1

20

*In re Autodesk, Inc. Sec. Litig.,*

21

  132 F. Supp. 2d 833 (N.D. Cal. 2000) ...............................................3, 7, 8

22

*In re Cendant Corp. Sec. Litig.,*

23

  190 F.R.D. 331 (D.N.J. 1999)..................................................................14

24

*In re Downey Sec. Litig.,*

25

  2009 WL 736802 (C.D. Cal. Mar. 18, 2009)...........................................12

26

*In re GlenFed Sec. Litig.,*

27

  42 F.3d 1541 (9th Cir. 1994) .................................................................4, 8

28

*In re Hansen Natural Corp. Sec. Litig.,*

  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...................................................12

*In re Interactive Network, Inc. Sec. Litig.*,

   948 F. Supp. 917 (N.D. Cal. 1996) ........................................................9

*In re Optimal U.S. Litig.*,

   2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011) ..........................................6

*In re Silicon Graphics, Inc. Sec. Litig.*,

   183 F.3d 970 (9th Cir. 1999) ...................................................................3

*In re Toyota Motor Corp.*,

   785 F. Supp. 2d 883 (C.D. Cal. 2011) ...................................................11

*Janus Capital Group, Inc. v. First Derivative Traders, Inc.*,

   131 S. Ct. 2296 (2011) ................................................................ *passim*

*Maganallez v. Hilltop Lending Corp.*,

   505 F. Supp. 2d 594 (N.D. Cal. 2007) ...................................................15

*Marolda v. Symantec Corp.*,

   672 F. Supp. 2d 992 (N.D. Cal. 2009) .....................................................8

*McCasland v. Formfactor Inc.*,

   2008 WL 2951275 (N.D. Cal. July 25, 2008) ..........................................9

*Merck & Co. v. Reynolds*,

   130 S. Ct. 1784 (2010) ...........................................................................10

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,

   540 F.3d 1049 (9th Cir. 2008) .................................................................2

*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. America West Holding Corp.*,

   320 F.3d 920 (9th Cir. 2003) ...........................................................6, 11

*Olenicoff v. UBS AG*,

   2009 WL 481281 (C.D. Cal. Feb. 24, 2009)..........................................14

*Palomares v. Bear Stearns Residential Mortgage Corp.*,

   2008 WL 686683 (S. D. Cal. March 13, 2008)......................................11

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,

   96 F.3d 1151 (9th Cir. 1996) .................................................................12

*Reese v. BP Exploration (Alaska) Inc.*,

643 F.3d 681 (9th Cir. 2011) ..........................................................................4

*RPost Holdings, Inc. v. Trustifi Corp.,*

2011 WL 4802372 (C.D. Cal. October 11, 2011) ...................................11

*SEC v. Seaboard Corp.,*

677 F.2d 1289 (9th Cir. 1982) ...............................................................14

*South Ferry LP, No. 2 v. Killinger,*

542 F. 3d 776 (9th Cir. 2008) ..................................................................8

*Star Int'l v. Ariz. Corp. Comm'n,*

720 F.2d 578 (9th Cir. 1983) ...................................................................9

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.,*

552 U.S. 148 (2008) .................................................................................2

*Swartz v. KPMG LLP,*

476 F.3d 756 (9th Cir. 2007) .................................................................11

*Vess v. Ciba–Geigy Corp. USA,*

317 F.3d 1097 (9th Cir. 2003) .................................................................7

*Walsh v. Kindred Healthcare,*

798 F. Supp. 2d 1073 (N.D. Cal. 2011) ...................................................7

*Weinstein v. Saturn Corp.,*

2007 WL 1342604 (N.D. Cal. May 8, 2007) .........................................11

*Wool v. Tandem Computers, Inc.,*

818 F.2d 1433 (9th Cir. 1987) ...............................................................12

*Zucco Partners, LLC v. Digimarc Corp.*

552 F.3d 981 (9th Cir. 2009) ...................................................................9

**FEDERAL STATUTES**

15 U.S.C. § 78u-4(b)(1) ....................................................................................3

15 U.S.C. § 78u-4(b)(2) ....................................................................................3

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) ...........................................................................................3

**STATE CASES**

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC,*

    158 Cal. App. 4th 226 (2007) ................................................................14

*Deveny v. Entropin, Inc.,*

    139 Cal. App. 4th 408 (2006) ................................................................14

*Norgart v. Upjohn Co.,*

    21 Cal. 4th 383 (1999) ................................................................14

*Sonora Diamond Corp. v. Sup. Court,*

    83 Cal. App. 4th 523 (2000) ................................................................7

**CALIFORNIA STATUTES**

Cal. Corp. Code § 25401 ................................................................14

Cal. Corp. Code § 25501 ................................................................14

Cal. Corp. Code § 25501.5 ................................................................14, 15

Cal. Corp. Code § 25504 ................................................................14

Cal. Corp. Code § 25506 ................................................................13

