1  THEODORE A. GRIFFINGER, JR. (SBN 66028)
   TANYA HERRERA (SBN 177790)
2  STEIN & LUBIN LLP
   Transamerica Pyramid
3  600 Montgomery Street, 14th Floor
   San Francisco, CA 94111
4  Telephone:   (415) 981-0550
   Facsimile:   (415) 981-4343
5  tgriffinger@steinlubin.com
   therrera@steinlubin.com
6
   Attorneys for Defendants,
7  JON SABES, STEVEN SABES AND
   MARVIN SIEGEL
8

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                    OAKLAND DIVISION

12

13 | SUZANNE D. JACKSON,                    | Case No. 4:11-cv-02753-PJH
14 |         Plaintiff,
15 | v.
   |                                        | **DEFENDANTS JON SABES, STEVEN
16 | WILLIAM FISCHER; JON SABES;            | SABES AND MARVIN SIEGEL'S REPLY
   | STEVEN SABES; MARVIN SIEGEL;           | TO PLAINTIFF'S OPPOSITION TO
17 | BRIAN CAMPION; LONNIE                  | MOTION TO DISMISS PLAINTIFF'S
   | BROOKBINDER; MANI                      | THIRD AMENDED COMPLAINT**
18 | KOOLASURIYA, JORGE FERNANDES,
   | JOSHUA ROSEN, STEVE                    | Date:   September 25, 2013
19 | WATERHOUSE, JEAN PAUL a/k/a            | Time:   9:00 A.M.
   | "BUZZY" LAMERE, UPPER ORBIT,           | Judge:  Honorable Phyllis J. Hamilton
20 | LLC, SPECIGEN, INC.; PEER DREAMS
   | INC.; NOTEBOOKZ INC.;                  | Complaint Filed:   June 6, 2011
21 | ILEONARDO.COM INC.; NEW MOON           | Trial Date:   None
   | LLC; MONVIA LLC, CII LIMITED; and
22 | SAZANI BEACH HOTEL,
23 |         Defendants.

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. The Opposition Confirms That Plaintiff Cannot State A Claim Against The D&O Defendants Under Section 10(b) ................................................................. 1

    B. The Opposition Confirms That Plaintiff Cannot State A Claim Against The D&O Defendants Under Section 20(a) ................................................................ 3

        a. Plaintiff Fails To Allege A Primary Violation By SpeciGen.......... 3

        b. Plaintiff Fails To Allege A Primary Violation By Mr. Fischer ................................................................................................ 4

            (1) Plaintiff Fails To Allege That Mr. Fischer Made A False Statement ................................................................. 5

                (a) The "Proven Concept" Representation ................... 5

                (b) The "Exit Strategy" Representations ..................... 7

                (c) The Partnership Representations............................ 8

                (d) The "Sophisticated Investors" Misrepresentation...................................................... 8

                (e) The Promissory Note Misrepresentation................ 9

                (f) The Patent Portfolio Misrepresentation ................ 10

            (2) Plaintiff Fails To Allege That Mr. Fischer Acted With Scienter................................................................. 10

            (3) Plaintiff's Individual Allegations Do Not Raise A Strong Inference Of Scienter............................................ 11

            (4) Plaintiff's Allegations Do Not Raise A Strong Inference Of Scienter Taken As A Whole ....................... 13

    C. The Opposition Confirms That Plaintiff Cannot State A Claim For Breach Of Fiduciary Duty ............................................................................................... 13

    D. The Opposition Confirms That Plaintiff Cannot State A Claim Under Sections 25401 and 25501 ................................................................................... 14

    E. The Opposition Confirms That Plaintiff Cannot State A Claim Under Section 25504............................................................................................................ 14

    F. The Opposition Confirms That Plaintiff Cannot State A Claim Under Section 25501.5............................................................................................................ 14

    G. The Opposition Confirms That Plaintiff Cannot State A Claim For Common Law Fraud Or Negligent Misrepresentation.......................................... 15

III. CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Brody v. Transactional Hosp. Corp.*
280 F.3d 997 (9th Cir. 2002) .................................................................................................. 8

*City of Brockton Ret. Sys. v. The Shaw Group, Inc.*,
540 F.Supp.2d 464 (S.D.N.Y. 2008) ..................................................................................... 13

*Curry v. Hansen Medical, Inc.*
2012 WL 3242447 (N.D. Cal. Aug. 10, 2012) ........................................................................ 2

*Dalarne Partners, Ltd. v. Sync Research, Inc.*
103 F.Supp.2d 1209 (C.D. Cal. 2000) .................................................................................. 11

*Desaigoudar v. Meyercord*
223 F.3d 1020 (9th Cir. 2000) ................................................................................................ 2

*Howard v. Everex Sys., Inc.*
228 F.3d 1057 (9th Cir. 2000) ................................................................................................ 3

*In re Coinstar Inc. Sec. Litig.*
2011 WL 4712206 (W.D. Wash. Oct. 6, 2011) ...................................................................... 2

*In re Downey Sec. Litig.*
2009 WL 736802 (C.D. Cal. 2009) ....................................................................................... 11

*In re GlenFed, Inc. Sec. Litig.*
42 F.3d 1541 (9th Cir. 1994) (*en banc*) ................................................................................. 6

*In re Gupta Corp. Sec. Litig.*
900 F.Supp.1217 (N.D. Cal. 1994) ......................................................................................... 4

