**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUZANNE D. JACKSON,

          Plaintiff,

    v.

WILLIAM FISCHER, et al.,

          Defendants.

_____/

No. C 11-2753 PJH

**ORDER GRANTING MOTIONS TO DISMISS IN PART, AND DENYING THEM IN PART**

The motions of defendants Jon Sabes ("J. Sabes"), Steven Sabes ("S. Sabes"), Marvin Siegel ("Siegel"), Mani Kulasooriya ("Kulasooriya" – sued as Mani Koolasuriya), Monvia LLC ("Monvia"), New Moon Girl Media, Inc. ("New Moon" – sued as New Moon LLC), and Jorge Fernandes ("Fernandes") to dismiss the claims asserted in the third amended complaint ("TAC") came on for hearing before this court on September 25, 2013.

Plaintiff Suzanne D. Jackson appeared by her counsel Alan Kaufman and David Snyder; defendants J. Sabes, S. Sabes, and Siegel appeared by their counsel Tanya Herrera; defendants Kulasooriya and Monvia appeared by their counsel Jake Molland; defendant New Moon appeared by its counsel Gregory Doyle and Thomas Crowell; and defendant Fernandes appeared by his counsel Mary Garfein.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motions in part and DENIES them in part.

**INTRODUCTION**

Plaintiff Suzanne Jackson, alleges that she was defrauded by defendant William Fischer ("Fischer"), who induced her to invest several million dollars in a number of unsound enterprises, resulting in the loss of her investments.  Although plaintiff refers to an overall "scheme," the complaint in fact alleges a series of "schemes," which have in common primarily the fact of Fischer's involvement.

Plaintiff filed the original complaint in June 2011, against 18 defendants – Fischer; J. Sabes; S. Sabes; David Goldsteen; Siegel; Brian Campion ("Campion"); Lonnie Bookbinder ("Bookbinder"); Chetan Narsude; Kulasooriya; Joshua Rosen ("Rosen"); Upper Orbit LLC ("Upper Orbit"); SpeciGen, Inc. ("SpeciGen"); PeerDreams, Inc. ("PeerDreams"); Notebookz Inc. ("Notebookz"); iLeonardo.com, Inc. ("iLeonardo"); New Moon; Monvia; and Sazani Beach Hotel ("Sazani Beach").

The companies or businesses in which Fischer allegedly induced plaintiff to invest were SpeciGen, PeerDreams, Notebookz/iLeonardo (treated as a single entity in the complaint), New Moon, and Sazani Beach.  Upper Orbit is alleged to have been a limited liability company through which Fischer funneled some of plaintiff's money.

On December 5, 2011, pursuant to stipulation, plaintiff filed the first amended complaint ("FAC"), against the same 18 defendants.  On February 28, 2012, plaintiff filed a notice of dismissal as to defendant David Goldsteen.

In March 2012, plaintiff requested entry of default against SpeciGen, PeerDreams, and iLeonardo.  Default was entered as to those three defendants on March 19, 2012.

In April 2012, Fischer filed for Chapter 7 bankruptcy protection in the District of Minnesota, asserting that he had $12 million in liabilities, and listing plaintiff as the major creditor.  On April 24, 2012, Fischer and Upper Orbit filed a notice of filing of bankruptcy petition, which triggered an automatic stay in this action as to Fischer.

On June 15, 2012, pursuant to stipulation (and after a number of defendants had filed motions to dismiss), plaintiff filed a second amended complaint ("SAC") in the present action, against 20 defendants.  These are Fischer; J. Sabes; S. Sabes; Siegel; Campion;

United States District Court

For the Northern District of California

1  Bookbinder; Kulasooriya; Fernandes; Rosen; Steve Waterhouse ("Waterhouse"); Jean Paul

2  a/k/a "Buzzy" Lamere ("Lamere"); SpeciGen; PeerDreams; Notebookz; iLeonardo; New

3  Moon; Monvia; CII Ltd. ("CII"); Sazani Beach; and Upper Orbit.

4       J. Sabes, Siegel, and Campion are alleged to have been officers/directors of

5  SpeciGen; S. Sabes is alleged to have been a director of SpeciGen; Bookbinder is alleged

6  to have been the CEO of SpeciGen; Kulasooriya is alleged to have been a director of

7  PeerDreams and New Moon, and a "co-adventurer" with Fischer; Fernandes is alleged to

8  have been a director of Monvia, the CEO of non-party MOBIbucks, and a director of

9  PeerDreams and New Moon; Rosen is alleged to have been the CEO and a director of

10  Notebookz and iLeonardo; Waterhouse is alleged to have been a director of Notebookz;

11  Lamere is alleged to have been the president of non-party Toppost, and a "consultant" to

12  SpeciGen; and Upper Orbit is alleged to have been a "corporate vehicle" used by Fischer

13  as a "broker-dealer" for New Moon, non-party Toppost, SpeciGen, and PeerDreams.

14       On July 17, 2012, plaintiff filed an adversary proceeding in the District of Minnesota

15  Bankruptcy Court, challenging the dischargeability of Fisher's debt.  The stay as to Fischer

16  in this case remains in place until resolution of the adversary proceeding.  On July 19,

17  2012, the Bankruptcy Court issued an order discharging Fischer.  The adversary

18  proceeding, which was originally set for trial on November 5, 2011, with a continuance to

19  September 16, 2013, was set for trial on December 9, 2013.

20       Meanwhile, default was entered against Upper Orbit in this case after it failed to

21  appear by counsel (having been ordered to do so).  Plaintiff filed a motion for default

22  judgment, but that motion was denied on January 2, 2013, without prejudice to refiling once

23  the claims against Fischer have been resolved.

24       On March 15, 2013, the court issued an order granting the motions to dismiss the

25  SAC filed by four defendants/groups of defendants (J. Sabes, S. Sabes, and Siegel;

26  Kulasooriya and Monvia; New Moon; and Fernandes).  The claims under § 10(b) and Rule

27  10b-5  were dismissed with prejudice as to J.Sabes, S. Sabes, Siegel, Kulasooriya, and

28  Fernandes.

United States District Court

For the Northern District of California

1    On April 25, 2013, plaintiff filed the third amended complaint ("TAC"), against the

2    same 20 defendants as in the SAC, asserting 11 causes of action –

3    (1) a claim under § 10(b) of the 1934 Securities Exchange Act and Rule 10b-5

4    promulgated thereunder (mistakenly labeled as a claim under the "1933 Securities Act"),

5    against defendants Fischer, Campion, Siegel, Rosen, Kulasooriya, SpeciGen,

6    PeerDreams, Notebookz, New Moon, and Toppost,[1] TAC ¶¶ 78-133;

7    (2) a claim under California Corporations Code §§ 25401 and 25501 (against

8    SpeciGen, Notebookz, Ileonardo, PeerDreams, New Moon, Toppost, Fischer, Siegel,

9    Campion, Rosen, and Kulasooriya), TAC ¶¶ 134-140;

10    (3) a "control person" claim under § 20 of the 1934 Securities Exchange Act

11    (against J. Sabes, S. Sabes, Siegel, Campion, Fischer, Rosen, Waterhouse, Kulasooriya,

12    Fernandes, Nancy Gruver,[2] and Lamere (and also possibly Fischer, though that is not

13    clear), TAC ¶¶ 141-145;

14    (4) a claim of "control person" or secondary liability under California

15    Corporations Code § 25504 (against Siegel, J. Sabes, S. Sabes, Campion, Bookbinder,

16    Rosen, Waterhouse, Fernandes, Kulasooriya, Gruver, and Lamere), TAC ¶¶ 146-154;

17    (5) a claim of breach of fiduciary duty (against Fischer, J. Sabes, S. Sabes,

18    Siegel, Campion, Kulasooriya, Fernandes, Rosen, Waterhouse, and "directors of the other

19    defendant companies whose names are not currently known"), TAC ¶¶ 155-161;

20    (6) a claim under California Corporations Code §§ 25230, 25235 (California

21    Investment Advisors Code) (against Fischer only), TAC ¶¶ 162-169;

22    (7) a claim for declaratory judgment of breach of Investment Advisors Act of

23    1940 (against Fischer only), TAC ¶¶ 170-178;

24

25    ───────────────

26    [1]  The court notes that Toppost is not named as a defendant in the "Parties" section of
the TAC, that no summons was issued for Toppost, and that it thus undoubtedly was not
served with process.

27    [2]  The court notes that Nancy Gruver ("Gruver," alternatively, "Griver" – President of
28    New Moon) is not named as a defendant, that no summons was issued for her, and that she
undoubtedly was not served with process.

4

United States District Court

For the Northern District of California

1   (8) a claim of negligent misrepresentation (against Fischer, J. Sabes, S.

2   Sabes, Campion, Siegel, Rosen, and Kulasooriya), TAC ¶¶ 179-187;

3   (9) a claim under California Corporations Code § 25501.5 (against J. Sabes,

4   S. Sabes, Siegel, Campion, Rosen, Fernandes, Kulasooriya, Waterhouse, and Gruver (not

5   a defendant and not served)), TAC ¶¶ 188-195;

6   (10) a claim of common law misrepresentation (against "all defendants" or

7   alternatively, against "Fischer and Upper Orbit as agents for the other corporate, officer and

8   director defendants"), TAC ¶¶ 196-200; and

9   (11) a claim of respondeat superior (against Fischer, and possibly against J.

