1   Theodore A. Griffinger, Jr. (SBN 66028)
    Tanya Herrera (SBN 177790)
2   STEIN & LUBIN LLP
    Transamerica Pyramid
3   600 Montgomery Street, 14th Floor
    San Francisco, CA  94111
4   Telephone:     (415) 981-0550
    Facsimile:     (415) 981-4343
5   tgriffinger@steinlubin.com
    therrera@steinlubin.com
6
    Attorneys for Defendants,
7   JON SABES, STEVEN SABES AND
    MARVIN SIEGEL
8
    Tom Chia-Kai Wang (SBN 269050)
9   THE LAW OFFICES OF TOM CHIA-KAI
    WANG
10  117 West 9th St., Suite 206
    Los Angeles, CA  90015
11  Tel: (213) 290-0930
    Fax: (213) 210-2192
12
    Attorneys for Defendant
13  Mani Kulasooriya

14  Curtis E. Smolar (SBN 194700)
    Jaemin Chang (SBN 232612)
15  Fox Rothschild LLP
    235 Pine Street, Suite 1500
16  San Francisco, CA 94104
    Tel: (415) 364-5540
17  Fax: (415) 391-4436

18  Attorneys for Defendant
    Steve Waterhouse

    John S. Claassen (SBN 212954)
    CLAASSEN, Professional Corporation
    1970 Broadway, Suite 525
    Oakland, CA 94612
    Tel: (510) 251-8010
    Fax: (510) 868-3398

    Attorneys for Defendants
    Brian Campion, Notebookz, Inc., &
    Joshua Rosen

    Mary C. Garfein (SBN 195923)
    2469 Warren Lane
    Walnut Creek, CA 94597
    Tel.: (925) 788-8320

    Attorneys for Defendant
    Jorge Fernandes

19

20                    UNITED STATES DISTRICT COURT

21                  NORTHERN DISTRICT OF CALIFORNIA

22                         OAKLAND DIVISION

23  SUZANNE D. JACKSON,                    Case No.  4:11-cv-02753-PJH

24            Plaintiff,
                                           **DEFENDANTS' NOTICE OF MOTION
25  v.                                     AND CONSOLIDATED MOTION FOR
                                           JUDGMENT ON THE PLEADINGS**
26  WILLIAM FISCHER; JON SABES;
    STEVEN SABES; MARVIN SIEGEL;           Date:      N/A
27  BRIAN CAMPION; LONNIE                  Time:      N/A
    BROOKBINDER; MANI                      Dept:      Courtroom 3, 3rd Fl.
28  KOOLASURIYA, JORGE FERNANDES,          Judge:     Honorable Phyllis J. Hamilton

1   JOSHUA ROSEN, STEVE
    WATERHOUSE, JEAN PAUL a/k/a
2   "BUZZY" LAMERE, UPPER ORBIT,
    LLC, SPECIGEN, INC.; PEER DREAMS
3   INC.; NOTEBOOKZ INC.;
    ILEONARDO.COM INC.; NEW MOON
4   LLC; MONVIA LLC, CII LIMITED; and
    SAZANI BEACH HOTEL,
5
                Defendants.
6

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    SUMMARY OF ALLEGATIONS ..................................................................... 1

       A.    Allegations Regarding SpeciGen ........................................................... 2

       B.    Allegations Regarding "Notebookz/iLeonardo .................................... 3

       C.    Allegations Regarding PeerDreams ....................................................... 5

III.   PROCEDURAL BACKGROUND ..................................................................... 6

IV.    APPLICABLE LEGAL STANDARDS ............................................................. 8

V.     ARGUMENT ..................................................................................................... 9

       A.    Plaintiff Fails To Allege A Primary Violation Of Section 10(b) ........... 9

             1.    Plaintiff Fails To Allege An Actionable Misstatement By Mr.
                   Fischer ........................................................................................ 10

                   a.    Plaintiff Fails To Allege An Actionable Misstatement
                         Regarding SpeciGen ........................................................ 10

                   b.    Plaintiff Fails To Allege An Actionable Misstatement
                         Regarding Notebookz ...................................................... 14

                   c.    Plaintiff Fails To Allege An Actionable Misstatement
                         Regarding PeerDreams .................................................... 18

             2.    Plaintiff Fails To Allege Facts Raising An Inference That Mr.
                   Fischer Acted With Scienter ...................................................... 20

       B.    Plaintiff Fails To Allege A Primary Violation Of Sections 25401 and
             25501 ................................................................................................... 21

       C.    Plaintiff Fails To Allege A Primary Violation Of Section 25501.5 ...... 22

             1.    Plaintiff's Section 25501.5 Claims Fail Because She Cannot Allege
                   That She Purchased Securities From Mr. Fischer ...................... 23

             2.    Plaintiff's Section 25501.5 Claim Is Time-Barred .................... 24

VI.    CONCLUSION ................................................................................................ 26

1

## <u>TABLE OF AUTHORITIES</u>

2

3   **FEDERAL CASES**

4   *Ashcroft v. Iqbal*
5        556 U.S. 662 (2009) ........................................................................... 8

6   *Binder v. Gillespie*
        184 F.3d 1059 (9th Cir. 1999) ........................................................... 9
7

8   *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,*
        637 F.3d 1047 (9th Cir. 2011) ........................................................... 8

9   *Chavez v. U.S.*
        683 F.3d 1102 (9th Cir. 2012) ........................................................... 8
10

11  *Copperstone v. TCSI Corp.*
        1999 WL 33295869 (N.D. Cal. Jan. 19, 1999) ................................. 11
12

13  *Falkowski v. Imation Corp.*
        309 F.3d 1123 (9th Cir. 2002) ......................................................... 11

14  *Harris v. County of Orange*
        682 F.3d 1126 (9th Cir. 2012) ........................................................... 8
15

16  *Hopkins v. Dow Corning Corp.*
        33 F.3d 1116 (9th Cir. 1994) ........................................................... 25
17

18  *In re Bare Escentuals, Inc. Sec. Litig.*
        745 F.Supp.2d 1052 (N.D. Cal. 2010) ............................................... 9

19  *In re Oracle Corp. Sec. Litig.*
        627 F.3d 376 (9th Cir. 2010) ........................................................... 14
20

21  *In re Rigel Pharmaceuticals, Inc. Sec. Litig.*
        697 F.3d 869 (9th Cir. 2012) ........................................................... 21

22  *In re Silicon Graphics, Inc.*
        183 F.3d 970 (9th Cir. 1999) ..................................................... 10, 20
23

24  *In re Syntex Corp. Sec. Litig.*
        95 F.3d 922 (9th Cir. 1996) ............................................................. 14
25

26  *In re Vantive Corp. Sec. Litig.*
        283 F.3d 1079 (9th Cir. 2002) ........................................... 12, 13, 14, 21

27  *In re VeriFone Holdings, Inc. Sec. Litig.*
        704 F.3d 694 (9th Cir. 2012) ........................................................... 20

28

*In re VeriFone Sec. Litig.*
  784 F.Supp. 1471 (N.D. Cal. 1992), *aff'd* 11 F.3d 865 (9th Cir. 1993)................................... 11

*Jackson v. Fischer*
  931 F.Supp.2d 1049 (N.D. Cal. 2013) ............................................................... 10, 22, 24, 25

*Kramas v. Security Gas & Oil, Inc.*
  672 F.2d 766 (9th Cir. 1982)................................................................................................. 25

*Matrixx Initiatives, Inc. v. Siracusano*
  ___ U.S. ___, 131 S.Ct. 1309 (2011) .................................................................................. 20

*Metzler Investment GmBH v. Corinthian Colleges, Inc.*
  540 F.3d 1049 (9th Cir. 2008)................................................................................................. 12

*Micrel, Inc. v . Monolithic Power Systems, Inc.*
  2005 WL 6426678 (N.D. Cal. Dec. 9, 2005) ........................................................................ 25

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*
  320 F.3d 920 (9th Cir. 2003)................................................................................................. 14

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*
  411 F.Supp.2d 1172 (N.D. Cal. 2005) .................................................................................... 8

*Swartz v. KPMG LLP*
  476 F.3d 756 (9th Cir. 2007)................................................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
  551 U.S. 308, 127 S.Ct. 2499 ............................................................................................... 20

*Verona Partners, LLC v. Tenet Capital Partners Convertible Opportunities Fund, L.P.*
  2006 WL 2669035 (N.D. Cal., Sept. 18, 2006) .................................................................... 21

*Vess v. Ciba Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003)................................................................................................. 9

*Wenger v. Lumisys, Inc.*
  2 F.Supp.2d 1231 (N.D. Cal. 1998) ................................................................................. 10, 11

*Zucco Partners, LLC v. Digimarc Corp.*
  552 F.3d 981 (9th Cir. 2009)................................................................................................. 10

**CALIFORNIA CASES**

*Alpinieri v. TGG Management Company*
  2014 WL 1761327 (Cal.App. 4 Dist. May 5, 2014) ........................................................ 23, 24

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*
  158 Cal.App.4th 226 (2007)................................................................................................. 22

1

2

*Bowden v. Robinson*
    67 Cal.App.3d 705 (1977)................................................................... 22

3

*Deveny v. Entropin, Inc.*
    139 Cal.App.4th 408 (2006) ................................................................ 25

4

5

*Mirkin v. Wasserman*
    5 Cal.4th 1082 (1993) ........................................................................ 23

6

7

*Viking Pools, Inc. v. Maloney*
    48 Cal.3d 602 (1989) ......................................................................... 23

