1

2

3

4

5

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

6  SUZANNE JACKSON,

7            Plaintiff,                    No. C 11-2753 PJH

8      v.                                  **ORDER GRANTING MOTION FOR**
                                           **JUDGMENT ON THE PLEADINGS**
9  WILLIAM FISCHER, et al.,

10           Defendants.
   _____/

11

12        Before the court is defendants' motion for judgment on the pleadings.  Having read

13  the parties' papers and carefully considered their arguments and the relevant legal

14  authority, the court GRANTS the motion as follows.

15                              **BACKGROUND**

16        This case was filed in June 2011 by plaintiff Suzanne Jackson ("Jackson") against

17  numerous defendants, including William Fischer ("Fischer").  Jackson alleges that when

18  she met Fischer in October 2006, he presented himself as a sophisticated investment

19  advisor with connections to high-tech issuers and access to early investment opportunities.

20  She claims that Fischer fraudulently induced her to lend money to or invest in several

21  business entities, by misrepresenting their prospects for financial success.  These entities

22  included defendants SpeciGen, Inc. ("SpeciGen"), PeerDreams, Inc. ("PeerDreams"),

23  Notebookz, Inc. ("Notebookz"), iLeonardo.com, Inc. ("iLeonardo"), New Moon LLC ("New

24  Moon"), and Sazani Beach Hotel ("Sazani Beach").

25        The procedural background of the case is as set forth in the December 20, 2013

26  order re defendants' motions to dismiss the third amended complaint ("TAC") (Doc. 241).

27  Briefly, Jackson filed the original complaint against 18 defendants, asserting claims of

28  securities fraud under federal and state law and other common law claims.  On December

United States District Court
For the Northern District of California

1   5, 2011, Jackson filed the first amended complaint, against the same 18 defendants.  In

2   April 2012, Fischer filed for Chapter 7 bankruptcy protection in the District of Minnesota,

3   claiming $12 million in liabilities, and listing Jackson as the primary creditor.

4         On June 15, 2012, pursuant to stipulation, Jackson filed the second amended

5   complaint ("SAC"), asserting claims against 20 defendants.  Named as defendants were

6   Fischer; Jon Sabes ("J. Sabes"); Steven Sabes ("S. Sabes"); Marvin Siegel ("Siegel"); Brian

7   Campion ("Campion"); Lonnie Bookbinder ("Bookbinder"); Mani Kulasooriya

8   ("Kulasooriya"); Jorge Fernandes ("Fernandes"); Joshua Rosen ("Rosen"); Steve

9   Waterhouse ("Waterhouse"); Jean Paul a/k/a "Buzzy" Lamere ("Lamere"); SpeciGen;

10  PeerDreams; Notebookz; iLeonardo; New Moon; Monvia LLC ("Monvia"); CII Ltd. ("CII");

11  Sazani Beach; and Upper Orbit LLC ("Upper Orbit").

12        J. Sabes, S. Sabes, Siegel, and Campion were alleged to be officers and/or

13  directors of SpeciGen; Bookbinder was alleged to be the CEO of SpeciGen; Lamere was

14  alleged to be a "consultant" to SpeciGen; Kulasooriya was alleged to be a director of

15  PeerDreams and New Moon; Fernandes was alleged to be a director of Monvia, New

16  Moon, and PeerDreams; Rosen was alleged to be the CEO and a director of Notebookz

17  and iLeonardo; Waterhouse was alleged to be a director of Notebookz; and CII was alleged

18  to be the owner of Sazani Beach.

19        On July 17, 2012, Jackson filed an adversary proceeding in the Bankruptcy Court in

20  Minnesota, challenging the dischargeability of Fisher's debt.  Although the Bankruptcy

21  Court discharged Fischer on July 19, 2012, the court entered judgment in the adversary

22  proceeding on December 18, 2013, finding that the debt owed by Fischer to Jackson was

23  non-dischargeable.  This judgment was based on Fischer's agreement that he was

24  indebted to Jackson in the amount of $8.250 million, and his admission that his debt to

25  Jackson was non-dischargeable under 11 U.S.C. § 523(a)(2)(A) because it was obtained

26  "by means of false pretenses, false representations and actual frauds committed against

27  [Jackson], as she alleged in her adversary complaint."

28        Meanwhile, on March 15, 2013, this court issued an order granting motions to

United States District Court

For the Northern District of California

1  dismiss the SAC filed by several defendants.  The dismissal was with leave to amend.  On

2  April 24, 2013, plaintiff filed the TAC, against the same 20 defendants.  Four groups of

3  defendants filed motions to dismiss – J.Sabes, S.Sabes, and Siegel; Kulasooriya and

4  Monvia; New Moon; and Fernandes.  (Campion, Rosen, Notebookz, and Waterhouse filed

5  answers in lieu of moving to dismiss.)  On December 20, 2013, the court issued an order

6  granting the motions in part and denying them in part.  Among other things, the court

7  dismissed all claims asserted against Monvia, New Moon, and Lamere, with prejudice.

8  　　　　Remaining in the case as defendants following the December 20, 2013 order were

9  Fischer, J.Sabes, S.Sabes, Siegel, Campion, Bookbinder, Kulasooriya, Fernandes, Rosen,

10  Waterhouse, Upper Orbit (default entered), SpeciGen (default entered), PeerDreams

11  (default entered), Notebookz, iLeonardo (default entered), CII, and Sazani Beach.  Of

12  these, there has been no appearance by Bookbinder, CII, or Sazani Beach, although the

13  court also notes that none of the causes of action alleges any facts as to those three

14  defendants.

15  　　　　Remaining in the case are the following causes of action:

16  　　　　　　　　(1) a claim of primary liability under § 10(b) of the 1934 Securities Exchange

17  Act and Rule 10b-5 promulgated thereunder, against Fischer, Campion, Rosen, SpeciGen,

18  PeerDreams, Notebookz, and iLeonardo;[1]

19  　　　　　　　　(2) a claim of primary liability under California Corporations Code §§ 25401

20  and 25501, against Fischer, Campion, Rosen, SpeciGen, Peer Dreams, Notebookz, and

21  iLeonardo;

22  　　　　　　　　(3) a claim of "control person" liability under § 20(a) of the 1934 Securities

23  Exchange Act, against Fischer, J.Sabes, S.Sabes, Siegel, Campion, Kulasooriya,

24  Fernandes, Rosen, Waterhouse, and possibly Bookbinder;

25  　　　　　　　　(4) a claim of "control person" liability under California Corporations Code

26  _____

27  　　　[1]  However, as noted in the order re the motion to dismiss the SAC (and reiterated in
the order re the motion to dismiss the TAC), Jackson has conceded that Fischer was the only

28  "speaker" (at least as to J.Sabes, S.Sabes, Siegel, Kulasooriya, and Fernandes), and thus the
only potentially viable defendant under § 10(b) and Rule 10b-5.

§ 25504, against J.Sabes, S.Sabes, Siegel, Campion, Bookbinder, Kulasooriya, Fernandes, Rosen, and Waterhouse;

(5) a claim of breach of fiduciary duty, against Fischer, Campion, Rosen, and Waterhouse;

(6) a claim under California Corporations Code §§ 25230 and 25235, against Fischer;

(7) a claim of declaratory judgment of breach of the Investment Advisors Act of 1940, 15 U.S.C. §§ 80b-1, et seq., against Fischer;

(8) a claim of negligent misrepresentation, against Fischer, Campion, and Rosen;

(9) a claim under California Corporations Code § 25501.5, for rescission of sales by unlicensed broker-dealer, against Fischer; and a secondary liability claim against J. Sabes, S. Sabes, Siegel, Campion, Kulasooriya, Fernandes, Rosen, and Waterhouse;

(10) a claim of common law misrepresentation, against Fischer and possibly "all defendants" (though claim has been dismissed with prejudice as to J.Sabes, S.Sabes, Siegel, Kulasooriya, and Fernandes); and

(11) a claim of respondeat superior, against Fischer, and possibly against J.Sabes, S.Sabes, Siegel, Campion, Bookbinder, Kulasooriya, Fernandes, Rosen, and Waterhouse. However, respondeat superior is a theory of liability, not an independent cause of action, see Beal v. Royal Oak Bar, 2014 WL 1678015 at *5 (N.D. Cal. Apr. 28, 2014); Animal Legal Defense Fund v. HVFG LLC, 2013 WL 3242244 at *3 (N.D. Cal. June 25, 2013), and this cause of action is therefore DISMISSED.

Now before the court is the motion of defendants Siegel, J.Sabes, S.Sabes, Campion, Kulasooriya, Fernandes, Rosen, and Waterhouse pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to the third cause of action for violations of § 20(a) of the Securities Exchange Act, the fourth cause of action for violations of California Corporations Code § 25504, and the ninth cause of action for violations of California Corporations Code § 25501.5.

4

United States District Court

For the Northern District of California

**DISCUSSION**

A.    Legal Standard

A motion for judgment on the pleadings pursuant to Rule 12(c) "challenges the legal sufficiency of the opposing party's pleadings."  William W Schwarzer et al, Federal Civil Procedure Before Trial ¶ 9:316 (2014 ed.) (emphasis in original); Fed. R. Civ. P 12(c).  The legal standards governing Rules 12(c) and 12(b)(6) are "functionally identical," Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989), as both permit challenges directed at the legal sufficiency of the parties' allegations.  See also Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012).  Thus, judgment on the pleadings is appropriate when the pleaded facts, accepted as true and viewed in the light most favorable to the non-moving party, entitle the moving party to a judgment as a matter of law.  Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1301 (9th Cir. 1992); see also Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).

The standard articulated in Twombly and Iqbal applies equally to a motion for judgment on the pleadings, as to a motion to dismiss for failure to state a claim.  Chavez, 683 F.3d at 1108-09; Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054-55 & n.4 (9th Cir. 2011); see also Lowden v. T-Mobile USA, Inc., 378 Fed. Appx. 693, 694, 2010 WL 1841891 at *1 (9th Cir., May 10, 2010).  "[T]he tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  Indeed, "a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. at 544, 555 (2007) (citations and quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

In actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The plaintiff must allege facts showing the "time, place, and specific content of the false representations as well as the identities of the

United States District Court

For the Northern District of California

1  parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007)

2  (citations omitted). "[A]llegations of fraud must be specific enough to give defendants

3  notice of the particular misconduct which is alleged to constitute the fraud charged "so that

4  they can defend against the charge and not just deny that they have done anything wrong."

