UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUZANNE D. JACKSON,

              Plaintiff,

     v.

WILLIAM FISCHER, et al.,

              Defendants.

Case No.  11-cv-2753-PJH

**ORDER GRANTING MOTIONS TO DISMISS IN PART AND DENYING THEM IN PART**

     Before the court are defendants' motions to dismiss the Fourth Amended Complaint ("4thAC").  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motions in part and DENIES them in part, as follows.

**BACKGROUND**

     Plaintiff Suzanne D. Jackson, alleges that she was defrauded by William Fischer ("Fischer") and others in connection with a series of unrelated investments in defendants SpeciGen, Inc. ("SpeciGen"); PeerDreams, Inc. ("PeerDreams"); Notebookz, Inc. ("Notebookz"); iLeonardo.com, Inc. ("iLeonardo"); New Moon Girl Media, Inc. ("New Moon"); Monvia LLC ("Monvia"); and Sazani Beach Hotel ("Sazani Beach").  She asserts that Fischer induced her to invest several million dollars in these enterprises, and that she lost all the money.

     Plaintiff filed the original complaint more than four years ago, in June 2011, against ten individual defendants – Fischer; Jon Sabes ("J.Sabes"); Steven Sabes ("S.Sabes"); David Goldsteen ("Goldsteen"); Marvin Siegel ("Siegel"); Brian Campion

United States District Court
Northern District of California

1  ("Campion"); Lonnie Bookbinder ("Bookbinder"); Chetan Narsude ("Narsude"); Mani

2  Kulasooriya ("Kulasooriya"); and Joshua Rosen ("Rosen") – and against Upper Orbit LLC

3  ("Upper Orbit"); SpeciGen; PeerDreams; Notebookz; iLeonardo; New Moon; Monvia; and

4  Sazani Beach.  On December 5, 2011, plaintiff filed an amended complaint, against the

5  same 18 defendants.

6      On February 28, 2012, plaintiff filed a notice of dismissal as to defendant

7  Goldsteen.  In March 2012, plaintiff requested entry of default against SpeciGen,

8  PeerDreams, and iLeonardo.  Default was entered as to those three defendants on

9  March 19, 2012.

10     In April 2012, Fischer filed for Chapter 7 bankruptcy protection in the District of

11 Minnesota, asserting that he had $12 million in liabilities, and listing plaintiff as the major

12 creditor. On April 24, 2012, Fischer and Upper Orbit filed a notice of filing of bankruptcy

13 petition, which triggered an automatic stay in this action as to Fischer.

14     On June 15, 2012, pursuant to stipulation, plaintiff filed a second amended

15 complaint ("SAC") in the present action, against 20 defendants – Fischer; J. Sabes; S.

16 Sabes; Siegel; Campion; Bookbinder; Kulasooriya; Fernandes; Rosen; Steve

17 Waterhouse ("Waterhouse"); Jean Paul a/k/a "Buzzy" Lamere ("Lamere"); SpeciGen;

18 PeerDreams; Notebookz; iLeonardo; New Moon; Monvia; CII Ltd. ("CII"); Sazani Beach;

19 and Upper Orbit.

20     J. Sabes, S.Sabes, Siegel, and Campion were allegedly officers and/or directors of

21 SpeciGen; Bookbinder was allegedly the CEO of SpeciGen; Kulasooriya was allegedly a

22 director of PeerDreams and New Moon; Fernandes was allegedly a director of Monvia

23 and a director of PeerDreams and New Moon; Rosen was allegedly the CEO and a

24 director of Notebookz and iLeonardo; Waterhouse was allegedly a director of Notebookz;

25 Lamere was allegedly the president of a non-party, Toppost, and a "consultant" to

26 SpeciGen; and Upper Orbit was allegedly a "corporate vehicle" used by Fischer as a

27 "broker-dealer" for New Moon, non-party Toppost, SpeciGen, and PeerDreams.

28     The SAC asserted 11 causes of action – (1) a claim for accounting (against all

2

United States District Court
Northern District of California

1  defendants); (2) violation of § 10(b) of the Securities Exchange Act of 1934 ("Exchange

2  Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder (against all

3  defendants); (3) violation of California Corporations Code § 25401 and § 25501 (against

4  all defendants); (4) violation of California Corporations Code § 25504 (against all

5  defendants); (5) breach of fiduciary duty (against J. Sabes, S. Sabes, Siegel, Campion,

6  Kulasooriya, Fernandes, Waterhouse, and "the directors of the other corporate

7  defendants"); (6) violation of California Corporations Code § 25230 (against Fischer

8  only); (7) declaratory judgment of breach of Investment Advisors Act of 1940 (against

9  Fischer only); (8) negligent misrepresentation (against all individual defendants); (9)

10 violation of California Corporations Code § 25501.5 (against all defendants); (10)

11 violation of § 20(1) of the 1934 Securities Exchange Act, 15 U.S.C. § 78t (against all

12 director and officer defendants); and (11) common law misrepresentation (against all

13 defendants).

14       On July 17, 2012, plaintiff filed an adversary proceeding in the District of

15 Minnesota Bankruptcy Court, challenging the dischargeability of Fisher's debt.  On July

16 19, 2012, the Bankruptcy Court issued an order discharging Fischer. The adversary

17 proceeding was eventually set for a December 9, 2013 trial.

18       Meanwhile, default was entered against Upper Orbit in this case after it failed to

19 appear by counsel (having been ordered to do so).  Plaintiff filed a motion for default

20 judgment, but that motion was denied on January 2, 2013, without prejudice to refiling

21 once the claims against Fischer have been resolved.

22       Campion, Rosen, and Notebookz filed an answer to the SAC.  J.Sabes, S.Sabes,

23 Siegel, Kulasooriya, Monvia, New Moon, and Fernandes filed motions to dismiss the

24 SAC.  On March 15, 2013, the court issued an order granting the motions.  The § 10(b)

25 and Rule 10b-5 claims against J.Sabes, S.Sabes, Siegel, Kulasooriya, and Fernandes

26 were dismissed with prejudice, and the § 10(b) and Rule 10b-5 claims against Monvia

27 and New Moon were dismissed with leave to amend.  The § 20(a) claims, and the claims

28 for breach of fiduciary duty, violation of the California Corporations Code, common law

fraud, negligent misrepresentation, and accounting were dismissed with leave to amend.

On April 25, 2013, plaintiff filed a third amended complaint ("TAC"), against the same 20 defendants as in the SAC, asserting 11 causes of action –  (1) a claim under § 10(b) and Rule 10b-5 (against Fischer, Campion, Siegel, Rosen, Kulasooriya, SpeciGen, PeerDreams, Notebookz, New Moon, and non-party Toppost); (2) a claim under Corporations Code §§ 25401 and 25501 (SpeciGen, Notebookz, Ileonardo, PeerDreams, New Moon, non-party Toppost, Fischer, Siegel, Campion, Rosen, and Kulasooriya); (3) a claim under § 20(a) (against J. Sabes, S. Sabes, Siegel, Campion, Fischer, Rosen, Waterhouse, Kulasooriya, Fernandes, non-party Nancy Gruver ("Gruver"), and Lamere); (4) a claim under Corporations Code § 25504 (against J. Sabes, S. Sabes, Siegel, Campion, Bookbinder, Rosen, Waterhouse, Fernandes, Kulasooriya, non-party Gruver, and Lamere); (5) a claim of breach of fiduciary duty (against Fischer, J. Sabes, S. Sabes, Siegel, Campion, Kulasooriya, Fernandes, Rosen, Waterhouse, and "directors of the other defendant companies whose names are not currently known"); (6) a claim under Corporations Code §§ 25230, 25235 (against Fischer only); (7) a claim for declaratory judgment of breach of Investment Advisors Act of 1940 (against Fischer only); (8) a claim of negligent misrepresentation (against Fischer, J. Sabes, S. Sabes, Siegel, Campion, Rosen, and Kulasooriya); (9) a claim under Corporations Code § 25501.5 (against J. Sabes, S. Sabes, Siegel, Campion, Rosen, Fernandes, Kulasooriya, Waterhouse, and non-party Gruver); (10) a claim of common law misrepresentation (against "all defendants" or alternatively, against "Fischer and Upper Orbit as agents for the other corporate, officer and director defendants"); and (11) a claim of respondeat superior (against Fischer, and possibly against J. Sabes, S. Sabes, Siegel, Campion, Bookbinder, Rosen, Waterhouse, Fernandes, Kulasooriya, non-party Gruver, and Lamere).

In May 2013, Campion, Notebookz, Rosen, and Waterhouse filed answers to the TAC, and New Moon, Kulasooriya, Monvia, and Fernandes filed motions to dismiss the claims asserted against them in the TAC, and to strike.  In June 2013, J.Sabes, S.Sabes,

United States District Court
Northern District of California

1   and Siegel filed a motion to dismiss the claims asserted against them.

