UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUZANNE D. JACKSON,

Plaintiff,

v.

WILLIAM FISCHER, et al.,

Defendants.

Case No.  11-cv-2753-PJH

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT, AND DENYING MOTION FOR DEFAULT JUDGMENT AS TO UPPER ORBIT**

The motions of plaintiff Suzanne D. Jackson ("Jackson") and defendant Joshua Rosen ("Rosen") for summary judgment came on for hearing before this court on January 11, 2017.  Jackson appeared by her counsel Alan Kaufman and Robert Stumpf, and defendant Rosen appeared by his counsel Mark Peterson and Matthew Cate.  Also appearing was Kyle Withers, counsel for defendants Jon Sabes, Steven Sabes, Marvin Siegel, and Brian Campion ("SpeciGen defendants").  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motions.

**BACKGROUND**

The procedural and factual background of this case is as set forth in the September 21, 2015, order re defendants' motions to dismiss and motions to strike certain claims asserted against them in the fourth amended complaint ("4thAC").  Briefly, Jackson alleges that she and Fischer met in October 2006, and that he falsely represented himself as having extensive investment and management experience; that he fraudulently induced her to place her money in various risky investments that he

1 claimed were sound investments; and that she lost $8.25 million in those investments.

2 In June 2011, Jackson filed the present action against numerous individual and

3 corporate defendants, including Fischer and the companies in which she invested and

4 the officers and directors of those companies.  She asserted claims of primary liability for

5 securities fraud under § 10(b) of the 1934 Securities Exchange Act, and Rule 10b-5

6 promulgated thereunder, and claims of "control-person liability" under § 20(a) of the

7 Exchange Act, along with claims under the California Corporations Code and the federal

8 Investment Advisers Act.  She also alleged common law claims including fraud, negligent

9 misrepresentation, and breach of fiduciary duty.

10 In April 2012, Fischer filed for Chapter 7 bankruptcy protection in the Bankruptcy

11 Court for the District of Minnesota.  See In re William Richard Fischer, 12-bk-42128

12 (Bankr. D. Minn.).  He indicated that his sole creditor was Jackson, based on the claims

13 asserted in the present action.  The Bankruptcy Court discharged the debt.  On July 17,

14 2012, Jackson filed a complaint in the Bankruptcy Court in Adversary No. 12-ap-4183

15 ("the adversary proceeding") to determine the dischargeability of Fischer's debt under 11

16 U.S.C. § 523(a)(2) and (a)(4).

17 Jackson and Fischer litigated the adversary proceeding, and engaged in extensive

18 discovery.  None of the other defendants in the present action were involved, although

19 two of the SpeciGen defendants (Jon Sabes and Steven Sabes) unsuccessfully

20 attempted to intervene after Jackson moved for an order compelling them to respond to

21 discovery subpoenas.

22 On December 15, 2013, Jackson and Fischer entered into a confidential

23 Settlement Agreement, pursuant to which Fischer agreed to pay Jackson a total of

24 $500,000, with scheduled payments spread out over nine or ten years.  Fischer also

25 agreed to stipulate to entry of judgment for the non-dischargeability of Jackson's $8.25

26 million claim against Fischer, based on the applicability of 11 U.S.C. § 523(a)(2)(A)

27 (money obtained through false pretenses, false representations, and actual fraud),

28

United States District Court
Northern District of California

1  though not on the applicability of 11 U.S.C. § 523(a)(4) (money obtained through

2  embezzlement and larceny).

3       On December 17, 2013, Jackson and Fischer filed a stipulation for judgment, in

4  which Fischer admitted – notwithstanding the above-described agreement to pay

5  Jackson $500,000 – that "he is indebted to plaintiff Suzanne D. Jackson in the amount of

6  $8,250,000.00 as [p]laintiff alleged in her complaint filed in the above-captioned

7  adversary proceeding[;] and that "his debt to plaintiff Suzanne D. Jackson in the amount

8  of $8,250,000.00 is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) because such

9  debts were obtained by means of false pretenses, false representations, and actual

10  frauds committed against [p]laintiff as she alleged in her adversary complaint."

11       On December 18, 2013, the Bankruptcy Court entered a judgment of non-

12  dischargeability, ordering that Jackson was entitled to recover from Fischer the sum of

13  $8.25 million, and that the debt represented by this judgment "is excepted from the

14  defendant's discharge pursuant to 11 U.S.C. § 523(a)(2)(A)."