## **PRELIMINARY STATEMENT**

Plaintiff has failed, through three rounds of pleadings and motions to dismiss, to articulate a single cogent theory, supported by particularized facts, demonstrating that she has a viable claim against Defendant Monvia, LLC ("Monvia") and Mani Kulasooriya (collectively the "Defendants"). After her latest Opposition brief[1] ("Opposition" or "Opp."), it is clear that Plaintiff cannot do so. Having shifted fraud theories multiple times to no avail, her Opposition merely rehashes the same morass of conclusory allegations, self-serving statements and non-sequiturs from her Second Amended Complaint that was already dismissed in its entirety by the Court's March 15, 2013 Order (the "Order"). Despite the fact that the Court's Order identified numerous defects in her claims, Plaintiff's Opposition brief reads almost as though the Court's earlier decision never happened. Instead, Plaintiff repeats in her Opposition, sometimes verbatim, the same arguments the Court previously rejected, and make little or no effort to respond to the arguments in Defendants' present motion to dismiss.

Defendants' opening brief showed, for example, that Plaintiff has alleged no new facts that contravene their prior admissions that it was Fischer, and not anyone at Monvia, who was the "speaker" of all of the alleged misrepresentations. Plaintiff's opposition does not even mention the controlling Supreme Court decision *Janus Capital Group v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011) which holds unequivocally that a section 10(b) and Rule 10b-5 claim can only be brought against the actual maker of the alleged misstatement.[2] Nothing in Plaintiff's Third Amended Complaint ("TAC") nor Opposition disputes the fact that no one at Monvia ever made any statements, let alone false or misleading statements, to her.

---

[1] Plaintiff's Opposition was due to be filed on August 21, 2013 pursuant to the Court's August 13, 2013 order. Plaintiff filed her Opposition approximately one day after this deadline and thus her untimeliness qualifies as grounds for dismissal under Rule 41(b) of the Federal Rule of Civil Procedure. *See Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995).

[2] The Court's Order previously dismissed the section 10(b) and Rule 10b-5 causes of action against Mr. Kulasooriya "with prejudice" (*See* Order at p. 27) on the undisputed fact that Fischer was the maker of all of the alleged misrepresentations in this case. However, Plaintiff continues to try and assert these claims against Mr. Kulasooriya and in an abundance of caution, a motion to strike the first cause of action alleged in the TAC and its accompanying allegations was filed by Mani Kulasooriya simultaneously with Defendants' motion to dismiss. *See* ECF Docket No. 192. Plaintiff did not file an opposition to Mr. Kulasooriya's motion to strike and thus, on that basis alone, the Court should grant the motion to strike.

After having finally recognized the undisputed fact that she never actually purchased any Monvia securities, Plaintiff makes her last stand by attempting to attribute non-existent alleged misstatements and omissions of Defendants PeerDreams and New Moon to Monvia.  Bereft of any viable securities claims directly against Monvia, the Opposition claims in its usual unsupported manner that  "Monvia was, for all practical purposes, PeerDreams" (Opp. at p. 18) and suggests that since PeerDreams is allegedly liable for the conduct of Fischer, Monvia, should somehow be vicariously liable for the conduct of PeerDreams and New Moon.  Even if the basis for this tenuous, twice-removed vicarious liability theory was explained in the TAC and the Opposition, which it is not, the theory is fundamentally flawed because the *Janus* decision affirms that a Section 10(b) and Rule 10b-5 claim can only be brought against the maker of a misstatement.  No alter ego or vicarious liability theory can change the fact that no one at Monvia made a statement at all to Plaintiff and therefore Monvia cannot be liable under Section 10(b) and Rule 10b-5.

Accordingly, Defendants respectfully submit that the Court should dismiss the TAC, this time, with prejudice.

## ARGUMENT

## I.       STANDARDS GOVERNING REVIEW OF THE THIRD AMENDED COMPLAINT

In attempting to salvage her TAC, Plaintiff not only overstates and mischaracterizes her allegations, she invites the Court to judge those allegations based on ordinary pleading standards, rather than the uniquely "formidable pleading requirements" applicable in securities fraud cases. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1054-55 (9th Cir. 2008).

### A.       Plaintiff Seeks To Water Down the Pleading Standards

While conceding that the stringent pleading requirements of Rule 9 and PSLRA apply (Opp. at p. 7), the Opposition nevertheless tries to water down the pleading standards by invoking Rule 8 pleading standards and downplaying the PSLRA, *Tellabs* and controlling Ninth Circuit precedent.[3]  She asserts that so long as the allegations in her TAC "inform the defendants of the

---

[3] Plaintiff makes the unsupported argument that the heightened pleadings standards should be relaxed in securities fraud lawsuits against "closely held" entities.  Opp. at 5, 7.  However, Plaintiff does not cite a single case in support of this specious argument.  No cases are cited by Plaintiff because it is well-established that the PSLRA "imposed heightened pleading requirements ... upon 'any private action' arising from the Securities Exchange Act" and makes no distinction as to whether a company is public or closely held.  *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 165 (2008).

allegations against them … the pleading may proceed." Opp. at p. 7. This is the antithesis of the pleading standards applicable here.