*In re Rigel Pharmaceuticals, Inc. Sec. Litig.*
697 F.3d 869 (9th Cir. 2012) ........................................................................................ 6, 7, 12

*In re Silicon Graphics, Inc., Sec. Litig.*
183 F.3d 970 (9th Cir. 1999) ......................................................................................... passim

*In re Syntex Corp. Sec. Litig.*
95 F.3d 922 (9th Cir. 1996) .................................................................................................... 7

*In re Vantive Corp. Sec. Litig.*
283 F.3d 1079 (9th Cir. 2002) ...................................................................................... 2, 5, 12

*In re VeriSign, Inc. Deriv. Litig.*
531 F.Supp.2d 1173 (N.D. Cal. 2007) .................................................................................. 13

*In re WatchGuard Sec. Litig.*
 2006 WL 2038656 (W.D. Wash., Apr. 21, 2006) ............................................................... 11, 12

*Janus Capital Group, Inc. v. First Derivative Traders*
 ___ U.S. __, 131 S.Ct. 2296, 180 L.Ed.2d 166 (2011) ....................................................... passim

*Metzler Investment GmBH v. Corinthian Colleges, Inc.*
 540 F.3d 1049 (9th Cir. 2008) ........................................................................................... 13

*New York State Teachers' Retirement Systems v. Fremont General Corp.*
 2009 WL 3112574 (C.D. Cal. Sept. 25, 2009) .................................................................. 5

*Ronconi v. Larkin*
 253 F.3d 423 (9th Cir. 2001) ............................................................................................. 12

*Rubke v. Capitol Bancorp Ltd.*
 551 F.3d 1156 (9th Cir. 2009) ........................................................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
 551 U.S. 308, 127 S.Ct. 2499 ............................................................................................ 10

*Wenger v. Lumisys, Inc.*
 2 F.Supp.2d 1231 (N.D. Cal. 1998) ................................................................................... 5, 7

*Zucco Partners, LLC v. Digimarc Corp.*
 552 F.3d 981 (9th Cir. 2009) ............................................................................................. 10, 11, 13

**CALIFORNIA CASES**

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*
 158 Cal.App.4th 226 (2007) ............................................................................................... 14

**FEDERAL STATUTES**

Private Securities Litigation Reform Act of 1995
 15 U.S.C. § 78u-4(b)(2) ..................................................................................................... 10, 12
 15 U.S.C.§ 78u-5(c)(1)(B)(i) ............................................................................................. 7
 15 U.S.C. § 78u-4(b)(1) ..................................................................................................... 6
 15 U.S.C. § 78u-4(b)(3)(b) ................................................................................................ passim

**FEDERAL RULES OF CIVIL PROCEDURE**

Federal Rule of Civil Procedure 9(b) .................................................................................... 1, 3, 5, 15

**CALIFORNIA STATUTES**

Cal. Corp. Code
    § 25401 .................................................................................................................... 14
    § 25501 .............................................................................................................. 14, 15
    § 25504 .................................................................................................................... 14
    § 25510 .................................................................................................................... 15

## I. INTRODUCTION

At the hearing on the D&O Defendants' previous motion to dismiss, Plaintiff represented that she would soon be receiving "an abundant amount of material" in the adversary proceeding entitled *Jackson v. Fischer*, Adversary Case No. 12-04183 (U.S. Bankr. D. Minn.) (the "Adversary Proceeding") which could be incorporated into an amended pleading that would pass muster under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Transcript of Oral Argument ("Tr.") at 17:10 (ECF No. 174). Since then, Plaintiff has obtained "approximately 25,000 documents" from Mr. Fischer (ECF No. 178) and conducted several depositions, including Mr. Fischer's deposition (TAC at ¶¶ 45, 61, 92, 111, 115 and 142).[1] But even with the benefit of extensive discovery, Plaintiff's Third Amended Complaint (the "TAC") still fails to plead facts showing that the D&O Defendants, Mr. Fischer or anyone else connected to SpeciGen, Inc. ("SpeciGen") made any misstatement, let alone a statement that was knowingly false or misleading when made. After multiple opportunities, extensive guidance from this Court and undeserved discovery, Plaintiff's inability to plead facts that might support a claim for relief against the D&O Defendants can only be viewed as a concession that there are no such facts. The TAC should be dismissed with prejudice.

## II. ARGUMENT

### A. The Opposition Confirms That Plaintiff Cannot State A Claim Against The D&O Defendants Under Section 10(b)

When the parties last appeared before the Court, Plaintiff "concede[d] without question" that the D&O Defendants "were not the so-called speakers in this case." Tr. at 8:3-5. Because Section 10(b) liability extends only to "speakers" (*Janus Capital Group, Inc. v. First Derivative Traders,* ___ U.S. __, 131 S.Ct. 2296, 2302, 180 L.Ed.2d 166 (2011)), the Court concluded that the SAC failed to state a Section 10(b) claim against the D&O Defendants and could not be amended to do so. Order Granting Motions to Dismiss (ECF No. 177) (the "Order") at *8 (dismissing Section 10(b) claims with prejudice).

Ignoring the Order, the TAC claims that "defendants" misrepresented SpeciGen's fundraising and partnership prospects at a dinner meeting in Palo Alto in February 2007. TAC at ¶¶ 88-89. Revealingly, Plaintiff has never specified *which* "defendants" allegedly made *which* misstatements. Instead, Plaintiff

---

[1] Plaintiff has also deposed Defendant Jon Sabes in the Adversary Proceeding. Opp. at 11 n. 14 and 15.