10   Sabes, S. Sabes, Campion, Bookbinder, Siegel, Rosen, Waterhouse, Fernandes,

11   Kulasooriya, Gruver, and Lamere), TAC ¶¶ 201-205.

12   On May 28, 2013, Campion, Notebookz, and Rosen filed an answer to the TAC.  On

13   May 29, 2013, Waterhouse filed an answer to the TAC.  Bookbinder, Sazani Beach, CII,

14   and Lamere have not appeared.  Plaintiff has filed proofs of service showing service of the

15   summons and original complaint on Bookbinder, Sazani Beach, and CII, but has not moved

16   for entry of default as to those defendants.

17   No proof of service has been filed as to Lamere, and he is hereby DISMISSED from

18   the action pursuant to Federal Rule of Civil Procedure 4(m), in accordance with the court's

19   order of October 22, 2013 (Doc. 234).

20   On December 18, 2013, plaintiff filed a notice of entry of judgment in the adversary

21   proceeding pending in the Bankruptcy Court in the District of Minnesota.  Fischer stipulated

22   that he is indebted to plaintiff in the amount of $8,250,000, arising from investments

23   solicited from plaintiff by Fischer on behalf of SpeciGen, Notebookz, PeerDreams, CII, New

24   Moon, Sazani Beach, and Toppost; and further stipulated that such debt is non-

25   dischargeable under 11 U.S.C. § 523(a)(2)(A).

26   Presently before the court are four motions to dismiss, brought by (i) J.Sabes, S.

27   Sabes, and Siegel ("D&O defendants"); (ii) Kulasooriya and Monvia; (iii) New Moon; and

28   (iv) Fernandes, plus a separate motion to strike, brought by Kulasooriya.

United States District Court

For the Northern District of California

**BACKGROUND**

The background facts alleged in the TAC are as described in the March 15, 2013 order granting the motions to dismiss the SAC, although the TAC includes additional details, in particular with regard to the first cause of action.

Plaintiff alleges that she met Fischer in October 2006. She asserts that after Fischer learned of her interest in learning to invest, particularly in companies with some social or other beneficial purpose, he suggested she invest in SpeciGen, which he claimed had valuable patents that would produce breakthroughs in the treatment of cancer. Plaintiff alleges that in December 2006, she made the first of what would be over $3 million in "loans and investments in common stock and convertible promissory notes," beginning with a $250,000 loan "in the form of a promissory note convertible into preferred stock issued by SpeciGen." TAC ¶¶ 39-43.

Following this $200,000 loan, Fischer "acting with, through and as agent and broker for the other defendants, and later some of the defendants directly, proceeded to solicit loans and direct equity investments, directly or through defendant Upper Orbit" in SpeciGen, Notebookz/iLeonardo, PeerDreams, CII/Sazani Beach, New Moon, Toppost, and "Rate-It-All, later converted to Double Dutch." TAC ¶ 43.

Plaintiff alleges that she never received an offering circular, memorandum, or other disclosure document, and that instead, Fischer (and later defendants J. Sabes, S. Sabes, Siegel, and Kulasooriya, and non-party Gruver) "would orally inform [plaintiff] of the investment, tell her why it would succeed, [and] claim the sophisticated nature of some of the other investors." TAC ¶¶ 44-47. She claims that none of the defendants informed her of any risks and none provided any disclosure documents. TAC ¶ 49.

In February 2008, Fischer proposed that plaintiff loan Upper Orbit $1 million, in exchange for interest at 8% plus 4% "interest in the profits realized by Upper Orbit" from "trading equities, making loans, and investing in private equity opportunities." TAC ¶ 58. However, plaintiff asserts, because Fischer provided no accounting, "it is not known whether he actually traded in public securities with the funds." TAC ¶ 60.

United States District Court
For the Northern District of California

1    Plaintiff alleges that based on "[t]he incomplete records provided by Fischer,"

2   Fischer made new investments or loans on plaintiff's behalf in New Moon, PeerDreams,

3   SpeciGen, and Toppost; and that based on statements made by Fischer at his deposition

4   (in the bankruptcy adversarial proceeding), New Moon, Peer Dreams, SpeciGen,

5   Kulasooriya, Fernandes, Campion, Siegel, and Lamere were aware that Upper Orbit was

6   trading for plaintiff's account.  TAC ¶ 61.  She claims that these defendants "were

7   specifically advised by Fischer that [plaintiff] was Fischer's partner and that the Upper Orbit

8   shares in their companies, as well as the loans made, were being purchased and made in

9   her behalf."  TAC ¶ 62.   (Yet – "it is not known whether [Fischer] actually traded in public

10   securities with the funds [plaintiff placed with Upper Orbit," TAC ¶ 60.)

11    Plaintiff asserts that in the summer of 2008, she became concerned about the

12   "trading account" and asked to have her funds returned, but that Fischer responded that he

13   did not have enough "liquidity," and instead proposed a "restructuring" of the loans plaintiff

14   had made to Upper Orbit.  TAC ¶¶ 63-64.

15    Through 2009, Fischer continued to represent to plaintiff that he was working

16   actively with SpeciGen, New Moon, PeerDreams, Toppost, and Notebookz to "turn it

17   around."  TAC ¶ 65.  By mid-2009, plaintiff became concerned about missed loan

18   payments, and other matters, but she asserts that continuing into November 2010, Fischer

19   "assuaged her with reports about each defendant company that created the impression her

20   money was not lost."  TAC ¶¶ 66-67.

21    Plaintiff asserts that from the summer of 2008, and into the fall of 2010, Fischer, "on

22   behalf of all the other defendants," presented claims of progress to assuage her concerns

23   about her "investments."  TAC ¶ 69  Plaintiff alleges that Fischer made the following

24   statements between August 4, 2008, and March 2010:

25    a.    On August 4, 2008, Fischer reported he was meeting with a partner of

26   a venture fund to review the SpeciGen patent portfolio, and told plaintiff that he had

27   "pitched [the venture fund partner] about the hydrogen and now he has told partners at [the

28   venture fund] and they are totally gungho about Thermal biology research."

7

United States District Court

For the Northern District of California

1    b.    Also on August 4, 2008, Fischer reported that on August 1st, he had

2  "signed a purchase agreement to sell the 50 shares of Sazani for $500,000" and that "[w]e

3  close on the deal Oct. 1st."

4    c.    On August 18, 2008, Fischer advised that he would "be in Duluth with

5  Mani [Kulasooriya] from Monvia . . . for the rest of the week" and that they would be "getting

6  ready for the New Moon site to launch . . . and raising funds from local investors."

7    d.    On August 26, 2008, Fischer told plaintiff that "we are about to close a

8  deal with Mobilbucks [run by Fernandes] in Dubai."

9    e.    On September 1, 2008, defendant Joshua Rosen reported, "This

10  morning Mashable ranks ILeonardo.com above Google notebook as the best Research

11  utility on the web."

12    f.    On October 27, 2008, Fischer "passed along" Kulasooriya's report that

13  "the Dubai Cares deal signed" and that "[m]oney will start coming in by the end of week

14  and all of it by November."  The "Dubai Cares" deal was allegedly represented as

15  enhancing the value of PeerDreams, a Monvia project in which plaintiff had invested

16  $200,000.

17    g.    In late November 2008, Fischer (now allegedly employed by New

18  Moon) wrote from Germany to say he was raising funds for New Moon in four German

19  cities and would be doing further fund raising in Spain the following week.

20    h.    In December 2008, Fisher reported, "I think I have gotten us a $300K

21  investment into SpeciGen . . . but time will tell . . . we are beginning to see the light of day

22  here."

23    i.    In July 2009, Fischer advised that "we can get a deal completed" for

24  the sale of PeerDreams.

25    j.    In August 2009, Fischer reported progress on a buyer for New Moon,

26  stating that "we might have acquisition sooner than later."

27    k.    In January 2010, New Moon submitted what plaintiff terms "a rosy

28  report" through Fischer that "[w]e'll be moving forward in our plan to get a significant

8

1    strategic partner on-board in the next 6 months."

2            l.      In February 2010, Fischer reported progress on a "SpeciGen

3    acquisition."

4            m.      Also in February 2010, Fischer told plaintiff, "[W]e should have a deal

5    by the end of March to put PeerDreams on 3 of the Smithsonian websites!"

6            n.      At the end of March 2010, after reviewing plaintiff's overall

7    investments, Fischer said, "[N]ow that I have gotten things stabilized I am working on

8    generating growth and revenue.  A few more months of heads down manic work and we'll

9    start seeing some light in this tunnel."  TAC ¶ 69.

10       Plaintiff alleges that it was in "the summer of 2008" that she "became concerned

11   about the so-called 'trading account' and asked to have her funds returned."  TAC ¶ 63.

12   However, she also asserts that throughout the fall of 2010, she repeatedly sought

13   information about her "investments," but that her efforts were frustrated by Fischer's

14   "delays," and his "failures to reply" and the "failure of the other defendant entities to reply,"

15   plus "his claims that he was having difficulty getting the companies to provide the requested

16   information," and his claims that investments from other new partners was imminent.  TAC

17   ¶¶ 70-71.