8

**FEDERAL STATUTES**

11 U.S.C. § 362(a)(1)................................................................................. 6

9

10

Private Securities Litigation Reform Act of 1995
    15 U.S.C. § 78u-4(b)(2)................................................................ 20, 21
    15 U.S.C. § 78u-4(b)(1) .................................................................... 10
    15 U.S.C. § 78u-4(b)(3)(A)................................................................ 10

11

12

Securities Act of 1934
    15 U.S.C. § 78j(b) ............................................................................... 9

13

14

**RULES & REGULATIONS**

Rule 12(b)(6) ........................................................................................... 8

15

16

Rule 12(c)................................................................................................. 8

17

**FEDERAL RULES OF CIVIL PROCEDURE**

18

F.R.C.P.
    § 9(b) .................................................................... 9, 10, 11, 22

19

20

**CALIFORNIA STATUTES**

21

Cal. Corp. Code
    § 25004 ............................................................................................. 24
    § 25401 ....................................................................................... 21, 22
    § 25500 ............................................................................................. 23
    § 25501 ....................................................................................... passim
    § 25506 ....................................................................................... 24, 25

22

23

24

25

California Civil Code § 338(a)................................................................ 24

26

**OTHER AUTHORITIES**

27

Regulation D, 17 C.F.R. §§ 230.501-230.508
    Rule 10b-5 ........................................................................................... 9

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO PLAINTIFF AND HER COUNSEL OF RECORD:**

     **PLEASE TAKE NOTICE** that Defendants Marvin Siegel, Jon Sabes, Steven Sabes and Brian Campion (together, the "SpeciGen Defendants"), Mani Kulasooriya and Jorge Fernandes (together, the "PeerDreams Defendants") and Joshua Rosen and Steve Waterhouse (together, the "Notebookz Defendants") (the SpeciGen Defendants, PeerDreams Defendants and Notebookz Defendants are collectively referred to herein as "Defendants") hereby move for judgment on the pleadings with respect to Plaintiff's Third Claim for Relief for violations of Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) ("Section 20(a)"), Plaintiff's Fourth Claim for Relief for violations of California Corporations Code Section 25504 ("Section 25504") and Plaintiff's Ninth Claim for Relief for violations of California Corporations Code Section 25501.5 ("Section 25501.5") (together, "Plaintiff's Secondary Liability Claims") on the grounds that Plaintiff's Third Amended Complaint ("TAC") does not allege a primary violation of federal or state securities laws by Defendant William Fischer.[1]

     Defendants make this motion pursuant to Federal Rules of Civil Procedure 12(c), 9(b) and 8(a) on the grounds that:

     1.     Plaintiff's First Claim for Relief for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)") fails to state a primary violation against Mr. Fischer because (a) the TAC fails to specify the statement or statements alleged to have been false or misleading with the specificity required by Rule 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA"); (b) the TAC fails to identify a material misstatement; (c) the TAC fails to plead facts establishing that any misstatement was false or misleading when made; and (d) the TAC fails to plead facts giving rise to a strong inference of scienter.

     2.     Plaintiff's Second Claim for Relief for violations of California Corporations Code Sections 25401 and 25501 ("Sections 25401and 25501") fails to state a primary violation against

---

[1] Defendants' motion will be decided on the papers pursuant to the Court's minute order dated April 10, 2014.  ECF No. 250.

**DEFENDANTS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

1    Mr. Fischer because (a) the TAC fails to allege that Mr. Fischer made statement that was false or

2    misleading with the specificity required by Rule 9(b); and (b) the TAC fails to allege that Mr.

3    Fischer was an actual seller of securities, as required by Sections 25401 and 25501;

4         7.    Plaintiff's Ninth Claim for Relief for violations of California Corporations Code

5    Section 25501.5 ("Section 25501.5") fails to state a primary violation against Mr. Fischer because

6    (a) the TAC fails to allege that Plaintiff purchased securities from Mr. Fischer; and (b) Plaintiff's

7    claim for relief under Section 25501.5 is time-barred;

8         Defendants' motion is based on this Notice of Motion and Motion, the accompanying

9    Memorandum of Points and Authorities, Requests for Judicial Notice and Declarations of Tanya

10   Herrera, Joshua Rosen and Mani Kulasooriya, filed and served herewith, the pleadings and

11   records on file herein, and such additional materials as may be presented to the Court in

12   connection with Defendants' motion.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

1

## I.    **INTRODUCTION**

2           Plaintiff commenced this action almost three years ago.  From the beginning, Plaintiff has

3  focused on alleged wrongdoing by Mr. Fischer.  Indeed, Plaintiff's Secondary Liability Claims –

4  which are the only remaining claims against most of the Defendants – depend upon the existence

5  of a primary violation by Mr. Fischer.  But despite Mr. Fischer's central role in this case, Plaintiff

6  has never alleged a viable claim for relief against him.

7           Although the Court has previously entertained several motions to dismiss, the Court has

8  not had an opportunity to consider Plaintiff's allegations against Mr. Fischer until now.  As

9  discussed in detail below, the TAC fails to state a claim for relief against Mr. Fischer under any

10  theory.  Accordingly, Plaintiff's Secondary Liability Claims against Defendants also fail.

11  Defendants' motion for judgment on the pleadings should be granted and Plaintiff's Secondary

12  Liability Claims should be dismissed without further leave to amend.

13

## II.    **SUMMARY OF ALLEGATIONS**[2]

14           The TAC alleges that Plaintiff was the victim of a scheme to defraud orchestrated by Mr.

15  Fischer.  Plaintiff met Mr. Fischer in October 2006.  TAC at ¶ 34.  According to Plaintiff, Mr. Fischer

16  presented himself as a "sophisticated investment advisor" with "connections to high tech issuers" and

17  "access to early investment opportunities."  *Id.* at ¶ 38.  In reality, Plaintiff contends, Mr. Fischer

18  misrepresented his background and experience as an investor in order to take advantage of her newly

19  acquired interest in investing.  *Id.* at ¶¶ 35-36.  In addition, Plaintiff claims that Mr. Fischer

20  fraudulently induced her to lend money or invest in a number of different entities, including

21  SpeciGen, Inc. ("SpeciGen"), PeerDreams, Inc. ("PeerDreams"), Notebookz, Inc. ("Notebookz") and

22  iLeonardo.com, Inc. ("iLeonardo") (together, the "Defendant Companies"), by misrepresenting their

23  prospects for success. [3]  *Id.* at ¶¶ 78-113.   Plaintiff's allegations with respect to each of the Defendant

24

25          [2] Plaintiff's allegations are accepted as true for purposes of this motion only.

26          [3] The SpeciGen Defendants are alleged to have been officers and/or directors of SpeciGen.
TAC at ¶¶ 8-11.  The PeerDreams Defendants are alleged to have been directors of PeerDreams

27  (TAC at ¶¶ 13-14) and the Notebookz Defendants are alleged to have been officers and/or directors of
Notebookz.  *Id.* at ¶¶ 15-16.  Mr. Rosen (who is alleged to have been a founder, chief executive

28  officer and director of Notebookz) is also alleged to have been a founder, chief executive officer and

DEFENDANTS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

1   Companies are summarized below.

2   **A.   <u>Allegations Regarding SpeciGen</u>**

3   Plaintiff alleges that she made a series of loans to SpeciGen in the form of convertible

4   promissory notes between December 1, 2006 and sometime in "the summer of 2008." TAC at ¶ 86.

5   Plaintiff does not say whether she purchased convertible promissory notes from Mr. Fischer,

6   SpeciGen or some other person or entity.  *Id.*  However, the judicially noticeable Note and Warrant

7   Purchase Agreement between Plaintiff and SpeciGen (the "SpeciGen Agreement") confirms that she

8   purchased convertible promissory notes from SpeciGen, not Mr. Fischer.[4]   Thus, Plaintiff does not –

9   and cannot – allege that she purchased SpeciGen securities from an unlicensed broker-dealer.  *See*

10  Section V.C.1, *infra.*[5]

11  Plaintiff alleges that Mr. Fischer orally misrepresented SpeciGen's fundraising and product

12  development efforts during "multiple meetings" in "October and November 2006." *Id.* at ¶ 87.

13  According to the TAC, Mr. Fischer falsely represented that:

14  - SpeciGen's technology was a "proven concept" (TAC at ¶ 87(a));

15
16  - SpeciGen's technology was being reviewed for partnering or licensing by one or more unidentified "publicly traded pharmaceutical companies" (*id.*);

17  - SpeciGen had an "industrial research collaboration" with an unidentified "prominent biotech company" (*id.* at ¶ 87(c));
18

19  - SpeciGen's technology had been "validated" by an unidentified "commercial biotech company" (*id.* at ¶ 87(d));

20
21  - SpeciGen "had all of the licenses and patents needed to commercially develop its technologies" (*id.* at ¶ 87(h));

22

23  director of iLeonardo.  *Id.* at ¶ 15.  With the exception of Mr. Fischer, none of the other individual defendants are alleged to have been involved with iLeonardo.

24

25  [4] A true and correct copy of the SpeciGen Agreement is attached to the previously filed Declaration of William Fischer ("Fischer Decl."), a true and correct copy of which is attached to the

26  accompanying Declaration of Tanya Herrera ("Herrera Decl." as Exhibit ("Ex.") A.  *See also* Defendants' Request for Judicial Notice ("RJN"), filed and served herewith.