5  Sanford v. MemberWorks, Inc., 625 F.3d 550, 558 (9th Cir. 2010) (citation and quotation

6  omitted). In addition, the plaintiff must do more than simply allege the neutral facts

7  necessary to identify the transaction; he must also explain why the disputed statement was

8  untrue or misleading at the time it was made. Yourish v. California Amplifier, 191 F.3d 983,

9  992–93 (9th Cir. 1999).

10  B.    Defendants' Motion

11       In the present motion, defendants J.Sabes, S.Sabes, Siegel, and Campion ("the

12  SpeciGen defendants"); Kulasooriya and Fernandes ("the PeerDreams defendants"); and

13  Rosen and Waterhouse ("the Notebookz defendants") seek judgment on the pleadings with

14  respect to the "secondary liability" claims – the third claim for relief under § 20(a) of the

15  Securities Exchange Act of 1934; the fourth claim for relief for violations of California

16  Corporations Code § 25504; and the ninth claim for relief under California Corporations

17  Code § 25501.5.

18       They assert that the TAC does not allege facts sufficient to support a claim of

19  primary liability against Fischer with regard to the securities transactions involving

20  SpeciGen, PeerDreams, or Notebookz, and thus, that there can be no viable claims of

21  secondary liability under either federal or state law.

22       1.    Claim under § 10(b) and Rule 10b-5 of the Securities Exchange Act

23       Defendants argue that the TAC fails to state a claim against Fischer under § 10(b)

24  and Rule 10b-5 in connection with Jackson's investments in SpeciGen, PeerDreams,

25  Notebookz, and iLeonardo.

26       To state a claim for securities fraud under § 10(b) of the Securities Exchange Act of

27  1934, and Rule 10b-5 promulgated thereunder, a plaintiff must plead a material

28  misrepresentation or omission by the defendant; scienter; a connection with the purchase

6

United States District Court

For the Northern District of California

1    or sale of a security; reliance; economic loss; and loss causation.  Stoneridge Inv. Partners,

2    LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008); see also Dura Pharms., Inc. v.

3    Broudo, 544 U.S. 336, 341-42 (2005).

4         At the pleading stage, claims under § 10(b) and Rule 10b-5 must satisfy both Rule

5    9(b) and the requirements of the PSLRA.  In re VeriFone Holdings, Inc. Sec. Litig., 704

6    F.3d 694, 701 (9th Cir. 2012).  Under Rule 9(b), all elements of a securities fraud action,

7    including loss causation, must be pled with particularity.  Oregon Pub. Emps. Retirement

8    Fund v. Apollo Grp. Inc., 774 F.3d 598, 605 (9th Cir. 2014).

9         In addition, the PSLRA requires that the complaint plead both falsity and scienter

10   with particularity.  See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir.

11   2009).  That is, the complaint must "specify each statement alleged to have been

12   misleading [and] the reason or reasons why the statement is misleading," and must "state

13   with particularity facts giving rise to a strong inference that the defendant acted with the

14   required state of mind."  15 U.S.C. § 78u-4(b)(1)-(2); see Tellabs, Inc. v. Makor Issues &

15   Rights, Ltd., 551 U.S. 308, 321 (2007).  If the complaint does not satisfy the PSLRA's

16   pleading requirements, the court, upon motion of the defendant, must dismiss it.  15 U.S.C.

17   § 78u-4(b)(3)(A).

18        In the present motion, defendants contend that the TAC does not plead facts

19   sufficient to state a primary violation by Fischer under either the PSLRA or Rule 9(b).  They

20   argue that the TAC does not adequately allege that Fischer made actionable false or

21   misleading statements regarding SpeciGen, PeerDreams, or Notebookz/iLeonardo, and

22   that the TAC does not allege particularized facts supporting a strong inference of scienter.

23             a.    Falsity

24        Defendants argue that the TAC alleges no actionable false or misleading statement

25   by Fischer, with regard to the investments in SpeciGen, PeerDreams, and Notebookz/

26   iLeonardo.  The PSLRA requires – whether alleging that a defendant "made an untrue

27   statement of a material fact" or alleging that a defendant "omitted to state a material fact

28   necessary in order to make the statements made, in the light of the circumstances in which

7

they were made, not misleading" – that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . [that it] state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

In short, falsity must be pled with particularity. Zucco, 552 F.3d at 990-91. In addition, a plaintiff must plead "specific facts indicating why" the statements at issue were false. Ronconi v. Larkin, 253 F.3d 423, 434 (9th Cir. 2001). "[V]ague claims about what statements were false or misleading [and] how they were false" are subject to dismissal. Metzler Inv. GmbH v. Corinthian Colls., Inc., 540 F.3d 1049, 1070 (9th Cir. 2008).

A statement or omission is misleading in the securities fraud context "if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 985 (9th Cir. 2008) (citation omitted). To be actionable, statements must have been "known to be false or misleading at that time by the people who made them." Larkin, 253 F.3d at 430. The mere fact that "[a] prediction proves to be wrong in hindsight does not render the statement untrue when made." In re VeriFone, 11 F.3d at 871.

Finally, liability under Rule 10b-5 is limited to parties who actually "make" misstatements of fact. See Janus Capital Grp., Inc. v. First Derivative Traders, 131 S.Ct. 2296, 2302 (2011) ("One 'makes' a statement by stating it."). In Janus Capital, the Supreme Court expressly rejected an attempt to rely on common law agency principles to extend primary liability to non-speakers under Rule 10b-5. See id. at 2304.

### i. Investments in SpeciGen

Jackson alleges that her investments in SpeciGen were in the form of seven loans secured by promissory notes, which were "convertible" into either common or preferred stock, at SpeciGen's discretion, and which were issued on various dates from December 2006 to the summer of 2008. TAC ¶ 86. She asserts that Fischer, acting as SpeciGen's "agent," made false or misleading statements at meetings at her home and in Fischer's office in October-November 2006, and in February 2007. TAC ¶¶ 87, 89, 90. She claims

8

United States District Court

For the Northern District of California

that Fischer made the following false and misleading representations:

●       that SpeciGen's technology was a "proven concept," and that "publicly-traded pharmaceutical companies" (unidentified) were interested in partnering or licensing the technology – when in fact, no such companies had expressed any interest in the potential applications and products, and one of SpeciGen's "directors" (unidentified) had warned Fischer that the technology had not reached the "proof of concept" stage, TAC ¶ 87(a);

●       that "Series A round" financing promoted to Jackson would be sufficient to carry the company to its "exit strategy," at which point she could recover her investment at a profit – when in fact, substantial additional capital was going to be needed beyond the Series A round financing to even get to the point of seeking FDA approval, TAC ¶ 87(b);

●       that SpeciGen had an active "industrial research collaboration" with a "prominent biotech company" (unidentified) – when in fact, no such partnership existed and the (unidentified) "companies" approached as of that date had rejected such a proposal, TAC ¶ 87(c);

●       that SpeciGen's technology had been "validated" by a "commercial biotech company" (unidentified) – when in fact, its only revenues had been research grants from the government, and no "validation" had been received from any source, TAC ¶ 87(d);

●       that Jackson's Series A investment consisted solely of convertible promissory notes, with no disclosure that other investors had been offered common stock on a match to the convertible notes, which "diluted" Jackson's interest in the securities, TAC ¶ 87(e);

●       that the Series A round was fully subscribed and that the other investors were sophisticated and had biotech startup knowledge – when in fact, the round was less than half subscribed, none of the other investors had experience investing in startups, and the one SpeciGen "director" (unidentified) who did have such experience declined to invest because he thought the company's proposed capital structure would be

9

United States District Court

For the Northern District of California

1   unattractive to venture capital or institutional investors in future rounds, TAC ¶ 87(f);

2           ●    that SpeciGen's "exit strategy" (the point at which Jackson would

3   presumably recoup her investment) would come within 2-3 years – when in fact, SpeciGen

4   had no legitimate basis for such an estimate, and unless an institutional investor or biotech

5   company invested or bought the company's technology, it would be 15-20 years before the

6   investment was recouped (if ever), TAC ¶ 87(g);

7           ●    that SpeciGen "had all of the licenses and patents needed to

8   commercially develop its technologies" – when in fact, the company lacked "term rights" in

9   all of its technologies and its licenses "required ongoing royalty payments that it could not

10  maintain at the company's present burn rate," TAC ¶ 87(h);

11          ●    that the Series A offering was "moving along well" – when in fact,

12  "they" had difficulty selling the offering and "desperately needed Jackson to make a

13  substantial second investment in order . . . for the company to survive," TAC ¶ 89(a);

14          ●    that Genentech had "vetted the company's technology" – when in fact,

15  Genentech had shown no interest in partnering with SpeciGen when it had been

16  "approached," because of the immaturity of SpeciGen's progress with its unproven

17  technology, TAC ¶ 89(b); and

18          ●    that "they" were in advanced discussions with "a public company and

19  an established biotech company" (unidentified) regarding advanced research partnerships

20  – when in fact, there were no such discussion underway, and "the one later research

21  partnership reached was poorly structured" and SpeciGen could not use the resulting data,

22  TAC ¶ 89(c).

23       Jackson asserts further that in none of the discussions with Fischer in October-

24  November 2006 and February 2007, or in "subsequent communications through Fischer as

25  directed by defendants J.Sabes, S.Sabes, Siegel, and Campion," was she told

26          ●    that the company CEO, Bookbinder, had just resigned, complaining of

27  mismanagement by the directors, TAC ¶ 90(a);

28          ●    that one of the board members, Dr. David Goldsteen, had resigned

from the board over concerns regarding "unlawful financing irregularities," including the sale of securities to Jackson, as well as doubts about the viability of the company's technology and its plans for developing and commercializing it, TAC ¶ 90(b);

●      that SpeciGen had conducted fundraising activities in violation of the 1933 Securities Act, which had "exposed the company to litigation that could put it out of business," TAC ¶ 90(c);

●      that the financial projections prepared by Campion and Siegel were short by more than 50% of what was needed to achieve the preliminary pretrial stage, TAC ¶ 90(d);

●      that more than six experienced biotech and Silicon Valley investors, including Suni Paul, Mark Pincus, David Hornik, Menlo Ventures, and August Capital, had passed on SpeciGen's effort to raise money, TAC ¶ 90(e);

●      that SpeciGen's cash flow was so "perilous" that it didn't even have money to meet its commitments to Bookbinder's separation agreement, and that J.Sabes and S.Sabes had refused to invest in the company, TAC ¶ 90(f), (g).