2          On December 18, 2013, plaintiff filed a notice of entry of stipulated judgment in the

3   adversary proceeding pending in the Bankruptcy Court in the District of Minnesota.

4   Fischer stipulated that he is indebted to plaintiff in the amount of $8,250,000, arising from

5   investments solicited from plaintiff by Fischer on behalf of SpeciGen, Notebookz,

6   PeerDreams, CII, New Moon, Sazani Beach, and Toppost; and further stipulated that

7   such debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A) (money obtained by "false

8   pretenses, a false representation, or actual fraud").

9          On December 20, 2013, the court issued an order granting the motions to dismiss

10  in part and denying  them in part.  The § 10(b) and Rule 10b-5 claims, and the claims

11  under Corporations Code §§ 25401 and 25501, asserted against J.Sabes, S.Sabes,

12  Siegel, Kulasooriya, Monvia, and New Moon were dismissed with prejudice.[1]  The

13  motions to dismiss the "control persons" claims under § 20 and Corporations Code

14  § 25504 and the "secondary liability" claim under Corporations Code § 25501.5, against

15  J.Sabes, S.Sabes, Siegel, Kulasooriya, and Fernandes, were denied without prejudice to

16  raising the arguments in a future motion once the stay had been lifted as to Fischer.  The

17  claims of breach of fiduciary duty, negligent misrepresentation, and common law

18  misrepresentation asserted against J.Sabes, S.Sabes, Siegel, Kulasooriya, and

19  Fernandes were dismissed with prejudice.  The Corporations Code § 25501.5 claim

20  asserted against J.Sabes, S.Sabes, Siegel, Kulasooriya, Fernandes, Monvia, and New

21  Moon was dismissed with prejudice, to the extent it alleged a direct claim for relief.

22         In addition, the allegations against Toppost and Gruver were ordered stricken on

23  the basis that no summons had been issued for either and neither was identified as a

24  defendant in the "Parties" section of the TAC.  The court also dismissed Lamere from the

25  case for failure to serve.

26

27  ────────────────

[1]  The § 10(b) and Rule 10b-5 claims against J.Sabes, S.Sabes, Siegel, Kulasooriya, and
28  Fernandes had previously been dismissed with prejudice, but the claims were realleged
    in the TAC (except as to Fernandes).

United States District Court
Northern District of California

1    On April 3, 2014, the court held a case management conference.  Following

2    extensive discussion with counsel, the court ordered that the case would proceed as

3    follows:  (1) defendants would file a consolidated motion for judgment on the pleadings

4    regarding whether the TAC stated a claim for the primary liability of Fischer as to the

5    remaining claims; (2) the parties would file motions on the issue preclusive effect of the

6    bankruptcy adjudication with regard to Fischer; (3) the parties would file motions for

7    summary judgment as to the primary liability of Fischer; (4) the parties would file motions

8    for summary judgment as to the secondary liability of the other defendants.

9    Eight defendants – J.Sabes, S.Sabes, Siegel, Campion, Kulasooriya, Fernandes,

10   Rosen, and Waterhouse – subsequently moved for judgment on the pleadings as to the

11   § 20(a) and Corporations Code § 25504 "control person" claims and the Corporations

12   Code § 25501.5 "secondary liability" claim alleged in the TAC.  They argued that the TAC

13   did not allege facts sufficient to state a claim of primary liability against Fischer with

14   regard to the transactions involving SpeciGen, PeerDreams, or Notebookz, and that there

15   could thus be no viable claims of "control person" or "secondary" liability under either

16   federal or state law.

17   On March 13, 2015, the court issued an order dismissing the claims of primary

18   liability against Fischer under § 10(b) and Rule 10b-5, with leave to amend.  The court

19   found no claim of secondary liability could be stated against J.Sabes, S.Sabes, Siegel,

20   Campion, Kulasooriya, Fernandes, Rosen, and Waterhouse, because plaintiff had failed

21   to state a viable claim of primary liability against Fischer.  The court dismissed the claims

22   against Fischer under Corporations Code § 25401, § 25501, and § 15501.5, with

23   prejudice, and dismissed the claims of secondary liability under Corporations Code

24   § 25504 against J.Sabes, S.Sabes, Siegel, Campion Kulasooriya, Fernandes, Rosen,

25   and Waterhouse.

26   The court ordered plaintiff to file a fourth amended complaint because there were

27   so many parties and claims in the TAC that had been dismissed that it was becoming

28   difficult to discern from the complaint what remained in the case.  Plaintiff filed the 4thAC

on April 24, 2015.

In the "Introduction" to the 4thAC, plaintiff lists Fischer, J.Sabes, S. Sabes, Siegel, Campion, and Kulasooriya as defendants.  4thAC ¶ 1.  Under "Parties," plaintiff again lists Fischer, J.Sabes, S.Sabes, Siegel, and Campion as defendants, and also lists SpeciGen, PeerDreams, Notebookz, Bookbinder, New Moon (previously dismissed), Fernandes, Monvia (previously dismissed), Waterhouse, Upper Orbit, iLeonardo, and Sazani Beach.  4thAC ¶¶ 6, 9-22.[2]

Plaintiff asserts eight causes of action in the 4thAC – (1) A claim under § 10(b) and Rule 10b-5 (against "all defendants," but seeking "a judgment against defendants Fischer, Campion, Siegel, Rosen, Fernandes, Waterhouse, SpeciGen, PeerDreams, and Notebookz"); (2) a claim of control person liability under § 20(a) (against J.Sabes, S.Sabes, Siegel, Campion, Rosen, Waterhouse, Kulasooriya, and Fernandes; (3) a claim of breach of fiduciary duty (against Fischer, Campion, Rosen, and Waterhouse); (4) a claim under Corporations Code §§ 25230, et seq. (against Fischer); (5) a claim of breach of the Investment Advisors Act of 1940, 15 U.S.C. §§ 80b-1, et seq. (against Fischer); (6) a claim of negligent misrepresentation (against Fischer, Campion, and Rosen); (7) a claim under Corporations Code § 25501.5 (against Fischer, for primary liability, and against J.Sabes, S.Sabes, Siegel, Campion, Rosen, Fernandes, Kulasooriya, and Waterhouse, for secondary liability; and (8) a claim of common law misrepresentation (against Fischer and Upper Orbit).

---

[2]   Neither Sazani Beach nor Bookbinder have appeared.  Both are listed as defendants in the "Parties" section of the 4thAC.  However, plaintiff alleges no facts as to Sazani Beach, and it is not mentioned in any of the causes of action.  Accordingly, the court concludes that plaintiff has abandoned any claim against Sazani Beach.

As for Bookbinder, plaintiff alleges that he was the Chief Executive Officer of SpeciGen, but alleges no other facts and does not mention him in any cause of action, apart from a conclusory assertion in the second (§ 20) cause of action that he, J.Sabes, S.Sabes, Siegel, Campion, Kulasooriya, Fernandes, Rosen, and Waterhouse were "officers and directors of their respective companies, prepared the information and materials utilized by Fischer in committing these frauds, and knew that Fischer was disseminating that false information to [plaintiff]."  4thAC ¶ 134. The court concludes from this failure to plead any facts that plaintiff has abandoned any claim against Bookbinder.

1      J.Sabes, S.Sabes, Siegel, Kulasooriya, Fernandes, Campion, Rosen, and

2 Waterhouse have now filed motions to strike; and J.Sabes, S.Sabes, Siegel, Kulasooriya,

3 Fernandes, Campion Rosen, Waterhouse, and Notebookz have filed motions to dismiss.

4      In the motions to strike, the defendants argue that certain claims asserted against

5 them in the 4thAC were previously dismissed with prejudice by the court, and they seek

6 an order striking those claims.  In the motions to dismiss, each group of defendants

7 argues that the court previously dismissed the § 10(b) claim of primary liability against

8 Fischer, with leave to amend; that the 4thAC does not correct the prior deficiencies

9 identified by the court; that the § 10(b) claims should therefore be dismissed with

10 prejudice as to Fischer; and that the § 20 claims of control-person liability should be

11 dismissed because a § 20 claim can proceed only if there is a viable claim of primary

12 liability.

13      In response, plaintiff concedes that the 4thAC includes some claims that were

14 previously dismissed with prejudice, but as to the § 10(b) claim against Fischer, asserts

15 that this claim has already been "decided" by virtue of Fischer's admission in the

16 adversary proceeding that he defrauded plaintiff in connection with her investments in

17 SpeciGen, PeerDreams, and Notebookz/iLeonardo.  That is, plaintiff contends that the

18 judgment in the adversary proceeding is res judicata as to any claim she has asserted

19 against Fischer for primary liability here, and that there is consequently nothing to litigate

20 as to Fischer.