15  **DISCUSSION**

16  A.    Legal Standard

17       A party may move for summary judgment on a "claim or defense" or "part of . . . a

18  claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there

19  is no genuine dispute as to any material fact and the moving party is entitled to judgment

20  as a matter of law.  Id.

21       A party seeking summary judgment bears the initial burden of informing the court

22  of the basis for its motion, and of identifying those portions of the pleadings and discovery

23  responses that demonstrate the absence of a genuine issue of material fact.  Celotex

24  Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the

25  outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

26  dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable

27  jury to return a verdict for the nonmoving party.  Id.

28

1    Where the moving party will have the burden of proof at trial, it must affirmatively

2  demonstrate that no reasonable trier of fact could find other than for the moving party.

3  Soremekun v.Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where

4  the nonmoving party will bear the burden of proof at trial, the moving party can prevail

5  merely by pointing out to the district court that there is an absence of evidence to support

6  the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the moving party meets its

7  initial burden, the opposing party must then set out specific facts showing a genuine

8  issue for trial in order to defeat the motion.  Anderson, 477 U.S. at 250; see also Fed. R.

9  Civ. P. 56(c), (e).  When deciding a summary judgment motion, a court must view the

10  evidence in the light most favorable to the nonmoving party and draw all justifiable

11  inferences in its favor. Anderson, 477 U.S. at 255; Hunt v. City of Los Angeles, 638 F.3d

12  703, 709 (9th Cir. 2011).

13  B.    Plaintiff's Motion

14    In a renewed attempt to establish Fischer's "primary liability" under § 10(b) of the

15  Exchange Act and Rule 10b-5 promulgated thereunder, Jackson asserts that the

16  judgment of non-dischargeability in the adversary proceeding in the Minnesota

17  bankruptcy case is res judicata as to the Exchange Act claims against Fischer, and that

18  the judgment also creates collateral estoppel as to "facts and issues" underlying the

19  primary claims asserted against Fischer.

20    Previously, the defendants moving to dismiss the 4thAC argued that Jackson had

21  failed to state a claim against them for "control-person liability" under § 20(a) of the

22  Exchange Act because she had failed to allege facts sufficient to state a claim for primary

23  liability against Fischer under § 10(b) and Rule 10b-5.  In opposing the motions, Jackson

24  asserted that based on the stipulated judgment in the Minnesota adversary proceeding,

25  defendants were barred from challenging the Exchange Act primary liability claims

26  against Fischer under the doctrines of res judicata and collateral estoppel.

27    In the September 21, 2015, order, the court found that the judgment in the

28

4

United States District Court
Northern District of California

adversary proceeding did not have a preclusive effect on the claim under § 10(b)/Rule 10b-5, or on any related issues.  Order at 21, 23-29.  In addition, however, the court found that the judgment was sufficient to create an issue of fact with regard to whether plaintiff could proceed with the Exchange Act claim against Fischer.  Order at 21.  The court denied the motions to dismiss the § 20(a) claim on the basis that secondary liability cannot be determined in the absence of a finding of primary liability.  Order at 22-23, 29.

Res judicata, or claim preclusion, "precludes relitigation of claims that were raised or should have been raised in earlier litigation."  San Remo Hotel, L.P. v. San Francisco City & Cnty., 364 F.3d 1088, 1094 (9th Cir. 2004).  Res judicata applies if "there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties."  Providence Health Plan v. McDowell, 385 F.3d 1168, 1174 (9th Cir. 2004) (citation and quotations omitted).

Collateral estoppel, or issue preclusion, "preclude[s] relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action."  Wolfson v. Brammer, 616 F.3d 1045, 1064 (9th Cir. 2010) (quoting U.S. v. Stauffer Chem. Co., 464 U.S. 165, 170-71 (1984)).  Issue preclusion bars a party "from relitigating an issue if four requirements are met – (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated; (3) there was final judgment on the merits; and (4) the person against whom [issue preclusion] is asserted was a party to or in privity with a party in the previous action."  Id. (citing Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1050 (9th Cir. 2008)); see also Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1159 (9th Cir. 2002).