To recap, under the *applicable* pleading standards, to state a Section 10(b) claim, a plaintiff must allege with particularity: (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which she relied (5) and which proximately caused plaintiff's injury. *See DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388 (9th Cir. 2002); Fed. R. Civ. P. 9(b). To satisfy the PSLRA's stringent standards for pleading falsity, a plaintiff must identify (1) each statement alleged to have been misleading, (2) the reasons why it is misleading, and (3) if an allegation regarding the statement or omission is made on information and belief, all facts on which that belief is based. 15 U.S.C. § 78u-4(b)(1); *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir. 1999); *see also In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 839 (N.D. Cal. 2000). In addition, a complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

## II.   PLAINTIFF'S SECTION 10(B) AND RULE 10B-5 CLAIM AGAINST MONVIA SHOULD BE DISMISSED

### A.   Plaintiff Does Not Identify Any Misstatement By Monvia

As discussed, *supra*, the Opposition fails to address that fact that there are no allegedly false statements directly attributed to anyone other than Fischer.[4] Plaintiff's failure to do so is mystifying considering that any statements by Monvia would have been made to her directly. Instead, Plaintiff inaccurately attributes alleged misstatements of defendant PeerDreams and/or New Moon to Monvia. Alleging that Fischer made purported misstatements on behalf of PeerDreams and/or New Moon, Plaintiff argues in her Opposition that Monvia is thus somehow liable for statements made by a third-person on behalf of separate and legally distinct companies whom Monvia dealt with at arms-length. *See* Opp. at p. 18. Among the defendants, Monvia is thus lumped in with PeerDreams, a company that it had absolutely nothing to do with except for

---

[4] The TAC contains a single unparticularized allegation that "Kulasooriya … would orally inform Jackson of the investment, tell her why it would succeed…." TAC at ¶ 45. However, this fails as a matter of law and is in direct contravention of the Court's Order to "state the time, place and specific content of the false representations" and "plead facts showing why the statements were false at the time they were made." Order at p. 24. Further, the TAC "does not allege facts showing knowledge (by the speaker) of the falsity." *Id.*

providing programming and other technical services for, and New Moon, a separate company entirely, run by non-defendant Nancy Gruver with its own management and operations.

The Court noted in its Order that unless Plaintiff could "plead facts showing that someone affiliated with Monvia made false or misleading statements in connection with her purchase or sale of Monvia securities" the dismissal against Monvia would be with "prejudice." Order at pp. 27-28. The Opposition confirms that all statements were made by solely Fischer and that Plaintiff never purchased any Monvia securities[5] and thus has failed to adhere to the Court's Order.

### B.   Statements Made by Fischer Are Not Attributable to Monvia Under *Janus* and Thus Are Not Actionable

The Opposition does not even attempt to address the controlling Supreme Court decision *Janus Capital Group v. First Derivative Traders*, 131 S. Ct. 2296, 2301 (2011), which held that, among legally separate entities, only the legal entity or person that actually "makes" a misleading statement can be liable under section 10(b). *See also Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 693 n.8 (9th Cir. 2011) ("[*Janus*] sets the pleading bar even higher in private securities fraud actions seeking to hold defendants primarily liable for the misstatements of others."). Anything short of such conduct is merely aiding and abetting, and no matter how substantial (or insubstantial as in this case) that aid may be, it is not enough to trigger liability. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) (holding that secondary liability for "aiding and abetting" no longer is a basis for a § 10(b) claim).

*Janus* is directly on point and controlling. In *Janus*, an investor brought a section 10(b) claim against an investment advisor, Janus Capital Management ("JCM"), based upon alleged misstatements in a prospectus issued by its client, Janus Investment Fund (the "Fund"). 131 S. Ct. at 2301. JCM provided "the management and administrative services necessary for the operation" of the Fund, the latter having no management or administrative personnel of its own. *Id.* at 2299. "[A]ll of the officers of the Fund were also officers of JCM. *Id.* at 2299. And JCM was alleged to

---

[5] Defendants' Opening Brief established that a plaintiff alleging a cause action under the 1934 Act and Rule 10b−5 has no standing to sue over an alleged misstatement or omission, unless she purchased or sold that c company's securities. *See* Opening Brief at pp. 6-7; *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749-55 (1975). It is apparent that Plaintiff has conceded this fact because her Opposition is entirely silent on this issue. Thus, Monvia's motion to dismiss should be granted on this ground alone because there is no dispute that Plaintiff ever purchased any Monvia securities.

have been "significantly involved" in the preparation of the allegedly misleading prospectus; in fact, JCM must have been involved since it operated the fund.  *Id.* at 2305.  Accordingly, the investor claimed that any misstatements in the Fund prospectus were, in substance, misstatements by JCM.  *Id.* at 2305.