1  only insists that the D&O Defendants were "personally involved" in the alleged misstatements (Opp. at 1)
2  and proposes to determine "which person said what" through the discovery process. *Id.* at 16, n. 22
3  ("Depositions will sort out which person said what"). Plaintiff's arguments betray a fundamental
4  misunderstanding of the sea change brought about by the passage of the PSLRA and *Janus*.

5  Incredibly, the Opposition does not even mention the U.S. Supreme Court's authoritative opinion
6  in *Janus*, which confirms that Plaintiff cannot pursue a Section 10(b) claim against the D&O Defendants.
7  *See Janus, supra,* 131 S.Ct. at 2302 ("the maker of the statement is the person or entity with ultimate
8  authority over the statement, including its content and whether and how to communicate it"); *see also*
9  *Curry v. Hansen Medical, Inc.*, 2012 WL 3242447, *4 (N.D. Cal. Aug. 10, 2012) ("*Janus* clarifies that the
10 lack of allegations that an individual was the maker of a statement is fatal to a Rule 10b-5(b) claim against
11 that individual); *and see In re Coinstar Inc. Sec. Litig.*, 2011 WL 4712206, *11 (W.D. Wash. Oct. 6, 2011)
12 (non-speaking officers could not be primarily liable for other officers' oral statements under *Janus*).

13 Nor does the Opposition grasp the fundamental changes brought about by the PSLRA. For
14 example, Plaintiff suggests that the PSLRA only requires her to give "sufficient notice to permit the
15 defendants to ascertain the charges against them and to be in a position to prepare their defenses." *See,*
16 *e.g.,* Opp. at 7-8. However, the PSLRA requires substantially more than mere notice pleading. *See*
17 *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1021 (9th Cir. 2000) ("the PSLRA has modified the liberal,
18 notice pleading standard found in the Federal Rules of Civil Procedure"); *and see In re Vantive Corp. Sec.*
19 *Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002) (the PSLRA "significantly altered pleading requirements in
20 private securities fraud litigation by requiring that a complaint plead with particularity both falsity and
21 scienter"). Under the PSLRA, Plaintiff must now "provide a list of all relevant circumstances in great
22 detail" (*In re Silicon Graphics, Inc., Sec. Litig.*, 183 F.3d 970, 984 (9th Cir. 1999)) and must support her
23 allegations with "adequate corroborating details," including sources of information. *Id.* at 985. Plaintiff
24 does not come close to meeting these demanding standards. *See* Section II.B.b, *infra.*

25 Plaintiff also misses the point of the PSLRA when she argues that discovery "will sort out which
26 person said what." Opp. at 16, n. 22. In order to prevent discovery abuses like the fishing expedition
27 currently underway in the Adversary Proceeding, the PSLRA demands that plaintiffs plead particularized
28 facts that will support their claims at the outset of the case, without the benefit of discovery. 15 U.S.C. §

78u-4(b)(3)(b) (imposing mandatory discovery stay during pendency of motion to dismiss); *see also Silicon Graphics,* 183 F.3d at 985 ("It is not sufficient for a plaintiff's pleadings to set forth a belief that certain unspecified sources will reveal, after appropriate discovery, facts that will validate her claim"). Thus, Plaintiff cannot rely on discovery to cure her multiple pleading failures, especially since Plaintiff has already conducted extensive discovery in the Adversary Proceeding and still cannot plead fraud with the specificity required by the PSLRA and Rule 9(b).

### B. The Opposition Confirms That Plaintiff Cannot State A Claim Against The D&O Defendants Under Section 20(a)

In order to state a claim under Section 20(a), a plaintiff must allege (1) a primary violation of the federal securities laws; and (2) that the defendant exercised actual power and control over the primary violator. *See generally Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). As demonstrated in the Opening Brief and below, Plaintiff fails to allege a primary violation of Section 10(b) and fails to allege that the D&O Defendants exercised actual power and control over any primary violator.

#### 1. Plaintiff Fails To Allege A Primary Violation Of Section 10(b)

The Opposition acknowledges Plaintiff's obligation to plead a primary violation of Section 10(b) with the particularity required by Rule 9(b) and the PSLRA (Opp. at 31, n. 31), but does not address – let alone cure – the TAC's failure to do so. Instead, the Opposition simply regurgitates the TAC's defective allegations. Contrary to the Opposition, Plaintiff's conclusory allegations do not establish a primary violation by SpeciGen, Mr. Fischer or anyone else.

##### a. Plaintiff Fails To Allege A Primary Violation By SpeciGen

In the Order, the Court explained that Plaintiff's ability to state a Section 20(a) claim against the D&O Defendants would depend on her ability to allege a primary violation against SpeciGen. Order at *9 ("assuming that plaintiff can state a primary violation against SpeciGen, she may be able to state a § 20(a) claim against the D&O Defendants"). Significantly, the TAC does not even attempt to allege that SpeciGen made any false statement, as required for primary liability under Section 10(b). *See Janus*, 131 S.Ct. at 2302. Instead, the TAC focuses entirely on Mr. Fischer's alleged misstatements.

The Opposition suggests that SpeciGen can or should be vicariously liable for Mr. Fischer's alleged misstatements under the doctrine of respondeat superior. Opp. at 8, n. 11. Plaintiff's theory of

liability cannot be squared with *Janus*.