18       Plaintiff alleges that these "representations" were made by Fischer, or "transmitted

19   directly from" the other "defendants" for the purpose of buying time from plaintiff and

20   frustrating her ability to protect her interests.  TAC ¶ 72.

21       Plaintiff asserts that starting in June 2010, Fischer began to report "problems," such

22   as that "we are being cheated by . . . Fernandes."  TAC ¶¶ 73-74.  She claims that the

23   "deals" that Fischer, SpeciGen, New Moon, PeerDreams, CII, MOBIbucks, and Toppost

24   had "held out as inducements for patience" did not come to fruition, and that "those facts"

25   were actively concealed from her.  TAC ¶ 75.

26       She asserts that from the time of her first loan to SpeciGen in December 2006

27   through her investments in the late summer of 2008, she received only "sparse" reports,

28   and that her requests for information remained unanswered through the late fall of 2010.

9

United States District Court
For the Northern District of California

1   She contends that those misrepresentations tolled the statute of limitations with respect to

2   all claims arising out of her subsequently disclosed economic losses through November

3   2010.  TAC ¶ 76.

4       With regard to her investments in SpeciGen, Notebookz, iLeonardo, PeerDreams,

5   New Moon, and Toppost, plaintiff alleges as follows:[3]

6       (a) With regard to SpeciGen, plaintiff alleges that her investments were made

7   in "tranches."[4]  She lists seven loans secured by promissory notes that she claims were

8   "convertible into" either common or preferred stock, at SpeciGen's discretion, and which

9   were issued on various dates from December 1, 2006 to the summer of 2008.  TAC ¶ 86.

10  She also asserts that in October and November 2006, Fischer (acting as SpeciGen's

11  agent) made false and material oral representations about SpeciGen, see TAC ¶ 87; that

12  Fischer arranged for plaintiff to meet J. Sabes, S. Sabes, Campion, and Siegel in February

13  2007, and that at that meeting, "defendants" made certain optimistic, but false,

14  representations about SpeciGen, and omitted to include certain material facts regarding

15  SpeciGen's current status and prospects, see TAC ¶¶ 88-90.

16      In particular, TAC ¶ 87 lists certain false statements allegedly made by Fischer ("as

17  agent for SpeciGen"), as follows –

18      (i) that SpeciGen's technology was a "proven concept," and that

19  (unidentified) publicly-traded pharmaceutical companies were interested in partnering or

20  licensing the technology, TAC ¶ 87(a);

21  _____

22      [3]   In addition, the TAC adds reasons that the asserted misrepresentations and
    omissions were false or misleading.

23      [4]  The court was unable to locate a clear definition of "tranches" that is applicable in this

24  case.  This French word is used to describe "slices" or "portions" of structured debt securities
    (such as pools of residential mortgage loans).  The "slices" or "portions" can be divided and

25  sold separately to investors.  One "slice" or "portion" might include notes that are considered
    riskier (but which pay more) and another "slice" or "portion" might include notes that are

26  considered safer (but which pay less).  See, e.g., U.S. v. McGraw Hill Companies, Inc., 2013
    WL 3762259 at *1 (C.D. Cal. July 16, 2013); see also J. Downes & J. Goodman, Dictionary of

27  Finance and Investment Terms (Barron's, 3d ed. 1991) (defining term as "risk maturity or other
    classes into which a multi-class security, such as a collateralized mortgage obligation (CMO)

28  or a REMIC is split").  However, that definition does not seem relevant to the situation here.

United States District Court

For the Northern District of California

1           (ii) that Series A round financing (as proposed to plaintiff) would be

2  sufficient to carry the company to its "exit strategy" – presumably the point at which it would

3  be sold at a profit, TAC ¶ 87(b);

4           (iii) that SpeciGen had an active "industrial research collaboration" with

5  a (unidentified) "prominent biotech company," TAC ¶ 87(c);

6           (iv) that SpeciGen's technology had been "validated" by a commercial

7  biotech company, TAC ¶ 87(d);

8           (v) that the Series A investment made by plaintiff consisted solely of

9  convertible promissory notes (with no disclosure that other investors had been offered

10  common stock on a match to the other investors' convertible notes), TAC ¶ 87(e);

11           (vi) that the Series A round was fully subscribed and that the other

12  investors were sophisticated and had biotech startup knowledge, TAC ¶ 87(f);

13           (vii) that SpeciGen's "exit strategy" (when plaintiff would presumably

14  recoup her investment) would come within 2-3 years, TAC ¶ 87(g); and

15           (viii) that SpeciGen had all the licenses and patents needed to

16  commercially develop its technologies, TAC ¶ 87(h).

17      (b) With regard to Notebookz/iLeonardo, plaintiff alleges that on two

18  occasions in 2007 she made loans, secured by convertible promissory notes, and that in

19  July 2007, those promissory notes were (at the election of Rosen and Notebookz)

20  converted into shares of preferred stock.  TAC ¶ 94.  She asserts that the purchases of the

21  convertible promissory notes was made following (or at) three meetings in February and

22  March 2007, at which Rosen and Fischer made presentations and mentioned that Google

23  was a likely future acquirer of Notebookz/iLeonardo.com; and that Fischer (and

24  "subsequently through written documentation, Rosen") made false representations about

25  "the company" (not clear which of the two companies plaintiff is talking about) and its

26  prospects, and that Rosen promised to provide a balance sheet and unaudited statements

27  of income and cash flows, which did not happen.  TAC ¶ 95-102.

28        (c) With regard to PeerDreams, plaintiff alleges that her investments were

United States District Court
For the Northern District of California

1   made in a number of "tranches" – specifically referring to six convertible promissory notes

2   she purchased between January 2007 and June 2009, four of which were allegedly

3   converted into shares of PeerDreams common stock.  TAC ¶ 103.  She allegedly made the

4   investments in reliance on statements made at meetings in December 2006 and January

5   2007, at which time Fischer made certain false representations that were based on

6   information he had obtained from Monvia, Fernandes, and Kulasooriya.  TAC ¶¶ 108-113.

7   Plaintiff asserts that PeerDreams was a "joint project" among defendants Fischer, Monvia,

8   Fernandes, and Kulasooriya, and was "aggressively promoted" by Monvia, and that

9   Monvia, Fernandes, and Kulasooriya had a "conflict of interest" with outside investors

10  because they profited whether or not the company succeeded.  TAC ¶¶ 104-105.  She

11  asserts that Fernandes and Kulasooriya were "founding directors" and (according to

12  Fischer's deposition testimony) caused Monvia and PeerDreams to execute an agreement

13  under which Monvia would be responsible for fundraising and preparation of marketing and

14  investment plans, and would carry out the PeerDreams project.  TAC ¶ 106.  As such, she

15  claims, Monvia, Fernandes, and Kulasooriya provided information to Fischer as their agent

16  to communicate to plaintiff.  TAC ¶ 107.

17          (d) With regard to New Moon, plaintiff alleges that in the summer of 2008,

18  Fischer invested $300,000 of plaintiff's "Upper Orbit funds" in New Moon's common stock.

19  She asserts, based on Fischer's deposition testimony, that Fischer "made it clear to

20  defendants New Moon, and defendants Gruver [not a defendant], Fernandes, and

21  Kulasooriya" that plaintiff was "his partner" and that the securities being purchased through

22  Upper Orbit were for her benefit.  TAC ¶¶ 114-115.  Plaintiff claims that in order to induce

23  her to purchase the New Moon securities, New Moon, Gruver, Fernandes, and Kulasooriya

24  provided information to Fischer orally and in writing that "they knew was for purposes of

25  being transmitted to [p]laintiff to induce her approval for the investment," and included

26  marketing plans and projections, pro formas of anticipated revenues, budgets, timelines for

27  development, and "exit strategies."  TAC ¶¶ 116-117.  She asserts that "[t]he materials" that

28  were conveyed to her via Fischer contained materially false and misleading statements

1    regarding New Moon's financial situation and prospects, TAC ¶ 117, and that New Moon

2    "through" Fischer also failed to disclose other materially adverse information regarding New

3    Moon, TAC ¶ 120.  She asserts in addition that as part of its "inducement" to Fischer and

4    plaintiff, New Moon failed to disclose a conflict arising from its development contract with

5    Monvia, and also failed to disclose another conflict arising from their offer to Fischer to hire

6    him as a consultant with plaintiff's funds, to conduct fundraising in Silicon Valley.  TAC ¶¶

7    118-119.

8         (e) With regard to non-party Toppost, plaintiff alleges that after obtaining

9    $1.140 million from her for use through Upper Orbit, Fischer used "the funds" for an

10   investment in Toppost, a company set up by an old friend, defendant Lamere, who had

11   allegedly served time for counterfeiting, and who also had allegedly owed Fischer money

12   for ten years.  TAC ¶ 122-124.  Plaintiff asserts that Fischer made false representations

13   about Toppost's prospects and also about Lamere's alleged "special skills," and also failed

14   to disclose his prior relationship with Lamere, Lamere's criminal background, and the fact

15   that some of Toppost's operations were in violations of copyrights held by other companies.