27
     [5] As discussed in detail below, Section 25501.5 does not apply to issuers.  *See* Section V.C,
28  *infra.*

- SpeciGen's Series A offering "would be fully sufficient to carry the company to its 'exit strategy,' at which point [Plaintiff] could recover her investment at a profit" (*id.* at ¶ 87(b));

- SpeciGen's "exit strategy" would come within two or three years (*id.* at ¶ 87(g));

- SpeciGen's Series A offering "consisted solely of convertible promissory notes" (*id.* at ¶ 87(e)); and

- SpeciGen's Series A offering "was fully subscribed" by "sophisticated investors with biotech startup knowledge and experience" (*id.* at ¶ 87(f)).

Plaintiff also alleges that Mr. Fischer orally misrepresented SpeciGen's fundraising and partnership prospects during a dinner meeting in Palo Alto in February 2007.  TAC at ¶¶ 88-89.  According to the TAC, Mr. Fischer falsely represented that:

- SpeciGen's Series A offering "was moving along well" (TAC at ¶ 89(a));

- "Genentech had vetted the company's technology" (*id.* at ¶ 89(b)); and

- SpeciGen was "in advanced discussions" with an unidentified "public company and an established private biotech company about advanced research partnerships that would develop preclinical data sufficient to complete clinical trials" (*id.* at ¶ 89(c)).

Plaintiff does not allege that Mr. Fischer – or anyone else connected to SpeciGen – made any misstatement of material fact in writing.  Nor does Plaintiff specify what Mr. Fischer actually said about SpeciGen, why the statements were allegedly false or misleading when made or the factual basis for a strong inference that they were made with scienter.  As discussed in detail below, these pleading failures are fatal to Plaintiff's attempt to plead a Section 10(b) claim against Mr. Fischer based on any alleged misrepresentation regarding SpeciGen.  *See* Section V.A, *infra*.

### B.   Allegations Regarding "Notebookz/iLeonardo

Next, the TAC alleges that Plaintiff made two loans to "Notebookz/iLeonardo" in the form of convertible promissory notes in February and April 2007.  TAC at ¶ 94.  Once again, Plaintiff does not say whether she purchased convertible promissory notes from Mr. Fischer or someone else.  *Id.*  However, the judicially noticeable Series A Preferred Stock Purchase Agreement between Plaintiff and Notebookz (the "Notebookz Agreement") confirms that she purchased

1    preferred shares from Notebookz, not Mr. Fischer.[6]  Thus, Plaintiff cannot plausibly allege that

2    she purchased Notebookz securities from an unlicensed broker-dealer.  *See* Section V,C,1, *infra.*

3          The TAC alleges that Mr. Fischer fraudulently induced the loans by means of a series of

4    oral misstatements alleged to have been made during meetings in February and March 2007.

5    TAC at ¶¶ 94-95.  Although Notebookz and iLeonardo are alleged to have been two separate

6    companies (*id.* at ¶¶ 21-22), Plaintiff repeatedly refers to them as "the company," leaving

7    Defendants to guess which "company" she means.  For example, Plaintiff alleges that Mr. Fischer

8    and/or Mr. Rosen falsely represented that "they expected Google to acquire the company" (*id.* at ¶

9    97(b)), without making any attempt to specify *which* speaker or *which* company.[7]  Similarly,

10   Plaintiff alleges that Mr. Fischer falsely represented that:

11
12   - "the company had, independently of [Plaintiff's] investment, raised sufficient capital to produce and market its product" (TAC at ¶ 97(a));

13
14   - "the company had 'discussed with [Plaintiff] the company's business, management, financial affairs' and the details of its offering" (*id.* at ¶ 97(b));[8]

15   - "the company had given [Plaintiff] the opportunity to review the company's facilities" (*id.* at ¶ 97(c)); and

16
17   - "the company had given [Plaintiff] the opportunity to review all of the terms and conditions of its securities offering (*id.* at ¶ 97(d)).

18   The TAC does not explain why any of the alleged misstatements were false or misleading when

19   made.  Nor does the TAC explain how Plaintiff could have reasonably relied on alleged

20   misrepresentations regarding information within her own knowledge and experience (such as

21   whether or not she was given an opportunity to tour "the company's facilities").

22         Plaintiff also alleges that Mr. Fischer gave her an "Investor's Rights Agreement" which

23   falsely represented that:

24   _____

25         [6] A true and correct copy of the Notebookz Agreement is attached to the accompanying Declaration of Joshua Rosen ("Rosen Decl.") as Ex. 1.

26
27         [7] For ease of reference, and for purposes of this motion only, Defendants will assume that Mr. Fischer, and only Mr. Fischer, made the alleged misstatements.

28         [8] The TAC does not indicate what, if anything, Plaintiff is quoting.

DEFENDANTS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

1
2

- "The company . . . [would] . . . provide a balance sheet, statements of income and cash flows within 120 days of the end of each fiscal year . . ." (TAC at ¶ 98(a)); and

3
4

- "The company . . . would provide [Plaintiff] with unaudited statements of income and cash flows, an unaudited balance sheet and a statement of stockholders' equity" within 45 days of the close of the third quarter of each year (*id.* at ¶ 98(b)).

5

Once again, Plaintiff does not specify *which* company allegedly promised to provide financial

6

information, or why the promises were allegedly false or misleading when made. As discussed in

7

detail below, these pleading failures are fatal to Plaintiff's attempt to allege a primary violation of

8

state or federal securities laws against Mr. Fischer. *See* Section V.A, *infra*.

9

        **C.**      **Allegations Regarding PeerDreams**

10

       Finally, Plaintiff alleges that she made a series of six loans to PeerDreams in the form of

11

convertible promissory notes between January 2007 and June 2009. TAC at ¶ 103. The TAC

12

does not specify whether Plaintiff purchased convertible promissory notes from Mr. Fischer or

13

someone else. *Id.* However, the judicially noticeable Note and Warrant Purchase Agreements

14

between Plaintiff and PeerDreams (the "PeerDreams Agreements") confirm that she purchased

15

convertible promissory notes from PeerDreams, not Mr. Fischer.[9] Thus, Plaintiff cannot

16

plausibly allege that she purchased PeerDreams securities from an unlicensed broker-dealer. *See*

17

Section V.C.1, *infra*.

18

       Plaintiff alleges that Mr. Fischer misrepresented PeerDreams' prospects for success during

19

a series of meetings between mid-December 2006 and early January 2007.[10] TAC at ¶ 108.

20

According to the TAC, Mr. Fischer falsely represented:

21
22

- "That PeerDreams had a marketing plan . . . that called for profitable operations within 18 months in operations targeted to students, charities, pets/animals, travel,

23

24

     [9] True and correct copies of the PeerDreams Agreements are attached to the accompanying Declaration of Mani Kulasooriya ("Kulasooriya Decl.") as Exs.1-5. The first such agreement (Kulasooriya Decl. Ex. 1) shows that one of the loans was made by Upper Orbit, LLC, a limited liability company owned by Mr. Fischer, not Plaintiff. Thus, Plaintiff has no standing to use that particular loan as a basis for relief.

25
26

27

     [10]     The TAC also purports to assert claims for relief against Monvia LLC ("Monvia"). The Court dismissed Plaintiff's claims against Monvia with prejudice in the December Order. ECF No. 241.

28

DEFENDANTS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

equipment purchase, small businesses, environmental products and community projects ...." (TAC at ¶ 110 (a));

- "That Koolasuriya had extensive experience with comparable entrepreneurial software investments through his previous work at Yahoo Finance...." (*Id.* at ¶ 110(b));

- "That the software and website [for PeerDreams] could be up and running within 12 months...." (*Id.* at ¶ 110(c));

- "That, based on the funds raised and needed in the next year, PeerDreams would be up and running and able [to] extract substantial profit as a fund raising platform...." (*Id.* at ¶ 110(d)); and

- "That the funds raised in the first year would be sufficient to fund the development of 'white label' (private label) sites for specific institutions . . . . ." (*Id.* at ¶ 110(e)).

As discussed in detail below, none of Mr. Fischer's statements are alleged to have been false or misleading when made, and none can support a claim for relief against Mr. Fischer or the PeerDreams Defendants.[11]   *See* Section V.A, *infra.*

### III.   PROCEDURAL BACKGROUND

Plaintiff commenced this action in June 2011.  ECF No. 1.  She filed a First Amended Complaint on December 5, 2011 (ECF No. 58) and a Second Amended Complaint on June 15, 2012 (the "SAC") (ECF No. 113).  The SpeciGen Defendants (except for Brian Campion), PeerDreams Defendants and others filed motions to dismiss the SAC in August 2012 (ECF Nos. 125, 127 and 128), which were granted with leave to amend by order dated March 15, 2013 (the "March Order") (ECF No. 177).

In the meantime, Mr. Fischer filed for Chapter 7 bankruptcy protection in the U.S. Bankruptcy Court for the District of Minnesota in April 2012 (ECF No. 104), which stayed the present action against him.  *See generally* 11 U.S.C. § 362(a)(1) (automatic stay provision).  Plaintiff commenced an adversary proceeding against Mr. Fischer on July 17, 2012 (the "Adversary Proceeding"), thereby circumventing the PSLRA's mandatory discovery stay and opening the door to discovery to which

---

[11] On December 20, 2013, this Court granted Defendants Monvia LLC ("Monvia"), Mani Kulasooriya's and Jorge Fernandes' motions to dismiss Plaintiff's Third Amended Complaint (the "TAC").  All of the TAC's causes of action against Monvia were dismissed with prejudice.

1    she would not otherwise be entitled in this Court.  As a result of the Adversary Proceeding, Plaintiff

2    has been able to conduct extensive discovery, including document discovery and depositions.