Defendants argue that the TAC fails to state a claim of primary liability against Fischer with regard to the SpeciGen investments.  In general, they argue that the TAC does not specify exactly what Fischer said about SpeciGen or why the statements were false or misleading when made.  In addition, they make a number of arguments about representations attributed to Fischer.

With regard to the alleged representations about SpeciGen's product development – e.g., that SpeciGen's technology was a "proven concept" that was "approaching a stage in which it could be commercialized," and that it had been "validated" by an unidentified "commercial biotech company" and "vetted" by Genentech, see TAC ¶¶ 87(a), (d), and 89(b), defendants argue that the statements are vague and unclear, in that Jackson does not explain what is meant by "proven concept," "validated," or "vetted," and does not clearly explain why the statements were false or misleading at the time they were made, or provide any objective criteria by which the truth or falsity of the statements can be ascertained.

United States District Court
For the Northern District of California

1    In response, Jackson claims to be astonished that defendants do not know what

2  "proven concept" or "proof of concept" means, as she contends it is a "major milestone in

3  biotech."  She contends that in the SpeciGen context, "proof of concept" meant that the

4  "so-called 'protein cages' designed to deliver therapeutic drugs to specific cancer cells

5  would have been proven to fulfill their designed function in tests on small animals."  She

6  argues that no such tests were ever undertaken, and no responsible investor would have

7  considered investing in SpeciGen to be a good risk.

8    The court agrees with defendants that the allegations that Fischer falsely

9  represented that SpeciGen's technology was a "proven concept" that had been "vetted" by

10  Genentech, and "validated" by an unidentified "commercial biotech company," TAC

11  ¶¶ 87(a), (b), (d), are vague and conclusory.  Jackson does not explain in the TAC what the

12  SpeciGen technology was or what she means by "proven concept;" does not provide any

13  clue as to what form the alleged "vetting" and "validation" took; does not identify either the

14  "publicly-traded pharmaceutical companies" that were supposedly interested in partnering

15  or licensing the technology, or the "commercial biotech company" that had allegedly

16  "validated" the technology; and does not point to any contemporaneous facts showing why

17  these alleged misrepresentations were false at the time they were made.  The only

18  explanation in the TAC as to why the representations were false is that an unidentified

19  SpeciGen "director" had allegedly warned Fischer and J.Sabes that he thought the

20  technology had not reached the "proof of concept" stage and that as of October 2006,

21  SpeciGen was not yet even a "promising biotech company."  TAC ¶ 87(a)(2).

22    As for the allegation that Fischer falsely represented that the SpeciGen technology

23  had been "validated" or "vetted" by other companies, Jackson asserts that Fischer made

24  this representation to give her a false sense of security and low risk.  She claims that in

25  making this representation, TAC ¶ 89(h), Fischer convinced her that Genentech had made

26  a thorough review of the SpeciGen technology and had found it to be viable.  However, the

27  TAC does not include such allegations, as it simply refers to a representation that

28  SpeciGen's technology had been "vetted" or "validated" without any explanation or

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   particularized details.

2       With regard to the allegation that Fischer stated that SpeciGen was in "advanced

3   discussions with a public company and an established biotech company about advanced

4   research prospects that would develop preclinical data sufficient to complete clinical trials,"

5   TAC ¶ 89(c), defendants argue that the TAC fails to specify what Fischer actually said,

6   whether he used the terms "advanced discussions" and "advanced research partnerships,"

7   and if so, what he meant by those terms.  Defendants also assert that the allegation that

8   the statement was false "because no such discussions were underway" does not explain

9   why the statement was false at the time it was made.

10      In response, Jackson argues that the existence of a research collaboration

11  agreement with a respected biotech company is "key" both to scientific progress and to

12  attracting investors, and that Fisher's representation caused her to experience a "false

13  sense of security."  She adds that at trial, her "industry expert" will testify that the existence

14  of a research collaboration with a respected, established biotech company is key to

15  scientific progress in product development.

16      Again, the court notes that Jackson is improperly seeking to introduce facts and

17  theories that are not pled in the TAC.  In addition, the allegations are insufficiently

18  particularized, for the reasons argued by the defendants.  In particular, Jackson does not

19  specify whether the alleged statement regarding the "research collaboration" was false

20  because SpeciGen was not discussing research partnerships with anyone, or because

21  SpeciGen was discussing research partnerships but the discussions were only preliminary,

22  or because the research partnerships were not likely to result in the development of

23  preclinical data sufficient to complete clinical trials.  Moreover, her speculation regarding

24  future trial testimony of some expert has no place in an analysis of whether the TAC states

25  a claim.  Finally, she does not reconcile her claim that "no such discussions were

26  underway" with the contradictory suggestion that some companies (including Genentech)

27  had considered research partnerships with SpeciGen, see TAC ¶¶ 87(b), 89(b), and that

28  SpeciGen eventually did form a research partnership with another company, TAC ¶ 89(c).

United States District Court
For the Northern District of California

With regard to representations about SpeciGen's patent portfolio – the statement that "SpeciGen had all of the licenses and patents needed to commercially develop its technologies" (TAC ¶ 87(h) – defendants argue that Jackson fails to specify what Fischer said or why the statement was false or misleading at the time it was made.  They contend that Jackson's assertion that the statement was false because SpeciGen's licenses "required ongoing royalty payments that it could not maintain at the company's present burn rate" is not an explanation as to why the statement that SpeciGen had all its licenses and patents was false, because she does not allege that Fischer told her that all such licenses and patents would be available to SpeciGen for free, or that he told her that royalty payments would be easy to make.

In response, Jackson asserts that she was misled into believing that the technology at the heart of SpeciGen's mission was in place with a long-term lock on its use.  She contends that she was also misled with regard to the value of that technology (again referring to the vague term "proof of concept.")  The court finds, however, that the allegations regarding SpeciGen's "technology" and its rights to "licenses and patents" are insufficiently detailed to satisfy the pleading requirements of the PSLRA.

With regard to representations about SpeciGen's fundraising prospects – such as the alleged statement that "the Series A offering was moving along well," TAC ¶ 89(a), and that it "would be sufficient to carry the company to its 'exit strategy,'" TAC ¶ 87(b), defendants assert that reasonable investors do not rely on vague statements of corporate optimism.  Plaintiff's only response is that statements that the stock offering was "moving along well" confirmed earlier statements made by Fischer and led her to believe that the investments were safe and sound.

In the Ninth Circuit, "vague, generalized assertions of corporate optimism or statements of 'mere puffing' are not actionable material misrepresentations under federal securities laws" because no reasonable investor would rely on such statements.  See In re Cutera Sec. Litig., 610 F.3d 1103, 1111 (9th Cir. 2010); Glen Holly Entm't, Inc. v. Tektronix, Inc., 352 F.3d 367, 379 (9th Cir. 2003).  The alleged representations in TAC ¶¶ 87(b) and

United States District Court
For the Northern District of California

89(a) appear to be little more than statements of corporate optimism regarding SpeciGen's prospects for obtaining financing for its future operations, or "mere puffery."

As for the statement that the Series A offering "would be fully sufficient to carry the company to its 'exit strategy,'" which "would come within 2-3 years," which Jackson alleges was false because the Series A offering would not raise enough money to get SpeciGen to preliminary trials, and because barring an acquisition or outside investment, it would take 12-15 years "for a return on investment," TAC ¶ 87(b), (g), defendants argue that statements regarding fundraising prospects were simply predictions, and that the fact that a prediction ends up being incorrect does not render the statement untrue when made.

In response, Jackson asserts that the representation that the Series A round of financing would be sufficient to take SpeciGen commercial was false, because SpeciGen was years and millions of dollars away from seeking FDA approval, and was material because it misrepresented SpeciGen's capital requirements and the status of its technology.  She contends that the representation that the offering was being subscribed by sophisticated investors was false because no institutional investor had agreed to invest, and even SpeciGen board members had refused to invest their own money.  She also asserts that the timing of an "exit strategy" is critical information to investors, and claims that telling her that her investment would be returned in a 2-3 year time frame was "the equivalent of" telling her that the company was in an advanced stage of research and product development, and that her funds would be tied up for only a few years.  She contends that at trial, she will have an "industry investment expert" explain "this and other claims" to the jury.

However, Jackson does not address defendants' argument that the representations regarding SpeciGen's financing and its "exit strategy" were simply predictions that did not pan out.  As pled, the alleged representations do appear to have been little more than predictions.  The fact that a prediction ends up being incorrect does not render the statement untrue when made.  See In re Syntex Corp. Sec. Litig., 95 F.3d 922, 929 (9th Cir. 1996).  A false prediction, without more, does not  constitute actionable securities

United States District Court

For the Northern District of California

1   fraud.  See id. at 934; In re VeriFone, 11 F.3d at 871; In re Northpoint Commc'ns Grp., Inc.

2   Sec. Litig., 184 F.Supp. 2d 991, 1004 (N.D. Cal. 2001); In re PetSmart, Inc. Sec. Litig., 61

3   F.Supp. 2d 982, 992 (D. Ariz. 1999).  Where an allegedly false or misleading statement is a

4   prediction about future prospects, the plaintiff must allege with particularity facts showing

5   that the initial prediction was clearly a falsehood at the time it was made.  See In re Am.

6   Apparel, Inc. S'holder Litig., 2013 WL 174119 at * 27 (C.D. Cal. Jan. 16, 2013); Kane v.

7   Madge Networks, N.V., 2000 WL 33208116 at *6 (N.D. Cal. May 26, 2000).

8        As pled, many of the allegations regarding SpeciGen are largely classic "fraud by

9   hindsight" allegations, not actionable under the federal securities laws.  See In re Silicon

10  Graphics, Inc. Sec. Litig., 183 F.3d 970, 988 (9th Cir. 1999) (Congress enacted the PSLRA

11  in part to put an end  to the practice of pleading "fraud by hindsight"); see also Larkin, 253

12  F.3d at 430 n.12.  The TAC repeatedly asserts that certain predictions proved incorrect –

13  such as that plaintiff would recover her investment within 2-3 years; that SpeciGen was on

14  target to partner with some unspecified biotech company or companies; that SpeciGen was

15  in a good position as far as achieving its capital requirements; and that SpeciGen would

16  have sufficient funding to reach some unspecified level of success with some unspecified

17  technology.