21                              **DISCUSSION**

22 A.    Motions to Strike

23      1.    Legal Standard

24      Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken

25 from any pleading any insufficient defense or any redundant, immaterial, impertinent, or

26 scandalous matter."  Fed. R. Civ. P. 12(f).  The function of a 12(f) motion to strike is to

27 avoid the expenditure of time and money that must arise from litigating spurious issues

28 by dispensing with those issues prior to trial . . . ."  Whittlestone, Inc. v. Handi-Craft Co.,

618 F.3d 970, 973 (9th Cir. 2010) (quotation and citation omitted).  Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  Colaprico v. Sun Microsystem, Inc., 758 F.Supp. 1335, 1339 (N.D. Cal. 1991).

In considering a motion to strike under Rule 12(f), the court must determine whether the matter the moving party seeks to have stricken is (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous.  Whittlestone, 618 F.3d at 973-74.  Matter is "immaterial" if it "has no essential or important relationship to the [plaintiff's] claim for relief," and it is "impertinent" if it "do[es] not pertain, and [is] not necessary, to the issues in question."  Id. at 974.

When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party."  In re 2TheMart.com, Inc. Sec Lit., 114 F Supp. 2d 955, 965 (C.D. Cal. 2000).  A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action.  Id.

    2.    Defendants' Motions

J.Sabes, S.Sabes, and Siegel seek an order striking the claims asserted against them in the first (§ 10(b)), seventh (§ 25501.5), and eighth (misrepresentation) causes of action, on the basis that the court previously dismissed each of those claims with prejudice as to these defendants.

Kulasooriya and Fernandes seek an order striking the claims asserted against them in the first (§ 10(b)), seventh (§ 25501.5) and eighth (misrepresentation) causes of action, on the basis that the court previously dismissed those causes of action with prejudice as to these defendants.

Campion, Rosen, and Waterhouse seek an order striking the claims asserted against them in the seventh (§ 25501.5) cause of action, on the basis that the court previously dismissed the claims of primary liability against Fischer under §§ 25401, 25501, and 25501.5, and for that reason also effectively dismissed the claims of secondary liability against these defendants in § 25501.5.

1    In her opposition, plaintiff concedes that she should not have included the first

2    (§ 10(b)) and eighth (misrepresentation) claims against J.Sabes, S.Sabes, Siegel,

3    Fernandes, and Kulasooriya, because those claims were previously dismissed with

4    prejudice.  (Campion previously filed an answer but did not move to dismiss any of the

5    claims asserted against him).

6         As for the § 25501.5 claim, however, plaintiff's primary position is that the

7    judgment in the adversary proceeding is res judicata against <u>all</u> claims of primary liability

8    against Fischer.  She focuses on the claim of primary liability under § 10(b), but asserts

9    that adversary judgment is res judicata as to any fraud-related claim against Fischer.  Her

10   only mention of § 25501.5 is in a footnote where she states that she "incorporate[s] by

11   reference the arguments [in her opposition to the motion to dismiss the TAC] relating to

12   liability under Cal. Corp. Code § 25501.5," and states, "As we understand the March

13   [2015] Order, those counts remain as to all individual defendants except Mr. Fischer."

14   Based on this, it appears that plaintiff believes the § 25501.5 claim is still in the case as

15   to the director/officer defendants.

16        In reply, defendants note that the December 2013 order dismissed the § 25501.5

17   claim against the individual defendants to the extent it asserted a claim of primary liability,

18   and denied the motion to dismiss to the extent the claim was based on secondary liability,

19   dependent on plaintiff establishing a claim of primary liability against Fischer; and that the

20   March 2015 order dismissed the § 25501.5 claim of primary liability against Fischer, with

21   prejudice, and stated that the court need not consider whether any claim of secondary

22   liability was stated against the D&O defendants.  Thus, they assert, the court should

23   strike the § 25501.5 claim asserted against them.

24        The motion is GRANTED as to the first and eighth causes of action, as plaintiff

25   concedes she should have deleted those allegations from the 4thAC.  The motion is

26   GRANTED as to the seventh (§ 25501.5) cause of action because plaintiff cannot state a

27   claim of secondary liability against these defendants.

28        By its terms, § 25501.5 establishes a private right of action in favor of a person

United States District Court
Northern District of California

10

1   who "purchases a security from" an unlicensed broker-dealer.

2          A person who purchases a security from or sells a security to a broker-dealer
3          that is required to be licensed and has not, at the time of the sale or
           purchase, applied for and secured from the commissioner a certificate under
4          Part 3 (commencing with Section 25200), that is in effect at the time of the
           sale or purchase authorizing that broker-dealer to act in that capacity, may
5          bring an action for rescission of the sale or purchase or, if the plaintiff or
           defendant no longer owns the security, for damages.

6   Cal. Corp. Code § 25501.5(a)(1).  An issue previously raised in this case is whether it is

7   possible to state a claim of secondary liability under this statute.  There is no clear

8   authority either way, but the court previously allowed the secondary liability claim to

9   remain in the case, dependent on a finding of primary liability against Fischer.

10          The TAC alleged the § 25501.5 claim against J.Sabes, S.Sabes, Siegel, Campion,

11   Rosen, Fernandes, Kulasooriya, Waterhouse, and non-party Gruver, asserting that those

12   defendants were "secondarily liable" for Fischer's sale of securities to plaintiff without

13   being a duly registered broker/dealer.

14          As explained above, Campion, Rosen, and Waterhouse filed answers to the TAC,

15   and the remaining defendants filed motions to dismiss.  J.Sabes, S.Sabes, and Siegel

16   argued that the § 25501.5 claim should be dismissed because the TAC did not allege that

17   any of them participated in any transaction involving the sale of securities, or otherwise

18   acted as a broker-dealer in the State of California, and because the claim was time-

19   barred.  Kulasooriya/Monvia argued that the claim must be dismissed because it was

20   time-barred, and because plaintiff alleged no facts showing that Monvia sold securities to

21   her or that she purchased Monvia securities.  New Moon (Gruver's company) argued that

22   there were no facts alleged showing that plaintiff "purchased" or "sold" a security from or

23   to an unlicensed broker-dealer, and that plaintiff had alleged that she invested money in

24   Upper Orbit, which in turn purchased securities in its name from New Moon.  Fernandes

25   argued that the claim must be dismissed as to him because he never sold any securities

26   to plaintiff (and plaintiff did not allege that he had).

27          The court granted the motion in part and denied it in part.  The court granted the

28   motion to the extent the claim asserted a direct claim for relief as to the moving individual

United States District Court
Northern District of California

1    defendants, because the TAC did not allege that plaintiff purchased securities from any of

2    them.  As for whether the moving defendants could be secondarily liable, the court found

3    that in the absence of a viable claim of primary liability (as to Fischer), it was not possible

4    to determine whether plaintiff could proceed against the individual defendants on that

5    basis.  The court also added that the TAC still did not allege facts clearly showing when

6    plaintiff discovered the alleged violation, and that the claim might be time barred (but that

7    this was probably a question of fact).

8         A number of months later, J.Sabes, S.Sabes, Siegel, Campion, Kulasooriya,

9    Fernandes, Rosen, and Waterhouse moved for judgment on the pleadings (still on the

10   TAC) as to three causes of action including the claim under § 25501.5, arguing that none

11   of the three stated a claim of primary liability against Fischer (and then added that the

12   TAC therefore did not state a claim of secondary liability against them).  They argued that

13   while plaintiff alleged that Fischer was an unlicensed broker-dealer, she did not and could

14   not allege that she purchased securities from him, as the purchase agreements attached

15   as exhibits to their RJN confirmed that she purchased convertible promissory notes and

16   preferred stock from the defendant companies, not from Fischer.  They also asserted that

17   the claim was time-barred.

18        The court found that the TAC failed to state a claim of primary liability against

19   Fischer, as § 25501.5 expressly requires privity of contract as a condition to liability, and

20   the judicially noticeable purchase agreements reflected that plaintiff purchased the

21   alleged securities from SpeciGen, PeerDreams, and Notebookz, not from Fischer, who

22   did not hold title to the securities.

23        The court also indicated that were the statute of limitations the only problem with

24   this cause of action, leave to amend would have been granted, but that because plaintiff

25   alleged no facts showing that she purchased securities from Fischer (and appeared to

26   concede in the opposition that she had not), she had failed to state a claim for primary

27   liability against Fischer, and thus the court need not consider whether § 25501.5

28   authorizes a claim of secondary liability against actors who "participated in" the primary

1    actor's violation.  The court dismissed the § 25501.5 claim against Fischer with prejudice.

2        The gist of the March 2015 order was that there is no claim of primary liability as to

3    Fischer, and that consequently there can be no secondary liability, even if permissible

4    under the statute, and even if not time-barred.  (Moreover, the December 2013 order

5    clearly stated that plaintiff could proceed with a claim of secondary liability claim only to

6    the extent she could allege a claim of primary liability against Fischer.)  The court agrees

7    with defendants that the motion to strike this claim should be granted as to all

8    defendants.