In the September 21, 2015, order, the court found, with regard to res judicata, that there was an identity of parties as to plaintiff and Fischer, but not as to plaintiff and any other defendant; that there was a final judgment on the merits; and that while the adversary judgment was res judicata as to the common law fraud and negligent misrepresentation claims asserted against Fischer – because the same cause of action

1   was at issue in both the adversary proceeding and this action – Jackson had not

2   established with regard to the § 10(b)/Rule 10b-5 claims that the same claim or cause of

3   action was involved in both suits.  <u>See</u> Order at 25-29.

4       In the present motion for summary judgment, Jackson again argues that the

5   judgment in the Minnesota adversary proceeding is res judicata as to the Exchange Act

6   claims of primary liability against Fischer.  She asserts that the parties are identical, the

7   judgment in the adversary proceeding was on the merits, and the claims are identical in

8   that both cases arise from the same nucleus of operative facts.

9       In the September 21, 2015, order, the court noted that claims under § 10(b)/Rule

10  10b-5 require a more particularized pleading and proof than do claims of common law

11  fraud, and that § 10(b)/Rule 10b-5 also require a showing that the defendant made a

12  material misrepresentation in connection with the buying and selling of a security.  The

13  court found that the fact that Fischer had generally admitted to taking plaintiff's money by

14  means of fraudulent misrepresentations was not the same as admitting that he induced

15  plaintiff to purchase particular securities by means of fraudulent misrepresentations.  The

16  court added that there are numerous ways of investing, which could potentially give rise

17  to fraudulent activity, but that the Exchange Act applies specifically to the purchase and

18  sales of securities.  Thus, "common law fraud may be subsumed into securities fraud, but

19  the reverse is not true."  Order at 28-29.

20      Moreover, the court noted, while the complaint in the adversary proceeding

21  referred at some length to SpeciGen, it referred only in general terms to the other

22  companies in which Jackson claimed she had invested, including Notebookz/iLeonardo,

23  the businesses with which Rosen was alleged to be involved.  Thus, the court found, the

24  generalized admission of fraud in the adversary proceeding cannot be extended in a

25  blanket fashion to the § 10(b)/Rule 10b-5 claim as it relates to every transaction with

26  every other defendant in the present action.  Order at 29.

27      In the present motion, Jackson concedes that the court found, in the September

28

United States District Court
Northern District of California

1   21, 2015 Order, that the Minnesota judgment was not res judicata as to the § 10(b)/Rule

2   10b-5 claim.  Jackson argues nevertheless that "a detailed review of the substance and

3   issues in the adversary proceeding, as well as the underlying documentation [including

4   the full text of the settlement agreement], warrant a review of [the court's] initial findings."

5          Jackson contends that the fraud that precluded discharge of Fischer's debt arose

6   solely from the sale of securities, because the "sole issue" in the adversary proceeding

7   was whether Fischer's primary liability in the present case would be discharged.  She

8   asserts that this is demonstrated by the fact that the "focus" of the adversary subject

9   matter was Fischer's sale of securities to her, the fact that the securities were specifically

10  identified, and the fact that the "entire thrust" of the discovery in the adversary proceeding

11  related to the sale of securities that are the subject matter of this case.

12         Jackson also argues that "an examination of the transcripts of Fischer's

13  deposition" in the adversary proceeding shows "a central focus on the sale of those

14  securities and the representations made to Mrs. Jackson in connection with those

15  transactions."  In support of that contention, she cites generally to the 560 pages of

16  transcript of the two sessions of Fischer's deposition, but does not identify any particular

17  excerpt of testimony that she believes supports her argument.

18         In addition, Jackson argues that the court did not previously have the benefit of the

19  "detailed contents of the Settlement with its clear intent to resolve all litigation among the

20  parties."  She claims that the court's previous finding of common law fraud "created a

21  predicate of elements that duplicated all but one of the elements of a Securities Claim,

22  and the record in the Adversary makes it clear that the one missing element was fully

23  litigated in fact."  She asserts that the Settlement Agreement (which was not before the

24  court on the motion to dismiss the 4thAC) expressly states that it was meant to resolve all

25  disputes between Jackson and Fischer, including the claims under the Exchange Act.

26  She concedes that Rosen's § 20(a) liability is not resolved by the Agreement, but asserts

27  that Fischer's § 10(b) liability to Jackson is, and that it thus cannot be the subject of

28

7

further litigation.

Jackson points to two "Whereas" clauses from the Settlement Agreement.  The first of these clauses states,

> WHEREAS, prior to the Parties' adversary proceeding, Mr. Fischer was named as a defendant in a case in the United States District Court for Northern California, Jackson v. Fischer, et al, case no. 11-CV-2753-PJH (the "California Litigation"), which is still pending, contains four counts under the California Corporations Code, three common law counts, two counts under the Securities Act of 1934, and one count under the federal Investment Adviser's Act[.]