The Supreme Court rejected the claim. Focusing on the plain language, the Court explained that Rule 10b-5 makes it unlawful "to make any untrue statement of a material fact" in connection with securities transactions and that "to make," in this context, is "the approximate equivalent of to state."  *Janus*, 131 S. Ct. at 2302.  From that starting point, and emphasizing that section 10(b)'s "private right of action does not include suits against aiders and abettors," the Court reasoned that only those with "ultimate authority" over misstatements can be deemed to have "made" them.  *Id.* at 2302. The proper analogy, the Court explained, "might best be exemplified by the relationship between a speechwriter and a speaker":

> For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. . . . This rule might best be exemplified by the relationship between a speechwriter and a speaker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it.  And it is the speaker who takes credit - or blame – for what is ultimately said.

> *Id.*

With this in mind, the Court held that JCM could not be liable, holding that it lacked the requisite "ultimate control" analogous to that of the speech deliverer:

> [The investor] suggests that both [JCM] and [the Fund] might have "made" the misleading statements within the meaning of Rule 10b-5 because [JCM] was significantly involved in preparing the prospectuses. But this assistance, subject to the ultimate control of [the Fund], does not mean that [JCM] "made" any statements in the prospectuses.  Although [JCM], like a speechwriter, may have assisted [the Fund] with creating what [the Fund] said in the prospectuses, [JCM] itself did not "make" those statements for purposes of Rule 10b-5.

> *Id.* at 2305.

Like in *Janus*, the section 10(b) claim against Monvia fails for the same reasons.  Here, the person that "made" the statements at issue – the alleged misstatements regarding PeerDreams and/or New Moon – was Fischer, not anyone at Monvia.  Further, as in *Janus*, the fact that there

were overlapping board members between Monvia, PeerDreams and/or New Moon is of no legal consequence because *Janus* confirms that common law vicarious liability is unavailable under Section 10(b) and that the corporate form cannot be disregarded in order to assert a Section 10(b) claim against someone other than the actual maker of the statement.  *See, e.g., In re Optimal U.S. Litig.*, 2011 WL 4908745, at *5-6 (S.D.N.Y. Oct. 14, 2011) (dismissing Section 10(b) claim against sole owner of entity that issued statement despite fact that owner ran and controlled the speaker).  Therefore, Plaintiff's attempt to hold Monvia vicariously liable for the statements of Fischer regarding PeerDreams and/or New Moon under Section 10(b) should be dismissed.

### 1.    The TAC does not and cannot allege a factual basis for holding Monvia vicariously liable

Even if *Janus* does not preclude vicarious liability under Section 10(b), the Opposition does not expound on the TAC's failure to properly allege any factual basis for such a claim.

#### a)    The TAC fails to allege a basis for holding PeerDreams or New Moon liable

As with plaintiffs' Section 20(a) claim, the TAC must adequately allege that PeerDreams or New Moon is primarily liable under Section 10(b) in order to state any claim against Monvia. *See No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. America West Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003).  For the reasons explained in the Court's Order, Plaintiff has not alleged that New Moon or PeerDreams are liable under Section 10(b).  Order at p. 38.

#### b)    Monvia is not an alter ego of PeerDreams[6]

The Opposition's single unsupported claim that "Monvia was, for all practical purposes, PeerDreams" (Opp. at p. 18) does not even come close to meeting the extremely high standard for asserting the alter ego doctrine.  As discussed in Monvia's Opening Brief and not challenged by the Opposition, a plaintiff asserting alter ego liability faces a heavy burden because courts are very reluctant to disregard the corporate form.  *See Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995).  To invoke the alter ego doctrine, a plaintiff must meeting a very high pleading standard by alleging: (1) that there is such a unity of interest and ownership that the separate

---

[6] The TAC does not contain any allegations that Monvia was an alter ego of New Moon.

personalities of the two corporations no longer exist; and (2) that if the acts are treated as those of only one of the corporations, an inequitable result will follow. *See Walsh v. Kindred Healthcare,* 798 F. Supp. 2d 1073, 1082 (N.D. Cal. 2011). Factors a court may consider include the commingling of funds and assets, "inadequate capitalization," and the "disregard of corporate formalities." *Sonora Diamond Corp. v. Sup. Court*, 83 Cal. App. 4th 523, 538-39 (2000). Conclusory allegations of alter ego status are insufficient. *See Walsh v. Kindred Healthcare,* 798 F. Supp. 2d at 1082.

The Opposition does not dispute Defendants' argument that the allegations in the TAC are plainly insufficient to raise a plausible inference that there existed "a unity of interest and ownership" between PeerDreams and Monvia and "that the separate personalities of the two corporations no longer exist." Opening Brief at pp. 11-12. In addition, there are no allegations whatsoever of: (i) a disregard for corporate formalities (ii) inadequate capitalization; (iii) intermingling or improper use of funds (or even of access to such funds by Monvia); (iv) an insufficient amount of business discretion displayed; (v) an absence of arm's-length dealings; or (vi) that there was property that was improperly used by Monvia as if it were its own.