As a threshold matter, Plaintiff does not – and cannot – allege that SpeciGen had "ultimate authority" over Mr. Fischer's alleged misstatements. Like the hypothetical speaker in *Janus*, Mr. Fischer was the only one with "ultimate authority" over his own oral statements. *See, e.g.*, 131 S.Ct. at 2302 ("Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it"). *Compare In re Gupta Corp. Sec. Litig.*, 900 F.Supp.1217, 1240 (N.D. Cal. 1994) (oral statements attributable to individual defendants are actionable against only those defendants).

Furthermore, *Janus* effectively forecloses Plaintiff's attempt to hold SpeciGen vicariously liable for Mr. Fischer's alleged misstatements. Op. Br. at 12-13. In *Janus*, the Supreme Court emphasized the importance of drawing a "clean line" between primary and secondary liability under Section 10(b). As Justice Thomas observed:

> [F]or *Central Bank* [*of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994)] to have any meaning, there must be some distinction between those who are primarily liable (and thus may be pursued in private suits) and those who are secondarily liable (and thus may not be pursued in private suits).
>
> We draw a clean line between the two – the maker is the person or entity with ultimate authority over a statement and others are not. In contrast, the dissent's only limit on primary liability is not much of a limit at all. It would allow for primary liability whenever "[t]he specific relationships alleged . . . warrant [that] conclusion" – whatever that may mean.

*Janus*, 131 S.Ct. at 2302, n. 6. Thus, *Janus* confirms that plaintiffs can no longer rely on the doctrine of respondeat superior (or any other theory of secondary liability) to establish a primary violation of Section 10(b) by a non-speaker.

Plaintiff has never alleged that SpeciGen "made" any false statement. In the absence of any such allegation, Plaintiff does not – and cannot – establish a primary violation of Section 10(b) under *Janus*. But even assuming *arguendo* that Plaintiff could rely on the doctrine of respondeat superior to pursue a Section 10(b) claim against SpeciGen, she still fails to allege an underlying violation of Section 10(b).

### b. Plaintiff Fails To Allege A Primary Violation By Mr. Fischer

After four attempts – and four motions to dismiss – Plaintiff should know how to specify an alleged misstatement and explain why the statement was false or misleading when made. But even with ample guidance from this Court, and extensive discovery from Mr. Fischer, Plaintiff still fails to allege

facts demonstrating that Mr. Fischer made a statement that was knowingly false or misleading. The Opposition does nothing to cure these fundamental pleading failures.

### (1) Plaintiff Fails To Allege That Mr. Fischer Made A False Statement

The TAC alleges that Mr. Fischer orally misrepresented SpeciGen's product development, partnership and fundraising prospects (TAC at ¶¶ 87 and 89), but does not specify what Mr. Fischer actually said. Instead, the TAC repackages Mr. Fischer's alleged oral statements in "vague and impressionistic terms," leaving the D&O Defendants to guess what Mr. Fischer actually said. *Wenger v. Lumisys, Inc.*, 2 F.Supp.2d 1231, 1246-1247 (N.D. Cal. 1998) (dismissing securities fraud complaint based on paraphrased portrayals of alleged oral statements). To make matters worse, Plaintiff concedes that she cannot recall "which person said what" (Opp. at 16, n. 22), thereby raising further doubts as to the substance of the alleged misstatements. But even assuming *arguendo* that Plaintiff adequately alleged an oral misstatement, she still fails to explain why any such statement was false or misleading when made.

#### (a) The "Proven Concept" Representation

The TAC alleges that Mr. Fischer falsely represented that "SpeciGen's technology was a proven concept and approaching a stage in which it could be commercialized." TAC at ¶ 87(a). According to the TAC, Mr. Fischer's alleged representation was false because "one of SpeciGen's own directors" allegedly warned Mr. Fischer that "he thought the technology had not even reached the 'proof of concept' stage." *Id.* These allegations suffer from several fatal defects.

First, the TAC does not "provide a list of all relevant circumstances in great detail" or support her allegations with "adequate corroborating details," as required by Rule 9(b) and the PSLRA. *Silicon Graphics,* 183 F.3d at 984. Among other things, Plaintiff fails to identify "SpeciGen's technology" or the "director" who allegedly warned that the technology had not reached the "proof of concept" stage.

Second, the TAC does not offer any explanation of the term "proof of concept." In the absence of any explanation of the term, the Court has no way to measure the truth or falsity of the alleged misstatement. *See generally In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1086 (9th Cir. 2002) (complaint inadequate for failing to provide an objective measure against which allegedly "false" statements could be compared); *see also New York State Teachers' Retirement Systems v. Fremont*

*General Corp.*, 2009 WL 3112574, *10 (C.D. Cal. Sept. 25, 2009) (rejecting Section 10(b) claims against sub-prime lender where "the SAC identifies no objective measure against which Defendants or the Court can evaluate the adequacy of the underwriting standards actually employed").

The Opposition offers various definitions of the term "proof of concept," including (1) "the critical first stage of demonstrating that a scientific concept might work in practical, real world applications" (Opp. at 9); (2) "the threshold minimum stage of being able to attract investment" (*id.* at 10); and (3) "a critical benchmark that determines the amount of a company's technological risk" (*id.* at 14). However, none of these formulations appear in the TAC and none provide any objective criteria by which to measure the truth or falsity of the alleged misstatement.