16   TAC ¶¶ 126-129.

17                                    **DISCUSSION**

18   A.    Legal Standard

19        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

20   legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191,

21   1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint.  Allarcom

22   Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive

23   a motion under Rule 12(b)(6), a complaint must satisfy  the pleading requirements of

24   Federal Rule of Civil Procedure 8 by providing a "short and plain statement of the claim

25   showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

26        The court must "accept all factual allegations in the complaint as true and construe

27   the pleadings in the light most favorable to the nonmoving party."  Outdoor Media Group,

28   Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  However, legally

United States District Court

For the Northern District of California

conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted).

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005).

Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), falsity must be pled with specificity, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted).

The allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and quotations omitted). In addition, the plaintiff must do more than simply allege the neutral facts necessary to identify the transaction; he must also explain why the disputed statement was untrue or misleading at the time it was made. Yourish v. California Amplifier, 191 F.3d 983, 992–93 (9th Cir. 1999).

B.    Defendants' Motions

The SpeciGen director and officer defendants ("D&O defendants" – J. Sabes, S.

14

United States District Court
For the Northern District of California

1  Sabes, and Siegel) seek an order dismissing the claims asserted against them (first

2  through fifth and eighth through eleventh causes of action), pursuant to Rule 12(b)(6) and

3  Rule 9(b).

4       Kulasooriya and Monvia seek an order dismissing the claims asserted against them

5  (first through fifth, and eighth through the eleventh – though possibly not the tenth – causes

6  of action), pursuant to Rule 12(b)(6) and Rule 9(b).  Kulasooriya has also filed a separate

7  motion to strike the allegations against him in the first cause of action (violation of § 10(b)

8  of the 1934 Exchange Act), on the ground that claim was previously dismissed as to him

9  with prejudice.

10       New Moon seeks an order dismissing the claims asserted against it (first and second

11  causes of action) pursuant to Rule 12(b)(6) and Rule 9(b).  New Moon also seeks an order

12  dismissing the remaining causes of action, to the extent that plaintiff is attempting to assert

13  any of them against New Moon.  In addition, New Moon argues that plaintiff has added

14  considerable confusion to an already confusing complaint by failing to name New Moon's

15  president Nancy Gruver as a defendant, and failing to identify her in the section of the TAC

16  entitled "Parties," but then repeatedly referring to her as a defendant elsewhere in the TAC.

17  New Moon notes that Gruver is not a named defendant, has not been served, and is not a

18  party to this action.

19       Finally, Fernandes also seeks an order dismissing the claims asserted against him

20  (the third through fifth, ninth, and eleventh causes of action), pursuant to Rule 12(b)(6) and

21  Rule 9(b).

22       1.     Claim under § 10(b) of the 1934 Securities Exchange Act, and Rule 10b-5

23       The D&O defendants assert that the first cause of action for violation of § 10(b) must

24  be dismissed because the TAC fails to specify the statement or statements alleged to have

25  been false or misleading with the specificity required by Rule 9(b) and the Private

26  Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA"); because the

27  TAC fails to attribute any alleged false statement to any of the D&O defendants; because

28  the TAC fails to identify a material misstatement; because the TAC fails to plead facts

1   establishing that any misstatement was false or misleading when made; and because the

2   TAC fails to plead facts giving rise to a strong inference of scienter.  They also note that the

3   court previously dismissed this claim against them with prejudice.

4        Kulasooriya/Monvia argue that this claim should be dismissed as to Koolasuriya,

5   based on the court's prior dismissal of the claim against him with prejudice.  It is not entirely

6   clear whether the first cause of action is also asserted against Monvia, as the TAC does not

7   pray for relief against Monvia, but in any event, Monvia argues the claim is time-barred;

8   that plaintiff alleges no false statements made by Monvia and fails to state a claim based

9   on statements by Fischer, because Monvia was not the maker of the statements and there

10  is no aiding and abetting liability under § 10(b); that plaintiff fails to allege that Monvia owed

11  or breached any duty to disclose; that plaintiff fails to allege particularized facts sufficient to

12  create a strong inference of scienter against Monvia; that plaintiff does not allege reliance

13  on any statement or action of Monvia; and fails to allege that Monvia's conduct caused her

14  asserted loss.

15       Kulasooriya/Monvia assert in addition that plaintiff lacks standing to assert this claim

16  as to Monvia because she does not allege that she purchased any Monvia securities.  They

17  also contend that the TAC fails to allege fraud with particularity as required by Rule 9(b);

18  and that the TAC should be dismissed under Rule 8 because it lacks a "short and plain

19  statement of the claim."

20       New Moon argues that the § 10(b) claim should be dismissed because it is time-

21  barred, and because plaintiff fails to allege facts showing that plaintiff was a purchaser of

22  securities from New Moon.  New Moon contends that the Purchase Agreement shows that

23  the shares in New Moon were purchased by Upper Orbit, not by plaintiff.

24       New Moon also asserts that plaintiff fails to allege facts showing that New Moon

25  made any misrepresentations to plaintiff or that such false statements were made in

26  connection with the purchase of sale of a security.  New Moon notes that at the hearing on

27  the motion to dismiss the SAC, plaintiff's counsel conceded that Fischer – not the individual

28  defendants – was "the speaker."

United States District Court

For the Northern District of California

1   To state a claim for securities fraud under § 10(b) and Rule 10b-5, a plaintiff must

2   plead a material misrepresentation or omission by the defendant; scienter; a connection

3   with the purchase or sale of a security; reliance; economic loss; and loss causation.

4   Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 157 (2008); see also Dura

5   Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

6   At the pleading stage, claims under § 10(b) and Rule 10b-5 must satisfy both Rule

7   9(b) and the requirements of the PSLRA.  In re VeriFone Holdings, Inc. Sec. Litig., 704

8   F.3d 694, 701 (9th Cir. 2012).  Under the PSLRA, the complaint must plead both falsity and

9   scienter with particularity.  See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990

10   (9th Cir. 2009).  If the complaint does not satisfy the PSLRA's pleading requirements, the

11   court, upon motion of the defendant, must dismiss the complaint.  15 U.S.C. § 78u-

12   4(b)(3)(A).

13   Under the PSLRA – whether alleging that a defendant "made an untrue statement of

14   a material fact" or alleging that a defendant "omitted to state a material fact necessary in

15   order to make the statements made, in the light of the circumstances in which they were

16   made, not misleading" – the complaint must "specify each statement alleged to have been

17   misleading, the reason or reasons why the statement is misleading, and, if an allegation

18   regarding the statement or omission is made on information and belief, . . . [must] state with

19   particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).

20   A statement or omission is misleading in the securities fraud context "if it would give

21   a reasonable investor the 'impression of a state of affairs that differs in a material way from

22   the one that actually exists.'"  Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 985 (9th

23   Cir. 2008) (citation omitted).  However, "vague claims about what statements were false or

24   misleading [and] how they were false" are subject to dismissal.  Metzler Inv. GMBH v.

25   Corinthian Colls., Inc., 540 F.3d 1049, 1070 (9th Cir. 2008).

26   In addition, liability under Rule 10b-5 is limited to parties who actually "make"

27   misstatements of fact.  See Janus Capital Group, Inc. v. First Derivative Traders, 131 S.Ct.

28   2296, 2302 (2011) ("One 'makes' a statement by stating it.").  The Supreme Court

17

United States District Court

For the Northern District of California

1  expressly rejected an attempt to rely on common law agency principles to extend primary

2  liability to non-speakers under § 10(b).  See id. at 2304.  The motion by J. Sabes, S.

3  Sabes, Siegel, and Kulasooriya is GRANTED.  The court notes that it previously dismissed

4  the § 10(b) and Rule 10b-5 claims against those defendants (and against Fernandes), with

5  prejudice, based on plaintiff's concession that Fisher was the only "speaker."

6    Monvia's motion is GRANTED.  Plaintiff has not stated a claim against Monvia under

7  § 10(b) or Rule 10b-5, not least because she has identified no false statements made by

8  Monvia, and has alleged no facts that are sufficient to create a strong inference of scienter.

9  The court previously dismissed this claim against Monvia, stating that the dismissal was

10  with leave to amend assuming plaintiff could plead facts showing that someone affiliated

11  with Monvia made false and misleading statements in connection with the purchase or sale

12  of Monvia securities.  The TAC fails to adequately plead a claim under § 10(b) or Rule 10b-

13  5, in accordance with the court's prior instructions, and thus the dismissal is with prejudice.

14    New Moon's motion is GRANTED.  Plaintiff alleges that Gruver, Kulasooriya, and

15  Fernandes put together a presentation of false information regarding New Moon's financial

16  condition and business prospects – this appears to have been in the form of oral

17  communications – which they directed to Fischer, who then communicated the information

18  to plaintiff.  However, she does not allege that New Moon or anyone at New Moon made

19  any false representations to her directly.

20    Moreover, the TAC does not allege that plaintiff purchased any securities from New

21  Moon, or that she currently owns any New Moon securities.  Nor does the TAC allege

22  falsity with specificity, or allege facts sufficient to create a strong inference of scienter

23  (particularly given that no individual affiliated with New Moon is alleged to have made any

24  false or misleading statements to plaintiff).  The dismissal is with prejudice.

25    Finally, with regard to the defendants' arguments that the securities fraud claims are

26  time-barred, the court finds that the question when plaintiff discovered the alleged

27  wrongdoing involves factual disputes and is thus not appropriate for decision on a Rule

28  12(b)(6) motion.