3    Among other things, Plaintiff has received "25,000 documents" from Mr. Fischer (Transcript of

4    December 5, 2012 Oral Argument at 17:10) (ECF No. 174) and taken Mr. Fischer's deposition (*see*

5    TAC at ¶¶ 45, 61, 92, 111, 115 and 142) (referring to Mr. Fischer's deposition testimony).[12]

6          Plaintiff filed the TAC on April 25, 2013.  ECF No. 180.  Although Plaintiff's amended

7    pleading was intended to incorporate the fruits of her discovery in the Adversary Proceeding, the

8    TAC still failed to plead the basic elements of any claim for relief against Defendants.  Accordingly,

9    the SpeciGen Defendants (except for Mr. Campion), PeerDreams Defendants and others filed another

10   round of motions to dismiss in May and June 2013 (ECF Nos. 190, 191, 193 and 201), which were

11   granted in part and denied in part by order dated December 20, 2013 (ECF No. 241) (the "December

12   Order").  The December Order dismissed most of Plaintiff's claims for relief against the SpeciGen

13   Defendants (except for Mr. Campion) and PeerDreams Defendants with prejudice, leaving only

14   Plaintiff's Secondary Liability Claims.[13]

15         Plaintiff's Secondary Liability Claims against Defendants depend upon the existence of a

16

17   _____

     [12] Plaintiff has also received extensive discovery from Jon Sabes and Steven Sabes, including
     tens of thousands of pages of documents and Jon Sabes' deposition.

18

19   [13] The Court dismissed the following claims against the SpeciGen Defendants (except for Mr.
     Campion) and the PeerDreams Defendants with prejudice:  (a) Plaintiff's First Claim for Relief (for
     violations of Section 10(b);  (b) Plaintiff's Second Claim for Relief (for violations of Sections 25401

20   and 25501); (c) Plaintiff's Fifth Claim for Relief (for Breach of Fiduciary duty); (d) Plaintiff's Eighth
     Claim for Relief (for Negligent Misrepresentation); and (e) Plaintiff's Ninth Claim for Relief (for

21   direct violations of Section 25501.5); and (f) Plaintiff's Tenth Claim for Relief (for Common Law
     Misrepresentation) (together, "Plaintiff's Primary Liability Claims").  Thus, Plaintiff's Secondary

22   Liability Claims are the only remaining claims against the SpeciGen Defendants (except for Mr.
     Campion) and the PeerDreams Defendants.

23

24         The Notebookz Defendants and Mr. Campion believe that Plaintiff's Primary Liability Claims
     against them suffer from all of the same fatal defects described in the Court's previous orders.

25   Accordingly, the Notebookz Defendants and Mr. Campion respectfully submit that the Court should
     *sua sponte* enter a conforming order dismissing Plaintiff's Primary Liability Claims against them.  If

26   the Court is not inclined to do so, the Notebookz Defendants and Mr. Campion respectfully request
     leave to file a further motion for judgment on the pleadings, as set forth in the Court's minute order

27   dated April 10, 2014 (ECF No. 250).

28

1   primary violation by Mr. Fischer.  The Court did not consider the viability of Plaintiff's claims against

2   Mr. Fischer in the December Order.  Since then, however, the Adversary Proceeding has been

3   resolved (ECF Nos. 239 and 240) and the parties agree that the stay has been lifted (ECF No. 248).

4   Accordingly, the Court may now consider Plaintiff's claims against Mr. Fischer.  As discussed in

5   detail below, the TAC fails to allege a primary violation of federal or state securities laws by Mr.

6   Fischer.  *See* Section V, *infra*.  As a result, Plaintiff's Secondary Liability Claims fail to state a claim

7   for relief against Defendants.

8   **IV.   APPLICABLE LEGAL STANDARDS**

9        Rule 12(c) permits a party to move for judgment on the pleadings "after the pleadings are

10   closed – but early enough not to delay trial."  Fed. R. Civ. Proc. 12(c).  No trial date has been set in

11   this case; therefore, the present motion will not delay trial.

12        A motion for judgment on the pleadings pursuant to Rule 12(c) is governed by the same

13   standards as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  *See, e.g.,*

14   *Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012) ("Analysis under Rule 12(c) is 'substantially

15   identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether

16   the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy'") (*quoting*

17   *Brooks v. Dunlop Mfg. Inc.,* 2011 WL 6140912, *3 (N.D. Cal. Dec. 9, 2011)).  "Judgment on the

18   pleadings is appropriate when a plaintiff's complaint fails to meet the pleading standards established

19   by the Private Securities Litigation Reform Act of 1995 (PSLRA)."  *Plumbers & Pipefitters Local*

20   *572 Pension Fund v. Cisco Systems, Inc.*, 411 F.Supp.2d 1172, 1174 (N.D. Cal. 2005).

21        To survive a motion for judgment on the pleadings, a complaint must set forth "'sufficient

22   factual matter, accepted as true, to state a claim for relief that is plausible on its face.'"  *Harris v.*

23   *County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678

24   (2009) (internal quotation marks and citation omitted)); *see also Cafasso, U.S. ex rel. v. General*

25   *Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011) (*Iqbal* applies to Rule 12(c)

26   motions because Rule 12(b)(6) and Rule 12(c) motions are "functionally identical").  "A claim has

27   facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

28   inference that the defendant is liable for the misconduct alleged."  *Id.*  As this Court has explained, "a

1    plaintiff's obligation to provide the grounds of his entitlement to relief 'requires more than labels and

2    conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *In re Bare*

3    *Escentuals, Inc. Sec. Litig.*, 745 F.Supp.2d 1052, 165 (N.D. Cal. 2010) (*quoting Bell Atlantic Corp. v.*

4    *Twombly*, 550 U.S. 544, 555 (2007)).

5          Where the complaint alleges fraud, plaintiff must also satisfy the heightened pleading

6    standards mandated by Rule 9(b). Rule 9(b) requires the plaintiff to state with particularity the

7    circumstances constituting fraud, including the "who, what, when, where, and how" of the charged

8    misconduct. *Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Under Rule 9(b),

9    falsity must be pled with specificity, including an account of the 'time, place, and specific content of

10   the false representations as well as the identities of the parties to the misrepresentations.'" Order at 6

11   (*quoting Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007)). "In addition, the plaintiff must do

12   more than simply allege the neutral facts necessary to identify the transaction; he must also explain

13   why the disputed statement was untrue or misleading at the time it was made." *Id.* Plaintiff's

14   allegations against Mr. Fischer do not come close to meeting these standards.

15   **V.**    **ARGUMENT**

16       **A.**    **Plaintiff Fails To Allege A Primary Violation Of Section 10(b)**

17         Section 10(b) of the Exchange Act provides, in part, that it is unlawful "to use or employ in

18   connection with the purchase or sale of any security registered on a national securities exchange or

19   any security not so registered, any manipulative or deceptive device or contrivance in contravention of

20   such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). To state a claim under

21   Section 10(b) and Rule 10b-5 thereunder, a plaintiff must allege (1) a misrepresentation or omission,

22   (2) of material fact, (3) made with scienter, (4) on which the plaintiff justifiably relied, (5) that

23   proximately caused the alleged loss. *Binder v. Gillespie,* 184 F.3d 1059, 1063 (9th Cir. 1999).

24         Plaintiffs have long been required to plead securities fraud with the specificity mandated by

25   Rule 9(b). *GlenFed, supra,* 42 F.3d at 1545. In addition, plaintiffs must now satisfy the

26   requirements of the PSLRA. As this Court has explained:

27

28

DEFENDANTS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

> Congress established the PSLRA to establish uniform and stringent pleading requirements for securities fraud actions, and to put an end to the practice of pleading "fraud by hindsight." *See In re Silicon Graphics, Inc.*, 183 F.3d 970, 988 (9th Cir. 1999).  Under the PSLRA, the complaint must plead both falsity and scienter with particularity. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).  If the complaint does not satisfy the PSLRA's pleading requirements, the court, upon motion of the defendant, must dismiss the complaint.  15 U.S.C. § 78u-4(b)(3)(A).

*Jackson v. Fischer*, 931 F.Supp.2d 1049, 1059 (N.D. Cal. 2013).  As discussed in detail below, Plaintiff fails to plead a Section 10(b) claim against Mr. Fischer with the specificity required by Rule 9(b) and the PSLRA.

### 1.   Plaintiff Fails To Allege An Actionable Misstatement By Mr. Fischer

Even before the passage of the PSLRA, the Ninth Circuit required that every security fraud complaint "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *GlenFed, supra*, 42 F.3d at 1548.  In addition, both the Ninth Circuit and the PSLRA now demand that plaintiffs "specify each statement alleged to have been false or misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief . . . state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *see also Zucco Partners, LLC v. Digimarc Corp,* 552 F.3d 981, 991 (9th Cir. 2009).  The TAC does not satisfy these requirements with respect to any of the Defendant Companies.

### a.   Plaintiff Fails To Allege An Actionable Misstatement Regarding SpeciGen

The TAC alleges that Mr. Fischer orally misrepresented SpeciGen's product development, partnership and fundraising prospects (TAC at ¶¶ 87 and 89), but does not specify what Mr. Fischer actually said.  Instead, Plaintiff "repackages defendants' actual oral statements in vague and impressionistic terms." *Wenger v. Lumisys, Inc.,* 2 F.Supp.2d 1231, 1246 (N.D. Cal. 1998).  *See, e.g.,* TAC at ¶ 89(a) (alleging that "defendants" falsely represented that "the Series A offering was moving along well"). [14]  Courts throughout the Northern District of California have rejected Plaintiff's

---

[14]  Of course, reasonable investors do not rely on vague statements of corporate optimism like "the

1   "impressionistic approach to pleading fraud," and this Court should not hesitate to do the same.