18       However, vague allegations that certain predictions proved incorrect is not the same

19  as alleging with particularity facts that show the initial prediction was a falsehood.  See In re

20  Am. Apparel, Inc. S'holder Litig., 855 F.Supp. 2d 1043, 1070 (C.D. Cal. 2012); see also In

21  re Daou Sys., Inc., 411 F.3d 1006, 1021 (9th Cir. 2005) ("Although these projections might

22  have been overly optimistic when made, they do not rise to the level of a material

23  misrepresentation actionable" under the securities laws.).  It is true that representations

24  concerning the status of investments at the time Jackson's investment was being solicited –

25  e.g., that the Series A round was fully subscribed and that the other investors were

26  "sophisticated" and had "biotech startup knowledge" – are potentially actionable, but as

27  pled, they are too lacking in specificity to provide the basis of a Securities Act violation.

28       Finally, the TAC alleges no facts showing "why the difference between the earlier

United States District Court

For the Northern District of California

1   and later statements is not merely the difference between two permissible judgments, but

2   rather the result of a falsehood."  See Philco Investments, Ltd. v. Martin, 2011 WL 500694

3   at *8 (N.D. Cal. Feb. 9, 2011); see also Larkin, 253 F.3d at 430 n.12 (fraud by hindsight is

4   not actionable); In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1549 & n.8 (9th Cir. 1994)

5   (claims of "fraud by hindsight" will not meet the requirements of Rule 9(b)).  Overall, while

6   Jackson disputes defendants' assertion that the allegations of falsity are inadequately pled,

7   she does not adequately respond to the argument that the TAC does not allege specific

8   contemporaneous facts showing that any particular alleged statement by Fischer was false

9   at the time it was made.

10       The court agrees with defendants that the allegations in the TAC generally do not

11   plead sufficient facts to establish falsity.  Many of the facts alleged in TAC ¶¶ 87 and 89 are

12   not pled with particularity.  Moreover, as noted below, the more significant problem with the

13   allegations regarding the SpeciGen investments is that the TAC does not plead facts

14   sufficient to create a strong inference of scienter as to Fischer.

15                          ii.   Investments in PeerDreams

16       Jackson alleges that her investments in PeerDreams were made in the form of six

17   convertible promissory notes she purchased between January 2007 and June 2009, four of

18   which were allegedly converted into shares of PeerDreams common stock.  TAC ¶ 103.

19   She claims to have made the investments in reliance on oral statements by Fischer at

20   meetings in December 2006 and January 2007.  TAC ¶ 108.  She asserts that Fischer

21   made false representations about PeerDreams based on information he had obtained from

22   Monvia, Fernandes, and Kulasooriya ("the Monvia defendants"), while acting as their

23   "agent," in connection with the sale of convertible promissory notes and common stock.

24   TAC ¶¶ 109-113.

25       In the TAC, Jackson asserts that the following statements were among the false and

26   misleading representations made by Fischer regarding Peer Dreams:

27            ●     that Peer Dreams had a "marketing plan," prepared by Monvia,

28   Fernandes, and Kulasooriya, that called for profitable operations within 18 months in

United States District Court

For the Northern District of California

1   operations targeted to various goals, when in fact, the plan had not been developed and did

2   not exist, TAC ¶ 110(a);

3       ●  that Kulasooriya had extensive experience with comparable

4   entrepreneurial software investments through his previous work at Yahoo Finance, when in

5   fact, that previous experience was in the context of a large public company with substantial

6   internal financing, risk assessment, and marketing capabilities of no relevance to a modest

7   startup, TAC ¶ 110(b);

8       ●  that the (unidentified) "software and website" could be up and running

9   in 12 months, when in fact, "they" knew it would take more than 18 months to develop it

10   and as long to come up with a real marketing plan, TAC ¶ 110(c);

11       ●  that "based on the funds raised and needed in the next year,

12   PeerDreams would be up and running and able [to] extract substantial profit as a fund

13   raising platform apart from charities[,]" when in fact, the funds raised and "sought to be

14   raised" were insufficient to launch a single site profitably dedicated to any of the marketed

15   uses, TAC ¶ 110(d);

16       ●  that "the funds raised in the first year would be sufficient to fund the

17   development of 'white label' (private label) sites for specific institutions," when in fact, "the

18   amount planned to be raised was insufficient to fund the development of a single white

19   label site" (with, as plaintiff appears to be describing it, negative consequences), TAC

20   ¶ 110(e).

21     Jackson asserts further that "through the spring and summer of 2007," she "was

22   never told"

23       ●  that "the company" (unspecified) "had failed to conduct any market

24   studies that would allow it to assess the revenues that might be realized relative to the

25   investment needed to bring its product to market in a profitable manner," TAC ¶ 111(a);

26       ●  that "the company" (unspecified) lacked "any commitment from major

27   nonprofit organizations to test or engage its product" and thus "had no idea of the likely

28   market for it," TAC ¶ 111(b);

United States District Court

For the Northern District of California

- that of "several company employees and executives, none of them had successful track records of commercializing software products in competitive markets, and lacked experience marketing web-based software products to nonprofit organizations," TAC ¶ 111(c);

- that "more than three times the raised capital was needed to enter just half the markets identified to Jackson when she made her investments" and that "the rapidly deteriorating capital position" of "the company" (unspecified) would make it impossible to raise more funds, TAC ¶ 111(d);

- that because additional funds "could not be raised," and because of the "'burn rate' of its diminished capital, no 'white label' sites could be developed to raise operating revenue," and "the company" would likely "have to close its door within a year, TAC ¶ 111(e).

Defendants argue that the allegations in the TAC are insufficient to state a claim of primary liability against Fischer with regard to the PeerDreams investments. In general, they argue that the TAC does not specify exactly what Fischer said about PeerDreams and that it makes no attempt to plead contemporaneous facts establishing that any alleged statement regarding PeerDreams was false or misleading when made. In addition, they make a number of arguments about representations attributed to Fischer.

With regard to the allegation that PeerDreams had a "marketing plan" that called for profitable operations within 18 months, TAC ¶ 110(a), defendants argue that the TAC does not specify what Fischer allegedly said about PeerDreams' marketing plan, and alleges no facts showing the statement was false or misleading when made.

In response, Jackson contends that in December 2006 and January 2007, Fischer made a presentation based on information supplied by Kulasooriya and Fernandes" which included "a claim that PeerDreams had a marketing plan that would enable it to reach operational profitability within 18 months." She asserts that she made three $50,000 investments in 2007 (in January, March, and May), and that had she been told there was no plan, she could have ended her funding.

United States District Court

For the Northern District of California

1      With regard to the allegation that Kulasooriya, a founding director of PeerDreams,

2  had extensive experience with comparable investments, TAC ¶ 110(b)(2), defendants

3  assert that Jackson pleads no facts establishing that Kulasooriya lacked experience with

4  comparable entrepreneurial software investments, and that she in fact concedes that

5  Kulasooriya <u>was</u> experienced, but adds that his experience was not relevant to "a modest

6  startup."

7      In response, Jackson asserts that Kulasooriya was presented as having been

8  involved in "entrepreneurial risk projects" while working at Yahoo Finance, but that in fact,

9  he was only a mid-level technical employee at Yahoo.  Jackson contends that because

10  PeerDreams was a very small company, the representations about the background of

11  Kulasooriya were material to her investment decision.  She claims that her "expert" will

12  testify at trial that "no established venture firm or knowledgeable investor would sponsor a

13  company with nonexistent management experience."

14      Defendants assert further that the allegations that PeerDreams' software and

15  website would be up and running within 12 months, TAC ¶ 110(c); that PeerDreams would

16  be profitable as a fundraising platform within a year, TAC ¶ 110(d); and that PeerDreams

17  had enough money to "fund the development of 'white label' (private label) sites for specific

18  institutions," TAC ¶ 110(e), represent classic claims of "fraud by hindsight," which is not

19  actionable under federal securities laws.  <u>See</u> <u>Silicon Graphics</u>, 183 F.3d at 988; <u>see</u>

20  <u>also</u> <u>Larkin</u>, 253 F.3d at 430 n.12.

21      For example, defendants point to the allegation that Fischer stated that PeerDreams'

22  website would be operational within a year, all the while "knowing" that it would take at least

23  18 months to develop it and as long to come up with a real marketing plan.  TAC ¶ 110(c).

24  Defendants contend that Fischer's lack of clairvoyance does not constitute securities fraud.

25  Similarly, they argue, the allegation that Fischer falsely predicted that the funds raised in

26  the first year would be sufficient to fund the development of "white label" sites, whereas

27  "the amount actually planned to be raised" was insufficient to accomplish that goal, is

28  nothing more than an allegation that Fischer's predictions did not come to fruition.

1    In response, Jackson contends that the statement that PeerDreams would be

2    profitable in 18 months and the statement that its website and products would be

3    completed in a year were both false, and created "an illusion of a limited chronological risk

4    window, and concealed the risk to [her] by presenting claims of imminent positive cashflow

5    and profit."  Jackson claims that there was in fact no feasible plan to produce an

6    independent, financially viable website product in 12 months, and that in addition, without

7    plaintiff's funds, PeerDreams would have had to shut its doors because there would have

8    been no cash flow.

9    While the TAC attributes a number of allegedly false statements regarding

10   PeerDreams to Fischer – such as the statement that there was a marketing plan (when

11   there was in fact no marketing plan) and that Kulasooriya had a particular level of

12   experience (when in fact he did not have that type of experience), but such statements are

13   not adequately pled because the TAC alleges no specific contemporaneous facts showing

14   that the statements were false at the time they were made, and her opposition does not

15   point to any.  Even more problematic, as discussed below, is the absence of any

16   particularized facts showing that Fischer knew the statements were false at the time he

17   made them.

18   While a statement of belief may be actionable if the speaker knows his opinion has

19   no reasonable basis in fact at the time it is expressed, see Virginia Bankshares, Inc. v.