9    B.       Motions to Dismiss

10       1.       Legal Standard

11       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

12   legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d

13   1191, 1199-1200 (9th Cir. 2003).  Review is generally limited to the contents of the

14   complaint, although the court can also consider a document on which the complaint relies

15   if the document is central to the claims asserted in the complaint, and no party questions

16   the authenticity of the document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir.

17   2007).

18       To survive a motion to dismiss for failure to state a claim, a complaint generally

19   must satisfy only the minimal notice pleading requirements of Federal Rule of Civil

20   Procedure 8, which requires that a complaint include a "short and plain statement of the

21   claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2)

22       A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

23   plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to

24   support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir.

25   2013).  While the court is to accept as true all the factual allegations in the complaint,

26   legally conclusory statements, not supported by actual factual allegations, need not be

27   accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis.

28   Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

United States District Court
Northern District of California

The allegations in the complaint "must be enough to raise a right to relief above the speculative level[,]" and a motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. Dismissal is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

    2.        Defendants' Motions

The SpeciGen defendants (J.Sabes, S.Sabes, Siegel) make three main arguments in their motion. First, they assert that the § 20(a) claim should be dismissed because the 4thAC still fails to state a claim of primary liability against Fischer. They contend that the allegations in the 4thAC are substantially similar to those in the TAC, and that plaintiff still has not alleged any actionable misstatement by Fischer, or facts sufficient to raise a strong inference that Fischer acted with scienter. They contend that for the same reasons that the court previously dismissed this claim against Fischer, it should again dismiss the claim, but this time with prejudice.

Second, the SpeciGen defendants contend that the 4thAC does not adequately allege a primary violation against Fischer based on the stipulated judgment in the adversary proceeding. They argue that plaintiff has simply recited the fact of the stipulated judgment, and assert that such recitation does not cure the pleading deficiencies identified by the court in the TAC.

    Third, the SpeciGen defendants argue that plaintiff does not (and cannot) adequately allege collateral estoppel (issue preclusion) against the SpeciGen defendants based on the stipulated judgment. They assert that collateral estoppel arises when a

14

1  plaintiff seeks to estop a defendant from relitigating an issue which the defendant had

2  previously litigated and lost.

3       Collateral estoppel (or issue preclusion) is appropriate only where

4       (1) there was a full and fair opportunity to litigate the identical issue in the
        prior action; (2) the issue was actually litigated in the prior action; (3) the
5       issue was decided in a final judgment; and (4) the party against whom the
        issue preclusion is asserted was a party in privity with a party to the prior
6       action.

7  Syverson v. International Bus. Machs. Corp., 472 F.3d 1072, 1078 (9th Cir. 2006).

8       Here, the SpeciGen defendants contend, the issues are not "identical" and the

9  issues of liability of SpeciGen defendants were not actually litigated in the adversary

10  proceeding or decided in a final judgment.  Nor were the SpeciGen defendants parties or

11  in privity with a party to the adversary proceeding.  Moreover, they assert, Fischer

12  admitted that his claims were for money obtained by "false pretenses, a false

13  representation, or actual fraud" – not that he committed fraud within the meaning of the

14  1934 Securities Exhange Act.

15       Kulasooriya and Fernandes join in the arguments made by the SpeciGen

16  defendants, both as to the claims under the 1934 Act, and as to the argument that the

17  judgment in the adversary proceeding is res judicata as to the claims or issues asserted

18  here.

19       Kulasooriya and Fernandes make three additional arguments in their motion.

20  First, they assert that the 4thAC does not state a claim of primary liability under § 10(b)

21  as to Fischer.  They argue that the 4thAC does not allege any actionable misstatement

22  by Fischer with regard to PeerDreams or any facts showing that Fischer owed her a duty

23  to disclose; and that the 4thAC fails to allege facts supporting a strong inference that

24  Fischer acted with scienter.

25       Second, they argue that issue preclusion does not establish a primary violation by

26  Fischer, as stipulated or consent judgments are not given issue preclusive effect.  See

27  Arizona v. California, 530 U.S. 392, 414 (2000) (settlement may have claim-preclusive

28  effect, but "settlements ordinarily occasion no issue preclusion (sometimes called

collateral estoppel) unless it is clear . . . that the parties intend their agreement to have such an effect") (citing 18 Wright & Miller, Fed. Practice & Procedure § 4443 (consent agreements are intended to preclude further litigation on the claim presented but not as to issues presented" and consent judgments thus "ordinarily support claim preclusion but not issue preclusion").  Defendants also note that the judgment signed by the bankruptcy judge contains no findings of fact regarding any purported fraud, and assert that the judgment cannot be used to establish a primary violation by Fischer because the "actually litigated" requirement for issue preclusion has not been satisfied.

Third, they contend that plaintiff has not established a § 20 claim of secondary liability against them, as there is no viable claim of primary liability, and in addition, the 4thAC does not plead facts showing that Kulasooriya and Fernandes excercised "actual power or control" over the primary violator.  See Howard v. Everex Sys., 228 F.3d 1057, 1065 (9th Cir. 2000)).

Campion, Rosen, Waterhouse, and Notebookz make four main arguments in support of their motion to dismiss.  First, they contend that the causes of action under the Exchange Act are incurably defective.  They assert that the 4thAC does not properly allege that plaintiff relied on statements made by Rosen or Fischer relating to Notebookz/ iLeonardo – in particular, the alleged false statements contained in the documentation for the "convertible promissory notes" that plaintiff allegedly purchased in February and April 2007; the alleged false statements made by Fischer and Rosen to the effect that they had given plaintiff the opportunity to review all the terms and conditions  of the "securities" offering; and the alleged false statements in the "Investor's Rights Agreement" she claims she received when Rosen converted her promissory notes to preferred stock, 4thAC ¶¶ 100-101.

Defendants argue further that the 4thAC does not properly allege any false statement by Fischer or by Campion relating to SpeciGen (and they adopt the arguments made by the SpeciGen defendants in their motion), noting that plaintiff previously admitted that Fischer was the only SpeciGen-related speaker).  Defendants also contend

1    that the 4thAC does not properly allege any statement by Rosen or Fischer relating to

2    Notebookz/iLeonardo, and moreover, that (as the court pointed out in the March 2015

3    order) plaintiff does not distinguish between Notebookz and iLeonardo, which are alleged

4    to be separate corporate entities.  They argue further that the 4thAC does not allege any

5    statement by Waterhouse, only that he was a director of Notebookz and that Fischer

6    used Notebookz materials purportedly prepared by the moving defendants.  Nor, they

7    contend, does the 4thAC allege any false statement by Notebookz.

8         In addition, defendants argue that the 4thAC fails to identify any affirmative

9    statement that was made misleading by virtue of a supposed omission with regard to

10   Notebookz, Rosen, or Waterhouse.  They assert that in order to prevail on a theory of

11   omission of material fact, plaintiff must allege that defendants had a duty to disclose the

12   allegedly omitted information.  Here, they assert, plaintiff fails to allege any duty to

13   disclose.

14        Defendants argue further that the 4thAC does not adequately allege scienter as to

15   any of the moving defendants. They note that notwithstanding the court's prior

16   instructions as to amending the complaint, plaintiff has again failed to allege scienter as

17   to any defendant and has not pled facts showing that statements attributed to them were

18   false or that they knew they were false at the time they were made.

19        Defendants contend that the allegations that "each of the defendants" was "aware"

20   that the defendant companies needed funding to survive, and faced significant product

21   development challenges, are generic allegations that could be applied to any start-up

22   company.  They assert that in essence, plaintiff has alleged only that Rosen and

23   Waterhouse were the two directors who were most involved in the company, and that

24   Campion was a founder, director, and vice-president.  They argue that these allegations

25   do not provide a sufficient basis upon which to premise a strong inference of scienter

26   (particularly given that they are not directed at particular defendants, but simply refer to

27   "defendants").

28        For related reasons, defendants assert that the 4thAC does not state a claim for

17

United States District Court
Northern District of California

1    control person liability against Campion, Rosen, or Waterhouse, as there is no adequate

2    allegation of primary liability against Fischer, and in any event, there are no facts alleged

3    that would show that Fischer had any role at all in the operation of Notebookz or

4    iLeonardo.

5          In their second main argument, defendants contend that the common law claims

6    should be dismissed.  They argue that the breach of fiduciary duty claims against Rosen,

7    Waterhouse, and Campion should be dismissed because the claim was not brought as a

8    derivative action, and because it was not pled in conformance with Rule 9(b).  They

9    contend that the negligent misrepresentation and common law misrepresentation claims

10   should be dismissed with prejudice, because the claims against Fischer and Upper Orbit

11   are not pled with particularity and because plaintiff has not alleged any basis for "agent"

12   liability as to the moving defendants.