The second states,

> WHEREAS, the Parties have, by the effective date of this Agreement, conducted the investigations, interviews and discovery they deem appropriate to evaluate their legal positions in the Adversary Proceeding and wish to settle all disputes between them and enter into this Agreement.

Jackson claims that by referring to the "two counts under the Securities Act of 1934," and by stating that she and Fischer "wish to settle all disputes between them," the parties made clear in the Settlement Agreement that they intended to end all litigation in this case, including the two counts under the Exchange Act.  Put another way, her position is that the settlement in the adversary proceeding was also intended as a settlement between herself and Fischer of all claims in the present action.  She argues that as a "binding contract," the settlement must be enforced.  She asserts that Fischer himself cannot further litigate the securities law claims, and that by settling, Fischer waived any defenses he may have had.

Jackson also contends that the Settlement Agreement's integration clause is binding, and extrinsic evidence cannot be considered.  The integration clause provides that

> [t]his Agreement constitutes the complete and final understanding between the Parties, and other promises, contracts, or agreements, either express or implied, are superseded by this Agreement, and no other promise, contract, or agreement either express or implied shall be binding unless signed in writing by the Parties hereto.

8

1    Jackson contends that the "fundamental question" is clear – should she and

2  Fischer, "who thought they settled this case three years ago, be forced into a relitigation

3  of the same nucleus of transactions, utilizing the same documents and the same

4  witnesses."  She claims that the doctrine of res judicata is designed to preclude

5  duplicative litigation over the same transactions, and to avoid creating uncertainty and

6  confusion and undermining the conclusive character of judgments.

7    With regard to collateral estoppel, the court found in the September 21, 2015,

8  order, that Jackson had not clearly identified the specific issue or issues she believed

9  should be given preclusive effect, and that it was thus impossible to determine whether a

10  particular issue was at stake in both proceedings or whether the issue was necessary to

11  decide the merits.  The court also found that it was unclear whether there was a full and

12  fair opportunity to litigate the issue (because Jackson had failed to specify the issue(s)

13  and also failed to show that the parties agreed to preclude future litigation of specific

14  issues), and similarly unclear whether there was a final judgment on the merits as to a

15  particular issue.  See Order at 29-31.

16    In the present motion, Jackson again argues that Fischer and "the remaining

17  defendants" (including Rosen) are collaterally estopped from litigating the "same nucleus

18  of facts" for a second time.  She claims defendants had a full and fair opportunity to

19  litigate, that the issues were actually litigated, that the issues were lost, and that the

20  parties in the two proceedings are the same.  However, she still fails to identify the

21  "issues" as to which she believes collateral estoppel should apply.

22    She simply asserts that the "issues" were actually litigated, as Fischer participated

23  in the adversary proceeding from beginning to end, producing over 20,000 documents

24  and participating in a two-day deposition.  She argues that the purpose of Fischer's

25  Chapter 7 filing was to avoid the debt in this case, which relates exclusively to the sale of

26  securities and "the cause of action arising therefrom."  She asserts further that the intent

27  of "the parties" (Jackson and Fischer) was to settle all their disputes, not just the dispute

28

United States District Court
Northern District of California

1    raised in the adversary proceeding.  She again points to the Settlement Agreement,

2    which referred to the present case as "still pending" and which "contains two counts

3    under the Securities Exchange Act of 1934" and which referred to the "extensive

4    discovery" conducted by the parties, and the fact that the "settlement discussions" were

5    intended to "settle all disputes between them."

6         Rosen is the only defendant who filed an opposition to plaintiff's motion.[1]  Rosen

7    argues that Jackson's motion is an improper, untimely, and unsupported motion for

8    reconsideration of the September 15, 2015 Order; that the Minnesota judgment has no

9    preclusive effect on him, as he was not a party to the adversary proceeding; that the only

10   proper application of claims preclusion to this case would be to prevent Jackson from

11   seeking a judgment on claims that have already been litigated against Fischer and

12   decided on the merits in Minnesota; and that Jackson still has not specified which

13   "issues" from the Minnesota proceeding should be deemed preclusively established here.