### C.     Plaintiff Has Not Plead Fraud With Particularity

Plaintiff claims in her Opposition that she has "documented twenty-three specific misrepresentations."[7] Opp. at 8. However, that is not enough to satisfy the heightened pleading standards of Rule 9 and the PSLRA because she is required to allege the "who, what, when, where and how" supporting her fraud-based allegations made in the TAC. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see also In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d at 839.

In contravention of the Court's Order, Plaintiff has not supplied any of the factual detail that that she is required to do, such as (i) identifying who from Monvia, if anyone, made the

---

[7] Plaintiff claims in its Opposition that the "absence of confrontation with any of those details constitutes a defendants' concession that there is a viable misrepresentation claim." Opp. at p. 40. As discussed *ad nauseum*, no statements or omissions have been attributed to Monvia. In any event, Rule 9 and the PSLRA requires that the *plaintiff*, not the defendant, detail the reasons why a representation is false, and the identity of the person or persons engaged in the fraud. *See In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 839 (N.D. Cal. 2000); *see also* 15 U.S.C. § 78u-4(b)(1).

alleged misrepresentation or omission to her, (ii) detailing when the alleged misrepresentation or omission was made by someone at Monvia to her, and (iii) providing a "high level of detail" explaining each disputed statement was untrue or misleading when made.  *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d at 839; *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 42 F.3d 1541, 1549 (9th Cir. 1994).

### D.    Plaintiff Fails To Plead Falsity

Further, Plaintiff's claim fails as a matter of law because her laundry list of statements do not include any *facts*, existing at the time of the supposed misstatements, which support a strong inference that the statements made by Fischer were false or misleading when made.

As the Ninth Circuit explained even before the PSLRA, a complaint does not plead fraud where it alleges merely that "defendant said A whereas the true fact is B."  *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d at 1553 n.11.  Unless a plaintiff explains *why* A and B are supposed to be inconsistent with one another, he has not adequately pled fraud.  *Id.*  Plaintiff must allege with specificity why and how the alleged misstatements are false.  *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1000-01 (N.D. Cal. 2009).  Plaintiff comes nowhere close to this high standard because the TAC and her Opposition simply recite a purported list of alleged statements without ever actually explaining *why* any of those statements were false when made by Fischer.

As acknowledged by the Court in its Order and discussed above, liability under "Rule 10b-5 is limited to parties who actually 'make' misstatements of fact" and thus Monvia cannot be held liable for statements made by Mr. Fischer.  Order at p. 12.  Even assuming *arguendo* that the statements made by Fischer regarding PeerDreams or New Moon were made by Monvia (which they were not), the TAC still fails as a matter of law because it "does not allege facts showing that the alleged false statements were false when made."  Order at p. 13.

### E.    Plaintiff Fails to Plead Scienter

Plaintiff's Opposition states in purely conclusory fashion that "scienter is present with regard to all defendants."[8]  Opp. at 26.  However, the Opposition fails to identify a single Monvia

---

[8] Plaintiff's Opposition largely ignores the controlling standards for pleading scienter cited by the Court in its Order, but instead relies solely on *South Ferry LP, No. 2 v. Killinger*, 542 F. 3d 776 (9th Cir. 2008) for the proposition that this Court must "look[] at the entirety of the complaint" when examining whether scienter is properly alleged.  Opp.

representative who had the requisite intent to defraud. As discussed in Defendants' Opening Brief on pages 13-14, a corporate entity cannot act with scienter unless its representatives act with scienter. *See, e.g.*, *McCasland v. Formfactor Inc.*, No. C 07-5545, 2008 U.S. Dist. LEXIS 60544, at *23 (N.D. Cal. July 25, 2008).

The Opposition does not, however, identify a single Monvia representative who had the requisite intent to defraud, but instead impermissibly lumps all Defendants together and then claims in a conclusory manner that this satisfies the scienter requirement.[9] Opp. at p. 26. However, that is impermissible because Plaintiff is required to plead scienter "as to each defendant." *See Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1351-52 (S.D. Cal. 1998) (dismissing Section 10(b) complaint that "lump[ed] all defendants together by conclusory allegations" because "scienter must be pled as to each defendant"). Simply alleging that defendants knew the statements to be false, and therefore defendants must have acted recklessly, circumvents the requirement that plaintiffs plead a strong inference of scienter. *Id.*

### F.   Plaintiff Has Not Alleged That Monvia Owed Her A Duty To Disclose

Plaintiff's Opposition is entirely silent as to the argument that a fraud by omission theory requires that a defendant owe a duty to disclose in the first place. *See* Opening Brief at 13. Instead, Plaintiff simply ignores that argument and makes the incredible assertion that this "issue is for the jury." Opp. at p. 26. This flatly ignores the purpose of a motion to dismiss which is to test the *legal sufficiency* of the claims asserted in the complaint. *Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Liability under fraud by omission theory simply cannot attach if there does not exist a *legal* duty to disclose. *See In re Interactive Network, Inc. Sec. Litig.*, 948 F. Supp. 917, 920 (N.D. Cal. 1996).