The Opposition also argues that "proof of concept" means "that the so-called 'protein cages' designed to deliver therapeutic drugs to specific cancer cells would have been proven to fulfill their designed function in tests on small animals." Opp. at 14. This allegation does not appear in the TAC either, and would not establish falsity in any case. As a threshold matter, Plaintiff does not offer any source of information for her proposed definition of "proof of concept." *But see Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1166 (9th Cir. 2009) ("in order to meet the PSLRA's standard for pleading falsity, the complaint must 'state with particularity all facts on which that belief is formed'") (*quoting* 15 U.S.C. § 78u-4(b)(1)). Nor does she offer any factual basis for the Court to conclude that "proof of concept" has a unique meaning in the biotech context or typically refers to testing in small animals.

Furthermore, Plaintiff's proposed definition of the term "proof of concept" does not square with the allegations in the TAC. The TAC alleges that "[o]ne of SpeciGen's own directors, with extensive medical and biotech experience, warned directors Fischer and J. Sabes that *he thought* that the technology had not even reached the 'proof of concept' stage . . ." TAC at ¶ 87(a)(2) (emphasis added). Thus, the TAC implicitly recognizes that the term "proof of concept" reflects an exercise in judgment about a given technology's progress towards commercialization. While the TAC may allege a difference of opinion as to SpeciGen's progress, it does not allege falsity. *In re Rigel Pharmaceuticals, Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012) ("In order to allege falsity, a plaintiff must set forth facts explaining why the difference between two statements 'is not merely the difference between two permissible judgments, but rather the result of a falsehood'") (*quoting In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir.

1994) (*en banc*)). Thus, Plaintiff fails to plead facts showing the alleged "proof of concept" representation was false or misleading when made.

### (b) The "Exit Strategy" Representations

The TAC alleges that Mr. Fischer falsely represented that the Series A offering "would be fully sufficient to carry the company to its 'exit strategy' (TAC at ¶ 87(b)), which "would come within 2-3 years" (*id*. at ¶ 87(g)). According to the TAC, Mr. Fischer's alleged misrepresentations were false because (1) the Series A offering would not be enough to get SpeciGen to preliminary trials (TAC at ¶ 87(b)(a)); and (2) barring an acquisition or substantial outside investment, "it would take an estimated 12-15 years for a return on investment" (*id*. at ¶ 87(g)(3)). As the D&O Defendants observed in the Opening Brief (and Plaintiff does not dispute), these alleged statements were clearly predictions. Op. Br. at 16 (*citing In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 929 (9th Cir. 1996) ("the fact that a prediction proves to be wrong in hindsight does not render the statement untrue when made").

To adequately allege fraud based on a failed prediction, Plaintiff must allege specific contemporaneous facts showing that Mr. Fischer's alleged misstatements lacked a reasonable basis when made. *See, e.g., Wenger v. Lumisys, Inc.*, 2 F.Supp.2d 1231, 1250 (N.D. Cal. 1998) (plaintiffs must allege specific contemporaneous facts showing that defendants lacked a reasonable bases for their predictions). Neither the TAC nor the Opposition makes any attempt to allege that Mr. Fischer's alleged statements were made without a reasonable basis.[2] Plaintiff also fails to allege actual knowledge of falsity, as required for a fraud claim based on a forward-looking statement. 15 U.S.C. § 78u-5(c)(1)(B)(i). *See* Section __, *infra*. Thus, Plaintiff fails to state a Section 10(b) claim based on Mr. Fischer's alleged predictions concerning SpeciGen's "exit strategy."

---

[2] To the contrary, the TAC confirms that Mr. Fischer's alleged predictions were supported by SpeciGen's internal projections. The TAC alleges that Mr. Fischer's prediction was false because "even if the $1,500,000 Series A round were sold out, it would provide less than half the capital needed to get to preliminary trials, with more than a half decade and $30,000,000 of additional work and capital needed to even seek FDA approval." TAC at ¶ 87(b)(a). However, the TAC also alleges that "defendants Campion and Siegel" prepared "pro forma projections . . . projecting that $1,500,000 would be sufficient to get through preclinical trials . . ." *Id*. at 89(d). Thus, the TAC confirms that Mr. Fischer's alleged predictions were supported by SpeciGen's internal projections.

### (c) The Partnership Representations

The TAC alleges that Mr. Fischer and/or "defendants" falsely represented that (1) "SpeciGen had an active 'industrial research collaboration' with a prominent biotech company" (TAC at ¶ 87(c)); (2) "SpeciGen's technology had been 'validated' by a commercial biotech company" (*id.* at ¶ 87(d)); and (3) "Genentech had vetted the company's technology" (*id.* at ¶ 89(b)). Once again, Plaintiff fails to support her allegations with "adequate corroborating details." *Silicon Graphics*, 183 F.3d at 984. For example, Plaintiff does not identify any "prominent biotech company" or "commercial biotech company," leaving the D&O Defendants to guess whether Plaintiff's allegations encompass three separate companies (Genentech and two other biotech companies), two companies (Genentech and one other) or only one (Genentech). The Opposition does nothing to clear up the confusion.

Similarly, Plaintiff does not specify what an "industrial research collaboration" might entail, or explain what it might mean to be "vetted" or "validated" by a "commercial biotech company." In the absence of such specifics, it is impossible to tell whether any statement was false or misleading when made, especially since Plaintiff elsewhere concedes that SpeciGen formed a research partnership with some unidentified company (TAC at ¶ 89(c)), although it was not as productive as she would have liked.[3] Thus, Plaintiff fails to allege facts establishing that any statement regarding SpeciGen's partnership prospects was false or misleading when made.