United States District Court

For the Northern District of California

1    2.    Claim under Corporations Code §§ 25401 and 25501

2        The D&O defendants argue that the second cause of action for violation of

3    Corporations Code §§ 25401and 25501 must be dismissed because the TAC fails to allege

4    that any of those defendants made a false statement or omission in connection with a sale

5    of securities; and because the TAC fails to allege that plaintiff was in privity with any of the

6    D&O defendants.

7        Kulasooriya/Monvia assert that the claims under Corporations Code §§ 25401 and

8    25501 fail because they are time-barred; because the TAC does not allege that Kulasooriya

9    or anyone at Monvia made an untrue statement of material fact or omitted to state a

10   material fact in connection with the sale or purchase of a stock; and because the TAC fails

11   to allege facts showing that plaintiff was in privity with Kulasooriya (because there is no

12   allegation that plaintiff purchased any Monvia stock from Kulasooriya).

13       New Moon contends that the claims under Corporations Code §§ 25401 and 25501

14   fail because they are time-barred; and because there are no facts alleged supporting a

15   purchase by plaintiff of any security from New Moon in California, and the only allegations

16   as to sale of New Moon securities are that they were sold in Minnesota.

17        Corporations Code § 25401 prohibits misrepresentations in connection with a sale

18   of securities. Section 25401 provides that:

19           It is unlawful for any person to offer or sell a security in this state or buy or
             offer to buy a security in this state by means of any written or oral
20           communication which includes an untrue statement of a material fact or omits
             to state a material fact necessary in order to make the statements made, in
21           the light of the circumstances under which they were made, not misleading.

22   Cal. Corp. Code § 25401.

23       Section 25501 is a corresponding section that establishes a private remedy for

24   damages and rescission based on § 25401 liability.  See California Amplifier, Inc. v. RLI

25   Ins. Co., 94 Cal. App. 4th 102, 109 (2001).  Section 25501 provides, in pertinent part, that:

26           Any person who violates Section 25401 shall be liable to the person who
             purchases a security from him or sells a security to him . . . unless the
27           defendant proves that the plaintiff knew the facts concerning the untruth or
             omission or that the defendant exercised reasonable care and did not know . .
28           . of the untruth or omission.

19

United States District Court
For the Northern District of California

1   Cal. Corp. Code § 25501.  Both § 25401 and § 25501 impose liability only on the actual

2   seller of the security.  Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal.

3   App. 4th 226, 253-54 (2007).

4        Defendants' motions are GRANTED.  The TAC fails to allege any facts showing that

5   defendants made any material misstatement or omission in connection with the sale of

6   securities, as discussed above with regard to the § 10(b) and Rule 10b-5 claims; and also

7   fails to allege facts showing that plaintiff was in privity with the defendants, which is

8   required for a § 25501 claim.  See id. at 252-54.

9        In the order granting the motion to dismiss the SAC, the court granted leave to

10   amend to the extent that plaintiff could allege that the defendants sold the securities in

11   question (to the extent there were even securities sold).  Otherwise, the court stated, the

12   dismissal would be with prejudice.

13        In the TAC, plaintiff still fails to allege facts showing that any particular defendant

14   made any material misstatement in connection with the sale of securities, as all the

15   misstatements that are attributed to a particular individual are attributed to Fischer "as

16   agent for" the various companies in which he solicited investments from plaintiff.  In

17   addition, the TAC does not allege that these defendants sold her any securities.

18   Accordingly, this cause of action is dismissed with prejudice as to defendants J. Sabes, S.

19   Sabes, Siegel, Kulasooriya, Monvia, and New Moon.

20        3.    Claim under § 20(a) of the 1934 Securities Exchange Act

21        The D&O defendants and Kulasooriya contend that the third cause of action for

22   violation of § 20(a) of the 1934 Securities Exchange Act must be dismissed because the

23   TAC fails to establish a primary violation of the Exchange Act; and because the TAC fails to

24   allege that the D&O defendants exercised actual power or control over any primary violator.

25

26        Similarly, Fernandes argues that he cannot be a "control person" under § 20(a)

27   because each of the alleged misrepresentations was made by Fischer, over whom

28   Fernandes had no direct oversight or involvement; and because the TAC does not allege a

1   claim of primary liability against Monvia, PeerDreams, or New Moon, as plaintiff did not

2   purchase Monvia securities, and the PeerDreams and New Moon Securities she claims she

3   did purchase were purchased from Upper Orbit, not from the companies themselves.

4          The arguments in plaintiff's opposition are fairly confusing.  First, she invokes

5   Hollinger v. Titan Capital Corp., 914 F.2d 1564 (9th Cir. 1990), where the Ninth Circuit

6   recognized respondeat superior liability for a corporation under § 10(b) and Rule 10b-5

7   based on common law agency principles.  See id. at 1576-78.  This is a distinct basis of

8   liability from that imposed under Section 20(a), and is used primarily to impute the scienter

9   of individual corporate officers onto the corporation.  See, e.g., Curry v. Hansen Medical,

10  Inc., 2012 WL 3242447 at *12-13 (N.D. Cal. Aug. 10, 2012).  Here, however, plaintiff

11  appears to be attempting to impute the scienter of Fischer onto the individual corporate

12  officers such as the D&O defendants and Kulasooriya, in order to state a claim for control

13  person liability as to those defendants.

14         Moreover, rather than recite the factual basis for the "control person" allegations,

15  plaintiff simply "realleges those facts set forth" in TAC ¶¶ 99-117.  Plaintiff appears to be

16  arguing that merely by virtue of defendants' positions as directors of their respective

17  corporations, they are liable as control persons as alleged in TAC ¶¶ 141-144.  That

18  allegation might suffice if there were a viable allegation of a primary violation of § 10(b) or

19  Rule 10b-5 – which there is not, as explained above.  Without more, an allegation that a

20  defendant sits on the board of directors is insufficient to support a claim for control-person

21  liability.  See Paracor Fin. Inc. v. GE Capital Corp., 96 F.3d 1151, 1163 (9th Cir. 1996).

22         In the order dismissing the SAC, the court stated that given the lack of a viable

23  allegation of primary liability, the § 20 claim must be dismissed.  The court added that "[t]o

24  the extent that plaintiff is seeking leave to allege liability based on a theory of respondeat

25  superior, that request is granted."  The order did not give any directions as to how that

26  would be accomplished, stating only that there were no facts pled in the SAC showing that

27  the officer and director defendants were acting as agents of the primary violator.  That

28  deficiency has still not been remedied.

United States District Court

For the Northern District of California

1    Nevertheless, the court finds that the motions to dismiss the third cause of action for

2  control-person liability under § 20(a) of the 1934 Securities Exchange Act must be DENIED

3  without prejudice to raising the arguments again in a future motion.  In order to maintain a

4  claim for control-person liability under § 20(a), a plaintiff must establish a claim of primary

5  liability.  See Zucco, 552 F.3d at 990; No. 84 Employer-Teamster Joint Council Pension Tr.

6  Fund v. America West Holding Corp., 320 F.3d 920, 945 (9th Cir. 2003).

7    As stated above, plaintiff has not stated a claim of primary liability as to any

8  defendant that has moved to dismiss.  However, given plaintiffs' concession that Fischer

9  was the only "speaker," the court cannot find, in Fischer's absence, that plaintiff is unable to

10  state a claim of control-person or secondary liability as to any of the officer or director

11  defendants.

12    4.    Claim under Corporations Code § 25504

13    The D&O defendants and Kulasooriya assert that the fourth cause of action for

14  violation of Corporations Code § 25504 must be dismissed because the TAC fails to allege

15  an agency relationship between the D&O defendants and Fischer with the specificity

16  required by Rule 9(b); because the TAC fails to allege facts establishing that SpeciGen,

17  Fischer, or anyone else connected with SpeciGen made a material misstatement in

18  connection with a sale of securities; and because the TAC fails to allege that the D&O

19  defendants had knowledge or reasonable grounds to believe that SpeciGen, Fischer, or

20  anyone else was primarily liable for violations of §§ 25401 and 25501.

21    Fernandes argues that the § 25504 claim is time-barred, and that plaintiff has not

22  alleged sufficient facts to support tolling the running of the limitations period.  Section

23  25504 is subject to an absolute limitations period of five years after the act or transaction

24  constituting the violation, or two years after the plaintiff's discovery of the facts constituting

25  the violation, whichever is first.  Cal. Corp. Code § 25506(b).  Fernandes notes that he was

26  not added as a defendant until June 15, 2012, at which point he contends the limitations

27  period had clearly run.  He asserts further that he cannot be liable in any event, because he

28  did not control any underlying primary violation.

United States District Court

For the Northern District of California

1    Plaintiff's opposition is brief and rather sketchy.  She does not identify the facts

2  showing an agency relationship between any of the defendants and Fischer, or facts

3  showing that anyone made a material misrepresentation.  It is not even clear to the court

4  what plaintiff is attempting to say in this section of the opposition.

5    Corporations Code § 25504 imposes "control person" liability or secondary liability

6  on those who assist others in primary violations under the California Securities Act.