2   *Wenger,* 2 F.Supp.2d at 1247; *and see Copperstone v. TCSI Corp.*, 1999 WL 33295869, *9 (N.D.

3   Cal. Jan. 19, 1999) (dismissing claims based on alleged oral statements where, as here, "Plaintiffs

4   never allege who made the statement [or] what was actually said").

5          Similarly, Plaintiff alleges that Mr. Fischer failed to disclose a wide range of operational

6   issues, including intra-corporate conflicts, pro forma financial projections and fundraising challenges

7   (TAC at ¶ 90), but does not identify a single statement, by Mr. Fischer or anyone else, that was

8   allegedly false or misleading by reason of a supposed omission. *See generally City of Roseville*

9   *Retirement System v. Sterling Financial Corp.*, 963 F.Supp.2d 1092, 1109 (E.D. Wash. 2013) ("when

10  a plaintiff relies on an omission of fact as evidence of falsity, the plaintiff cannot simply show that the

11  omission was material; instead, the plaintiff must show that the omission actually renders *other*

12  statements misleading") (emphasis original) (*citing In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869,

13  880 n. 8 (9th Cir. 2012)).  Thus, Plaintiff fails to comply with the PSLRA's threshold requirement that

14  she "specify each statement alleged to have been misleading."   15 U.S.C. § 78u-4(b)(1).

15         Plaintiff not only fails to specify Mr. Fischer's alleged misstatements, she also fails to specify

16  "the reason or reasons why" any such statements were false or misleading when made.  According to

17  Plaintiff, Mr. Fischer and/or "defendants" misrepresented SpeciGen's (1) product development efforts

18  (TAC at ¶ 87(a), 87(d) and 89(b)); (2) partnership prospects (*id.* at ¶¶87(a), 87(c) and 89(c)); (3)

19  patent portfolio (*id.* at ¶ 87(h)); and (4) fundraising efforts (*id.* at ¶¶ 87(b), 87(e), 87(f), 87(g) and

20  87(h)).  Plaintiff generally alleges that each such statement was false, but offers no facts to support her

21  characterization.   Instead, Plaintiff relies on a series of generalities and *non sequiturs*.  As discussed

22  in detail below, these allegations do not come close to satisfying Plaintiff's pleading obligations under

23  Rule 9(b) and the PSLRA.  *See generally Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir.

24  2002) ("vague claims about what statements were false or misleading [and] how they were false" are

25

26  Series A offering was moving along well" (TAC at ¶ 89(a)), so Plaintiff's paraphrased portrayal of the
    Mr. Fischer's alleged oral statement would not be actionable in any event.  *See, e.g., In re VeriFone*

27  *Sec. Litig.*, 784 F.Supp. 1471, 1481 (N.D. Cal. 1992) ("professional investors, and most amateur
    investors as well, know how to devalue the optimism of corporate executives"), *aff'd* 11 F.3d 865 (9th

28  Cir. 1993).

subject to dismissal); *and see Metzler Investment GmBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008) ("A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet [the PSLRA] standard");

### (i)     Product Development Representations

Plaintiff alleges that Mr. Fischer and/or "defendants" falsely represented that SpeciGen's technology was a "proven concept" (TAC at ¶ 87(a)) which had been "vetted" by Genentech (*id.* at ¶ 89(b)) and "validated" by an unidentified "commercial biotech company" (*id.* at ¶ 87(d)).  However, Plaintiff does not even explain what these alleged misstatements were supposed to mean, let alone why they were false or misleading when made.[15]

The Ninth Circuit confronted an equally vague series of alleged misrepresentations in *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (9th Cir. 2002).   In *Vantive*, plaintiffs claimed that defendants overstated the growth and quality of their sales force.  The trial court dismissed the complaint and the Ninth Circuit affirmed, explaining that "the complaint leaves unclear what it would mean for Vantive to 'adequately train' an employee, what 'sufficient numbers' of hires would be, or what it means for 'a substantial percentage' of people to quit." 283 F.3d at 1086-1087.   Similarly, in this case, the TAC offers no explanation of the terms "proven concept," "validated" or "vetted" and provides no objective criteria by which the truth or falsity of the alleged misstatements could be measured.  In the absence of any such details, the TAC fails to establish that the alleged misstatements concerning SpeciGen's product development efforts were false or misleading when made.  *See Vantive,* 283 F.3d at 1086-1087 (complaint inadequate for failing to provide an objective measure against which allegedly "false" statements could be compared).

### (ii)     Partnership Representations

Plaintiff's claim that Mr. Fischer misrepresented SpeciGen's partnership prospects is equally

---

[15] Furthermore, though Plaintiff alleges that "Genentech had been approached had been approached but shown no interest in partnering with SpeciGen" (TAC at ¶89(b)) and SpeciGen's "only revenues had been primary research grants by government agencies"(*id.* at ¶ 87(d)), these *non sequiturs* do not amount to an explanation why any statement was false or misleading.  After all, Genentech could have "vetted the company's technology" (whatever that means) and *then* decided against partnering with SpeciGen.  Similarly, a commercial biotech company could have "validated" SpeciGen's technology (whatever that means) without giving SpeciGen money.

flawed.  Plaintiff alleges that Mr. Fischer falsely represented that SpeciGen was "in advanced discussions with a public company and an established private biotech company about advanced research partnerships that would develop preclinical data sufficient to complete clinical trials."  TAC at ¶ 89(c).  However, Plaintiff does not specify what Mr. Fischer actually said, whether he used the terms "advanced discussions" and "advanced research partnerships" and if so, what he meant by them.  Instead, Plaintiff offers a vague characterization of the alleged misstatement and summarily concludes that the statement was false "because no such discussions were underway."  TAC at ¶ 89(c).  But these non-specific allegations do not explain anything.  Was the alleged oral statement false because SpeciGen was not discussing research partnerships with anyone?  Because SpeciGen was discussing research partnerships, but the discussions were preliminary, not advanced?  Because SpeciGen was discussing research partnerships, but the research partnerships themselves were not advanced?  Or were not likely to result in the development of preclinical data sufficient to complete clinical trials?  Plaintiff does not say.  Nor does she attempt to reconcile her allegation that "no such discussions were underway" (TAC at ¶89(c)) with her seemingly contradictory allegations that (1) some companies, including Genentech, apparently considered research partnerships with SpeciGen at some unspecified times (TAC at ¶¶ 87(b) and 89(b)); and (2) SpeciGen ultimately formed a research partnership with another company (*id.* at ¶ 89(c)), although it was not as productive as Plaintiff would have liked.  These inconsistent allegations do not explain why any alleged oral statement was false or misleading when made.

### (iii)    Patent Portfolio Representations

Next, Plaintiff claims that Mr. Fischer falsely represented that "SpeciGen had all of the licenses and patents needed to commercially develop its technologies."  TAC at ¶ 87(h).  Once again, Plaintiff does not specify what Mr. Fischer actually said or why the statement was false or misleading when made.  Instead, Plaintiff claims that SpeciGen's licenses "required ongoing royalty payments that it could not maintain at the company's present burn rate."  TAC at ¶ 87(h).

Contrary to Plaintiff's suggestion, the alleged representation that "SpeciGen had all of the licenses and patents needed to commercially develop its technologies" does not carry an implied representation that all such licenses and patents would be available to SpeciGen for free.  Nor does the

1   statement impliedly represent that royalty payments would not be difficult to make, given "the

2   company's present burn rate." In the absence of greater particularity, Plaintiff has again failed to

3   establish that any alleged statement concerning SpeciGen's patent portfolio was false or misleading

4   when made.

5                    **(iv)      Fundraising Representations**

6          Finally, Plaintiff claims that Mr. Fischer falsely represented that the Series A offering "would

7   be fully sufficient to carry the company to its 'exit strategy'" (TAC at ¶ 87(b)), which "would come

8   within 2-3 years" (*id.* at ¶ 87(g)). According to Plaintiff, these representations were false because (1)

9   the Series A offering would not be enough to get SpeciGen to preliminary trials (TAC at ¶ 87(b)(a));

10  and (2) barring an acquisition or substantial outside investment, "it would take an estimated 12-15

11  years for a return on investment" (*id.* at ¶ 87(g)(3)). Put another way, the TAC alleges that Mr.

12  Fischer failed to predict how much time and money would be required before Plaintiff would be in a

13  position to recoup her investment. However, "the fact that a prediction proves to be wrong in

14  hindsight does not render the statement untrue when made." *In re Syntex Corp. Sec. Litig.*, 95 F.3d

15  922, 929 (9th Cir. 1996). Furthermore, to the extent that the TAC specifies the challenged statements

16  at all, they are forward-looking. *See generally No. 84 Employer-Teamster Joint Council Pension*

17  *Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003) (A forward-looking statement

18  includes any statement regarding "plans and objectives of management for future operations" and "the

19  assumptions 'underlying or related to' any of these issues"). As such, the alleged misstatements could

20  not be actionable unless (1) they were not actually believed by the speaker; (2) there was no

21  reasonable basis for the belief; or (3) the speaker was aware of undisclosed facts tending to seriously

22  undermine the statement's accuracy. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 388 (9th

23  Cir. 2010). As discussed in detail below, the TAC does not support an inference that Mr. Fischer

24  acted with deliberate recklessness, much less actual knowledge of falsity. *See* Section V.A.2, *infra.*

25                    **b.     Plaintiff Fails To Allege An Actionable Misstatement Regarding**
                               **Notebookz**
26

27          Next, Plaintiff claims that Mr. Fischer made false and misleading statements about

28  "Notebookz/iLeonardo." TAC at ¶¶ 96-98. Once again, Plaintiff "repackages" Mr. Fischer's

1  alleged oral statements in "vague and impressionistic terms," leaving Defendants to guess what

2  Mr. Fischer actually said.   *Wenger, supra,* 2 F.Supp.2d at 1247.  To make matters worse, Plaintiff

3  repeatedly refers to Notebookz and iLeonardo as "the company," leaving Defendants to guess

4  which company Mr. Fischer allegedly misrepresented.  Such vague allegations have never been

5  enough to satisfy the heightened pleading standards mandated by Rule 9(b) and PSLRA.