20   Sandberg, 501 U.S. 1083, 1093-94 (1991), a false prediction, without more, does not

21   constitute actionable securities fraud.  See In re Syntex, 95 F.3d at 934.  Where an

22   allegedly false or misleading statement is a prediction about future prospects, the plaintiff

23   must allege with particularity facts showing that the initial prediction was clearly a falsehood

24   at the time it was made.  See In re Am. Apparel, 2013 WL 174119 at * 27.  Here, at most,

25   the TAC simply alleges that Fischer represented that PeerDreams would achieve a certain

26   level of success within a stated period, and that his prediction did not come to pass.

27   As pled, many of the allegations against Peer Dreams are largely classic "fraud by

28   hindsight" allegations, not actionable under the federal securities laws.  See Silicon

**United States District Court**
For the Northern District of California

1  Graphics, 183 F.3d at 988; see also Larkin, 253 F.3d at 430 n.12.  The TAC repeatedly

2  asserts that certain predictions proved incorrect – such as that PeerDreams' software

3  would be up and running within 12 months, and that PeerDreams would be profitable as a

4  fundraising platform witnin a year, and that Peer Dreams had sufficient money to fund

5  future projects.  However, vague allegations that certain predictions proved incorrect is not

6  the same as alleging with particularity facts that show the initial prediction was a falsehood.

7  See In re Am. Apparel, 855 F.Supp. 2d at 1070; see also In re Daou Sys., 411 F.3d at

8  1021.

9      Defendants do not specifically address the alleged omissions, TAC ¶¶ 111(b)-(e)

10  (allegations that "the company" failed to conduct marketing studies; that it "lacked any

11  commitment from major nonprofit organizations" to test or engage its product; that the

12  employees and executives lacked "successful track records" of commercializing and

13  marketing software products; that more capital was needed to enter the markets identified

14  to Jackson when she made her investments and that the "rapidly deteriorating capital

15  position" of "the company" would make it impossible to raise more funds; and that "the

16  company" would likely close its door within a year because funds could not be raised).

17  Nevertheless, as discussed above with regard to the alleged misrepresentations, the TAC

18  pleads no facts sufficient to create a strong inference of scienter as to these alleged

19  omissions.

20                    iii. Investments in Notebookz/iLeonardo

21      Jackson alleges that her investments in Notebookz/iLeonardo were made in two

22  parts.  In February 2007, she acquired a $50,000 convertible promissory note, and in April

23  2007, she acquired a $200,000 convertible promissory note.  TAC ¶ 94(a), (b).  Then "[i]n

24  or about July, 2007," the two promissory notes were, "at the election of defendant Rosen

25  and defendant Notebookz, converted into 507,694 shares of preferred stock."  TAC

26  ¶ 94(c).

27      Jackson asserts that "[t]he initial purchases" of the convertible promissory notes

28  were made following (or at) three meetings in February and March 2007 (two at Fischer's

1   office and one at Jackson's home), at which Rosen and Fischer made presentations and

2   Rosen <u>or</u> Fischer "mentioned the likelihood that Google would be a likely acquirer in the

3   near to immediate future."  TAC ¶¶ 94-96.  She alleges that during these meetings, Fischer

4   made the following false representations to her "to induce" her investments:

5          ●       that "the company" had raised sufficient capital to produce and market

6   its product – when in fact, "it" had insufficient capital and "would need substantial further

7   investment" beyond Jackson's contribution, TAC ¶ 97(a);

8          ●       that "the company" had discussed its "business, management,

9   financial affairs" and "the details of its offering" with Jackson – when in fact, "it" had "never

10  disclosed the company's product, management, financial affairs, competing products or

11  even the potential market for its products" other than to falsely claim to Jackson that "they"

12  expected Google to acquire "the company," TAC ¶ 97(b);

13         ●       that "the company" had given Jackson "the opportunity to review the

14  company's facilities" – when in fact, she did not know where those facilities were located, or

15  "anything about the company's staffing, equipment or product plans," TAC ¶ 97(c);

16         ●       that "the company" had given her "the opportunity to review all the

17  terms and conditions of its securities offerings" – when in fact, "the company" had "only

18  delivered a signature page after the February 16 meeting through defendant Fischer and

19  did not provide any documentation relating to its offering at the time of the sale of its

20  securities to her," TAC ¶ 97(d).

21         Jackson asserts further that in late June or early July 2007, Fischer provided her

22  with an "Investor's Rights Agreement" relating to "the preferred stock she was about to

23  receive through the conversion of her promissory notes."  She claims that this agreement

24  made "a number of representations that were false," specifically

25         ●       that "[t]he company," through Rosen, "promised to provide a balance

26  sheet, statements of income and cash flows within 120 days of the end of each fiscal year"

27  – a promise "that was regularly breached and that deprived plaintiff of the ability to monitor

28  her investments and act in response to the concealed deteriorating position" of "the

United States District Court

For the Northern District of California

1   company," TAC ¶ 98(a); and

2       ● that "[t]he company," through Rosen, "promised that within 45 days of

3   the close of the third quarter each year, that it would provide her with unaudited statements

4   of income and cash flows, an unaudited balance sheet and a statement of stockholders'

5   equity" – a promise "that was never kept," TAC ¶ 98(b).

6       Defendants argue that the allegations in the TAC are insufficient to state a claim of

7   primary liability against Fischer with regard to the Notebookz/iLeonardo investments.  In

8   general, they argue that the TAC does not specify exactly what Fischer said about

9   Notebookz/iLeonardo and that it makes no attempt to plead contemporaneous facts

10  establishing that any alleged statement regarding Notebookz/iLeonardo was false or

11  misleading when made.  Defendants contend that the alleged oral statements made by

12  Fischer are repeated in "vague and impressionistic terms," in a manner that is insufficient to

13  allege falsity under the PSLRA.

14      Defendants also note that the TAC repeatedly refers to Notebookz and iLeonardo

15  collectively as "the company," with the result that defendants are left to guess which

16  company Fischer's alleged misrepresentations referred to (and which company the TAC is

17  referring to).  For example, with regard to the statements that Fischer and/or Rosen

18  "expected Google to acquire the company" (TAC ¶ 97(b), and regarding the possibility that

19  "Google would be a likely acquirer in the near to immediate future" (TAC ¶ 96), defendants

20  argue that Jackson has left them to guess which speaker said what about which company.

21      In her opposition, Jackson does not specifically address the fact that TAC fails to

22  distinguish between Notebookz and iLeonardo.  Jackson asserts that "Notebookz had a

23  product called iLeonardo that presumably was in the same tech 'space' as Google."

24  However, the TAC nowhere alleges that "Notebookz had a product called iLeonardo," but

25  rather alleges that iLeonardo is a corporation and that Notebookz is a corporation.

26  This reference to Notebookz and iLeonardo collectively as "the company" is fatal to the

27  entire claim, because the TAC clearly alleges that they are two separate companies, but

28  the TAC does not identify which company Fischer was talking about.

United States District Court

For the Northern District of California

1    Jackson also asserts that even if defendants claim to be confused, "[w]e know that

2   Mr. Fisher is not because he has potentially incurred $250,000 of liability for himself by

3   admitting to selling Notebookz securities to Mrs. Jackson based on 'fraud' and 'false

4   pretenses'" (referring to the judgment in the adversary proceeding).  She claims that the

5   court cannot dismiss "these defendants" given that "their fundraiser says he sold their

6   securities through fraud."

7    To the extent that Jackson is attempting to argue in her opposition that falsity is

8   established by virtue of Fischer's concession in the adversary proceeding that he sold her

9   $250,000 of Notebookz securities, the court finds this theory to be without merit.  The TAC

10  includes no allegations regarding the adversary proceeding judgment, and reliance on

11  matters outside the pleadings is improper under the Rule 12(b)(6) standard.  See

12  Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (court may not

13  take into account additional facts asserted in a memorandum opposing a motion to dismiss,

14  because such memoranda do not constitute pleadings under Rule 7(a)).

15   As for the allegation that either Fischer or Rosen mentioned "the likelihood that

16  Google would be a likely acquirer" in the near to immediate future, TAC ¶ 96, Jackson

17  argues that this statement is sufficiently specific.  However, she alleges no facts showing

18  that the statement was false at the time it was made.  It is not sufficient for Jackson to

19  argue, as she does in the opposition, that "[d]epositions of Rosen and Waterhouse would

20  yield that information."  Under the PSLRA, a plaintiff is required to allege facts sufficient to

21  support the claim without benefit of any prior discovery.  See Tellabs, 551 U.S. at 313, 321.

22   In somewhat of a nonsequitur, Jackson also asserts that the allegations about

23  "capitalization" (referring to the allegation that Fischer and/or Rosen had represented that

24  "the company" had raised sufficient capital to "produce and market its product," see TAC

25  ¶ 97(a)) are "sufficient to allow a jury to believe that  Mrs. Jackson's investments were

26  induced through material misrepresentations."  She contends that "expert testimony about

27  the significance of capitalization, along with expert testimony about the major deficiencies

28  in Notebookz products" will allow the jury to conclude that plaintiff was defrauded.  And, she

1    argues, "when Mr. Fischer's admission of fraud is added to the mix, this is a claim that is

2    'plausible' under Iqbal and should go to the jury."

3         Jackson's claim in the opposition that her "expert" will testify that capitalization is a

4    major criterion in an investment decision is misplaced in a motion for judgment on the

5    pleadings, because she cannot look to matters outside the TAC to support the allegations.

6    Moreover, the proffered "expert" testimony does not cure the absence of factual allegations

7    that Fischer knew the alleged statement was false when made.

8         With regard to the allegations that Fischer falsely represented that "the company"

9    had discussed with Jackson "the company's" business, management, and financial affairs;

10   and that "the company" had given Jackson the opportunity to review "the company's"

11   facilities and all the terms and conditions of its securities offering, TAC ¶ 97(b), (c), (d),

12   defendants argue that Jackson cannot plausibly allege reliance (an essential element of a §

13   10(b) cause of action) where – as here – she already possesses sufficient information to

14   call the alleged false representations into question.

15        In response, Jackson argues that "Notebookz' disregard of investors and the

16   meaninglessness of the subscription agreement it proffers underscores the fact of the

17   manifestly false boilerplate in its subscription documentation," and asserts that "the

18   document made false claims about what had been shown" to Jackson," and that

19   defendants "fail to address the fact that [she] was not given the document before she

20   invested," but rather was given only a signature page."  The court notes, however, that

21   Jackson cannot credibly claim to have relied on an alleged misrepresentation regarding her

22   own due diligence investigation (whether or not she was given an opportunity to tour the

23   facilities, or review the terms and conditions of the securities offering) when "the truth" was

24   already in her possession.