13         In their third main argument, defendants assert that the § 25501.5 claim should be

14   dismissed because the court has dismissed the claim against Fischer, with prejudice, and

15   the 4thAC does not allege any basis for making the moving defendants primarily or

16   secondarily liable.

17         In the fourth main argument, defendants contend that plaintiff's attempts to "rely

18   on" the judgment in the adversary proceeding are unavailing.  They incorporate by

19   reference the arguments made by J.Sabes, S.Sabes, and Siegel (that the stipulated

20   judgment cannot save defective allegations).  They also assert that the "issues" were not

21   actually litigated in the Minnesota bankruptcy, and that none of the moving defendants

22   were in privity with the plaintiff in the adversary proceeding.

23         In opposition, plaintiff asserts that "the issue" of primary liability is the main issue

24   to be decided in this case, but that "the issue" of primary liability against Fischer "has

25   been settled."  She claims, "It's over[,]" and there is "nothing further to litigate" between

26   herself and Fischer "on any issue and in any court," because Fischer has admitted that

27   he defrauded her in connection with the sale of securities in the defendant companies.

28   She contends that the first (§ 10(b)) cause of action against Fischer has been "settled,"

as have the third (breach of fiduciary duty), fourth (Cal. Investment Advisors Code), fifth (IAA), sixth (negligent misrepresentation), and eighth (common law misrepresentation) causes of action.

Plaintiff makes five main arguments.  First, she contends that defendants are barred from challenging the § 10(b) primary liability claims against Fischer under the doctrines of collateral estoppel and res judicata.  She asserts that "the issues" of material misrepresentations and omissions in the sale of the SpeciGen, Notebookz, and PeerDreams securities were litigated in the adversary proceeding.  She claims that Fisher's Chapter 7 petition was "directed exclusively at his liability exposure" in this case, and that "[t]he thrust of discovery was Fischer's liability here."  For that reason, she argues, all the documents produced by Fischer in the adversary proceeding related to the claims and issues in this case, and the sole focus of the adversary proceeding was the present litigation.

Plaintiff contends that the judgment in the adversary proceeding is also res judicata as to all primary liability claims against Fischer in this action.  She claims that because of res judicata, he cannot relitigate "the issue" of whether or not he defrauded her in the sale of securities in the defendant companies.  She argues that all three elements of claim preclusion are present here, as (1) the parties (she and Fischer) are identical or in privity; (2) there was a final judgment on the merits (the judgment in the adversary proceeding); and (3) there is an "identity of claims" because the two suits arise out of the same transactional nucleus of facts (described in adversary complaint as "a series of loans and investments solicited from and sold to plaintiff through defendant William Fischer").

As to the third element – identity of claims – plaintiff asserts that the settlement in the adversary proceeding "moots the need to consider the 10(b) factors," that it is irrelevant whether the elements of the two claims are the same, and that the court was wrong when it stated in the March 2015 Order that plaintiff "cannot simply substitute [the adversary judgment] for the requirement that she state a claim under the PSLRA."

United States District Court
Northern District of California

1   She also contends that regardless of res judicata, the case between herself and Fischer

2   is over, because they settled the adversary proceeding.

3       Second, in a related argument, she asserts that the judgment in the adversary

4   proceeding creates collateral estoppel as to "the facts and issues" underlying the primary

5   claims against Fischer in this action.  She argues that she and Fischer had a full and fair

6   opportunity to litigate over the 18 months of the adversary proceeding; that she and

7   Fischer are parties in both actions; and that Fischer lost in the adversary proceeding

8   when he failed to obtain a discharge of his liability exposure in this case (per the

9   adversary judgment).  She does not, however, clearly identify the "facts and issues" she

10  believes were litigated and as to which collateral estoppel applies.

11      Third, plaintiff argues that even if the court declines to apply res judicata and

12  collateral estoppel, she has "proffered abundant pleadings to comply with the elements of

13  an Exchange Act 10(b) violation as to all defendants."  In a detailed recitation, she

14  repeats the allegations set forth in the 4thAC as to Fischer's representations (and alleged

15  omissions) regarding SpeciGen, PeerDreams, and Notebookz in connection with the

16  § 10(b) claims.  (She also asserts that the alleged misrepresentations were made by

17  Fischer "along with other officers and directors who personally met with her.")

18      Fourth, plaintiff asserts that scienter is alleged as to "all defendants."  She claims

19  that it is not proper for defendants to be arguing about scienter eight months after Fischer

20  admitted in the adversary proceeding that he defrauded her, and eight months after the

21  bankruptcy court "entered a judgment against [Fischer] for fraud."  She seems to be

22  suggesting that Fischer's admission in the stipulated judgment is sufficient to give rise to

23  a strong inference of scienter both as to himself and as to "all defendants."

24      Fifth, plaintiff argues that the officer/director defendants "have treated this motion

25  round as a battle over primary liability claims," and have "gambled all of their chips on

26  that issue," without addressing the issue of secondary exposure.  She asserts that they

27  have thus "conceded that secondary liability can be found against them if primary liability

28  is established as to Mr. Fischer through the settlement, through res judicata or by

20

1  collateral estoppel."  She contends, based on her argument that Fischer's primary liability

2  is established by operation of res judicata, the officer/director defendants are liable as

3  controlling persons under the 1934 Act and by common law respondeat superior.

4         The motions are GRANTED in part and DENIED in part.

5         1.     Claims under the 1934 Exchange Act

6         The motions to dismiss the § 10(b) claims of primary liability against Fischer are

7  DENIED.  As explained below, the court finds that the judgment in the adversary

8  proceeding does not have a preclusive effect on the § 10(b) claim or on any issues

9  relating to the § 10(b) claim.  Nevertheless, the court finds that it is sufficient to create an

10  issue of fact as to whether plaintiff can proceed with this claim as to Fischer.  Were it not

11  for the judgment in the adversary proceeding, the court would dismiss this claim against

12  Fischer with prejudice, because plaintiff has been given extensive instruction as to how to

13  amend the complaint but has repeatedly failed to comply.

14         The motion to dismiss the § 10(b) claims against defendants other than Fischer is

15  GRANTED.  First, the court once again reiterates that the § 10(b) claims against J.Sabes,

16  S.Sabes, Siegel, Kulasooriya, and Fernandes have already been dismissed with

17  prejudice.  As for Campion, while the 4thAC appears to be asserting that Campion made

18  false statements to plaintiff about the proposed investments in SpeciGen, plaintiff states

19  in her opposition that "the remaining claim against Campion is for secondary control

20  person liability."  Moreover, plaintiff previously conceded that Fischer was the "only

21  speaker" with regard to the SpeciGen investments, so any § 10(b) claim against Campion

22  must be dismissed with prejudice (as has already occurred with the other SpeciGen

23  defendants).

24         As for Waterhouse, the 4thAC does not allege that he made any false statements

25  or that he acted with scienter.  At most, he is alleged to have been involved in preparing

26  information "disseminated to investors and potential investors."  4thAC ¶ 103.

27  Accordingly, any § 10(b) claim against Waterhouse must also be dismissed with

28  prejudice.

United States District Court
Northern District of California

As for Rosen, the 4thAC does not specify which defendant (Notebookz or iLeonardo) Rosen was referring to when he purportedly made statements about "the company."  The court previously found the allegations in the TAC inadequate for this same reason, but plaintiff failed to correct this deficiency in the 4thAC.  Moreover, the 4thAC does not state why the alleged false statements – that "the company" had sufficient capital, that "the company" was preparing a new securities offering, and that Fischer and Rosen expected Google to acquire "the company" – were false when made.  In addition, as stated in the March 2015 order, the allegations regarding the "Investors Rights Agreement" are more in the nature of an asserted breach of contract, not a claim of securities fraud.  Finally, and most significantly, there are no allegations sufficient to create a strong inference of scienter as to Rosen.  The allegations regarding scienter refer solely to "defendants."  Even though Rosen has not previously moved for dismissal of the § 10(b) claim, numerous other defendants have, and plaintiff has not corrected the deficiencies in the complaint.  Thus, any § 10(b) claim against Rosen must also be dismissed with prejudice.

As for Notebookz, the court previously found in the March 2015 order that the allegations regarding Notebookz and iLeonardo were insufficient because the TAC conflated the allegations against the two, referring to them collectively as "the company," while continuing to maintain that they are two separate entities.  Plaintiff failed to correct that deficiency in the 4thAC.  See, e.g., TAC ¶ 94 ("Jackson's investments in Notebookz/iLeonardo were made in two parts."); TAC ¶ 97 (referring to documentation provided by "the company"); 4thAC ("Jackson's investments in Notebookz/iLeonardo were made in two parts."); 4thAC ¶ 97 (referring to documentation provided by "the company").  Apart from that, the 4thAC does not state a claim against either Notebookz or iLeonardo, as the only alleged misrepresentations are oral statements attributed to Rosen, with no statement that can be attributed to either Notebookz or iLeonardo.