14        The court finds that the motion must be DENIED.  Taking the question of collateral

15   estoppel (issue preclusion) first, the court notes that Jackson has still not identified the

16   specific issues that she claims were conclusively determined in the adversary

17   proceeding.  Thus, she has not established issue preclusion.  Moreover, to the extent that

18   Jackson is attempting to argue that the "issue" of Fischer's primary liability under the

19   Exchange Act was conclusively determined by virtue of the Settlement Agreement, the

20   court finds that the Settlement Agreement does not clearly indicate that Fischer agreed to

21   liability for § 10(b)/Rule 10b-5 violations.

22   _____

23   [1]    As of the date of the present order, the defendants remaining in the case are
     Fischer and Rosen, plus two defendants (Jorge Fernandes and Mani Koolasuriya) who
24   have purportedly settled with Jackson; one defendant (Upper Orbit LLC) as to which
     default has been entered and Jackson has filed a motion for default judgment; and two
25   defendants (SpeciGen, Inc., and Peer Dreams, Inc.) as to which default has been
     entered.  At the January 11, 2017 hearing on the present motions, the court indicated that
26   it would dismiss SpeciGen and Peer Dreams if no motion for default judgment was filed
     within 30 days of the date of the hearing.  No such motion having been filed, the claims
27   against SpeciGen, Inc., and Peer Dreams, Inc., are hereby DISMISSED.

28

United States District Court
Northern District of California

10

In particular, the court notes that the Settlement Agreement provides in § 10 that "[t]he Parties understand and agree that nothing herein shall be construed as an admission of liability by Mr. Fischer except as stated in Section 2(c) of this Agreement and the Stipulation for Judgment."  In turn, § 2(c) provides that Fischer "will agree to stipulate, upon execution of this Agreement, to the entry of a judgment for non-dischargeability" Jackson's $8.25 million claim against him "based on the applicability of 11 U.S.C. § 523(a)(2)(A)" – the provision providing for no discharge of an individual debtor from any debt "for money . . . obtained by . . . false pretenses, a false representation, or actual fraud."

Thus, while the Settlement Agreement can be construed as an admission of liability with regard to common law fraud, it cannot be so construed with regard to liability under § 10(b) or Rule 10b-5.   This reading is bolstered by Fischer's declaration, in which he states that he would never have agreed to – and did not agree to – liability for violations of the Exchange Act.  Apart from citing to selected portions of the settlement agreement, plaintiff has provided no evidence supporting her claim that she and Fischer agreed that he was admitting to liability for violation of § 10(b)/Rule 10b-5.

With regard to res judicata, nothing has changed from the September 21, 2015 Order, where the court found only a generalized admission of fraud, not an admission to the elements of a § 10(b)/Rule 10b-5 claim.  See Order at 25-29.  The court sees no need to revisit this question, and finds that Jackson has failed to establish that the judgment in the adversary proceeding is res judicata as to the Exchange Act claim of primary liability against Fischer.

C.   Defendant's Motion

Rosen seeks summary judgment as to the sole remaining claim asserted against him – the claim of control-person liability under § 20(a) of the Exchange Act, with regard to Jackson's investment in Notebookz, Rosen's former company.  As indicated above, the court previously dismissed the § 10(b)/Rule 10b-5 claims of primary liability against all

11

1   defendants (including Rosen and Notebookz), with the exception of Fischer.  The court

2   denied the motions to dismiss the § 20(a) claims, on the basis that secondary liability

3   could not be determined in the absence of a finding of primary liability.  Order at 22-23.

4   The court added, "Since the judgment and stipulated judgment in the adversary

5   proceeding do not distinguish among the various unrelated transactions, it will be

6   necessary for plaintiff to establish Fischer's primary liability as to specific transactions

7   involving specific defendants in this case before the question of secondary liability can

8   even be considered."  Order at 29.

9        In the 4th AC, Jackson alleges that Fischer and/or Rosen made three purportedly

10   false statements – (1) that Google would be a likely acquirer of Notebookz in the near or

11   immediate future; (2) that Notebookz "had, independently of Jackson's investment,

12   already raised sufficient capital to develop and commercialize its product and generate

13   revenues within 1-2 years;" and (3) that Notebookz "was preparing a new securities

14   offering and had experienced investors ready to add additional capital for expansion."

15   4thAC ¶¶ 99-100(a)-(b).