---

at p. 26. *South Ferry* can be distinguished because it merely elucidated the guidance of *Tellabs* which directed courts to consider scienter allegations "holistically" in determining whether they demonstrate a "cogent" and "compelling" inference of fraud. Id. at 784. In a more recent decision, the Ninth Circuit held that Tellabs "does not materially alter the particularity requirements for scienter claims established in our previous decisions, but instead only adds an additional 'holistic' component to those requirements." *Zucco Ptrs., LLC v. Digimarc Corp.*, 552 F.3d 981, 987 (9th Cir. 2009). Read "holistically" or any other way, Plaintiff's scienter allegations do not support any "cogent" and "compelling" inference of fraudulent intent. The sum of inadequate allegations is still an inadequate pleading.

[9] Plaintiff further claims that "it was the duty of the movants" to provide an "innocent explanation" to the alleged misrepresentations and omissions. Opp. at p. 28. Again, that is simply not the law because it is the *plaintiff's* burden to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

### G.      Plaintiff's 1934 Act Claims Are Time-Barred Even Under *Merck*

Plaintiff's suggestion that *Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010) allows her to satisfy the applicable two-year statute of limitations for alleging a 1934 Exchange Act violation against Monvia (Opp. at pp. 38-39) misses the mark because even under this standard, inquiry notice bars her claim.  *Merck* merely requires that facts supporting each element of a cause of action be reasonably discoverable by a plaintiff - not actually discovered - before the limitations period is triggered.  *Merck*, 130 S. Ct. at 1798.

Here, Plaintiff had actual knowledge, and at the very least the ability to discover, each element for the alleged 10(b) cause against Monvia because the TAC admits that Plaintiff was placed on notice of a possible claim "in or about summer 2008," based on the fact that she became concerned about her "trading account and asked to have her funds returned [to her]."  TAC at ¶ 63. Therefore, even if *Merck's* inquiry notice standard applied here, Plaintiff had sufficient access to the facts in 2008 on which she bases her 10(b) cause of action.  The fact that she did not file her original complaint until June 2011 bars her claim against Monvia.

## III.   PLAINTIFF DOES NOT AND CANNOT STATE A *RESPONDEAT SUPERIOR* OR CONTROL PERSON CLAIM AGAINST MR. KULASOORIYA

The Opposition attempts to claim that Mr. Kulasooriya is liable not only as a control person as defined by Section 20 of the 1934 Act ("Section 20"), but also liable under the doctrine of *respondeat superior*.  Opp. at p. 30.  Tellingly, the TAC and Opposition confirms that at no point was Defendant Fisher ever an "agent" of Mr. Kulasooriya, but rather that the alleged *respondeat superior* claim arises out of Mr. Fischer's alleged actions on behalf of the companies whom Mr. Kulasooriya sat on the board of directors for.  Opp. at p. 30.  ("[T]hey are liable under the doctrine of *respondeat superior* … [because] Fischer was [an] agent for the corporation.").

Further, Plaintiff concedes in her Opposition that she has failed to allege the requisite control as required to establish liability under Section 20, but instead relies on the incorrect argument that "defendant's title and responsibilities are usually sufficient to establish control." Opp. at 31.  As discussed, *infra*, both arguments must fail as a matter of law.

### A.      Plaintiff's *Respondeat Superior* Claim Fails Because It Relies on Conclusory

**Allegations of Agency**

Plaintiff boldly proclaims in her Opposition that "none of [the Defendants] confronts or explains their relationship to Fischer."  Opp. at p. 30.  However, it is not the Defendants' job to explain their purported relationship with Fischer.  It is the Plaintiff's burden to state particularized facts to establish that there existed a legally cognizable agency relationship between Fischer and Defendants.  Rather than stating *facts*, Plaintiff merely recites in a conclusory manner that Fischer "acted as an agent for, and was engaged by" Defendants. TAC at ¶ 201.  This allegation fails to meet the requirements of Rule 9(b) and Plaintiff's self-serving statement does not create a legally cognizable agency relationship between Fischer and the Defendants.

The Opposition is silent as to Mr. Kulasooriya's argument in his Opening Brief that Rule 9(b) requires that the plaintiff allege with particularity facts that support the existence of an agency relationship when a plaintiff is alleging that a defendant is liable for fraud under an agency theory. *See* Order at p. 15 ("Rule 9(b) requires that the existence of the agency relationship be pled with particularity."); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007); *RPost Holdings, Inc. v. Trustifi Corp.*, No. CV 11–2118, 2011 WL 4802372, at *4 (C.D. Cal. October 11, 2011); *Palomares v. Bear Stearns Residential Mortgage Corp.*, No. 07cv01899, 2008 WL 686683, at *4-5 (S. D. Cal. March 13, 2008); *Weinstein v. Saturn Corp.*, No. C-07-0348, 2007 WL 1342604 at *1 (N.D. Cal. May 8, 2007).  The Opposition's bare assertions and conclusory statements regarding agency that are incorrectly cast as factual allegations do not meet the requirements of federal pleading practice. *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 911 (C.D. Cal. 2011) ("Plaintiff may not rest on legal conclusions regarding agency that are cast as factual allegations.").