### (d) The "Sophisticated Investors" Misrepresentation

The TAC alleges that Mr. Fischer falsely represented that "the Series A round was fully subscribed" with "sophisticated investors with biotech startup knowledge and experiences." TAC at ¶ 87(f). According to Plaintiff, Mr. Fischer's alleged representation was false because he failed to disclose that "SpeciGen board members refused to invest their own money" and "not a single institutional investor had agreed to invest." Opp. at 13.

In order to be actionable under the securities laws, "an omission must be misleading." *Brody v.*

---

[3] The Opposition inadvertently proves the point. The TAC alleges that "defendants" falsely represented that "Genentech had vetted the company's technology," thereby suggesting that perhaps Genentech did *not* vet the company's technology. However, the Opposition clarifies that "Genentech did vet SpeciGen technology," but concluded that the technology was not viable. Opp. at 17. Even with this clarification, Plaintiff still fails to demonstrate that any statement regarding Genentech was false or misleading *when made*.

*Transactional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)). "In other words, it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Id.* The alleged representation that the Series A offering was fully subscribed with "sophisticated investors" does not affirmatively create an impression that members of SpeciGen's board of directors and "institutional investors" would be participating in the offering. After all, there are plenty of "sophisticated investors" who are not members of SpeciGen's board of directors or "institutional investors."

The TAC also alleges that Mr. Fischer's alleged representation was false because the Series A offering was "less than half subscribed." TAC at ¶ 87(f). However, the TAC does not allege any basis for Plaintiff's allegation that the Series A offering "was less than half subscribed," and the Opposition confirms that it was actually the "seed round of convertible notes, which constituted [Plaintiff's] first investment in SpeciGen" that was "50% undersubscribed." Opp. at 10. Thus, Plaintiff fails to allege facts demonstrating that any alleged representation regarding the Series A offering was false or misleading when made.

### (e) The Promissory Note Misrepresentation

The TAC alleges that Mr. Fischer falsely represented that "the Series A investment made by Jackson consisted solely of convertible promissory notes, when in truth, other investors had been offered 'sweeteners,' not a part of the documented offering, in the form of common stock[.]" TAC at ¶ 87(e). However, the Opposition tells a different story. As previously discussed, the Opposition clarifies that Plaintiff participated in a "seed round of convertible notes" prior to any Series A financing. Thus, the Opposition raises considerable doubt as to what Mr. Fischer actually said and whether Plaintiff reasonably relied on an alleged misrepresentation regarding a Series A offering that she did not participate in.

The Opposition tries to avoid these problems by arguing that the convertible promissory notes were false and misleading. Opp. at 12; *see* Purchase Agreement (Herrera Decl. Ex. B). However, the TAC implies that Plaintiff never read or received the notes. TAC at ¶ 84. Plaintiff cannot claim to have been misled by notes that she never saw. Nor can she credibly contend that the Purchase Agreement created an affirmative impression that investors would only receive convertible promissory notes. Thus, Plaintiff cannot pursue a Section 10(b) claim based on any alleged misrepresentation in the Purchase Agreement.

### (f) The Patent Portfolio Misrepresentation

Finally, the TAC alleges that Mr. Fischer falsely represented that "SpeciGen had all of the licenses and patents needed to commercially develop its technologies." TAC at ¶ 87(h). In the Opening Brief, the D&O Defendants observed that the TAC does not specify what Mr. Fischer actually said about SpeciGen's patents or explain why the statement was false or misleading when made. Op. Br. at 16. In response, the Opposition argues that the alleged "falsehood was designed to assure Mrs. Jackson that the technology at the heart of SpeciGen's mission was in place with a long term lock on its use." Opp. at 14. The Opposition does not say anything else about SpeciGen's patent portfolio, and does not explain why the alleged representation was false or misleading when made. Thus, Plaintiff has again failed to allege that Mr. Fischer made any misrepresentation of material fact regarding SpeciGen's patent portfolio.

### (2) Plaintiff Fails To Allege That Mr. Fischer Acted With Scienter

To adequately plead scienter under the PSLRA, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). In the Ninth Circuit, the required state of mind is "deliberate or conscious recklessness." *Silicon Graphics,* 183 F.3d at 988. To qualify as "strong," the Supreme Court has held, "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2504-2505, 168 L.2d 179 (2007).

The Supreme Court's decision in *Tellabs* requires the Court to conduct a "dual inquiry." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991-992 (9th Cir. 2009). First, the Court must "determine whether any of the plaintiff's allegations, standing alone, are sufficient to raise a strong inference of scienter." *Id.* at 992. As discussed in detail below, none of Plaintiff's individual allegations is cogent or compelling enough to raise a strong inference of scienter under the PSLRA. Second, "if no individual allegations are sufficient," the Court must "conduct a 'holistic' review of the same allegations to determine whether the individual allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id.* Even when Plaintiff's allegations are considered holistically, the TAC still fails to raise a strong inference that Mr. Fischer acted with intent to defraud or deliberate recklessness.

### (3) Plaintiff's Individual Allegations Do Not Raise A Strong Inference Of Scienter

The Opposition claims that facts giving rise to a strong inference of scienter can be found at Paragraphs 87-91 of the TAC. Opp. at 26. However, Paragraphs 87-89 merely allege that Mr. Fischer and/or "defendants" made false statements. TAC at ¶¶ 87-89. None of those paragraphs adequately allege a false statement, let alone a statement made with deliberate recklessness or intent to defraud.