7  Section 25504 provides that "every person" who directly or indirectly controls a person

8  liable under § 25501 or § 25503, plus

9          every partner in a firm so liable, every principle executive officer or director of
           a corporation so liable, every person occupying a similar status or performing
10         similar functions, every employee of a person so liable who materially aids in
           the act or transaction constituting the violation, and every broker-dealer or
11         agent who materially aids in the act or transaction constituting the violation,
           are also liable jointly and severally with and to the same extent as such
12         person, unless the other person who is so liable had no knowledge of or
           reasonable grounds to believe in the existence of the facts by reason of which
13         liability is alleged to exist.

14  Cal. Corp. Code § 25504.

15    In the order dismissing the SAC, the court found that plaintiff had alleged that

16  individual defendants were "in direct control of and directly involved in" the engagement of

17  Fischer as their "broker/agent" and knew he was soliciting plaintiff to invest in the securities

18  at issue, and were therefore liable to the same extent as Fischer.  However, the court

19  noted, in the absence of a viable claim of primary liability, plaintiff could not state a claim

20  against the individual defendants for control person liability under § 25504 – particularly

21  given that the claims against the individual defendants were based solely on statements by

22  Fischer, which plaintiff failed to allege were false or misleading when made.

23    Here, plaintiff has still failed to allege a viable § 25501 claim of primary liability.

24  Nevertheless, the court finds that the motions to dismiss the fourth cause of action for

25  "control person" or secondary liability under California Corporations Code § 25504 must be

26  DENIED without prejudice to raising the arguments again in a future motion.  While

27  § 25504 is broader than its federal law counterpart, there must nonetheless be an

28  underlying primary violation in order to impose liability on persons who control the primary

23

United States District Court
For the Northern District of California

1   violator, or are in some other way connected with aiding in the act or transaction

2   constituting the violation.  See, e.g., Openwave Sys., Inc. v. Fuld, 2009 WL 1622164 at *7

3   (N.D. Cal. June 6, 2009); Hellum v. Breyer, 194 Cal. App. 4th 1300, 1310-14 (2011); see

4   also Arei II Cases, 216 Cal. App. 4th 1004, 1013 (2013).  As stated above, given that

5   Fischer was the only "speaker," the court cannot make a determination in Fischer's

6   absence regarding whether plaintiff is able to state a claim for the required primary

7   violation.

8          5.      Claim of breach of fiduciary duty

9          The D&O defendants argue that the fifth cause of action for breach of fiduciary duty

10   must be dismissed because the TAC fails to plead specific facts showing that any of the

11   individual defendants acted in bad faith; because plaintiff lacks standing to bring a claim for

12   breach of fiduciary duty because any harm suffered was suffered by the companies, and

13   the only damage suffered by plaintiff was the loss of value of her investment; because

14   plaintiff's derivative claim for breach of fiduciary duty conflicts with her direct claims for

15   damages and rescission; and because the TAC does not allege that the individual

16   defendants failed to implement a system of controls or consciously failed to monitor the

17   operation of such system, as required for a "failure of oversight" claim under Delaware law.

18          Kulasooriya and Fernandes contend that the claim for breach of fiduciary duty fails

19   because plaintiff does not allege that she was a shareholder of Monvia, PeerDreams, or

20   New Moon at the time the complaint was filed, and thus lacks standing,[5] and because the

21   breach of fiduciary duty claim should have been brought as a derivative action.

22          Essentially, defendants argue, this claim must be dismissed because it was not

23   brought as part of a derivative action.  See Aronson v. Lewis, 473 A.2d 805, 809 (Del.

24   1984), overruled on other grounds, Brehm v. Eisner, 746 A.2d 244 (Del. 2000).

25   Defendants contend that where the gravamen of the complaint is harm to the corporation,

26

27   _____

28          [5] Under Federal Rule of Civil Procedure 23.1, a derivative plaintiff is required to plead
that she "was a shareholder . . . at the time of the transaction complained of" and is also
required to retain ownership of the stock for the duration of the lawsuit.

United States District Court

For the Northern District of California

1    or to the whole body of its stock and property without any severance or distribution among

2    individual holders, the action is a derivative one.  See Schuster v. Gardner, 127 Cal. App.

3    4th 305, 313 (2005).  Moreover, the plaintiff may not bring a derivative action until she has

4    made a demand on the board, or shown that such a demand would be futile.

5          The court finds that the motion must be GRANTED.  The law of the state of

6    incorporation governs the liabilities of directors and officers of a corporation.  See Shaffer v.

7    Heitner, 433 U.S. 186, 215 n.44 (1977).  Here, the breach of fiduciary duty claim is

8    asserted against the directors of four of the defendant corporations – SpeciGen,

9    Notebookz, PeerDreams, and New Moon – and against "directors of other defendant

10   companies whose names are not currently known."  TAC ¶ 155.   SpeciGen, Notebookz,

11   and PeerDreams are all alleged to be Delaware corporations.  TAC ¶¶ 19-21.  New Moon is

12   alleged to be a "company" that is "headquartered in Duluth, Minnesota."  TAC ¶ 23.

13         Under Delaware law, a claim for breach of fiduciary duty requires proof of two

14   elements – (1) that a fiduciary duty existed and (2) that the defendant breached that duty.

15   Heller v. Kiernan, 2002 WL 385545 at *3 (Del. Ch. Feb. 27, 2002); see also Beard

16   Research, Inc. v. Kates, 2010 WL 1644177 at *17 (Del.Ch. Apr. 23, 2010).  Both officers

17   and directors of a corporation owe a fiduciary duty.  Id.  The elements are similar under

18   Minnesota law.  See Conwed Corp. v. Employers Reinsurance Corp., 816 F. Supp. 1360,

19   1362 n.3 (D. Minn. 1993).

20         In the order dismissing the SAC, the court found that plaintiff had failed to allege

21   facts supporting the elements of the claim, and moreover, that the pleading was so

22   deficient that the court could not ascertain whether plaintiff was alleging that the defendants

23   had breached their fiduciary duties to her individually, or that they had breached their

24   fiduciary duties to the corporations.

25         In general, mismanagement that depresses the value of stock is a wrong to the

26   corporation . . . to be enforced by a derivative action."  Bokat v. Getty Oil Co., 262 A.2d

27   246, 249 (Del. 1970); see also Sax v. World Wide Press, Inc., 809 F.2d 610, 614 (9th

28   Cir.1987) (depletion and diversion of corporate assets through mismanagement were

United States District Court

For the Northern District of California

1    injuries to the corporation, and plaintiff stockholder could not bring individual action);

2    Kramer v. Western Pacific Indus., Inc., 546 A.2d 348, 350-53 (Del. 1988) (breach of

3    fiduciary duty, resulting in waste of corporate assets, harmed the corporation, and plaintiff

4    stockholder could not bring an individual action).

5    In a derivative action, a stockholder brings suit on behalf of the corporation for harm

6    to the corporation.  Id. at 351.  Because a derivative suit is being brought on behalf of the

7    corporation, the recovery, if any, must go to the corporation.  A stockholder who is directly

8    injured, however, does retain the right to bring an individual action for injuries affecting his

9    or her legal rights as a stockholder.  Such a claim is distinct from an injury caused to the

10   corporation alone.  In such individual suits, the recovery or other relief flows directly to the

11   stockholders, not to the corporation.  Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d

12   1031, 1035-39 (Del. Supr. 2004).

13   Determining whether an action is derivative or direct is "sometimes difficult" and may

14   have legal consequences.  Id. at 1036.

15          [I]f an action is derivative, the plaintiffs are then required to comply with the
           requirements of Court of Chancery Rule 23.1, that the stockholder: (a) retain
16         ownership of the shares throughout the litigation; (b) make presuit demand on
           the board; and (c) obtain court approval of any settlement.  Further, the
17         recovery, if any, flows only to the corporation. The decision whether a suit is
           direct or derivative may be outcome-determinative.
18
     Id.  A suit must be maintained derivatively if the injury falls equally upon all stockholders.
19
     Id. at 1037 (citing Bokat, 262 A.2d at 249).  The rules in Minnesota are to the same effect.
20
     See, e.g., Kococinski v. Collins, 935 F.Supp. 2d 909, 915-18 (D. Minn. 2013); see also
21
     Popp Telecom, Inc. v. Am. Sharecom, Inc.,  361 F.3d 482, 492 (8th Cir. 2004) (citing
22
     Wessin v. Archives Corp., 592 N.W.2d 460, 465 (Minn. 1999)); Potthoff v. Morin, 245 F.3d
23
     710, 716-17 (8th Cir. 2001).
24
     Here, the allegations in the fifth cause of action for breach of fiduciary duty are that
25
     the "defendant directors of each of the defendant companies had a fiduciary duty to the
26
     shareholders to manage the assets of their respective companies prudently, in good faith,
27
     and in the interest of the shareholders."  TAC ¶ 158.  Plaintiff relies on boilerplate
28

United States District Court

For the Northern District of California

1     allegations that the directors of SpeciGen (J.Sabes, S. Sabes, Siegel, Campion), New

2     Moon (Kulasooriya, Fernandes), PeerDreams (Kulasooriya and Fernandes), Notebookz

3     (Rosen and Waterhouse), and "the other defendant companies whose names are not

4     currently known" "were privy to material information about [the] prospects, operations,

5     capitalization, management, cash flows, capital structures, fund raising and other issues

6     material to the fortunes of the defendant companies."  TAC ¶¶ 155-157.