6  Furthermore, Plaintiff's allegations suffer from a number of additional defects, each of which

7  independently compel dismissal.

8              **(i)      Plaintiff Fails To Allege That Mr. Fischer's
                          Forward-Looking Statements Were Made With
9                         Actual Knowledge Of Falsity**

10         Plaintiff alleges that Mr. Fischer and/or Mr. Rosen falsely represented that "they expected

11  Google to acquire the company."  TAC at ¶ 97(b); *see also id.* at ¶ 96 (alleging that "[Rosen] or

12  Fischer specifically mentioned the likelihood that Google would be a likely acquirer in the near to

13  intermediate future").  Plaintiff further alleges that Mr. Fischer and/or Mr. Rosen falsely

14  represented:

15              that the company had, independently of [Plaintiff's] investment,
                raised sufficient capital to produce and market its product, when in
16              fact it had insufficient capital and would need substantial further
                investment to complete a finished product and bring it to
17              commercialization.

18  TAC at ¶ 97(a).  As usual, Plaintiff does not identify *which* speaker allegedly said *what* about

19  *which* company.  But these pleading failures cannot disguise the fact that Mr. Fischer's alleged

20  misstatements are fundamentally forward-looking.

21         As previously discussed, a "forward-looking statement" includes "any statement regarding

22  (1) financial projections, (2) plans and objectives of management for future operations, (3) future

23  economic performance, or (4) the assumptions 'underlying or related to' any of these issues." *No.*

24  *84 Employer-Teamster*, 320 F.3d at 936 (*quoting* 15 U.S.C. § 78u-5(i); *see* Section __, *supra*.  By

25  definition, Mr. Fischer's alleged representation that he "expected Google to acquire the company"

26  constitutes a statement of "management's plans and objectives for future operations." 15 U.S.C. §

27  78u-5(i)(1)(C).  Similarly, Mr. Fischer's alleged representation that "the company" had

28  "sufficient capital to produce and market its product" constitutes a statement regarding "the

1   company's" financial projections and management's assumptions "underlying or related to" such

2   projections.  15 U.S.C. § 78u-5(i).

3        "To show that forward-looking statements are false 'plaintiffs must prove that [they] were

4   made with 'actual knowledge' that they were false or misleading.'"  *In re American Apparel, Inc.*

5   *Shareholder Litig.*, 2013 WL 174199, *27 (C.D. Cal. Jan. 16, 2013) (*quoting Silicon Graphics,*

6   183 F.3d at 993 (Browning, J., concurring in part and dissenting in part) and 15 U.S.C. §§ 78u-

7   5(c)(1)(B), 77z-2(c)(1)(B)); *see also In re Northpoint Communications Grp., Inc. Sec. Litig.*, 184

8   F.Supp.2d 991, 997 (N.D. Cal. 2001) (providing examples of sufficient factual allegations of

9   scienter such as "'contemporaneous receipt of a report with information directly at odds with an

10  alleged misrepresentation, . . . and statements by witnesses that they told the actor the true facts

11  before the false statement was made . . .'").  Despite extensive discovery, Plaintiff does not allege

12  any facts establishing that Mr. Fischer's forward-looking statements were made with actual

13  knowledge of falsity.  *See* Section V.A.2, *infra.* Thus, Plaintiff fails to state a claim for relief

14  based on any alleged misstatement regarding an acquisition by Google or the amount of capital

15  that would be needed to "complete a finished product and bring it to commercialization."

16
17

           **(ii)**    **Plaintiff Fails To Allege That She Reasonably Relied On Any Alleged Misstatement Regarding Her Own Due Diligence Investigation**

18        Next, Plaintiff claims that Mr. Fischer falsely represented that (1) "the company had

19  'discussed with [Plaintiff] the company's business, management, financial affairs' and the details

20  of its offering" (TAC at ¶ 97(b)); (2) "the company had given [Plaintiff] the opportunity to review

21  the company's facilities" (*id.* at ¶ 97(c)); and (3) "the company had given [Plaintiff] the

22  opportunity to review all of the terms and conditions of its securities offering" (*id.* at ¶ 97(d)).

23  None of these allegations can support a claim for relief against Mr. Fischer or anyone else.

24        "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of

25  the § 10(b) private cause of action."  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S.

26  148, 159 (2008) (requirement of reliance "ensures that, for liability to arise, the 'requisite causal

27  connection between a defendant's misrepresentation and a plaintiff's injury' exists as a predicate

28  for liability") (*quoting Basic, Inc. v. Levinson*, 485 U.S. 224, 243 (1988)).  The Ninth Circuit has

long recognized that plaintiffs cannot plausibly allege reliance where, as here, they already

possess sufficient information to call defendants' alleged misrepresentations into question.  *See*

*Atari Corp. v. Ernst & Whinney,* 981 F.2d 1025, 1030 (9th Cir. 1992) ("If the investor already

possesses information sufficient to call the representations into question, he cannot claim later

that he relied on or was deceived by the lie.").  Likewise, in the present case, Plaintiff cannot

credibly claim to have relied on alleged misrepresentations regarding her own due diligence

investigation (*e.g.,* whether or not she was given an opportunity to tour the company's facilities or

review the terms and conditions of its securities offering) when "the truth" was already in her

possession.  Thus, Plaintiff fails to state a claim for relief based on any alleged misrepresentation

regarding her own due diligence investigation.

           **(iii)**    **Plaintiff Fails To Allege An Actionable Misstatement Based On "The Company's" Promise To Provide Her With Periodic Financial Reports**

Finally, Plaintiff claims that Mr. Fischer gave her an "Investors Rights Agreement" which

falsely promised that "the company" would make certain financial information available to her at

the end of each fiscal year.  TAC at ¶ 99.  Although the Ninth Circuit does not appear to have

addressed the issue, the Second Circuit has held that:

> The failure to carry out a promise made in connection with a
> securities transaction is normally a breach of contract.  It does not
> constitute fraud unless, when the promise was made, the defendant
> secretly intended not to perform or knew that he could not perform .
> . . . Accordingly, although Rule 9(b) allows a pleader to aver intent
> generally, a 10b-5 complaint nevertheless must allege facts that
> raise a strong inference of fraudulent intent.

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2nd Cir. 1993) (declining to infer fraudulent

intent from the mere fact that defendant failed to perform as promised); *see also ATSI Commc'n,*

*Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2nd Cir. 2007) ("While the failure to carry out a

promise in connection with a securities transaction might constitute breach of contract, it does not

constitute fraud unless, when the promise was made, the defendant secretly intended not to

17

1   perform or knew that he could not perform").  Plaintiff does not allege any facts – let alone

2   particularized facts – suggesting that Mr. Fischer or anyone else connected with "the company"

3   harbored a secret intention not to perform or knew that they could not perform.  Thus, Plaintiff

4   fails to state a claim for relief based on any alleged misstatement in the Investor's Rights

5   Agreement or any other statement regarding Notebookz or iLeonardo.

6
          ### c.   Plaintiff Fails To Allege An Actionable Misstatement Regarding
          PeerDreams
7

8         Finally, Plaintiff alleges that Mr. Fischer falsely represented that (1) PeerDreams had a

9   marketing plan that called for profitable operations within 18 months (TAC at ¶ 110(a)); (2) one

10  of PeerDreams' founding directors, Mr. Kulasooriya, had extensive experience with comparable

11  investments (*id.* at ¶ 110(b)); (3) PeerDreams' software and website could be up and running

12  within 12 months (*id.* at ¶ 110(c)); (4) PeerDreams would be profitable as a fundraising platform

13  within a year (*id.* at ¶ 110(d)); and (5) PeerDreams had enough money to "fund the development

14  of 'white label' (private label) sites for specific institutions" (*id.* at ¶ 110(e)).   None of these

15  allegations establish a primary violation by Mr. Fischer.

16        "The PSLRA has exacting requirements for pleading 'falsity.'"  *Metzler Inv. GMBH v.*

17  *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).  A plaintiff must provide "specific

18  references to specific facts demonstrating that the statements at issue were false or misleading

19  when made."  *Wenger*, 2 F.Supp.2d at 1250.  "Moreover, the complaint must allege that the 'true

20  facts' arose *prior* to the allegedly misleading statement."  *In re Splash Tech. Holdings, Inc. Sec.*

21  *Litig.*, 160 F.Supp.2d 1059, 1072 (N.D. Cal. 2001).  As the Ninth Circuit has explained, "[t]he

22  most direct way to show both that a statement was false when made and that the party making the

23  statement knew that it was false is via contemporaneous reports or data, available to the party,

24  which contradict the statement."  *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380

25  F.3d 1226, 1230 (9th Cir. 2004); *see also Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989

26  (9th Cir. 2008) (the PSLRA requires "particular allegations which strongly imply Defendants'

27  *contemporaneous* knowledge that the statement was false when made") (emphasis original).