25        With regard to the allegation that Fischer gave Jackson an "Investor's Rights

26   Agreement" which falsely promised that "the company" would make certain financial

27   information available to her at the end of the fiscal year, defendants assert that this does

28   not state a claim for securities fraud.  They contend that if anything, it is an allegation of a

United States District Court

For the Northern District of California

26

United States District Court

For the Northern District of California

1    failure to carry out a promise, which is a contract claim.

2         The court is unable to locate any response to defendants' arguments regarding the

3    Investor's Rights Agreement.  In general, defendants are correct that these allegations

4    appear to relate more to a contract claim than to a claim for securities fraud.

5         Jackson's response to defendants' arguments regarding the allegations about

6    Notebookz/iLeonardo is generally rambling and unfocused.  While Jackson disputes

7    defendants' assertion that the allegations of falsity are inadequately pled, she does not

8    adequately respond to the argument that the TAC fails to plead specific contemporaneous

9    facts showing that any particular alleged statement by Fischer was false <u>at the time it was</u>

10   <u>made</u>.

11              b.    Scienter

12        Defendants argue that the TAC fails to allege facts raising an inference that Fischer

13   acted with scienter.  To adequately plead scienter under the PSLRA, a plaintiff must "state

14   with particularity facts giving rise to a strong inference that the defendant acted with the

15   required state of mind." 15 U.S.C. § 78u-4(b)(2).  Scienter is defined as "a mental state

16   embracing intent to deceive, manipulate, or defraud." <u>Ernst & Ernst v. Hochfelder</u>, 425 U.S.

17   185, 193 n.12 (1976).  A plaintiff must allege facts showing that the defendant made false

18   or misleading statements "either intentionally or with deliberate recklessness." <u>Zucco</u>, 552

19   F.3d at 991 (quotations omitted); <u>see also</u>  <u>In re NVIDIA Corp. Sec. Litig.</u>, 768 F.3d 1046,

20   1053 (9th Cir. 2014) (quoting <u>In re Silicon Graphics</u>, 183 F.3d at 977) (recklessness

21   satisfies scienter under § 10(b) "to the extent it reflects some degree of intentional or

22   conscious misconduct")).

23        Under <u>Tellabs</u>, the court must generally accept all factual allegations in the

24   complaint as true.  <u>Id.</u>, 551 U.S. at 322.  The court must then "consider the complaint in its

25   entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6)

26   motions to dismiss, in particular, documents incorporated into the complaint by reference,

27   and matters of which the court may take judicial notice.  <u>Id.</u>  That is, the court "must review

28   all the allegations holistically" when determining whether scienter has been sufficiently pled.

United States District Court

For the Northern District of California

1    Matrixx Initiatives, Inc. v. Siracusano, 131 S.Ct. 1309, 1324 (2011) (quoting Tellabs, 551

2    U.S. at 326). The relevant inquiry is "whether all of the facts alleged, taken collectively,

3    give rise to a strong inference of scienter, not whether any individual allegation, scrutinized

4    in isolation, meets that standard." Tellabs, 551 U.S. at 323; see New Mexico State Inv.

5    Council v. Ernst & Young LLP, 641 F.3d 1089, 1095 (9th Cir. 2011).

6        A strong inference of scienter "must be more than merely plausible or reasonable – it

7    must be cogent and at least as compelling as any opposing inference of nonfraudulent

8    intent." Id. at 314. The inference must be that "the defendant[ ] made false or misleading

9    statements either intentionally or with deliberate recklessness." Zucco, 552 F.3d at 991

10    (internal quotation marks omitted). Deliberate recklessness means that the reckless

11    conduct "reflects some degree of intentional or conscious misconduct." South Ferry LP,

12    No. 2 v. Killinger, 542 F.3d 776, 782 (9th Cir. 2008). "[A]n actor is [deliberately] reckless if

13    he had reasonable grounds to believe material facts existed that were misstated or omitted,

14    but nonetheless failed to obtain and disclose such facts although he could have done so

15    without extraordinary effort." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 390 (9th Cir.

16    2010) (quoting Howard v. Everex Sys., Inc., 228 F.3d 1057, 1064 (9th Cir. 2000)).

17        Here, defendants assert, Jackson has pled no facts showing what Fischer knew or

18    when he knew it. For example, they argue, the TAC does not identify a single email,

19    internal report, or other contemporaneous document suggesting that any alleged

20    misstatement was knowingly false when made. Rather, they argue, the TAC generally

21    alleges that all "defendants" (presumably including Fischer), were "aware" that the

22    defendant companies needed funding to survive, see TAC ¶¶ 131(a), (c), (d); and faced

23    significant product development challenges, see TAC ¶ 87(b), (d). Defendants contend that

24    these generic allegations could be applied to any startup company, and note that the TAC

25    applies the same allegations indiscriminately to "all of the '34 Act defendants," see TAC ¶¶

26    130-132.

27        Defendants argue further that the TAC describes "routine corporate objectives" such

28    as the desire to obtain financing and develop new products, but assert that the Ninth Circuit

United States District Court

For the Northern District of California

1   has consistently rejected attempts to premise a strong inference of scienter on such

2   allegations.  See, e.g., In re Rigel Pharms, Inc. Sec. Litig., 697 F.3d 869, 884 (9th Cir.

3   2012).  "Facts showing mere recklessness or a motive to commit fraud and opportunity to

4   do so provide some reasonable inference of intent, but are not sufficient to establish a

5   strong inference of deliberate recklessness."  In re VeriFone, 704 F.3d at 701.

6        Here, however, defendants contend that the allegations in the TAC, which are not

7   even specific to Fischer, do not "state with particularity facts giving rise to a strong

8   inference that the defendant acted with the required state of mind," as required by 15

9   U.S.C. § 78u-4(b)(2).  They argue that none of Jackson's allegations are cogent or

10  compelling enough to raise a strong inference of scienter, even when considered

11  holistically.

12       In opposition, Jackson asserts that "scienter is present with regard to all

13  defendants," and claims that she has pled "a mix of facts that show multiple material

14  misrepresentations and omissions."  She also contends that "[t]he documented

15  misrepresentations and omissions describe statements of fact [that] are so inaccurate as to

16  be either reckless or intentional."  She claims that the fact that their "only discernable

17  purpose" was to induce her to invest in the defendant companies creates a strong inference

18  that there was a compelling financial motive."  She argues that there is no innocent

19  explanation for these misrepresentations and omissions, and that it would require "extreme

20  mental acrobatics" to find that the alleged misrepresentations could have been made

21  without intent.

22       In addition, Jackson reiterates that Fischer admitted in the Minnesota adversary

23  proceeding that he defrauded her.  She contends that under principles of issue preclusion,

24  Fischer and the other defendants in this matter are precluded from litigating, for the second

25  time, "the issue of Fischer's fraudulent actions."  For this reason, she contends, Fischer's

26  primary liability under § 10b-5 has been decided and "cannot be relitigated."  She adds,

27  however, that should the court determine that the TAC does not adequately state a claim

28  against Fischer for primary liability under § 10(b) and Rule 10b-5, she should be given

United States District Court

For the Northern District of California

1    leave to amend to plead additional facts obtained in discovery in the adversary proceeding.

2         The court finds that the TAC alleges no facts sufficient to support a strong inference

3    of scienter as to Fischer.  Rather than pleading "in great detail, facts constituting strong

4    circumstantial evidence or deliberate reckless or conscious misconduct," In re Vantive

5    Corp. Sec. Litig., 283 F.3d 1079, 1091 (9th Cir. 2002), the TAC's scienter allegations are

6    lumped together, without the specification that Fischer knew anything at any particular time.

7    In short, there are no allegations regarding what Fischer knew at the time any alleged

8    misstatement was made, and no allegations of particularized contemporaneous facts

9    showing that Fischer had any information – whether via internal documents, meeting notes,

10   emails, or otherwise – that might cast doubt on any particular statement that he allegedly

11   made at that time about any one of the defendant companies.  See In re Read-Rite Corp.

12   Sec. Litig., 335 F.3d 843, 847 (9th Cir. 2003).

13        The theory of fraud at the core of the TAC does not support a reasonable inference

14   of fraud, much less one that is "strong," "cogent," and "compelling."  See Tellabs, 551 U.S.

15   at 314.  At most, the TAC appears to simply describe "routine corporate objectives" such as

16   the desire to obtain new financing and develop new products, which are insufficient to

17   support or create a strong inference of scienter.  See In re Rigel Pharms., 697 F.3d at 884

18   ("allegations of routine corporate objectives such as the desire to obtain good financing and

19   expand are not, without more, sufficient to allege scienter; to hold otherwise would be to

20   support a finding of scienter for any company that seeks to enhance its business

21   prospects").

22        Jackson's argument in the opposition that Fischer's alleged misstatements were so

23   egregious that they could only have been made with intent to defraud or deliberate

24   recklessness is without merit, and similar arguments have been repeatedly rejected by

25   courts in this Circuit.  Allegations that defendants "must have known" or "could have known"

26   that their statements were false or misleading when made do not satisfy the PSLRA's

27   standard for pleading scienter.  See, e.g., Zucco, 552 F.3d at 998; Metzler, 540 F.3d at

28   1068.

United States District Court

For the Northern District of California

1    As for Jackson's repeated assertion in the opposition that the judgment in the

2    Minnesota adversary proceeding effectively proves Fischer's liability for fraud under the

3    PSLRA, the court cannot consider the adversary proceeding judgment in deciding whether

4    the TAC states a claim for relief, in part because the judgment was issued after the TAC

5    was filed and thus is not referenced in the TAC.

6    There are no facts alleged in the TAC showing what Fischer knew or when he knew

7    it, and nothing contemporaneous suggesting that any alleged misstatement by Fischer was

8    knowingly false when made. In her opposition, Jackson simply repeats the conclusory

9    allegation that all "defendants" – presumably including Fischer but not distinguishing among

10   defendants – were "aware" that the defendant companies needed funding to survive, TAC ¶

11   131(a), (d), (d), and faced significant product development challenges, TAC ¶ 87(b), (d).