The motion to dismiss the § 20(a) claims is DENIED, on the basis that secondary liability cannot be determined in the absence of a finding of primary liability.  In the March

22

1    2015 order, the § 10(b) claim against Fischer was dismissed with leave to amend, but the

2    4thAC adds little apart from the allegations regarding the stipulated judgment in the

3    adversary proceeding.  However, the question of Fischer's primary liability cannot be

4    resolved on a Rule 12(b)(6) motion to dismiss, and the court finds that further leave to

5    amend would be futile.

6            2.      Claim preclusion and issue preclusion

7            The court instructed the parties at the April 2014 case management conference

8    that defendants could file a motion for judgment on the pleadings regarding whether the

9    TAC stated a claim as to Fischer's primary liability, and that the parties could

10   subsequently file motions for summary judgment as to the preclusive effect of the

11   judgment in the adversary proceeding ("the bankruptcy adjudication"), a motion for

12   summary judgment on primary liability of Fischer, and a motion for summary judgment as

13   to secondary liability of Fischer.

14           In their motions for judgment on the pleadings, defendants sought judgment as to

15   Fischer's primary liability under § 10(b), and also sought judgment as to secondary

16   liability based on lack of primary liability.  In the opposition to that motion, plaintiff raised

17   numerous arguments based on facts not alleged anywhere in the TAC – principally, facts

18   relating to the adversary proceeding and the stipulated judgment.  Accordingly, the court

19   granted the defendants' motion, but granted leave to amend and advised plaintiff that it

20   was not considering any of the information included in the opposition that was not based

21   on matters pled in the TAC.  Plaintiff then filed the 4thAC, and defendants filed the

22   present motions to strike claims that had previously been dismissed, and to dismiss the

23   claims of primary and secondary liability.

24           Because plaintiff has opted to make the issue of res judicata the centerpiece of her

25   opposition to the present motions, the court now decides the question whether claim

26   preclusion and/or issue preclusion operates to establish Fischer's liability, rather than

27   waiting for a future motion.

28           While "res judicata" is sometimes used generically to refer to both claim preclusion

1    and issue preclusion, it is more correctly used to mean "claim preclusion," whereas

2    "collateral estoppel" is used to mean "issue preclusion."  The two doctrines are not the

3    same.

4            In general, the preclusive effect of a federal judgment is a question of federal law.

5    See Sullivan v. First Affiliated Sec., Inc., 813 F.2d 1368, 1376 (9th Cir. 1987).  Thus,

6    because the judgment issued in the adversary proceeding is a judgment issued by a

7    federal court, federal law applies.  See, e.g., First Pac. Bankcorp, Inc. v. Helfer, 224 F.3d

8    1117, 1128 (9th Cir. 2000).

9

10           Claim preclusion generally refers to the effect of a prior judgment in
             foreclosing successive litigation of the very same claim, whether or not
11           relitigation of the claim raises the same issues as the earlier suit.  Issue
             preclusion generally refers to the effect of a prior judgment in foreclosing
12           successive litigation of an issue of fact or law actually litigated and resolved
             in a valid court determination essential to the prior judgment, whether or not
13           the issue arises on the same or a different claim.

14   New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001).

15           More specifically, claim preclusion ("res judicata"), which "precludes relitigation of

16   claims that were raised or should have been raised in earlier litigation," San Remo Hotel,

17   L.P. v. San Francisco City & Cnty., 364 F.3d 1088, 1094 (9th Cir. 2004), applies if "there

18   is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity

19   between parties," Providence Health Plan v. McDowell, 385 F.3d 1168, 1174 (9th Cir.

20   2004) (citation and quotations omitted).

21           Issue preclusion ("collateral estoppel") "preclude[s] relitigation of both issues of law

22   and issues of fact if those issues were conclusively determined in a prior action."

23   Wolfson v. Brammer, 616 F.3d 1045, 1064 (9th Cir. 2010) (quoting United States v.

24   Stauffer Chem. Co., 464 U.S. 165, 170-71 (1984)).  Issue preclusion bars a party "from

25   relitigating an issue if four requirements are met – (1) there was a full and fair opportunity

26   to litigate the issue in the previous action; (2) the issue was actually litigated; (3) there

27   was final judgment on the merits; and (4) the person against whom [issue preclusion] is

28   asserted was a party to or in privity with a party in the previous action."  Id. (citing Kendall

24

1   v. Visa U.S.A., Inc., 518 F.3d 1042, 1050 (9th Cir. 2008)); see also Amadeo v. Principal

2   Mut. Life Ins. Co., 290 F.3d 1152, 1159 (9th Cir. 2002).

3        At the time defendants filed the present motions, they were evidently under the

4   impression that plaintiff was planning on asserting issue preclusion, not claim preclusion.

5   However, in her opposition, plaintiff appears to be arguing that both apply.

6        With regard to claim preclusion, there is an identity of parties as to plaintiff and

7   Fischer, but not as to plaintiff and any other defendant.  The court assumes for the sake

8   of argument that there was a final judgment on the merits.  See Rein v. Providian Fin.

9   Corp., 270 F.3d 895, 902-03 (9th Cir. 2001) ("A judicially approved settlement agreement

10  is considered a final judgment on the merits.")  That leaves the question whether the

11  same claim or cause of action was involved in both suits.

12        In evaluating this factor, the Ninth Circuit considers

13        (1) whether the rights or interests established in the prior judgment would be
          destroyed or impaired by prosecution of the second action; (2) whether
14        substantially the same evidence is presented in the two actions; (3) whether
          the two suits involve infringement of the same right; and (4) whether the two
15        suits arise out of the same transactional nucleus of facts.

16  Rein, 270 F.3d at 903; see also Turtle Is. Restoration Network v. United States Dep't of

17  State, 673 F.3d 914, 917-18 (9th Cir. 2012); Headwaters, Inc. v. U.S. Forest Serv., 399

18  F.3d 1047, 1052 (9th Cir. 2005).  Of these, "the most important" is whether the two suits

19  arise out of the same transactional nucleus of facts.  Costantini v. Trans World Airlines,

20  681 F.2d 1199-1201 (9th Cir. 1982).  On the other hand, the identity of causes of action

21  "cannot be determined precisely by the mechanistic application of a simple test."  Id. at

22  1202 n.7.

23        With regard to the first factor, the court finds that the rights or interests established

24  in the prior judgment in the adversary proceeding would not be destroyed or impaired by

25  prosecution of the § 10(b) claim against Fischer.

26        With regard to the second factor – whether the same evidence is presented in the

27  two actions – there is no way of knowing whether the same evidence will be presented in

28  this action as in the adversary proceeding, because this case has not yet moved beyond

United States District Court
Northern District of California

the pleading stage and the parties have conducted no discovery in this case.  Moreover, the adversary proceeding was not decided on the basis of evidence, but rather based on a settlement agreement.  In addition, none of the other defendants in this case was involved in the adversary proceeding.  The Sabes brothers attempted to intervene, but the bankruptcy judge found that they had no interest in the question to be resolved by the court – whether Fischer's debt to Jackson was dischargeable in bankruptcy given that he allegedly procured the money by fraud – and denied the motion.

As for the third factor – whether the two suits involve infringement of the same right – while the adversary proceeding and the claims of misrepresentation in this case may involve infringement of the same right, the adversary proceeding does not involve infringement of the same right as the causes of action under the California Investment Advisors Act and the federal Investment Advisors Act, which impose licensing and other requirements on investment advisors (in addition to prohibiting investment advisors from defrauding clients).

Moreover, a further requirement is that it must have been possible to bring "the claims asserted subsequent to the judgment" in the earlier action.  See Tahoe-Sierra Pres. Council v. Tahoe Reg. Planning Agency, 322 F.3d 1064, 1078 (9th Cir. 2003) (newly articulated claims based on same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action).  Here, it is not clear that either the 1934 Act claims nor the two investment advisor claims could have been brought in the adversary proceeding.

With regard to the fourth factor – whether the two suits arise out of the same transactions or nucleus of facts – the result is again not entirely clear.  See International Union of Operating Engineers-Emp'rs Constr. Indus. Pension, Welfare & Training Tr. Funds v. Karr, 994 F.2d 1426, 1429 (9th Cir.1993) ("Whether two events arise from the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together.").

Plaintiff's claim against Fischer in the adversary proceeding was that the debt

United States District Court
Northern District of California

1   Fischer owed her was nondischargeable under § 523(a)(2)(A).  Plaintiff alleged that

2   "[b]ecause he utilized fraud and deception to obtain and lose Mrs. Jackson's funds, by

3   reason of the foregoing, defendant Fischer is liable to Mrs. Jackson for the amounts he

4   claimed she would receive by virtue of the funds entrusted to him, inclusive of interest

5   pledged, currently in excess of $8,250,000."