16        In the present motion, Rosen argues that Jackson cannot establish a primary

17   violation as to Fischer under § 10(b)/Rule 10b-5 because none of the three alleged false

18   statements is actionable; because she has no evidence that Fischer acted with scienter;

19   because she could not have justifiably relied on any of the three statements; and

20   because the statute of limitations bars her from basing her claim on the three statements.

21   In addition, with regard to the § 20(a) claim, Rosen contends that he acted in good faith

22   and did not induce any primary violation.

23        In opposition, Jackson argues that this case is not suitable for disposition on

24   summary judgment; that she and Fischer settled the Exchange Act claims and Fischer

25   has admitted he defrauded her; that she was induced to invest through material

26   misrepresentations and omissions; that scienter cannot be established through summary

27   judgment; that she was justified in relying on what she was told; that she filed suit within

28

United States District Court
Northern District of California

1    two years of her discovery of the fraud; and that Rosen as a control person, is liable for

2    Fischer's conduct and only a jury can determine whether he acted in good faith.

3         The court finds that the motion must be DENIED.  With regard to the three

4    purportedly false statements, the court agrees with Rosen that the statement regarding

5    the "likely" acquisition of Notebookz by Google is not actionable, as it is clear from

6    Jackson's deposition testimony that at most, Fischer or Rosen told her that Google was

7    "looking at" Notebookz and that a Google acquisition might happen.  Indeed, Jackson

8    conceded that she was warned that the potential Google acquisition was speculative.

9    The court also agrees that the statement that Notebookz "was preparing a new securities

10   offering and had experienced investors ready to add additional capital for expansion" is

11   not actionable, as Jackson's testimony implicitly acknowledges that investigations by

12   potential new investors could lead to a decision not to invest in Notebookz.  However,

13   with regard to the statement that Notebookz had raised sufficient capital to develop and

14   commercialize its product and generate revenues within 1-2 years, the court finds that the

15   evidence presented is sufficient to create a triable issue as to whether this statement was

16   false at the time it was made.

17        Rosen's second and third arguments are that Jackson has no evidence that

18   Fischer knew he was deceiving her, or that he acted with deliberate recklessness, and no

19   evidence showing that she reasonably relied on the alleged false statements.  The court

20   finds that under the facts of this case, the questions of scienter and reasonable reliance

21   raise further triable issues – in particular, issues related to state of mind, intent, and

22   credibility – which are not appropriate for resolution on summary judgment.

23        As for whether Jackson's claims are barred by the statute of limitations, under 28

24   U.S.C. § 1658(b), the two-year clock on Jackson's claims began to run when she either

25   "did in fact discover . . . the facts constituting the violation" or when a "reasonably diligent

26   plaintiff would have discovered [them]."  Merck & Co. v. Reynolds, 559 U.S. 633, 637

27   (2010).  Rosen has provided evidence that Notebookz sought additional funds a few

28

United States District Court
Northern District of California

1   months after Jackson obtained the convertible notes, and argues that a reasonable

2   investor would have been on notice as of December 2007 that the company needed to

3   raise substantial funds in preparation for issuing its "Series B" offering.  He argues that

4   because Jackson did not file suit for more than two years after December 2007, the

5   claims are barred.  However, Jackson has provided evidence that at least raises a triable

6   issue as to whether Fischer (her purported adviser) unsuccessfully attempted to obtain

7   information regarding Notebookz from Rosen throughout 2009, and whether it was only in

8   November 2009 that she was finally made aware that she had lost her investment.

9           Finally, with regard to Rosen's assertion that the evidence shows that he acted in

10   good faith and did not directly or indirectly induce Fischer to act in any manner that

11   violated § 10(b)/Rule 10b-5, as is required for liability under § 20(a), the court finds that

12   under the facts of this case, the issue of good faith is not appropriate for determination on

13   summary judgment.  Moreover, as the court has repeatedly noted, secondary liability

14   under § 20(a) cannot be determined in the absence of a finding of primary liability.  See

15   Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009).

16                                **CONCLUSION**

17           In accordance with the foregoing, the motions for summary judgment are DENIED.

18   Plaintiff's motion for default judgment against Upper Orbit LLC is DENIED, without

19   prejudice to refiling once the claims of primary liability against Fischer have been

20   decided.

21           By separate order, the court will set a date for a further case management

22   conference.

23

24   **IT IS SO ORDERED.**

25   Dated:  March 16, 2017

26                                   _____

27                                   PHYLLIS J. HAMILTON
                                     United States District Judge

28