**B.     Plaintiff Does Not Plead a Section 20 Control Person Claim**

**1.     No primary violation has been established**

The Opposition contains not a single argument that there has been a primary violation of Section 10(b), but assumes that Fischer has committed a primary violation.  This is impermissible because a plaintiff alleging a Section 20 claim must plead facts showing a primary violation under the Exchange Act, and must also allege that the defendant exercised actual power or control over the primary violator. *See No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. America*

*West Holding Corp.*, 320 F.3d at 945.  The Opposition does not dispute that even as to Fischer and as recognized by the Court previously "there are no facts pled showing why the allegedly false statements were false when they were made."  Order at p. 42.  No facts are pled as to *why* any statements made by Fischer was false and misleading at the time they were made and that he had the requisite scienter at the time he made the alleged statements.  This defect is fatal to Plaintiff's control person claim because without Fischer, there is no primary violation.

> **2.  Mr. Kulasooriya's status as an alleged director of PeerDreams and New Moon is not enough to establish that he exercised actual power or control over a primary violator**

Recognizing that the TAC has failed to plead a primary violation of Section 10(b), the Opposition shifts gears and now premises the control person claim against Mr. Kulasooriya solely on his alleged position as a director at PeerDreams and/or New Moon.  Opp. at p. 31.  Plaintiff cites several *unpublished* decisions to support her argument that "defendant's title and responsibilities are usually sufficient to establish control."  Opp. at 31.

The reason those cases are unpublished is because they do not accurately state the law.  The great majority of cases in the Ninth Circuit and other circuits hold that being an officer or director of a company does not create any presumption of control.  *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996); *see also Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1441 (9th Cir. 1987) (holding that "status or positions of an alleged controlling person, by itself, is insufficient to presume or warrant a finding of control or influence"); *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984) ("A director 'is not automatically liable as a controlling person'"); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007) (dismissing "boilerplate allegation" of control); *In re Downey Sec. Litig.*, 2009 WL 736802, at *15 (C.D. Cal. Mar. 18, 2009) (stating that "the times, dates, and places that such control allegedly occurred" must be pled).

Thus, Mr. Kulasooriya's status as an alleged director of New Moon and PeerDreams is not enough to establish liability under Section 20.  The Opposition's failure to contest the numerous

factual deficiencies identified in the Opening Brief as to the TAC's unparticularized allegations of control against Mr. Kulasooriya is fatal to her claim.

## IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR ALLEGED VIOLATIONS OF THE CALIFORNIA CORPORATIONS CODE

### A.   Plaintiff's Sections 25401, 25501 and 25504 Claims Are Time-Barred

The Opposition acknowledges that Section 25506 applies for establishing the statute of limitations for the claims asserted under the California Corporations Code (Opp. at p. 37 ("The limitations provision applicable to the California claims is found in sec. 25506")), but asserts incorrectly that Defendants have "disregard[ed] the 5 year 'from date of sale' part of the statute." Opp. at p. 37.  In reality, it is Plaintiff who disregards the explicit wording of Section 25506.

Section 25506(b) of the California Corporations Code states that "no action [under §§ 25501, 25504] shall be maintained . . . unless brought before the expiration of five years after the act or transaction or . . . the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, *whichever shall expire first*.").  Cal. Corp. Code § 25506(b) (emphasis added).  Therefore, the plain wording of the statute shows that a claim under these relevant portions of the California Corporations Code must be brought within the *earlier* of five years after the act constituting the violation, or two years of the discovery of facts constituting the violation.

*Deveny v. Entropin, Inc.*, 139 Cal. App. 4th 408 (2006) definitively established that "inquiry notice is sufficient to trigger the running of the limitations period under section 25506." *Id.* at 423. In California inquiry notice is triggered when a plaintiff:

> [A]t least "suspects . . . that someone has done something wrong" to him, "wrong" being used, not in any technical sense, but rather in accordance with its "lay understanding." He has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements. *Id.* at 423.

*Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397-98 (1999).  While facts supporting the cause of action need be reasonably discoverable (not actually discovered) by a plaintiff, mere suspicion of one or more of the elements of a cause of action, coupled with a knowledge of some of the other elements, is all that is required. *Norgart*, 21 Cal. 4th at 398 n.3; *Deveny*, 139 Cal. App. 4th at 428.

Plaintiff's Opposition does not dispute this "inquiry notice" standard, but incredibly concedes this point by agreeing that "'[i]nquiry notice' is the event that begins the time during

which a plaintiff should make inquiries." Opp. at p. 38.  The TAC clearly establishes and the Opposition does not contradict that the event that prompted Plaintiff to begin making inquiries took place "in or about summer 2008." TAC at ¶ 63.  Because this action was not filed until June 6, 2011 more than two years after Plaintiff was put on inquiry notice, it is therefore time-barred.