Paragraph 90 alleges that the D&O Defendants failed to disclose a number of things, including the resignations of SpeciGen's former CEO, Lonnie Bookbinder, and a member of the Board of Directors, David Goldsteen. For an officer or director's resignation to raise an inference of scienter, "a plaintiff must allege sufficient information to differentiate between a suspicious change in personnel and a benign one." *Zucco*, 552 F.3d at 1002; *see also In re Downey Sec. Litig.*, 2009 WL 736802, *11 (C.D. Cal. 2009) ("A resignation or termination provides evidence of scienter only when it is accompanied by additional evidence of the defendant's wrongdoing"). The TAC alleges in conclusory fashion that Mr. Bookbinder and Dr. Goldsteen disagreed with management, and even questioned some of the company's fundraising practices. However, the TAC does not connect either resignation to the alleged fraud, or even adequately explain what the alleged "fundraising irregularities" were. Thus, Plaintiff's allegations do not raise a "strong," "cogent" or "compelling" inference of scienter.[4]

Paragraph 91 alleges that "SpeciGen had a small board of directors averaging five members." TAC at ¶ 91. However, Plaintiff cannot raise a strong inference of scienter by arguing that SpeciGen was a small or "closely-held" company. District courts throughout the Ninth Circuit have repeatedly rejected attempts to premise an inference of scienter on a company's small size. *See, e.g., Dalarne Partners, Ltd. v. Sync Research, Inc.*, 103 F.Supp.2d 1209, 1214 (C.D. Cal. 2000) (finding that "any logical connection" between the fact that Sync "is a small company" and "the conclusion that the defendants knowingly deceived the investing public through their optimistic business forecasts involves a degree of speculation that is foreclosed under the PSLRA and *Silicon Graphics*"); *see also In re WatchGuard Sec. Litig.*, 2006 WL 2038656, *4 (W.D. Wash., Apr. 21, 2006) ("Absent particular allegations that link a particular

---

[4] Plaintiff's allegation that SpeciGen violated the Securities Act of 1933 (TAC at ¶ 90(c)) is wholly conclusory and does not raise any inference of scienter at all.

Defendant with particular knowledge, the court will not infer knowledge simply because WatchGuard is a "small company" (or even a "very small company," as Plaintiffs characterize WatchGuard in their opposition to this motion")). Thus, Plaintiff's observation that SpeciGen was a small company does not raise any inference of scienter.

Finally, the TAC alleges that "defendants" were generally "aware" that (1) they needed funding to survive (TAC at ¶¶ 131(a), (c) and (d)); and (2) they faced significant product development challenges (*id.* at ¶¶ 131(b) and (d)). These generic allegations could be applied to virtually any start-up company. Indeed, the TAC purports to apply the same allegations indiscriminately to "each of the defendants" in this action. TAC at ¶ 131. These boilerplate allegations, which are not even specific to Mr. Fischer, do not "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). *See, e.g., Vantive*, 283 F.3d at 1085 (affirming dismissal of Section 10(b) claims where "the bulk of the alleged adverse facts are generic, subjective, difficult to prove or refute, and could be alleged against almost any company that has experienced a drop in sales revenue"). At best, the TAC describes "routine corporate objectives," such as the desire to obtain financing and develop new products. The Ninth Circuit and Northern District of California have repeatedly rejected attempts to premise a strong inference of scienter on such allegations. *Rigel*, 697 F.3d at 884 ("allegations of routine corporate objectives such as the desire to obtain good financing and expand are not, without more, sufficient to allege scienter; to hold otherwise would support a finding of scienter for any company that seeks to enhance its business prospects").

The Opposition does not even attempt to rehabilitate the TAC with "allegations of specific contemporaneous statements or conditions that demonstrate the intentional or deliberately reckless false or misleading nature of the statements when made." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (internal quotation marks and citation omitted). Instead, the Opposition suggests that Mr. Fischer's alleged misstatements were so egregious that they could only have been made with intent to defraud or deliberate recklessness. Opp. at 27-28. Plaintiff's argument does not begin to satisfy her pleading obligations.

As a threshold matter, the TAC does not identify a single false statement (*see* Section II.B.b.1, *supra*), let alone "plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *Silicon Graphics,* 183 F.3d at 974. Furthermore, the Ninth Circuit

and Northern District of California have repeatedly rejected similar allegations that defendants "must have known" or "could have known" that their statements were false or misleading when made. *See, e.g., Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998 (9th Cir. 2009) ("generalized claims about corporate knowledge are not sufficient to create a strong inference of scienter"); *Metzler Investment GmBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008) ("Corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter – at least absent some additional allegation of information conveyed to management and related to the fraud") (internal citation omitted); *In re VeriSign, Inc. Deriv. Litig.*, 531 F.Supp.2d 1173, 1207 (N.D. Cal. 2007) ("The mere fact of a particular defendant's position within VeriSign is insufficient, without more, to impose liability"). Thus, Plaintiff cannot raise a strong inference of scienter with boilerplate allegations that Mr. Fischer "must have known" that his statements were false or misleading.

### (4) Plaintiff's Allegations Do Not Raise A Strong Inference Of Scienter Taken As A Whole

Not surprisingly, the sum of the TAC's scienter allegations is no greater than its defective parts. *See, e.g., City of Brockton Ret. Sys. v. The Shaw Group, Inc.*, 540 F.Supp.2d 464, 475 (S.D.N.Y. 2008) (rejecting plaintiffs' argument that "zero plus zero plus zero adds up to something" when none of plaintiffs' individual allegations raised an inference of fraud). Even when Plaintiff's allegations are considered collectively, they still fail to raise a cogent and compelling inference that Mr. Fischer acted with intent to defraud or deliberate recklessness. If anything, the TAC plausibly suggests that Mr. Fischer made optimistic predictions about SpeciGen's fund-raising, product development and partnership prospects which simply failed to come to true. These allegations do not raise a cogent and compelling inference of fraud. At best, they raise an inference that things do not always go as planned, especially in the world of start-up companies.