7          The TAC also asserts in conclusory fashion that "[t]he defendant directors of each of

8     the defendant companies had a fiduciary duty to their shareholders to manage the assets

9     of their respective companies prudently, in good faith, and in the interest of the

10    shareholders."  TAC ¶ 158; see also TAC ¶¶ 159-160.  Plaintiff asserts that "[t]he defendant

11    directors" breached their fiduciary duties and acted in bad faith by

12          (a) failing to oversee the use of funds by their companies, (b) failing to
           properly capitalize their companies, (c) engaging Fischer as their broker and
13         fundraiser in a reckless manner that compromised the chances of the
           companies attracting further rounds of investors necessary to commercialize
14         their products, (d) failing to enact and implement regular budgets to conserve
           and direct the prudent use of assets, (e) failing to keep the proper books and
15         records necessary to attract future investors, (e) compromising further rounds
           of needed investment through the wholesale disregard of the laws of their
16         respective states of incorporation, thereby imperiling the chances of ever
           creating companies that would be in a position to undertake public offerings
17         that would return value to early stage and seed investors such as plaintiff
           Jackson, and (f) failing to timely report to Mrs. Jackson and other
18         shareholders the material events impacting the companies, thereby
           concealing their mishandling of company assets.
19
20    TAC ¶ 161.  These allegations all relate to mismanagement of corporate assets and to

21    failure to comply with duties owed to the shareholders generally.  Thus, any injury caused

22    by this alleged breach of fiduciary duty would fall equally on all shareholders, and the claim

      must be asserted derivatively.
23
           The court previously granted leave to amend this cause of action, and finds that the
24
      deficiencies cannot be remedied by further amendment.  Accordingly, the dismissal is with
25
      prejudice.
26
           6.     Claims of negligent misrepresentation and common law misrepresentation
27
           Defendants assert that the eighth cause of action for negligent misrepresentation
28

                                                27

United States District Court

For the Northern District of California

1    and the tenth cause of action for common law misrepresentation must be dismissed

2    because the TAC fails to allege facts supporting the elements of those claims with the

3    specificity required by Rule 9(b).

4         To state a claim for negligent misrepresentation, a plaintiff must allege (1) a

5    misrepresentation as to a material fact; (2) without reasonable grounds for believing it to be

6    true; (3) an intent to induce reliance; (4) justifiable reliance by the plaintiff who does not

7    know that the representation is false; and (5) damage.  In re Daisy Sys. Corp., 97 F.3d

8    1171, 1180 (9th Cir. 1996).  In addition, the existence of a duty of care is necessary to

9    support a negligent misrepresentation claim.  Alfus v. Pyramid Tech. Corp., 745 F.Supp.

10   1511, 1523 (N.D. Cal. 1990) (liability for negligent misrepresentation may attach "only

11   where plaintiff establishes that defendants breached a duty owed to him"); see also Garcia

12   v. Superior Court, 50 Cal. 3d 728, 735 (1990).

13        To state a claim for fraud or intentional misrepresentation, a plaintiff must allege

14   (1) a misrepresentation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable

15   reliance, and (5) resulting damage.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th

16   Cir. 2009) (citing Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 974 (1997)); see

17   also Gil v. Bank of America, N.A., 138 Cal. App. 4th 1371, 1381 (2006).

18        As noted above, in federal court, allegations of fraud in civil cases are subject to the

19   particularity requirements of Rule 9(b).  That is, the pleader must state the time, place and

20   specific content of the false representations as well as the identities of the parties to the

21   misrepresentation.  Swartz, 476 F.3d at 764; see also Vess v. Ciba-Geigy Corp. USA, 317

22   F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must be accompanied by "the who,

23   what, when, where, and how" of the misconduct charged).  In addition, as the court

24   previously noted in the order dismissing the SAC, where a plaintiff alleges that a defendant

25   is liable for fraud under an agency theory, Rule 9(b) requires that the existence of the

26   agency relationship be pled with particularity.  See Swartz, 476 F.3d at 764-65.  Here, the

27   TAC does not allege facts showing the existence of an agency relationship.  See, e.g.,

28   RPost Holdings, Inc. v. Trustifi Corp., 2011 WL 4802372 at *3-4 (C.D. Cal. Oct. 11, 2011);

United States District Court

For the Northern District of California

Palomares v. Bear Stearns Residential Mort. Corp., 2008 WL 686683 at *4-5 (S.D. Cal. Mar. 13, 2008).

Under California law, the tort of negligent misrepresentation is a "species of deceit." See Bily v. Arthur Young & Co., 3 Cal. 4th 370, 407 (1992). The Ninth Circuit has not yet determined whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation under California law, but the majority view among district courts in California appears to be that it does. See, e.g., Errico v. Pac. Capital Bank, N.A., 753 F.Supp. 2d 1034, 1049 (N.D. Cal. 2010) (negligent misrepresentation sounds in fraud and is subject to Rule 9(b) pleading requirements); see also In re Easysaver Rewards Litig., 737 F.Supp.2d 1159, 1176-77 (S.D. Cal. 2010); Neilson v. Union Bank of Cal., N.A., 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003).

The court finds that the motions must be GRANTED. Plaintiff has not met the elements of the claim and thus has not met the pleading requirements of Rule 8 or Rule 9(b). Plaintiff addresses these two claims together, arguing that she has pled a "viable misrepresentation claim" as to all defendants by alleging a misrepresentation of past existing fact, an absence of reasonable grounds for believing it to be true, the intent to cause the other's reliance on the misrepresentation, justifiable reliance, and consequential damage. She also claims that the "detailed itemized allegations" in TAC ¶¶ 84-85 fully establish the extent of the fraud.

Plaintiff alleges that Fischer made misrepresentations, acting as the agent for J. Sabes, S. Sabes, Siegel, Campion, Rosen, Waterhouse, Kulasooriya, and Fernandes; and that in the case of J. Sabes, S. Sabes, Campion, Siegel, Rosen, and Kulasooriya, the misrepresentations were made directly to plaintiff.

With reference to the present motions, however, the court finds that the TAC fails to allege with the particularity required by Rule 9(b) that the D&O defendants, Kulasooriya, or Fernandes made any specific misrepresentation to plaintiff, or that in making such a statement, that defendant lacked reasonable belief that it was true. The majority of the false statements are attributed to Fischer – not to the D&O defendants, Kulasooriya, or

United States District Court

For the Northern District of California

1   Fernandes – or are unattributed.  In the order granting the motion to dismiss the SAC, the

2   court granted leave to amend this claim, but "only to the extent that plaintiff can correct this

3   deficiency."

4       Plaintiff may have stated a claim of negligent misrepresentation or common law

5   misrepresentation as to Fischer, but not as to the D&O defendants, Kulasooriya, or

6   Fernandes, because she has not identified any specific false statement made by any of

7   them, and has not alleged facts showing intent to induce reliance.  Nor has she alleged the

8   existence of an agency relationship with the particularity required under Rule 9(b).  The

9   dismissal is with prejudice.

10          7.      Claim of violation of Corporations Code § 25501.5

11      The D&O defendants argue that the ninth cause of action for violation of

12  Corporations Code § 25501.5 must be dismissed because the TAC fails to allege that any

13  of the officer and director defendants participated in any transaction involving the sale of

14  securities or otherwise acted as a broker-dealer in the State of California; and because any

15  claim for relief under § 25501.5 is time-barred.

16      Kulasooriya/Monvia contend that the § 25501.5 claim fails because it is time-barred;

17  and because there is nothing to rescind because plaintiff alleges no facts showing that

18  Monvia ever sold her any securities, or that she ever purchased any Monvia securities.

19      New Moon asserts that the claim should be dismissed because there are no facts

20  pled showing that plaintiff "purchased" or "sold" a security and that the purchase or sale

21  was from or to an unlicensed broker dealer.  Rather, New Moon notes, plaintiff alleges that

22  she invested money in Upper Orbit, a Minnesota limited liability company, which then in

23  turn purchased securities in its name from New Moon.  Plaintiff was not part of the

24  transaction, and New Moon argues that for this reason she has no standing to assert a

25  claim under 25501.5.

26      Fernandes contends that this claim fails because it seeks to add a new cause of

27  action, in violation of an express provision in the statute (which entitles a plaintiff to rescind

28  the sale of a security, or if that is not possible because the plaintiff has already sold the

United States District Court

For the Northern District of California

1   security, to seek damages).  Here, Fernandes argues, he never sold any securities to

2   plaintiff, and there is thus nothing to rescind, and the statutory remedy can never be

3   achieved.

4        In opposition, plaintiff argues that "liability has been established" under § 25501.5.

5   She asserts that the TAC alleges that Fischer was a broker-dealer; that "defendants" are

6   secondarily liable for Fischer's selling of securities without being a broker-dealer (and

7   § 25501.5 does not require privity); and that issuer liability is "inherent" in § 25501.5.

8        The motion is GRANTED in part and DENIED in part.  Section 25501.5, which is

9   entitled "Action for rescission or damages," provides in part that

10       [a] person who purchases a security from or sells a security to a broker-
         dealer that is required to be licensed and has not, at the time of the sale or
11       purchase, applied for and secured from the commissioner a certificate . . .
         authorizing that broker-dealer to act in that capacity, may bring an action for
12       rescission of the sale or purchase or, if the plaintiff or the defendant no longer
         owns the security, for damages.