28        The TAC makes no attempt to plead contemporaneous facts establishing that any alleged

1    misstatement regarding PeerDreams was false or misleading when made.  Plaintiff does not

2    specify what Mr. Fischer allegedly said about PeerDreams' marketing plan or plead facts

3    demonstrating that any such statement was knowingly false or misleading when made.  Nor does

4    Plaintiff plead facts establishing that Mr. Kulasooriya lacked "experience with comparable

5    entrepreneurial software investments."  To the contrary, the TAC concedes that Mr. Kulasooriya

6    was experienced, but concludes that his experience was "of no relevance to a modest startup."

7    TAC at ¶ 110(b).  However, Plaintiff's difference of opinion does not establish fraud, particularly

8    when Plaintiff could have easily compared Yahoo! and PeerDreams for herself, and drawn her

9    own conclusion as to whether Mr. Kulasooriya's experience was relevant.

10          Plaintiff's remaining allegations are classic "fraud by hindsight."  *Silicon Graphics,* 183

11   F.3d at 988 ("fraud by hindsight" is not actionable under the federal securities laws); *see also*

12   *Jackson v. Fischer,* 931 F.Supp.2d at 1059 (noting that Congress enacted the PSLRA to "put an

13   end to the practice of pleading 'fraud by hindsight'").  For example, Plaintiff alleges that Mr.

14   Fischer falsely represented that PeerDreams' website would be operational within a year, when

15   "[he] knew it would take more than 18 months to develop it and as long to come up with a real

16   marketing plan."  TAC at ¶ 110(c).  Similarly, Plaintiff alleges that Mr. Fischer falsely predicted

17   that PeerDreams had enough "the funds raised in the first year would be sufficient to fund the

18   development of 'white label' (private label) sites for specific institutions, when in fact the amount

19   planned to be raised was insufficient to fund the development of a single white label site."  *Id.* at

20   ¶ 110(e).  However, Mr. Fischer's lack of clairvoyance does not constitute securities fraud.  *In re*

21   *PetSmart*, 61 F. Supp. 2d 982, 992 (D. Ariz. 1999) ("defendants' lack of clairvoyance simply

22   does not constitute securities fraud") (*citing Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir.

23   1995)); *see also In re Northpoint Communications Group, Inc. Sec. Litig.*, 184 F. Supp. 2d 991,

24   1004 (N.D. Cal. 2001) (management's "lack of foresight" is not "actionable as securities fraud").

25   "Alleging that certain predictions proved incorrect is not the same as alleging with particularity

26   facts that show the initial prediction was a falsehood."  *Browning v. Amyris, Inc.*, 2014 WL

27   1285175, *11 (N.D. Cal. Mar. 24, 2014); *see also In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 934

28   (9th Cir. 1996) ("Because Defendants' predictions proved to be wrong in hindsight does not

1   render the statements untrue when made").  Accordingly, "plaintiffs must allege with particularity

2   facts that show the initial prediction was 'a falsehood.'"  *In re American Apparel, Inc.*

3   *Shareholder Litig.*, 2013 WL 174119, *27 (C.D. Cal. Jan. 16, 2013) (*quoting Kane v. Madge*

4   *Networks N.V.*, 2000 WL 33208116, *6 (N.D. Cal. May 26, 2000)).  The TAC does not allege any

5   such facts.  As a result, the TAC fails to show that any alleged misstatement regarding

6   PeerDreams was false or misleading when made.

7              **2.      Plaintiff Fails To Allege Facts Raising An Inference That Mr. Fischer
                         Acted With Scienter**
8

9              To adequately plead scienter under the PSLRA, the complaint must "state with particularity

10  facts giving rise to a strong inference that the defendant acted with the required state of mind."  15

11  U.S.C. § 78u-4(b)(2).  In the Ninth Circuit, the required state of mind is "deliberate or conscious

12  recklessness."  *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir. 1999).  To qualify

13  as "strong," the Supreme Court has held, "an inference of scienter must be more than merely plausible

14  or reasonable – it must be cogent and at least as compelling as any opposing inference of

15  nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499,

16  2504-2505, 168 L.2d 179 (2007).  The Supreme Court has further instructed that, in determining

17  whether scienter has been sufficiently pled, a court must review plaintiff's allegations "holistically."

18  *See In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 702 (9th Cir. 2012) (*citing Matrixx*

19  *Initiatives, Inc. v. Siracusano*, ___ U.S. ___, ___, 131 S.Ct. 1309, 1324 (2011)).  In this case, none of

20  Plaintiff's allegations are cogent or compelling enough to raise a strong inference of scienter, even

21  when considered holistically.

22             Remarkably, though Mr. Fischer plays a starring role in the alleged fraud, Plaintiff does not

23  even attempt to plead facts demonstrating what Mr. Fischer knew or when he knew it.  Despite

24  extensive discovery, the TAC does not identify a single email, internal report or other

25  contemporaneous document suggesting that any alleged misstatement was knowingly false when

26  made.  Instead, Plaintiff generally alleges that all defendants, including Mr. Fischer, were "aware"

27  that the Defendant Companies (1) needed funding to survive (TAC at ¶¶ 131(a), (c) and (d)); and (2)

28  faced significant product development challenges (*id.* at ¶¶ 87(b) and (d)).  These generic allegations

1    could be applied to virtually any start-up company.   Indeed, the TAC purports to apply the same

2    allegations indiscriminately to "all of the '34 Act defendants" in this action (a group that originally

3    included five individual defendants and five separate entities).  TAC at p. 33.

4         At best, the TAC describes "routine corporate objectives," such as the desire to obtain

5    financing and develop new products.  *In re Rigel Pharmaceuticals, Inc. Sec. Litig.*, 697 F.3d 869, 884

6    (9th Cir. 2012) ("allegations of routine corporate objectives such as the desire to obtain good financing

7    and expand are not, without more, sufficient to allege scienter; to hold otherwise would support a

8    finding of scienter for any company that seeks to enhance its business prospects").  However, the

9    Ninth Circuit and Northern District of California have consistently rejected attempts to premise a

10   strong inference of scienter on such allegations.  *See, e.g., Rigel, supra,* 697 F.3d at 884; *see also*

11   *Verona Partners, LLC v. Tenet Capital Partners Convertible Opportunities Fund, L.P.*, 2006 WL

12   2669035, *12 (N.D. Cal., Sept. 18, 2006) ("Generalized assertions of financial motive, without more,

13   are insufficient to meet the heightened pleading requirement of the PSLRA").  Applying these

14   authorities, the Court should likewise reject Plaintiff's boilerplate allegations, which are not even

15   specific to Mr. Fischer, and do not "state with particularity facts giving rise to a strong inference that

16   the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  *See, e.g., In re Vantive*

17   *Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir. 2002) (affirming dismissal of Section 10(b) claims

18   where "the bulk of the alleged adverse facts are generic, subjective, difficult to prove or refute, and

19   could be alleged against almost any company that has experienced a drop in sales revenue").

20        **B.**      **Plaintiff Fails To Allege A Primary Violation Of Sections 25401 and 25501**

21        Next, Plaintiff argues that Mr. Fischer's alleged violations of Section 10(b) constitute

22   violations of Sections 25401 and 25501.  *See* TAC at ¶¶ 134-135 (incorporating Section 10(b)

23   allegations by reference).  Plaintiff fails to allege a primary violation of Sections 25401 and 25501.

24         Section 25401 provides that:

25

26

27

28

DEFENDANTS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

> It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Cal. Corp. C. § 25401.  Section 25501 provides, in pertinent part, that:

> Any person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him . . . unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know . . . of the untruth or omission.

Cal. Corp. C. § 25501.  Plaintiff's attempt to state a claim for relief under Sections 25401 and 25501 fails for two reasons.  <u>First</u>, Plaintiff fails to allege that Mr. Fischer made a material misstatement regarding any of the Defendant Companies.[16]  *See* Section V.A.1, *supra*.  <u>Second</u>, Plaintiff fails to allege privity with Mr. Fischer.

"Sections 25401 and 25501 impose liability only on the actual seller of the security."  *Jackson v. Fischer*, *supra*, 931 F.Supp.2d at 1063 (*citing Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 253-254 (2007)); *see also Apollo, supra,* 158 Cal.App.4th at 254 ("liability under section 25501 attaches only to the actual seller of securities").  Plaintiff does not – and cannot – allege that she purchased securities from Mr. Fischer, as opposed to the Defendant Companies.  *See* SpeciGen Agreement (Fischer Decl. Ex. 1); PeerDreams Agreements (Kulasooriya Decl. Exs. 1-5) and Notebookz Agreement (Rosen Decl. Ex. 1).  Accordingly, Plaintiff fails to allege a primary violation of Sections 25401 and 25501 by Mr. Fischer.

## C.   <u>Plaintiff Fails To Allege A Primary Violation Of Section 25501.5</u>

Finally, the TAC alleges that Mr. Fischer violated Section 25501.5, which makes it "unlawful for a person to sell securities to or through an unlicensed broker-dealer."  *Id.* at ¶ 192.  Plaintiff's theory fails for two reasons:  (1) Plaintiff does not – and cannot – allege that she purchased securities from Mr. Fischer; and (2) Plaintiff's Section 25501.5 claim is time-barred.

---

[16] "Section 25401 does not apply to simple nondisclosure."  *Bowden v. Robinson,* 67 Cal.App.3d 705, 717 (1977).