12   Scienter must be alleged as to each defendant separately. See Apollo Grp., 774

13   F.3d at 607 (citing Glazer Cap. Mgmt, LP v. Magtistri, 549 F.3d 736, 743-44 (9th Cir. 2008)

14   (adopting a theory of "collective scienter" in certain limited circumstances));[2] see also In re

15   NVIDIA, 768 F.3d at 1063. Here, the TAC does not allege facts showing that Fischer knew

16   that any of the alleged false statements were false, much less that he knew they were false

17   at the time he made them.

18       c.    Analysis

19   The motion to dismiss the claims of primary liability against Fischer is GRANTED.

20   The court finds that taken together, the allegations regarding falsity and scienter in the TAC

21   do not state a claim of primary liability as to Fischer under § 10(b) and Rule 10b-5.

22   Moreover, the fact that TAC includes claims and defendants that are no longer in the case

23   makes it difficult to sort out exactly what remains. Thus, the dismissal is with leave to

24   amend, in part to afford plaintiff the opportunity state a coherent claim and to eliminate all

25   _____

26   [2] The Ninth Circuit "may . . . impute scienter to individual defendants in some situations"
– for example, when it finds that a company's public statements are so "important and

27   dramatically false that they would create a strong inference that at least some corporate
officials knew of the falsity upon publication." Id. Here, Fischer was not a "corporate official,"

28   and thus scienter cannot be imputed to him under this theory. Moreover, the TAC does not
clearly allege that any of the defendant companies made false statements to plaintiff.

United States District Court

For the Northern District of California

1  claims and all defendants that have been dismissed.

2      In addition, Jackson argues in her opposition that "a number of important events

3  have occurred" since the filing of the TAC (in April 2013), and that those "events" support a

4  finding of primary liability, as does Fischer's "confession" in the December 17, 2013

5  stipulation for judgment in the Minnesota adversary proceeding.  Jackson's repeated

6  attempts to rely on allegations that do not appear in the TAC, while reciting assurances that

7  the TAC's deficiencies will be remedied through discovery or evidence at trial, represents

8  the exact approach that Congress sought to stop in enacting the PSLRA, when it included

9  the requirement that the plaintiff plead particularized facts at the outset of the case.  See

10  Tellabs, 551 U.S. at 313, 321; see also 15 U.S.C. § 78u-4(b)(3)(b).

11      In this motion for judgment on the pleadings, Jackson's task in opposing defendants'

12  motion is to establish that the TAC states a claim.  Thus, Jackson cannot rely on

13  information she did not plead or reference in the TAC – including the circumstances of

14  Fischer's "admission" which gave rise to the judgment by the Minnesota Bankruptcy Court.

15  Moreover, the question whether Fischer's "confession," standing alone, constitutes proof of

16  primary liability under § 10(b) and Rule 10b-5 of the 1934 Securities Exchange Act (which

17  have specific requirements both for pleading and proof) is not before the court.

18      Jackson suggests that because Fischer conceded in the Minnesota adversary

19  proceeding that he had defrauded her, there is no longer any need to satisfy the

20  requirements for pleading a claim for securities fraud under the PSLRA (which has very

21  specific pleading requirements).  However, while there is potentially a motion to be filed

22  regarding the "res judicata" effect of the judgment in the adversary proceeding on the

23  claims asserted in this action, Jackson cannot simply substitute that judgment for the

24  requirement that she state a claim under the PSLRA.

25       As for Jackson's repeated assertion that "expert testimony" will show some fact or

26  prove some theory, the court notes that the issue for resolution in the present motion is

27  whether she has stated a claim of primary liability under the PSLRA against Fischer.

28  Whether she can or cannot establish some fact by means of expert testimony is irrelevant,

United States District Court

For the Northern District of California

1    as are her claims that "discovery will show" some fact or other.

2         2.    Claim under §§ 25401 and 25501 of the California Corporations Code

3         Defendants argue that the TAC fails to allege a primary violation against Fischer

4    under § 25401 and § 25501.  Section 25401 makes it unlawful

5         for any person to offer to sell a security in this state or buy or offer to buy a
      security in this state by means of any written or oral communication which
6         includes an untrue statement of a material fact or omits to state a material fact
      necessary in order to make the statements made, in the light of
7         circumstances in which they were made, not misleading.

8    Cal. Corp. Code § 25401.  Section 25501 provides a private right of action for violations of

9    § 25401.  "Any person who violates [s]ection 25401 shall be liable to the person who

10   purchases a security from him or sells a security to him," unless the defendant proves that

11   the plaintiff knew the true facts or that the defendant exercised reasonable care  and did

12   not know of the untruth or omissions.  Cal. Corp. Code § 25501.  Because § 25501 is

13   derivative of § 25401, see Lubin v. Sybedon Corp., 688 F.Supp. 1425, 1453 (S.D. Cal.

14   1988), a § 25501 claim must be dismissed if there is no viable claim under § 25401.

15   Defendants contend that the TAC fails to state a claim against Fischer under § 25401

16   because there are no facts pled showing that Fischer made any material misstatement, or

17   that Jackson purchased securities from Fischer.

18        The second cause of action alleging violations of §§ 25401/25501 incorporates the

19   prior allegations by reference (including all allegations relating to the § 10(b)/Rule 10b-5

20   cause of action against SpeciGen, Notebookz, and PeerDreams), and asserts that "[t]he

21   false and misleading statements and the material omissions set forth above relating to the

22   sale of securities in SpeciGen, Notebookz, [and] PeerDreams . . . were such that, if

23   conveyed in a truthful manner, would cause a reasonable investor to decline to invest."

24   TAC ¶¶ 134-137.  The only specific mention of Fischer is in the allegation that

25        [t]he defendant companies, through the named officer and director
      defendants, engaged defendant Fischer to promote and sell their securities,
26        and were specifically aware, as Mr. Fischer has testified, that he was selling
      their securities to Jackson.  As such, Fischer was their agent and sold
27        securities to Jackson in that capacity.

28   TAC ¶ 138.  Defendants contend that, for the reason argued in their motion to dismiss the

United States District Court
For the Northern District of California

1   § 10(b) and Rule 10b-5 claim, the TAC fails to allege facts showing that Fischer made a

2   material misstatement regarding any of the defendant companies.

3       Defendants also note that §§ 25401/25501 "impose liability only on the actual seller

4   of the security."  See Apollo Capital Fund LLC v. Roth Capital Partners, LLC, 158 Cal. App.

5   4th 226, 253-54 (2007).  They argue that Jackson has not – and cannot – allege that she

6   purchased securities from Fischer, as opposed to the defendant companies.  In support,

7   they cite to stock purchase agreements she entered into with SpeciGen, PeerDreams, and

8   Notebookz, copies of which are attached to declarations filed in support of defendants'

9   motion, and as to which defendants request the court to take judicial notice.

10      In opposition, Jackson contends that the TAC adequately pleads a primary violation

11  of §§ 25401/25501.  She claims that the TAC is "replete with detailed itemizations of

12  specific overt, affirmative misrepresentations."  However, she provides no further

13  explanation apart from citing the allegations in TAC ¶¶  87(a)-(h) (Fischer's representations

14  about SpeciGen); TAC ¶ 95(a)-(c) (reference is not clear, as ¶ 95 does not have sub-parts

15  and does not allege representations by Fischer or anyone); and TAC ¶¶ 97(a)-(d) (Fischer's

16  representations about "the company," which appears to be a reference to either Notebookz

17  or iLeonardo).

18      Jackson asserts further that Fischer "offer[ed] to sell" her securities in each

19  defendant company, and that he did so through "written and oral communications" that

20  included "untrue statements of a material fact necessary to make the statements made, in

21  light of the circumstances under which they were made, not misleading" in violation of

22  § 25401.  She also contends that under § 25501, Fischer sold securities, but then asks, "[I]f

23  Mr. Fischer did not sell them, who did?"  She asserts that, apart from some later meetings

24  with the defendants, she made all her initial and most of her subsequent purchases through

25  Fischer.  She argues that unless the defendants can explain how she purchased the

26  securities, if not through Fischer, then the claim that she did not purchase securities from

27  Fischer must collapse.  She adds that if defendants' position is that the defendant

28  companies sold the securities (rather than Fischer), then she should be granted leave to

United States District Court

For the Northern District of California

1  "reopen the [c]ourt's dismissal with prejudice as to them based on Fischer's agency and on

2  discovery showing direct misrepresentations made to Mrs. Jackson."

3      The court finds that the TAC fails to state a claim of primary liability under §§ 25401

4  and 25501 as to Fischer.  While the TAC does allege that Fischer made some statements

5  that were false or misleading, it does not allege that Fischer sold plaintiff the securities.

6  Both § 25401 and § 25501 impose liability only on the actual seller or purchaser of the

7  security.  Apollo, 158 Cal. App. 4th at 253-54.  Jackson now asserts that "someone" must

8  have sold her the securities, and if not Fischer, it must have been the defendant

9  companies.  She contends that if the defendants can argue that the defendant companies

10  sold the securities, then she "should be granted leave to reopen the Court's dismissal with

11  prejudice as to them based on Fischer's agency and on discovery showing direct

12  misrepresentations made to [her]."

13      In the March 15, 2013 order granting the motions to dismiss the SAC, the court

14  dismissed the § 25401 claim with leave to amend, to the extent that Jackson could allege

15  that the moving officer and director defendants (J.Sabes, S.Sabes, Siegel, Kulasooriya,

16  and Fernandes) sold securities to her.  She did not correct that deficiency.  In the

17  December 20, 2013 order re the motion to dismiss the TAC, the court granted the motion of

18  the moving parties (again, J.Sabes, S.Sabes, Siegel, Kulasooriya, and Fernandes) to

19  dismiss the § 25401 claim as to the officer and director defendants, on the basis that the

20  TAC failed to allege that any of those defendants (or any particular defendant) had made

21  any material misstatement in connection with the sale of securities.  The court noted that

22  the only misstatements that were attributed to a particular individual were attributed to

23  Fischer "as agent for" the various companies in which he solicited investments from

24  plaintiff, and that in addition, the TAC did not allege that any of those defendant companies

25  sold plaintiff any securities.

26      It appears that Jackson is requesting that the court allow her to seek reconsideration

27  of the prior order re the motion to dismiss the TAC.  However, the court previously granted

28  leave to amend the claim in the order re the motion to dismiss the SAC, and cautioned

United States District Court

For the Northern District of California

1  Jackson that if she did not allege that the director and officer defendants made false

2  statements in connection with the sale of securities, a subsequent dismissal would be with

3  prejudice.  There is no basis for granting leave to seek reconsideration.

4         3.     Claim under § 25501.5 of the California Corporations Code

5        Defendants argue that the TAC fails to allege a claim of primary liability against

6  Fischer under Corporations Code § 25501.5.  By its terms, § 25501.5 establishes a private

7  right of action in favor of a person who "purchases a security from" an unlicensed broker-

8  dealer.

9          A person who purchases a security from or sells a security to a broker-dealer
           that is required to be licensed and has not, at the time of the sale or

10         purchase, applied for and secured from the commissioner a certificate under
           Part 3 (commencing with Section 25200), that is in effect at the time of the

11         sale or purchase authorizing that broker-dealer to act in that capacity, may
           bring an action for rescission of the sale or purchase or, if the plaintiff or

12         defendant no longer owns the security, for damages.

13 Cal. Corp. Code § 25501.5(a)(1).

14       The TAC alleges that Fischer was "acting in . . . behalf" of the "individual and

15 corporate defendants . . . to sell their securities, or the securities of the companies of which

16 they were directors[;]" and that "[t]he individual and corporate defendants knew or should

17 have known that Fischer was an unlicensed investment advisor, and failed to disclose that

18 fact to Jackson[.]"  TAC ¶ 189.  Accordingly, "[s]aid defendants were therefore engaged in

19 the promotion of the sale of unregistered securities through Fischer."  TAC ¶ 190.

20       In their first argument, defendants contend that while Jackson alleges that Fischer

21 was an unlicensed broker-dealer, she does not – and cannot – assert that she purchased

22 securities from him.  They assert that the purchase agreements attached as exhibits to their

23 request for judicial notice confirm that she purchased convertible promissory notes and

24 preferred stock from the defendant companies – not from Fischer.  As a result, they

25 contend, plaintiff cannot allege a claim against Fischer under § 25501.5.

26       In their second argument, defendants assert that the § 25501.5 claim is time-barred.

27 As the court noted in the order dismissing the SAC, the applicable statute of limitations for

28 claims arising under § 25501.5 is either two years from the date of discovery or five years

United States District Court

For the Northern District of California

1   after the violation, see Cal. Corp. Code § 25506(b); or three years, see Civil Code

2   § 338(a) (three-year limitation period for claims created by statute.  See Jackson v. Fischer,

3   931 F.Supp. 2d 1049, 1066 (N.D. Cal. 2013).  In opposing the motion to dismiss the SAC,

4   plaintiff appeared to concede that the applicable limitations period was two years from the

5   date of discovery.  Id.

6        Section 25506 begins to run "when the plaintiff discovers the facts constituting the

7   violation or in the exercise of reasonable diligence should have discovered them."  Kramas

8   v. Security Gas & Oil Inc., 672 F.2d 766, 770-71 (9th Cir. 1982).  Plaintiff alleges in the TAC

9   that she "became concerned" about a $1 million "trading account" with Fischer "[i]n or about

10  summer 2008," TAC ¶ 63, and that from the summer of 2008, Fischer began presenting

11  "claims of progress to assuage her concerns about her investments," TAC ¶ 69.

12  Defendants assert that plaintiff's own allegations confirm that a duty to inquire arose as

13  early as the summer of 2008 – three years before plaintiff filed the initial complaint in this

14  action.

15       "Generally speaking, a cause of action accrues at 'the time when the cause of action

16  is complete with all of its elements.'"  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797,

17  806 (2007) (citation and quotation omitted).  Where applicable, the discovery rule

18  postpones accrual of a cause of action until the plaintiff discovers, or has reason to

19  discover, the cause of action."  Aryeh v. Canon Bus. Solutions, Inc., 55 Cal. 4th 1185, 1192

20  (2013) (citations and quotations omitted).  The discovery rule requires a plaintiff to inquire

21  into the existence of a cause of action when he/she has access to information that would

22  prompt a reasonable party to do so.  See Fox, 35 Cal. 4th at 807-08

23       In order to rely on the discovery rule for delayed accrual of a cause of action, a

24  plaintiff must specifically plead facts showing the time and manner of discovery and the

25  inability to have made earlier discovery despite reasonable diligence.  McKelvey v. Boeing

26  North American, Inc., 74 Cal. App. 4th 151, 160 (1999); see also Fox, 35 Cal. 4th at 808.

27  In the order dismissing the SAC (which did not seek dismissal of the claims of primary

28  liability asserted against Fischer), the court dismissed the § 25501.5 claim as to the moving

United States District Court

For the Northern District of California

1   defendants, with leave to amend to (among other things) allege facts sufficient to show

2   when Jackson discovered the alleged violation.  Jackson, 931 F.Supp. 2d at 1067.

3        Here, defendants contend that plaintiff has never alleged facts showing when she

4   discovered that Fischer was an "unlicensed broker" and why she could not have discovered

5   the violation earlier.  Defendants argue that having failed to plead facts necessary to

6   support application of the discovery rule, plaintiff cannot now maintain a claim that is time-

7   barred.

8        In opposition, plaintiff asserts that the TAC alleges that she purchased securities,

9   TAC ¶¶ 86(a)-(e) (SpeciGen); TAC ¶¶ 94(a)-(c) (Notebookz); TAC ¶¶ 103(a)-(g)

10  (PeerDreams); that her primary contact for the sales was Fischer, TAC ¶¶  43, 45; that in

11  some cases she gave her check directly to Fischer, TAC ¶ 46.  Plaintiff characterizes

12  defendants' claim that she did not purchase securities from Fischer as "an argument more

13  suited for Alice in Wonderland."  According to plaintiff, the issue is simple – if she did not

14  purchase securities from Fischer, from whom did she purchase them?

15       Plaintiff adds that if she did purchase the securities from Fischer, the only remaining

16  question is whether he was acting as a broker.  She asserts that under Corporations Code

17  § 25200, a broker-dealer is one "registered under the Securities Exchange Act of 1934, and

18  that in turn, under the Securities Exchange Act of 1934, a "broker" is defined as "any

19  person engaged in the business of effecting transactions in securities for the account of

20  others."  15 U.S.C. § 78a(c)(4)(A).

21       Jackson contends that Fischer meets this definition, and thus is subject to the terms

22  of § 25501.5 on the plain face of the statute.  She claims that he acted as a broker for the

23  defendants, as he contacted plaintiff, made the sale, and either took her check to the issuer

24  or directed her to the location where it should be sent.  She argues that "[t]here is not a hint

25  . . . of evidence in the pleadings, motion memoranda, depositions to date or even oral

26  argument to suggest that any person other than Fischer 'effectuated' the sale within the

27  meaning of [the] Exchange Act."  Thus, Jackson asserts, the violation of § 25501.5 is clear,

28  as Fischer "acted as a broker, he was unlicensed, and he sold the securities."

United States District Court

For the Northern District of California

1  The court finds that the TAC fails to state a claim of primary liability under § 25501.5

2  against Fischer.  Section 25501.5 provides that a civil action for rescission or damages

3  under that section is available only to a person who purchases a security <u>from</u> (or sells a

4  security to) an unlicensed broker-dealer.  Cal. Corp. Code § 25501.5(a)(1).  Section

5  25501.5 expressly requires privity of contract as a condition to liability, and the judicially

6  noticeable purchase agreements reflect that plaintiff purchased the alleged securities from

7  SpeciGen, PeerDreams, and Notebookz, not from Fischer, who did not hold title to the

8  securities.

9  Were the statute of limitations issue the only problem with this cause of action, the

10  court would grant leave to amend to allow plaintiff yet another opportunity to plead specific

11  facts showing the time and manner of discovery and the inability to have made earlier

12  discovery despite reasonable diligence.  However, Jackson has alleged no facts showing

13  that she purchased securities from Fischer (and she appears to concede in the opposition

14  that she did not).  Section 25501.5 does not provide for liability for a broker-dealer who

15  acted as a placement agent for the actual seller, but did not actually sell the security to the

16  plaintiff.  Because Jackson fails to allege facts sufficient to establish a primary violation of

17  § 25501.5 as to Fischer, the court need not consider whether § 25501.5 authorizes a

18  private right of action against secondary actors who participate in a primary violation of

19  § 25501.5.

20  **CONCLUSION**

21  It is with extreme difficulty that the court has pored through the TAC, the defendants'

22  motion, and plaintiff's opposition, in an attempt to determine which allegations that do

23  actually appear in the TAC are sufficient to state a claim, if any.  As discussed above,

24  because this is a motion for judgment on the pleadings, the court cannot consider facts that

25  are not alleged in the TAC.

26  The court finds that the motion for judgment on the pleadings as to the claims of

27  primary liability against Fischer under § 10(b) of the 1934 Securities Exchange Act, and

28  Rule 10b-5 promulgated thereunder, must be GRANTED, with LEAVE TO AMEND.  To

United States District Court

For the Northern District of California

1  maintain a claim for control-person liability under § 20(a), a plaintiff must establish a claim

2  of primary liability.  See, e.g., Zucco, 552 F.3d at 990.  Thus, because Jackson has not yet

3  managed to state a claim of primary liability against Fischer, defendants cannot state a

4  claim for secondary liability under § 20(a) of the Exchange Act as to Siegel, J.Sabes,

5  S.Sabes, Campion, Kulasooriya, Fernandes, Rosen, and Waterhouse.

6  Based on the lack of any allegation that Fischer sold securities to plaintiff, the court

7  finds that the motion for judgment on the pleadings as to the claims of primary liability

8  against Fischer under California Corporations Code §§ 25401, 25501, and 25501.5 must

9  be GRANTED.  The dismissal is WITH PREJUDICE.  For that reason, the motion for

10 judgment on the pleadings as to the claims of secondary liability under Corporations Code

11 § 25504 against Siegel, J.Sabes, S.Sabes, Campion, Kulasooriya, Fernandes, Rosen and

12 Waterhouse is GRANTED.

13 The fourth amended complaint shall be filed no later than April 24, 2015.  No new

14 parties or claims may be added without a stipulation by the parties or the agreement of the

15 court.  As stated above, all claims and parties previously dismissed must be omitted from

16 the fourth amended complaint.

17

18 **IT IS SO ORDERED.**

19 Dated:  March 13, 2015

20 _____
   PHYLLIS J. HAMILTON
21 United States District Judge

22

23

24

25

26

27

28