6         The complaint in the adversary proceeding asserted facts similar to those alleged

7   in this action with regard to plaintiff's investments in SpeciGen, and some sketchy

8   allegations with regard to loans or investments directly in or through Upper Orbit, in

9   SpeciGen, Notebookz/iLeonardo, PeerDreams, CII/Sazani Beach Hotel, New Moon, and

10  non-parties Toppost and Rate-It-All/Double Dutch.  Plaintiff alleged that she "lost all of

11  her money and never received the interest payments promised," and that she

12  subsequently engaged counsel and filed suit on multiple federal, state, and common law

13  claims against him and multiple other defendants who conspired with him in June 2011"

14  (referencing the case name and case number of the present action).

15        The judgment entered in the adversary proceeding states that "the debt

16  represented by this judgment is excepted from the defendant's discharge pursuant to 11

17  U.S.C. § 523(a)(2)(A)."  The stipulation for judgment states that Fischer "admits that his

18  debt to plaintiff Suzanne D. Jackson in the amount of $8,250,000 is non-dischargeable

19  under 11 U.S.C. § 523(a)(2)(A), because such debts were obtained by means of false

20  pretenses, false representations and actual frauds committed against [p]laintiff, as she

21  alleged in her adversary complaint."

22        The elements of a claim of "actual fraud" under 11 U.S.C. § 523(a)(2)(A), "mirror

23  the elements of common law fraud."  In re Younie, 211 B.R. 367, 373-74 (9th Cir. BAP

24  1997) (citation and quotation omitted); see also In re Hai Lecong, 2015 WL 2129637 at *8

25  (9th Cir. BAP, May 6, 2015).  Section 523(a)(2)(A) requires proof by a preponderance of

26  the evidence

27        (1) [that] the debtor made the representations; (2) that at the time he knew
      they were false; (3) that he made them with the intention and purpose of
28    deceiving the creditor; (4) that the creditor relied on such representations;

27

(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

In re Younie, 211 B.R. at 373 (citation and quotation omitted).  Similarly, to establish actual fraud in California, the plaintiff must show "'(1) misrepresentation; (2) knowledge of the falsity of the representation; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages.'"  In re Jogert, Inc., 950 F.2d 1498, 1504 (9th Cir. 1991) (citation and quotation omitted).

Based on this, the court finds that the adversary judgment is res judicata as to the eighth cause of action for common law fraud asserted against Fischer in the present case, and is also res judicata as to the sixth cause of action for negligent misrepresentation.  On the other hand, however, while it is true (as the Ninth Circuit noted in a somewhat different context) that "the law on securities fraud is derived from common-law fraud," and that the Rule 9(b) pleading standards thus apply to all circumstances of both securities fraud, just as it applies to all circumstances of common law fraud, see Oregon Pub. Employees Retirement Fund v. Apollo Group, Inc., 774 F.3d 598, 605 (9th Cir. 2014), it does not necessarily follow that  the adversary judgment is res judicata as to the § 10(b) claims in this case.

Pleading and proof under § 10(b) are much more particularized even than pleading and proof under a common law fraud claim.  Section 10(b) and Rule 10b-5 are generally treated together, and prohibit making any material misstatement or omission in connection with the purchase or sale of any security.  Halliburton Co. v. Erica P. John Fund, Inc., 134 S. Ct. 2398, 2407 (2014).  The elements of a private securities fraud claim based on violations of § 10(b) and Rule 10b-5 are (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission (or transaction causation); (5) economic loss; and (6) loss causation (or proximate or legal cause).  Id.; see also Nuveen Mun. High Income Opportunity Fund v. City of Alameda, 730 F.3d 1111, 1118-19 (9th Cir. 2013).

Thus, unlike a claim of common law fraud, § 10(b) and Rule 10b-5 specifically

1   require a showing that the defendant made a material misrepresentation in connection

2   with the buying or selling of a security.  The fact that Fischer generally admitted to taking

3   plaintiff's money by means of fraudulent misrepresentations is not the same as admitting

4   that he induced her to purchase particular securities by means of fraudulent

5   misrepresentations.  See Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1132 (9th Cir. 2013)

6   ("Unlike the securities-fraud claims, the common-law fraud claims do not necessarily

7   require the sale of a security as an element of the claim.")  There are numerous ways of

8   investing, which could potentially give rise to fraudulent activity, but the Exchange Act

9   applies specifically to the purchase and sales of securities.  In other words, common law

10  fraud may be subsumed into securities fraud, but the reverse is not true.

11      In addition, while the complaint in the adversary proceeding refers at some length

12  to SpeciGen, it refers only in general terms to the other companies in which plaintiff

13  claims she invested.  Thus, the generalized admission of fraud in the adversary

14  proceeding cannot be extended in a blanket fashion to the § 10(b)/Rule 10b-5 claim as it

15  relates to every transaction with every other defendant company in the present action.

16      Finally, liability under § 20(a) is dependent on a showing of § 10(b) primary liability

17  as to the same transactions.  In other words, the Sabes brothers, Siegel, and Campion

18  can potentially be found liable under § 20(a) only as to transactions involving SpeciGen,

19  not as to all the other unrelated claims asserted in the 4thAC.  Kulasooriya/Fernandes

20  can potentially be found liable under § 20 only as to transactions involving PeerDreams,

21  and the remaining individuals can potentially be found liable only as to transactions

22  involving Notebookz/iLeonardo.  Since the judgment and stipulated judgment in the

23  adversary proceeding do not distinguish among the various unrelated transactions, it will

24  be necessary for plaintiff to establish Fischer's primary liability as to specific transactions

25  involving specific defendants in this case before the question of secondary liability can

26  even be considered.

27      Issue preclusion (collateral estoppel) requires a somewhat different analysis.  As

28  noted above, issue preclusion applies to a question, issue, or fact when (1) there was a

United States District Court
Northern District of California

1    full and fair opportunity to litigate the issue in the previous action; (2) the issue was

2    actually litigated; (3) there was final judgment on the merits; and (4) the person against

3    whom [issue preclusion] is asserted was a party to or in privity with a party in the previous

4    action." Wolfson, 616 F.3d at 1064; see also Oyeniran v. Holder, 672 F.3d 800, 806 (9th

5    Cir. 2012).  Issue preclusion serves to protect litigants from multiple lawsuits, conserve

6    judicial resources, and encourage reliance on adjudication by reducing the likelihood of

7    inconsistent decisions.  Allen v. McCurry, 449 U.S. 90, 94 (1980); see generally, C. Klein,

8    et. al., Principles of Preclusion and Estoppel in Bankruptcy Cases, 79 Am. Bankr. L.J.

9    839, 852-58 (2005).

10        Here, plaintiff has not clearly identified the specific issue or issues she believes

11    should be given preclusive effect.  Thus, it is impossible for the court to determine

12    whether a particular issue was at stake in both proceedings, or whether the issue was

13    necessary to decide the merits.  Similarly to the claim preclusion analysis, the court

14    assumes there was a final judgment on the merits.  In addition, there is identity of parties

15    as to plaintiff and Fischer, but not as to any other defendant.

16        As for whether there was a full and fair opportunity to litigate the issue, and

17    whether the issue was actually litigated, the analysis is not entirely clear-cut.  Where a

18    judgment is entered by the parties' consent or stipulation prior to trial on the issues, the

19    general rule is that no issue may be said to have been fully, fairly or actually litigated for

20    purposes of collateral estoppel.  See Restatement (Second) of Judgments § 27 comment

21    (e) at 257 (1982); see generally Foster v. Hallco Mfg. Co., Inc., 947 F.2d 469,  (Fed. Cir.

22    1991).

23        However, a form of issue preclusion has developed that is not dependent on

24    actual litigation of a matter.  Under this exception, "the [issue preclusive] effect results not

25    from the rule of [§ 27] but from an agreement manifesting an intention to be bound."

26    Foster, 947 F.2d at 480 (citing Restatement, § 27 comment (e) & note at 269); see also

27    Green v. Ancora-Citronelle Corp., 577 F.2d 1380, 1383 (9th Cir. 1978).  Nevertheless,

28    this rule has not been uniformly accepted by the courts.  See In re Berr, 172 B.R. 299,

1    313 (9th Cir. BAP 1994) (in determining whether the parties intended to foreclose the

2    subsequent litigation of a particular issue, stipulated judgments asserted to give rise to

3    collateral estoppel must be narrowly construed).

4         It is not appropriate for the court to speculate as to the intent of the parties here

5    based on the broad language of the stipulated judgment in the adversary proceeding, and

6    it is not possible for the court to determine at this juncture whether the parties intended to

7    qualify the application of the general rules of issue preclusion by foreclosing the

8    opportunity to challenge plaintiff's claims of securities fraud in this action.

9         Further, the California practice is instructive (even though the applicability of claim

10   and issue preclusion here is governed by federal law).  The general rule in California is

11   that stipulated judgments are afforded claim preclusive effect, but not issue preclusive

12   effect.  The reason is that these judgments are the product, not of litigation but of

13   negotiation.  See In re Yaikian, 508 B.R. 175, 179 (Bkrtcy. S.D. Cal. 2014).

14        While stipulated judgments can preclude relitigation of specified issues if the

15   parties make that intent sufficiently clear, see id., the situation here is that the stipulated

16   judgment simply states that Fischer's debt to plaintiff was not dischargeable in

17   bankruptcy because it was obtained by "false pretenses, false representations and actual

18   frauds committed against [p]laintiff."  The parties' agreement does not indicate any intent

19   to preclude future litigation of specific issues, particularly as might concern defendants

20   other than Fisher.  The evident goal of the stipulated judgment was limited to excepting

21   Fischer's debt to plaintiff from discharge in bankruptcy.

22        3.    Common law claims

23        The claim of breach of fiduciary duty was previously dismissed with prejudice as to

24   J.Sabes, S.Sabes, Siegel, Kulasooriya, and Fernandes.  The question here is whether it

25   should also be dismissed as to Fischer, Campion, Rosen, and Waterhouse.  The court

26   previously found in the March 2013 order that the gravamen of the claim as asserted in

27   the SAC was harm to the corporation, and for that reason dismissed the claim because it

28   was not brought as a derivative claim which would be subject to the demand excusal

United States District Court
Northern District of California

1    rules of Delaware (the state of incorporation of the defendant corporations).  The

2    dismissal was with leave to amend to clarify whether plaintiff was asserting that the

3    individual director defendants had their fiduciary duties to her or to the corporation.  In the

4    December 2013 order, the court found that the TAC stated nothing other than a derivative

5    claim of harm to the corporation, and dismissed the claim with prejudice as to J.Sabes,

6    S.Sabes, Siegel, Kulasooriya, and Fernandes.

7         In the 4thAC, plaintiff again alleges (exactly as in the SAC and the TAC) that "[t]he

8    defendant directors of each of the defendant companies had a fiduciary duty to their

9    shareholders to manage the assets of their respective companies prudently, in good faith,

10   and in the interest of the shareholders," and that they "breached their duties and acted in

11   bad faith by" failing to fulfill the various duties they owed to the corporations and

12   shareholders.  4thAC  ¶¶ 141-144.  She also, however, has added what appears to be an

13   attempt to assert a direct (as opposed to derivative) claim for breach of fiduciary duty.

14   She alleges that defendants "breached their fiduciary duty to [plaintiff] by causing Fischer

15   to solicit her investments, knowing that the information he proffered to induce those

16   investments was, as Fischer has admitted, fraudulent and materially deceptive."  4thAC

17   ¶ 145.

18        Under Delaware law, the question whether a claim of breach of fiduciary duty can

19   be brought as a direct (as opposed to a derivative action) depends on whether the

20   plaintiff can state a claim that does not involve injury to the corporation, but rather

21   belongs personally to her.  See NAF Holdings, LLC v. Ling & Fung (Trading), 118 A.3d

22   175, 179-80 & n.11 (Del. Supr. 2015) (applying analysis from Tooley v. Donaldson, Lufkin

23   & Jenrette, Inc., 845 A.2d 1031, 1033-36 (Del. 2004) (determining whether stockholder's

24   claim is derivative or direct turns on (1) who suffered the alleged harm and (2) who would

25   receive the benefit of any recovery or other remedy).

26        Here, plaintiff's claim is that "defendants" breached their fiduciary duty to plaintiff

27   by "causing" Fischer to "solicit" her investments, knowing that the information he

28   proffered to induce those investments was "fraudulent."  4thAC ¶ 145.  However,

plaintiff's claim is based on a diminution in the value of her investments in the defendant companies.  As such, it is a derivative claim.  See NAF, 118 A.3d at 180.  To the extent plaintiff is alleging "fraudulent inducement," that is a species of fraud which must be pled in accordance with Rule 9(b), which plaintiff has not done here with regard to any defendant other than Fischer.

Moreover, to the extent plaintiff is actually alleging breach of fiduciary duty, she has not alleged facts supporting the elements of the claim.  To state a claim of breach of fiduciary duty, a plaintiff must allege existence of a duty based on a fiduciary relationship, breach of the fiduciary duty, and damage proximately caused by the breach.  Pierce v. Lyman, 1 Cal. App. 4th 1093, 1101 (1991); see also Gutierrez v. Girardi, 194 Cal. App. 4th 925, 932 (2011).  Here, apart from pleading the duties the defendants owed to the corporations, plaintiff has not alleged the existence of a duty based upon a fiduciary relationship.  Plaintiff has had numerous opportunities to amend this cause of action, and based on her inability to state a claim, the court finds that the claim must be dismissed with prejudice as to Campion, Rosen, and Waterhouse.

The claim of negligent misrepresentation is also dismissed with prejudice as to Campion and Rosen, because plaintiff has failed to identify any specific false statement made by either Campion or Rosen, and has failed to allege with particularity that Fischer was acting as their "agent" in making the false statements attributed to him.

## CONCLUSION

In accordance with the foregoing, the motions to strike the § 10(b) claims and the common law misrepresentation claims against J.Sabes, S.Sabes, Siegel, Kulasooriya, and Fernandes, and the Corporations Code § 25501.5 claims against J.Sabes, S.Sabes, Siegel, Kulasooriya, Fernandes, Campion, Rosen, and Waterhouse, are GRANTED.  The dismissal is with prejudice.

The motions to dismiss the Exchange Act claims for primary liability are DENIED as to Fischer, and GRANTED as to any other defendant against whom the claims are asserted.  The dismissal is with prejudice.  The motions by to dismiss the § 20(a) claims

United States District Court
Northern District of California

are DENIED.  The motions to dismiss the claims of breach of fiduciary duty as to

Campion, Rosen, and Waterhouse, and the claims of negligent misrepresentation as to

Campion and Rosen, are GRANTED.  The dismissal is with prejudice.   The motions to

dismiss the claims of common law misrepresentation as to Fischer and Upper Orbit, and

the claim of negligent misrepresentation as to Fischer, are DENIED.

Thus far, the court has issued a 44-page order granting motions to dismiss the

SAC (the March 15, 2013 order); a 35-page order granting motions to dismiss TAC in

part and denying them in part (the December 20, 2013 order); a 40-page order granting

motions for judgment on pleadings (primary liability of Fischer and secondary liability

claims in TAC) (the March 15, 2015 order).  Each of those orders provided detailed

rulings, and the March 15, 2013 and March 15, 2015 orders also gave instructions as to

how to amend any claims that were dismissed with leave to amend.  Now the court has

issued yet another lengthy order.

Plaintiff has consistently failed to comply with many of the instructions for

amendment.  Accordingly, even though the court agrees with defendants that the

allegations supporting the § 10(b) claim and the misrepresentation claims are pled with

less than the requisite particularity, the court is unwilling to endure yet another round of

motions to dismiss.  Given Fischer's concession in the adversary proceeding that he

obtained money from plaintiff  "by means of false pretenses, false representations and

actual frauds committed against [her]," the court finds that, at a minimum, the existence

of factual disputes precludes dismissal of the fraud-based claims asserted against

Fischer.

Remaining in the case are the § 10(b) and Rule 10b-5 claim against Fischer; the

§ 20(a) claim against J.Sabes, S.Sabes, Siegel, Campion, Rosen, Waterhouse,

Kulasooriya, and Fernandes; the claim under Corporations Code §§ 25230, et seq.,

against Fischer; the claim of breach of the Investment Advisors Act of 1940, 15 U.S.C.

§§ 80b-1, et seq., against Fischer; the claim of negligent misrepresentation against

Fischer; and the claim of common law misrepresentation against Fischer and Upper

34

1   Orbit.  These are the only claims that will proceed to summary judgment, and trial if

2   necessary, after the parties have had an opportunity to conduct discovery.  Any motion

3   for default judgment as to SpeciGen, PeerDreams, and Upper Orbit may proceed

4   thereafter.

5          The claims against Notebookz and ILeonardo are DISMISSED with prejudice, for

6   failure to comply with the court's prior instructions as explained above.  The claims

7   against Sazani Beach and Bookbinder are DISMISSED with prejudice for failure to state

8   a claim.

9          A case management conference will be held telephonically on October 8, 2015, at

10  1:30 p.m., to schedule all remaining trial dates.  Plaintiff's counsel shall arrange the call to

11  chambers.

12

13  **IT IS SO ORDERED.**

14  Dated:  September 21, 2015

15  _____

16  PHYLLIS J. HAMILTON
    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28