### B.   Plaintiff Fails to Adequately Plead That Defendants Are Primarily Liable for a Violation of § 25401 and § 25501

Plaintiff appears to concede in her Opposition that she is not seeking to hold Defendants Monvia and Mr. Kulasooriya primarily liable under § 25401 because she does not list them as someone she allegedly purchased securities from.  Opp. at p. 34.  In any event, her claims fail because she has not alleged privity as required under California law.  *See, e.g., SEC v. Seaboard Corp.*, 677 F.2d 1289, 1296 (9th Cir. 1982) (Section 25401 limits liability to the "literal seller"); *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 253-54 (2007) ("Section 25501 on its face requires privity between the plaintiff and the defendant."); *In re Cendant Corp. Sec. Litig.*, 190 F.R.D. 331, 338 (D.N.J. 1999) (dismissing § 25401 claims against officers and directors due to lack of privity), and because she fails to allege they made any communications.  *See Olenicoff v. UBS AG*, 2009 WL 481281, at *5–6 (C.D. Cal. Feb. 24, 2009) (dismissing § 25401 claim for failure to allege specific misstatements).

Here, Plaintiff did not purchase any securities from Monvia or from Mr. Kulasooriya and thus lacks privity to pursue the Sections 25401 and 25501 claims against them.

### C.   Plaintiff Fails to Adequately Plead That Mr. Kulasooriya Is Secondarily Liable for an Alleged Violation of § 25504

Having failed to allege facts showing that any defendant directly violated § 25401, the Opposition instead argues that Mr. Kulasooriya should be held liable as a control person under § 25504.  Opp. at 20.  This argument fails for two reasons.  First, as discussed herein and in the Opening Brief, Plaintiff has not adequately pled a primary § 25401 violation by anyone, a predicate for secondary liability.  Second, Plaintiff has not alleged with particularity facts showing that Mr. Kulasooriya exercised actual day-to-day control over any alleged primary violator, and thus has failed to meet the pleading standard for § 25504 control person liability.

**D.    Plaintiff's Claim Under § 25501.5 Fails Because She Did Not Purchase or Sell Any Securities From Monvia or Mr. Kulasooriya**

Plaintiff's Opposition further argues that "issuer liability is inherent in [section] 25501.5." Opp. at p. 36.  This belies her argument that Monvia is liable under § 25501.5 because the Opposition concedes that she did not purchase any securities from Monvia or Mr. Kulasooriya. Opp. at p. 34.  Nor does she allege that any of the Defendants are "engaged in the business of effecting transactions in securities in this state for the account of others or for his own account." Cal. Corp. C. § 25004 (defining the term "broker-dealer").

The plain language of § 25501.5 indicates that it only provides a cause of action to a "person who *purchases* a security from or *sells* a security…"  The Opposition does not dispute that in this case that Plaintiff never purchased or sold a security from Defendants nor that are they unlicensed broker-dealers.  Indeed, the Opposition appears to concede the former because it names several other entities from which Plaintiff allegedly purchased securities from, but does not name Defendants as one of those entities.  Opp. at p. 34.

## V.    PLAINTIFF HAS FAILED TO PLEAD COMMON LAW MISREPRESENTATION AND NEGLIGENT MISREPRESENTATION WITH PARTICULARITY

Plaintiff's Opposition takes the circular position that she has "pled a viable misrepresentation claim" because she has set forth the "requisite misrepresentations."  Opp. pp. at 39-40.  However, and as discussed, *supra*, Plaintiff has failed to plead with particularity that Mr. Kulasooriya or anyone from Monvia made any statements to her.

This failure is fatal to her common law misrepresentation and negligent misrepresentation claims.  *See, e.g., Maganallez v. Hilltop Lending Corp*., 505 F. Supp. 2d 594, 606-07 (N.D. Cal. 2007) (negligent misrepresentation claim dismissed where plaintiffs failed to identify each defendant's specific misrepresentations); *Deitz v. Comcast Corp.*, 2006 WL 3782902, at *6 (N.D. Cal. Dec. 21, 2006) (holding that FRCP 9(b) applies to negligent misrepresentation claims).

## CONCLUSION

For the forgoing reasons and those set forth in the Opening Brief and the Order, Defendants Mani Kulasooriya and Monvia, LLC respectfully request that the TAC be dismissed with prejudice.

1

2

3    Dated: September 4, 2013          **THE LAW OFFICES OF TOM CHIA-KAI WANG**

4                                      By: _/s/ Tom Chia Kai Wang_

5                                      Tom Chia Kai Wang

6                                      Attorney for Defendants Mani Kulasooriya and Monvia,
                                       LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS MANI KULASOORIYA AND MONVIA, LLC'S REPLY TO PLAINTIFF SUZANNE JACKSON'S OPPOSITION (4:11-cv-02753-PJH)