### C. The Opposition Confirms That Plaintiff Cannot State A Claim For Breach Of Fiduciary Duty

The Order was clear that "plaintiff must allege facts showing that the D&O defendants acted in bad faith or intentionally failed to act in the face of a known duty to act in order to state a claim for breach of fiduciary duty. Order at 11. The TAC does not allege any such facts and the Opposition makes no attempt to rehabilitate Plaintiff's failed pleading. Plaintiff's claim for breach of fiduciary duty should be

dismissed with prejudice.

### D. The Opposition Confirms That Plaintiff Cannot State A Claim Under Sections 25401 and 25501

"Sections 25401 and 25501 impose liability only on the actual seller of the security." Order at 12 (*citing Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 253-254 (2007)). The Court previously dismissed Plaintiff's claims under Sections 25401 and 25501, granting leave to amend "to the extent that plaintiff can allege that the D&O defendants sold the securities in question (to the extent there were even securities sold)." The TAC does not allege that the D&O Defendants sold Plaintiff any securities, and the Opposition does not even address the issue. Plaintiff's claim for violations of Sections 25401 and 25501 should be dismissed with prejudice.

### E. The Opposition Confirms That Plaintiff Cannot State A Claim Under Section 25504

Section 25504 "imposes 'control person' liability on those who assist others in primary violations of the California Securities Act." Order at 12. The Opposition argues that the D&O Defendants are liable as controlling persons for Mr. Fischer's alleged misstatements. Opp. at 33-34. However, Plaintiff fails to allege that any of Mr. Fischer's statements were false or misleading when made. *See* Section II.B.b, *supra*. Thus, Plaintiff fails to allege a primary violation of the California Securities Act. Plaintiff's claim for violations of Section 25504 should be dismissed with prejudice.

### F. The Opposition Confirms That Plaintiff Cannot State A Claim Under Section 25501.5

In the Opening Brief, the D&O Defendants demonstrated that (1) Section 25501.5 does not apply to the facts alleged in the TAC (Op. Br. at 21-22); and (2) Plaintiff's Section 25501.5 claims are time-barred (*id.* at 22-24). The Opposition ignores both arguments.

By its terms, Section 25501.5 establishes a private right of action in favor of a person who purchases a security *from* an unlicensed broker-dealer. Cal.Corp. C. § 25501.5(a)(2) ("A person who purchases a security from or sells a security to a broker-dealer that is required to be licensed . . ."). Plaintiff claims that Mr. Fischer was an unlicensed broker-dealer, but does not allege that she purchased SpeciGen securities from him. To the contrary, the judicially noticeable Purchase Agreement confirms that she purchased convertible promissory notes from SpeciGen. Purchase Agreement at 1 (Herrera Decl. Ex. B)

1   Therefore, Plaintiff does not – and cannot – establish a primary violation of Section 25501.5. Because

2   Plaintiff fails to establish a primary violation of Section 25501.5, the Court need not decide whether

3   Section 25501.5 authorizes a private right of action against secondary actors who participate in a primary

4   violation of Section 25501.5 (though the D&O Defendants respectfully submit that it does not). *See* Cal.

5   Corp. C. § 25510 ("Except as explicitly provided in this chapter, no civil liability in favor or any private

6   party shall arise against any person by implication from or as a result of the violation of any provision of

7   this law or any rule or order hereunder").

8   In the Order, the Court instructed Plaintiff to "allege facts . . . sufficient to show when plaintiff

9   discovered the alleged violation." Order at 15. Neither the TAC nor the Opposition alleges any such

10  facts. Thus, the Court can only conclude that Plaintiff discovered the alleged violation more than two

11  years before she brought suit.[5] Plaintiff's Section 25501.5 claim should be dismissed with prejudice.

### G.    The Opposition Confirms That Plaintiff Cannot State A Claim For Common Law Fraud Or Negligent Misrepresentation.

14  Plaintiff's claims for common law fraud and negligent misrepresentation both require that she

15  identify a statement that was false or misleading when made with the particularity required by Rule 9(b).

16  As previously discussed, the TAC wholly fails to do so. *See* Section II.B.b, *supra*.

## III.    CONCLUSION

18  The Court was crystal clear in the Order that "[a]n amended pleading that does not provide a

19  coherent explanation of the facts and a plausible statement of the claims will be dismissed with prejudice."

20  Order at *29. Despite the Court's warning, Plaintiff has again failed to provide a coherent explanation of

21  the facts or a plausible statement of the claims. The TAC should be dismissed with prejudice.

22  Dated: September 4, 2013                    STEIN & LUBIN LLP

                                                By:  */s/ Tanya Herrera*
                                                     Tanya Herrera
                                                     Attorneys for Defendants
                                                     Jon Sabes, Steven Sabes and Marvin Siegel

---

[5] Indeed, Plaintiff has conceded in the Adversary Proceeding that she "retained counsel in 2009 to obtain documents from Mr. Fischer." *See* D&O Defendants' Supp. RJN Ex. A at p. 4.