13  Cal. Corp. Code § 25501.5(a)(1).

14       The TAC alleges that Fischer was "acting on . . . behalf" of the "individual and

15  corporate defendants . . . to sell their securities."  TAC ¶ 189.  Plaintiff alleges that "the

16  individual and corporate defendants knew or should have known that Fischer was an

17  <u>unlicensed investment advisor</u>," and that they failed to disclose that fact to plaintiff "even

18  though he was acting on their behalf to sell their securities."  TAC ¶ 189 (emphasis added).

19  For this reason, she asserts, "defendants were . . . engaged in the promotion or sale of

20  unregistered securities through Fischer."  TAC ¶ 190.  Thus, she alleges, the individual

21  defendants are "secondarily liable for Fischer's sale of securities to [plaintiff] without being

22  a duly registered broker-dealer," which is unlawful under § 25501.5.  TAC ¶¶ 191-192.

23       Under Corporations Code § 25004, the term "broker-dealer" means "any person

24  engaged in the business of effecting transactions in securities in this state for the account

25  of others or for his own account." Cal. Corp. Code § 25004.  It specifically excludes "any

26  other issuer" and "an agent, when an employee of a broker-dealer or issuer" from the

27  definition of "broker-dealer."  Cal. Corp. Code § 25004(a).

28

31

United States District Court

For the Northern District of California

1    Plaintiff does not allege that she purchased securities from the individual

2   defendants, or that any of the individual defendants are "engaged in the business of

3   effecting transactions in securities in this state for the account of others or for his own

4   account." Cal. Corp. Code § 25004. Thus, to the extent that the TAC alleges a direct claim

5   for relief under § 25501.5 against the individual defendants, the motion to dismiss is

6   GRANTED. To the extent that the claim is asserted against New Moon or Monvia (not

7   entirely clear from the TAC), there are no allegations that plaintiff purchased New Moon or

8   Monvia securities from those companies directly (or, for that matter, from Fischer), and the

9   motion is GRANTED.

10    Plaintiff's position appears to be that the individual defendants are secondarily liable

11   for Fischer's alleged misconduct. As the court noted in the order granting the motion to

12   dismiss the SAC, the courts are divided on the question whether a claim of secondary

13   liability is cognizable under § 25501.5. In Viterbi v. Wasserman, 191 Cal. App. 4th 927

14   (2011), the court held that while a plaintiff who still holds a security can obtain rescission

15   against a defendant who sold or owned the security, that remedy may not be invoked

16   against control persons, aiders and abettors, or other persons who assisted in or were

17   involved in the transaction, but who did not actually own the securities or sell them to the

18   plaintiff. See id. at 935-43.

19    In Moss v. Kroner, 197 Cal. App. 4th 860 (2011), the court held that in enacting

20   § 25504 and § 25504.1 (which impose liability on secondary actors jointly and severally

21   with sellers), the Legislature intended to depart from the traditional requirement of

22   contractual "privity" between the plaintiff and secondary actors.

23        If the relief that would be available from the primary actor under section
        25501 would be rescission and the return of the money owing to the plaintiff,
24        then the person who is secondarily liable is liable for the money required to
        make the plaintiff whole, even if he or she may not be capable of actual
25        rescission because he or she was not a party to the contract.

26   Id. at 875–79. The court also noted, however, that while "control persons" need not be in

27   privity with the plaintiff, privity is required to establish the underlying § 22501 claim. That is,

28   "[t]he person alleged to be controlled by the defendants must be alleged to be in privity with

32

United States District Court

For the Northern District of California

1    the plaintiffs."  Id. at 875.

2         In the order granting the motion to dismiss the SAC, this court stated that Moss

3    appears to be the better-reasoned decision on this issue.  The court also found that the

4    § 25501.5 claim might be time-barred, and granted leave to amend to clarify the basis on

5    which the individual defendants were being charged with liability, and to plead facts

6    sufficient to support the claim, and to show when the claim accrued.

7         In the TAC, plaintiff alleges that the D&O defendants are secondarily liable for

8    Fischer's sale of securities to plaintiff without being a registered broker-dealer; and that

9    prior to the end of 2010 (when she had lost the entirety of her investments) she had no

10   knowledge that her investments were lost (and indeed, prior to that time, "the named

11   defendants" concealed information from her, thereby making it impossible for her to

12   discover her losses).

13        As with the claims of "control person" liability, the court finds that in the absence of a

14   finding of primary liability, it is not possible to determine whether plaintiff can proceed

15   against the individual defendants on a theory of secondary liability.  Thus, the motion is

16   DENIED on that basis.

17        In addition, however, the TAC still does not allege facts clearly showing when

18   plaintiff discovered the alleged violation.  The TAC alleges that plaintiff discovered the

19   violation when she learned that she had lost her investments – but does not allege when

20   she discovered that she had purchased securities from an unlicensed broker-dealer.  As

21   noted above, however, the question when plaintiff discovered the alleged violation appears

22   to raise factual issues that cannot be resolved on a Rule 12(b)(6) motion.

23                                    **CONCLUSION**

24        In accordance with the foregoing, the defendants' motions are GRANTED in part and

25   DENIED in part.

26        1.    The motion to dismiss the claims under § 10(b) of the Securities Exchange

27   Act and Rule 10b-5 promulgated thereunder, asserted against J. Sabes, S. Sabes, Siegel,

28   Kulasooriya, Monvia, and New Moon, is GRANTED. The dismissal is with prejudice.

United States District Court

For the Northern District of California

2.      The motion to dismiss the claims under Corporations Code §§ 25401 and 25501 asserted against J. Sabes, S. Sabes, Siegel, Kulasooriya, Monvia, and New Moon is GRANTED.  The dismissal is with prejudice.

3.      The motion to dismiss the "control person" claims under § 20(a) of the Securities Exchange Act asserted against J. Sabes, S. Sabes, Siegel, Kulasooriya, and Fernandes is DENIED, without prejudice to raising the arguments in a future motion once the stay has been lifted as to Fischer.

4.      The motion to dismiss the "control person" or secondary liability claims under Corporations Code § 25504 asserted against J. Sabes, S. Sabes, Siegel, Kulasooriya, and Fernandes is DENIED, without prejudice to raising the arguments in a future motion once the stay has been lifted as to Fischer.

5.      The motion to dismiss the claim of breach of fiduciary duty asserted against J. Sabes, S. Sabes, Siegel, Kulasooriya, and Fernandes is GRANTED.  The dismissal is with prejudice.

6.      The motion to dismiss the claims of negligent misrepresentation and common law misrepresentation asserted against J. Sabes, S. Sabes, Siegel, Kulasooriya, and Fernandes is GRANTED.  The dismissal is with prejudice.

7.      The motion to dismiss the claim under Corporations Code § 25501.5, asserted against J. Sabes, S. Sabes, Siegel, Kulasooriya, Fernandes, Monvia, and New Moon is GRANTED to the extent that it alleges a direct claim for relief.  The dismissal is with prejudice.  The motion to dismiss the § 25501.5 claim asserted against J. Sabes, S. Sabes, Siegel, Kulasooriya, and Fernandes is DENIED to the extent it is based on secondary liability, without prejudice to raising the arguments in a future motion once the stay has been lifted as to Fischer.

8.      The allegations against Nancy Gruver (or Griver) in the third, fourth, and ninth causes of action, and the allegations against Toppost in the first and second causes of action are STRICKEN, as no summons has been issued as to either Gruver/Griver or Toppost, and neither was named as a defendant in the "Parties" section of the TAC.

9.      Based on the rulings in this order and what the court is able to ascertain from the allegations in the TAC, the claims remaining in the case are (a) the first cause of action (Securities Exchange Act § 10(b) and Rule 10b-5) against Fischer, Campion, Rosen, SpeciGen, PeerDreams, Notebookz; (b) the second cause of action (Cal. Corp. Code §§ 25401 and 25501) against SpeciGen, Notebookz, Ileonardo, PeerDreams, Fischer, Campion, and Rosen; (c) the third cause of action (Securities Exchange Act § 20(a) against J. Sabes, S. Sabes, Siegel, Campion, Fischer, Rosen, Waterhouse, Kulasooriya, and Fernandes; (d) the fourth cause of action (Cal. Corp. Code § 25504) against J. Sabes, S. Sabes, Siegel, Campion, Bookbinder, Rosen, Waterhouse, Fernandes, and Kulasooriya; (e) the sixth cause of action (Cal. Corp. Code §§ 25230 and 25235) against Fischer; (f) the seventh cause of action (declaratory judgment of breach of Investment Advisors Act) against Fischer; (g) the eighth cause of action (negligent misrepresentation) against Fischer, Campion, and Rosen; (h) the ninth cause of action (Cal. Corp. Code § 25501.5) against J. Sabes, S. Sabes, Siegel, Campion, Rosen, Fernandes, Kulasooriya, and Waterhouse; and (i) the tenth cause of action (common law misrepresentation) against Fischer and Upper Orbit

10.      The parties shall meet and confer, and stipulate regarding when the stay as to Fischer will be lifted, and when the court should conduct an initial case management conference.

**IT IS SO ORDERED.**

Dated:  December 20, 2013

_____

PHYLLIS J. HAMILTON
United States District Judge