1.   **Plaintiff's Section 25501.5 Claims Fail Because She Cannot Allege That She Purchased Securities From Mr. Fischer**

Section 25501.5, entitled "Action for rescission or damages," provides in pertinent part:

> (a)(1)   A person who **purchases a security from or sells a security to** a broker-dealer that is required to be licensed and has not, at the time of the sale or purchase, applied for and secured from the commissioner a certificate under Part 3 (commencing with Section 25200), that is in effect at the time of the sale or purchase authorizing that broker-dealer to act in that capacity, may bring an action for rescission of the sale or purchase or, if the plaintiff or the defendant no longer owns the security, for damages.

Cal. Corp. C. § 25501.5 (a)(1) (emphasis added).  By its terms, Section 25501.5 establishes a private right of action in favor of a person who purchases a security *from* an unlicensed broker-dealer.  *Id.*

The California courts have yet to address Section 25501.5's requirements in a published opinion.  *But see Alpinieri v. TGG Management Company*, 2014 WL 1761327, *7 (Cal.App. 4 Dist. May 5, 2014) (concluding that the phrase "purchases a security from" demonstrates an intent to limit Section 25501.5's civil remedy "only to a person who transacts directly with an unlicensed broker-dealer, that is, who is in privity with an unlicensed broker-dealer . . . ").  However, the California Supreme Court has interpreted the phrase "purchases a security from," as used in Section 25501 of the California Corporate Securities Law of 1968, Cal. Corp. Code §§ 25500, *et seq.*, to require privity of contract.  *See Mirkin v. Wasserman*, 5 Cal.4th 1082, 1104 (1993) (concluding that the phrase "purchases a security from" requires privity of contract); *see also Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 253 (2007) ("Section 25501 on its face requires privity between the plaintiff and the defendant"); *and Employers Ins. of Wausau v. Musick, Peeler, & Garrett*, 871 F.Supp. 381, 387-388 (S.D. Cal. 1994) (Section 25501 "requires privity between the seller of a secured instrument and a purchaser" and liability "is limited to actual sellers").  "The Legislature is deemed to be aware of existing laws and judicial decisions construing the same statute in effect at the time legislation is enacted, and to have enacted and amended statutes "'in light of such decisions as have a direct bearing upon them.'"  *Viking Pools, Inc. v. Maloney,* 48 Cal.3d 602, 609 (1989).  Thus, the Legislature can be presumed to have known that the phrase "purchases a security from" would be construed to require privity of contract when Section 25501.5 was enacted in 2004.

1  *Alpinieri, supra,* 2014 WL 1761327, *7 ("We conclude that the Legislature in 2004 necessarily

2  understood that courts would interpret a civil liability provision under the Act containing the

3  "purchases a security from" language as requiring privity of contract as a prerequisite to such

4  liability").

5      Plaintiff claims that Mr. Fischer was an unlicensed broker-dealer, but does not – and cannot –

6  allege that she purchased securities from him.  To the contrary, the judicially noticeable Agreements

7  confirm that she purchased convertible promissory notes and preferred stock from the Defendant

8  Companies, and not Mr. Fischer. [17]  *See* SpeciGen Agreement at p. 1 (reciting that "each Investor

9  desires to purchase, and the Company desires to sell a convertible promissory note in the principal

10 amount set forth opposite such Investor's name") (Fischer Decl. Ex. 1); *see also* PeerDreams

11 Agreement at p. 1 (reciting that "the Company agrees to issue and sell [promissory notes] to each of

12 the Investors") (Kulasooriya Decl. Ex. 2); *and see* Notebookz Agreement at p. 1 (reciting that "THIS

13 SERIES A PREFERRED STOCK PURCHASE AGREEMENT" is made between Notebookz, on

14 the one hand, and "the investors listed on Exhibit A," on the other) (Rosen Decl. Ex. 1).  As a result,

15 Plaintiff does not – and cannot – allege privity of contract with Mr. Fischer, an essential predicate to

16 any direct claim for relief under Section 25501.5.

17                    **2.        Plaintiff's Section 25501.5 Claim Is Time-Barred**

18      Even assuming *arguendo* that Plaintiff could allege privity of contract (which she cannot), her

19 attempt to state a claim for relief under Section 25501.5 would still be time-barred.  The applicable

20 statute of limitations for claims arising under Section 25501.5 is either (a) Corporations Code Section

21 25506, which provide for a two-year statute of limitations from the date of discovery (Cal. Corp. C. §

22 25506(b)); or (b) California Civil Code Section 338(a), which provides for a three-statute of

23 limitations for claims created by statute.  *Jackson v. Fischer, supra,* 931 F.Supp.2d at 1066.  Plaintiff

24 has previously acknowledged that the applicable statute of limitations is two years from the date of

25 
_____

26 [17] Under California Corporations Code Section 25004, the term "broker-dealer" means "any person
   engaged in the business of effecting transactions in securities in this state for the account of others or

27 for his own account."  Cal. Corp. C. § 25004.  Section 25004 specifically excludes "any other issuer"
   from the statutory definition of a "broker-dealer."  Cal. Corp. C. § 25004 (a).  Therefore, the

28 Defendant Companies cannot be considered "broker-dealers" within the meaning of Section 25004.

1    discovery.  *Id.*

2            As a matter of California law, Section 25506(b)'s two year statute of limitations is triggered

3    by inquiry notice, not actual knowledge.  *Deveny v. Entropin, Inc.*, 139 Cal.App.4th 408, 423 and 428

4    (2006) ("Inquiry notice – often called 'storm warnings' in the securities context – gives rise to a duty

5    of inquiry 'when the circumstances would suggest to an investor of ordinary intelligence the

6    probability that she has been defrauded"); *Kramas v. Security Gas & Oil, Inc.*, 672 F.2d 766, 770-771

7    (9th Cir. 1982) (Section 25506 begins to run "when the plaintiff discovers the facts constituting the

8    violation or in the exercise of reasonable diligence should have discovered them").

9            Plaintiff alleges that she "became concerned" about a $1 million "trading account" with Mr.

10   Fischer "[i]n or about summer 2008."  TAC at ¶ 63.  Thus, Plaintiff's own allegations confirm that

11   there were "storm warnings" giving rise to a duty to inquire as early as "summer 2008," three years

12   before Plaintiff filed her initial complaint.  Accordingly, Plaintiff's Section 25501.5 claim is time-

13   barred unless the statute of limitations is tolled for some reason.

14           Under California law, the statute of limitations can be tolled by the discovery rule, which

15   delays the accrual of the date of a cause of action until plaintiff is aware of the injury.  *Hopkins v.*

16   *Dow Corning Corp.*, 33 F.3d 1116, 1120 (9th Cir. 1994).  "Where a plaintiff relies on the discovery

17   rule, the plaintiff "must *specifically* plead facts to show (1) the time and manner of discovery and (2)

18   the inability to have made earlier discovery despite reasonable diligence."  *Micrel, Inc. v . Monolithic*

19   *Power Systems, Inc.*, 2005 WL 6426678, *3 (N.D. Cal. Dec. 9, 2005) (emphasis added).  Despite

20   multiple opportunities, Plaintiff has never alleged facts showing when she discovered that Mr. Fischer

21   was allegedly unlicensed and why she could not have discovered the violation earlier.  These pleading

22   failures are hardly surprising, considering that such information is "easy to get" and can usually be

23   found with "one phone call or web search."  U.S. Securities & Exchange Comm'n, Protect Your

24   Money:  Check Out Brokers and Investment Advisers (Herrera Decl. Ex. B).  Under the

25   circumstances, Plaintiff's failure to plead facts supporting the application of the discovery rule can

26   only be viewed as a concession that there are no such facts.  Accordingly, Plaintiff's claim for

27   violations of Section 25501.5 is barred by the statute of limitations.

28

DEFENDANTS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

1

## VI.    <u>CONCLUSION</u>

2           For all of the foregoing reasons, Defendants respectfully submit that the TAC fails to allege a

3    primary violation of federal or state securities laws by Mr. Fischer and cannot be amended to do so.

4    Because Plaintiff's Secondary Liability Claims against Defendants depend on the existence of a

5    primary violation by Mr. Fischer, and because Plaintiff fails to allege any such violation, Defendants

6    respectfully submit that Plaintiff's Secondary Liability Claims should be dismissed without further

7    leave to amend.  In addition, the Notebookz Defendants and Mr. Campion respectfully submit that the

8    Court should *sua sponte* enter a conforming order dismissing Plaintiff's Primary Liability Claims

9    against them.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

Dated: June 9, 2014                        STEIN & LUBIN LLP


                          By:   /s/ Tanya Herrera
                                Tanya Herrera
                                Attorneys for Defendants
                                Jon Sabes, Steven Sabes and Marvin Siegel

Dated: June 9, 2014                        CLAASSEN, A Professional Corporation


                          By:   /s/ John S. Claassen
                                John S. Claassen
                                Attorneys for Defendants
                                Brian Campion, NotebookZ, Inc. and Joshua Rosen

Dated: June 9, 2014                        THE LAW OFFICES OF TOM CHIA-KAI WANG


                          By:   /s/ Tom Chia-Kai Wang
                                Tom Chia-Kai Wang
                                Attorneys for Defendant
                                Mani Kulasooriya

Dated: June 9, 2014


                          By:   /s/ Mary C. Garfein
                                Mary C. Garfein
                                Attorneys for Defendant
                                Jorge Fernandes

Dated: June 9, 2014                        FOX ROTHSCHILD LLP


                          By:   /s/ Curtis E. Smolar
                                Curtis E. Smolar
                                Attorneys for Defendant
                                Steve Waterhouse

DEFENDANTS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS